UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x
                                                        :
In re                                                   :     Case No.: 25-11009-dsj
                                                        :
Manhattan Country School,                               :     Chapter 11
a/k/a Manhattan Country School, Inc.                    :
                                                        :
                        Debtor                          :
                                                        :
--------------------------------------------------------x

### MOTION OF ADP TOTALSOURCE, INC. FOR RELIEF FROM STAY TO PERMIT IT TO TERMINATE CLIENT SERVICES AGREEMENT

ADP TotalSource, Inc. ("TotalSource"), a professional employer organization ("PEO") providing payroll and human resources services to the Debtor, Manhattan Country School (the "Debtor"), seeks authority to terminate immediately that certain Client Services Agreement dated March 30, 2021 (the "CSA") entered into between it and the Debtor. The Debtor has closed or is about to close its business. To the extent the Debtor has any employees it has demonstrated through its repeated failure to timely fund payroll that it cannot guarantee that the employees will be paid timely, putting TotalSource at risk. For this reason, this Court should immediately enter an order authorizing TotalSource to terminate the CSA. In further support hereof, TotalSource states as follows:

### BACKGROUND

1.      On or about March 30, 2021, TotalSource and the Debtor entered into the CSA, a copy of which is attached hereto as Exhibit A.

2.      Under the CSA, the Debtor is required to fund the gross payroll for the employees working for the Debtor (the "Worksite Employees") and TotalSource, in turn, issues the payroll to the Worksite Employees. Under the CSA, the Debtor also is required to pay to TotalSource

4461657_1

workers' compensation administration fees for the administration of workers compensation claims filed by Worksite Employees, and health insurance premiums for the health insurance plans afforded to Worksite Employees.

3.      As a PEO, TotalSource is responsible for remitting and reporting employment payroll tax as well as to issue COBRA notices to employees upon termination of their health coverage, currently scheduled to occur on June 30, 2025.

4.      The Debtor filed a petition under Chapter 11 of the Bankruptcy Code on May 16, 2025 and on June 13, 2025 the Debtor filed a motion to convert its case to Chapter 7. That motion is pending.

5.      The Debtor has failed repeatedly to fund payroll timely. The May 30th payroll was not funded until June 5th and the June 13th payroll was not funded until June 18th.

6.      On June 16, 2025, the Debtor informed TotalSource that it is expecting that it will have a "skeleton crew" of about 10 to 14 employees and to run a final payroll at the end of June.

7.      Leaving aside the question as to whether the Debtor can even have employees once the case is converted to Chapter 7, by the Debtor's own actions, it historically has not had the money to timely fund payroll and it cannot demonstrate that it will have the funds for ongoing payrolls.

## **RELIEF REQUESTED**

8.      By this Motion, TotalSource seeks an order lifting or modifying the automatic stay to permit TotalSource to terminate the CSA immediately. A proposed form of order is annexed hereto as Exhibit B.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the *Amended Standing Order of Reference from the United States District Court for the*

*Southern District of New York*, dated January 31, 2012. TotalSource confirms its consent, pursuant

to Bankruptcy Rule 7008, to the entry of a final order by this Court in connection with this Motion

to the extent that it is later determined that the Court, absent consent of the parties, cannot enter

final orders or judgments in connection herewith consistent with Article III of the United States

Constitution. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

10.     Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BASIS FOR REQUESTED RELIEF

11.     Section 362(a)(3) of the Bankruptcy Code operates to stay "any act to obtain

possession of property of the estate or of property from the estate or to exercise control over

property of the estate."

12.     Section 362(d), in turn, provides for the termination of the stay for cause or, with

respect to a stay of an act against property, if the debtor does not have an equity in the property

and it is not necessary to an effective reorganization.

13.     To the extent that the automatic stay applies, it is submitted that "cause" exists to

modify it to permit TotalSource to terminate because the Debtor has repeatedly failed to fund

timely payroll cannot demonstrate that it even has the ability to fund payroll going forward.

14.     The termination of the CSA will have limited effect on the Debtor and the estate. It

will end TotalSource's obligations as to ongoing payroll, but it will not terminate certain functions

that TotalSource provides as part of its normal practices upon termination of a CSA, and which

are important both as to the Worksite Employees and the ongoing administration of the estate. These are:

a.    Worksite Employees will continue to be covered for health insurance through June 30, 2025.

b.    TotalSource will file quarterly tax forms with Internal Revenue Service and state taxing authorities relating to payroll through the termination date.

c.    TotalSource will also issue Form W-2 Wage and Tax Statements to Worksite Employees for 2025 when due.

d.    TotalSource will send to Worksite Employees COBRA notices upon termination of their health coverage on June 30, 2025, which will permit them to continue health insurance coverage as provided by COBRA.

e.    Finally, the Trustee will have access, if requested, to the portal for payroll records maintained by TotalSource for the Debtor for a period of one year following termination.

## **CONCLUSION**

15.    For the reasons stated above, TotalSource respectfully requests the Court enter an order modifying the automatic stay to the extent necessary to permit TotalSource to terminate the CSA immediately and without further delay.

Dated:  June 18, 2025               SCARINCI HOLLENBECK, LLC
       New York, New York         *Co-Counsel to ADP TotalSource Group Inc.*

                                By: */s/ David Edelberg*_____
                                David Edelberg
                                519 8TH Avenue, 25th Floor
                                New York, New York 10018
                                (201) 896-7701 (Tel)
                                (201) 896-7084 (Fax)
                                dedelberg@sh-law.com

# EXHIBIT A

**ADP TOTALSOURCE®**
**CLIENT SERVICES AGREEMENT**
**For Manhattan Country School Inc**
**PART 1**

This Client Services Agreement ("Agreement") is between ADP TotalSource, Inc. and any of its subsidiaries or affiliates to which it may assign this Agreement or a portion thereof ("TotalSource"), and the other party executing this Agreement ("Client"), and will be effective and binding upon the parties as of 12:01 a.m. on the first day of the first payroll period for which TotalSource processes the payroll ("Effective Date").

**I.      Relationship between the Parties and the Worksite Employees.**

A.      Relationship between the Parties.  As a professional employer organization ("CPEO") certified under the Internal Revenue Code of 1986, as amended (the "Code"), TotalSource will provide Client with the CPEO services set forth in Part 1, Section IV ("Services").  In the CPEO relationship TotalSource and Client will share certain employer responsibilities and will allocate other employer responsibilities between each other as set forth in this Agreement.

B.      Rights and Responsibilities with Respect to the Worksite Employees.
1.  During the term of this Agreement, Client will remain an employer of the Worksite Employees, as such term is defined below, and TotalSource will become a co-employer of the Worksite Employees as set forth in this Agreement.
2.  Client will have: (i) direction and control over the Worksite Employees as is necessary to conduct Client's business, discharge any fiduciary responsibility it may have, or comply with any applicable licensure, regulatory or statutory requirement of Client; (ii) control over the day-to-day job duties of Worksite Employees and over the job sites at which, or from which, Worksite Employees perform their services ("Worksite"); and (iii) responsibility over the professional and licensed activities of Worksite Employees including ensuring that Worksite Employees are supervised by licensed individuals as required by law and for determining whether an applicant or Worksite Employee meets Client's hiring criteria and is qualified to safely and competently perform his or her job.
3.   TotalSource reserves a right of direction and control over Worksite Employees as is necessary to fulfill its obligations and provide the Services under this Agreement.  This reservation of rights shall not be deemed a requirement to exercise such rights and does not affect Client's independent ability to exercise its rights as an employer.
4. TotalSource and Client will each have a right to hire, discipline and terminate the Worksite Employees as to each one's employment relationship with the Worksite Employees.

C.      No Change to Underlying Employment Relationship.  This Agreement does not change the underlying employment relationship between any Worksite Employee and Client and does not create any rights for any Worksite Employee that did not previously exist.  Existing or future employment agreements including non-competition and confidentiality agreements remain the exclusive responsibility and liability of Client.  Client acknowledges that TotalSource does not become a party to any employment agreement between Client and any Worksite Employee.

**II.      Employment of the Worksite Employees.**

A.       Worksite Employees.  The term "Worksite Employee" shall mean an individual hired by Client (i) who completed TotalSource's new hire forms, (ii) who is eligible to work in the United States ("U.S.") as evidenced by the timely and accurate completion and submission to TotalSource of the U.S. Department of Homeland Security's Form I-9, Employment Eligibility Verification ("I-9") and any other legally required employment eligibility verification system, and (iii) who has been placed on TotalSource's payroll. Client shall ensure the timely and accurate completion of an I-9 (paper or electronic) for each Worksite Employee, provide a paper copy of or submit I-9 data electronically to TotalSource within three (3) days of hire and, in the case of a paper I-9, comply with all retention requirements under applicable law.  No individual hired by Client will be employed by TotalSource under this Agreement or any TotalSource policy or benefit until the conditions established in this Section II.A for Worksite Employee status have been met.  Both parties agree that all Client employees must timely satisfy the conditions set forth herein and become Worksite Employees of TotalSource.  Client will not employ anyone not covered under this Agreement without prior written notification to TotalSource.

B.      Non-Worksite Employees.  The term Worksite Employee does not include TotalSource corporate employees providing CPEO Services to Client under this Agreement ("TotalSource Corporate Employees"), independent contractors, or individuals who may be providing services to Client under any other arrangements including a temporary employee provided through a staffing agency (collectively "Non-Worksite Employees").

C.      Self-Employed Individuals.  Client agrees to identify all self-employed individuals providing services to Client to be covered under this Agreement ("SEI"), which may include partners, limited liability company members, and 2% or more owners of Subchapter S Corporations.  Client acknowledges that all SEIs will be required to execute TotalSource's Self-Employed Individual and Non-Paid Owner Participation Addendum to acknowledge the respective individual tax responsibility of such SEI. Self-employed individuals who do not provide services for Client are not Worksite Employees and will not be covered under this Agreement.  Due to rules under the Code, Client acknowledges that SEIs may not be able to participate in all components of the TotalSource Health and Welfare Plan.

D.      Payroll of Worksite Employees Exclusively Through TotalSource.  Unless expressly agreed to otherwise, Client agrees to process and pay all taxable wages and other taxable payments to Worksite Employees exclusively through TotalSource.  Client further agrees not to process and issue manual checks to Worksite Employees containing taxable wages and other taxable payments without the prior written notice and approval of TotalSource.





**ADP TOTALSOURCE®**
**CLIENT SERVICES AGREEMENT**
**For Manhattan Country School Inc**
**PART 1**

E.    Notice to Worksite Employees.  TotalSource will provide notice to Worksite Employees in writing about the CPEO relationship at both the inception and termination of co-employment with TotalSource.  TotalSource will provide Client with *Basic Employment Policies* ("BEP") either electronically or in paper and Client will ensure that each Worksite Employee receives and acknowledges receipt of the BEP.  If the Worksite Employee does not electronically acknowledge receipt of the BEP via My Totalsource, Client must return a copy of the Worksite Employee's executed acknowledgement of receipt of the BEP to TotalSource along with the other new hire paperwork as provided in Part 1, Section II.A.

**III.    Duties of the Parties with Respect to the Worksite Employees.**

A.    Duty to Inform.  Client and TotalSource agree to accurately inform each other when they have knowledge of any potential or actual employment-related matter involving the Worksite Employees including claims, complaints (whether oral or written), incidents, allegations, charges, lawsuits, government investigations or audits, union organizing at Client's worksite, changes in status such as leaves of absences, reduction in hours from full-time to part-time, new hires and terminations.

B.    Duty to Cooperate.  TotalSource and Client agree to cooperate with each other in addressing employee issues including participating in employment-related investigations, providing training to Worksite Employees, following lawful employment policies and procedures, including those provided to Client by TotalSource, and assisting in resolving Worksite Employee complaints and/or the defense of employment-related claims.

C.    Duty to Consult.  In order for TotalSource to provide its Services, Client will consult with TotalSource before taking any adverse employment action such as termination, formal discipline, or demotion.

D.    Duty to Provide Access.  During the term of this Agreement, Client will give TotalSource (or designated agents), upon prior request and reasonable notice during normal business hours, the right to access and examine Worksite Employee information, data, files and Worksites.  In the case of a government investigation involving the Worksite Employees Client agrees to immediately provide TotalSource with access to Worksite Employee information and Worksites.

**IV.    Professional Employer Services.**  During the term of this Agreement, TotalSource will provide Client with the Services set forth below in this Section IV.  Client acknowledges that TotalSource's provision of the Services is dependent upon the completeness, accuracy, and timeliness of the information that Client provides to TotalSource.

A.    Payroll and Tax Filing.  TotalSource will: (i) pay Worksite Employees as reported by Client to TotalSource; (ii) withhold and remit federal, state and local employment taxes; (iii) deliver payroll to Client; (iv) process direct deposits to those Worksite Employees electing such service; and (v) process calendar year-end W-2 forms for the Worksite Employees (collectively "Payroll Services").

B.    Wage Withholding Orders; Garnishment; Lien Processing.  TotalSource will administer Worksite Employee garnishments, liens and withholding orders provided that Client timely provides them to TotalSource.

C.    Unemployment Claims Administration.  TotalSource will provide unemployment claims administration.  Client agrees to provide TotalSource with a power of attorney to permit TotalSource to administer Client's unemployment account if required by state law and provide TotalSource with all information and documentation required to assist TotalSource with providing its unemployment claims administration services.

D.    Human Resources Services; Products.  TotalSource will provide Client with a secure, online human resources website that provides Client with access to an employer forms library, allows Client to process and report newly hired and terminated Worksite Employees, and administers Worksite Employee records as provided to TotalSource by Client.  TotalSource will also provide Client with policies and procedures regarding commercially-accepted human resource practices and access to human resource, payroll and benefits professionals.  TotalSource will provide Client with assistance in preparation of a written response to a charge of discrimination and/or retaliation filed by a Worksite Employee or applicant under any state or federal discrimination law provided there is not a conflict of interest between Client and TotalSource.

E.    Human Resources Guidance.  TotalSource will provide human resources guidance consistent with federal, state, and local employment laws including: Title VII of the Civil Rights Act; the Americans with Disabilities Act; the Pregnancy Discrimination Act; the Equal Pay Act; the Age Discrimination in Employment Act; the Fair Labor Standards Act; the Immigration and Nationality Act and the Immigration Reform and Control Act as it applies to completion of the I-9 forms; the Fair Credit Reporting Act; and the Family and Medical Leave Act.

F.    Leave Administration.  TotalSource will administer Worksite Employee leaves required under state or federal leave laws.

G.    Employee Service Center.  TotalSource will provide the Worksite Employees with toll-free access to an Employee Service Center to assist Worksite Employees.



**ADP TOTALSOURCE®**
**CLIENT SERVICES AGREEMENT**
**For Manhattan Country School Inc**
**PART 1**

H.      Employee Assistance Program.   TotalSource will make available to Worksite Employees a confidential employee assistance program ("EAP").

I.      EEO-1 Filing.   If TotalSource is permitted by the Equal Employment Opportunity Commission ("EEOC") to file an EEO-1 Component 1 report on Client's behalf, then TotalSource shall do so upon Client's request provided Client timely gives TotalSource the complete and accurate information necessary for TotalSource to prepare and submit the report.   Notwithstanding the foregoing, in order for TotalSource to file an EEO-1 Component 1 report for the calendar year in which the Effective Date occurs, such Effective Date must be on or prior to December 31st. Services do not include the preparation or administration of Affirmative Action Plans or the performance of any other government contracting, or subcontracting requirement Client may have.   TotalSource does not become a federal or state subcontractor by providing CPEO Services to a Client that is a federal or state contractor or subcontractor.

J.      Worksite Safety Guidance.   TotalSource will provide Client with guidance regarding loss prevention and workplace safety practices; access to safety training; assistance with safety program development; a customizable safety manual and Occupational Safety and Health Act compliance assistance regarding Worksite Employees and Client's Worksites.

K.      Workers' Compensation Claims Administration.   TotalSource will provide workers' compensation claims administration and provide a toll-free number for reporting claims.

L.      TotalSource Training.   TotalSource will provide Client with access to training on management and employee development, regulatory compliance and employment laws.

M.      Benefits Administration.   TotalSource will provide benefits administration for the ADP TotalSource Health and Welfare Plan, which includes Consolidated Omnibus Budget Reconciliation Act, as amended ("COBRA"), administration, plan administration, enrollment and renewal.

N.      Elective Services:
    i.   Drug Testing; Drug Free Workplace Program.   For an additional fee as set forth in the Pricing Addendum, and if requested by Client, TotalSource will provide Client with access to drug testing and a drug free workplace program.
    ii.   ADP Recruitment Services.   For an additional fee, and if requested by Client, TotalSource will provide Client with access to recruiting services.
    iii.   Time and Labor Management.   Upon Client's request, TotalSource will provide Client with access to the time and labor management services described in Part 2 of the Pricing Addendum ("Time and Labor Management").   Client's use of Time and Labor Management shall be subject to the fees and costs set forth in the Pricing Addendum and shall be invoiced to Client in addition to the Service Fee described in Part 2, Section 2.A.
    iv.   General Ledger Infolink.   Upon Client's request, TotalSource will provide Client with access to the General Ledger Infolink ("GLI") services described in Part 2 of the Pricing Addendum.   Client's use of the GLI services shall be subject to the fees and costs set forth in the Pricing Addendum and shall be invoiced to Client in addition to the Service Fee described in Part 2, Section 2.A.
    v.   Enhanced Talent Suite.   Upon Client's request, TotalSource will provide Client with access to the talent management services set forth in Part 2 of the Pricing Addendum ("Enhanced Talent Suite").   Client's use of Enhanced Talent Suite shall be subject to the fees and costs provided in the Pricing Addendum and shall be invoiced to Client in addition to the Service Fee described in Part 2, Section 2.A.
    vi.   Screening and Selection Services.   Upon Client's request, TotalSource will provide Client with access to the screening services set forth in the Pricing Addendum for the additional fees set forth therein (the "Screening Services").   The Screening Services set forth in the Pricing Addendum are subject to change in TotalSource's sole discretion and will be provided to Client through TotalSource's affiliate, ADP Screening and Selection Services, Inc. ("SASS").
    vii.   Application Programming Interface.   Upon Client's request, TotalSource will provide Client with access to its Application Programming Interface services described in Part 2 of the Pricing Addendum ("API").   Client's use of API shall be subject to the fees and costs set forth in the Pricing Addendum and shall be invoiced to Client in addition to the Service Fee described in Part 2, Section 2.A.

**V.      Benefits.**
A.      Group Health; Welfare Benefits.   TotalSource will offer health, dental, vision, disability and life insurance benefits through the ADP TotalSource Health and Welfare Plan to Worksite Employees as described in the attached and incorporated Client Benefit Election form ("CBE").   Worksite Employees must meet the eligibility requirements under the applicable plan and governing laws.

B.      Multiple Employer 401(k) Plan.   At Client's election, the ADP TotalSource Retirement Savings Plan, a multiple employer 401(k) plan ("MEP"), will be offered to the Worksite Employees.   If Client elects to participate in the ADP TotalSource Retirement Savings Plan, Client agrees to execute a separate Retirement Savings Plan Adoption Agreement.





**ADP TOTALSOURCE®**
**CLIENT SERVICES AGREEMENT**
**For Manhattan Country School Inc**
**PART 1**

**VI.**    **Workers' Compensation Coverage.**

A.    Workers' Compensation Coverage Provided by TotalSource.    TotalSource will maintain workers' compensation coverage for Worksite Employees.  Coverage will not extend to Non-Worksite Employees.  Workers' compensation coverage will cease on the effective date of termination of this Agreement.  Jones Act, Long Shoreman's Act and Outer-Continental coverage is not provided.  TotalSource's workers' compensation policy carries standard workers' compensation coverage for international travel.  The policy will solely provide for emergency care in the foreign country where the injury occurred and repatriation back to the United States for treatment.

B.    Workers' Compensation for Non-Worksite Employees.    Should Client use or engage the services of Non-Worksite Employees, Client will maintain or cause workers' compensation coverage to be maintained for such Non-Worksite Employees.  Client also agrees to provide TotalSource with a certificate naming TotalSource as a certificate holder, obtain a labor contractor endorsement (or the equivalent) in favor of TotalSource, and require that Client's insurer notify TotalSource in advance of any termination of coverage.  Client will require its independent contractors to enter into independent contractor agreements with Client and to maintain workers' compensation coverage.

C.    Modified Light Duty.    Client agrees to provide light duty work within the physical limitations set by an authorized treating physician for Worksite Employees who have a work-related injury. Client will not be obligated to create a new position for a Worksite Employee solely for the purpose of satisfying its obligations under this Section VI C. of the Agreement.

**VII.**    **Employment Practices Liability Insurance.**    TotalSource will provide a claims-made Employment Practices Liability Insurance policy ("EPLI") with an endorsement that extends coverage to Client for covered claims filed by Worksite Employees and applicants against Client alleging wrongful employment practices as defined in the policy.  Client's coverage is subject to annual aggregate limits and deductibles (retention) which must be satisfied by Client.  The deductibles (retention) are set forth in the attached and incorporated Pricing Addendum.  The terms of the EPLI policy govern the rights of the parties.  TotalSource reserves the right to change the EPLI policy terms or any related terms and conditions set forth in the Pricing Addendum, cancel and/or self-insure after providing Client with reasonable prior notice.

**VIII.**    **Legal Defense Benefit.**    TotalSource will provide Client a Legal Defense Benefit for claims that are covered by the EPLI policy whereby TotalSource will pay for a specified amount of Client's attorney's fees exclusive of costs and disbursements (e.g., travel costs, mediation expenses, deposition transcripts, filing fees, copying fees, etc.), subject to conditions described in this Section. TotalSource will not provide the Legal Defense Benefit for claims not covered by the EPLI Policy (such as wage and hour claims).  The amount of the Legal Defense Benefit is set forth in the attached and incorporated Pricing Addendum.  This benefit is not insurance, it is not indemnification, and it is not to be used as a fund to settle disputes between Client, TotalSource, and/or an applicant or Worksite Employee (former or current).

A.    Conditions for Benefit.    To obtain the Legal Defense Benefit, Client must meet all of the following requirements for each claim:  1) follow TotalSource's policies for employment practices; 2) consult with TotalSource before taking any adverse employment action such as termination, discipline or demotion, and follow TotalSource's recommendation(s) regarding the incident from which the claim arose; 3) comply with this Agreement in all material respects; 4) accept TotalSource's choice of defense counsel; and 5) cooperate with chosen defense counsel.  If Client prefers to select its own counsel, the Legal Defense Benefit will not be available to cover the attorney's fees associated with that selection. If there is a conflict of interest between Client and TotalSource, this benefit is not available.  Further, the Legal Defense Benefit will no longer be available if TotalSource, in its sole discretion, with input from chosen defense counsel, determines that a reasonable settlement is possible and Client refuses such settlement.  Under those circumstances, Client becomes responsible for any attorney's fees incurred thereafter.

B.    Scope of Benefit.    If Client fulfills the above requirements, and provided TotalSource was involved in addressing the particular incident from which the claim arose by providing a recommendation regarding such incident, TotalSource will pay attorney's fees up to the amount set forth in the Pricing Addendum to defend employment claims covered under the EPLI policy (excluding class action claims), filed by an applicant or current or former Worksite Employee based on facts or circumstances that arose during the term of this Agreement.  The Legal Defense Benefit is only available while this Agreement is in effect.  Upon termination of this Agreement, the Legal Defense Benefit will terminate and TotalSource will cease paying attorney's fees.  The legal fees for the Legal Defense Benefit will be based on the hourly rate that the chosen defense counsel selected by TotalSource charges TotalSource.

**IX.**    **Service Guarantee.**    TotalSource is confident about the quality of its Services.  As a result, we make the following guarantee:  if Client experiences a Service failure and terminates this Agreement within the first six (6) months of the Effective Date, TotalSource will refund the Service Fee set forth in the Pricing Addendum that Client paid TotalSource, excluding wages, direct expenses, payroll taxes, workers' compensation costs, implementation fees and other mandatory insurance (the "Refund Amount").  No amount required to be paid pursuant to the CBE will be refunded.  This Service Guarantee is not available if Client materially breaches this Agreement, including failure to pay.  In order for Client to receive the Refund Amount under this Service Guarantee, Client must first notify TotalSource, in writing, of the Service failure(s) within five (5) business days of Client experiencing such failure(s) and provide TotalSource with ten (10) business day's opportunity to cure the Service failure after having notified TotalSource.  The foregoing Service Guarantee does not apply in the case of a frivolous or immaterial Service failure.



**ADP TOTALSOURCE®**
**CLIENT SERVICES AGREEMENT**
**For Manhattan Country School Inc**
**PART 1**

**X.**     **Pricing.**  Client will pay TotalSource as indicated in the Pricing Addendum and as set forth in Part 2, Section 2.

**XI.**    **Term.**  This Agreement has an initial one (1) year term starting on the Effective Date ("Initial Term").  After the Initial Term this Agreement renews automatically on its anniversary date for successive one (1) year terms.  This Agreement may be terminated as set forth in Part 2, Section 13.

**XII.**   **Terms and Conditions; Exhibits; Addenda.**   Part 2: Terms and Conditions ("Part 2") and Part 3: Federal and State Addendum ("Part 3") are attached hereto and are incorporated by reference in and are a part of this Agreement.  TotalSource's provision of Services is subject to this Part 1, Part 2, and Part 3, and any exhibit, addendum or document referenced, attached or incorporated herein by reference.

**This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which together constitute one and the same document. The parties agree that a signature transmitted via facsimile or electronic mail shall be deemed original for all purposes hereunder.   TotalSource may execute this Agreement using an electronic signature and such signature shall be treated in all respects as having the same effect as an original handwritten signature.  TotalSource and Client execute this Agreement, in their respective corporate names by their duly authorized officers on the dates provided below.**

**ADP TotalSource, Inc.**

*Hernandez,Gilbert*
_____
Signature

Hernandez,Gilbert
_____
Name

Financial Exec
_____
Title

3/30/2021
_____
Date

Client: Manhattan Country School Inc
DBA:
FEIN:  132546971

*Ruben J. Ortiz*
_____
Signature

Ruben J. Ortiz
_____
Name

HR Manager
_____
Title

3/30/2021
_____
Date

CLIENT ADDRESS FOR NOTICES:

150 W 85th St
_____

_____

New York, NY, 10024
_____

Upon the Effective Date, this Agreement shall be assigned to  ADP TotalSource FL XVI, Inc.
with Federal Employer Identification Number  650161093





**CLIENT SERVICES AGREEMENT**

**For Manhattan Country School Inc**

**PART 2**

**1. GENERAL TERMS GOVERNING THE PROVISION OF SERVICES.**

**A.   Accuracy of Client Information.** Client represents that the information provided to TotalSource prior to executing this Agreement was and continues to be accurate and complete as of the Effective Date. Client is solely responsible for any demand or claim that existed, accrued or relates to facts and circumstances which occurred before the Effective Date. Client acknowledges that such responsibility includes payment of attorney's fees, investigation costs, damages or similar charges, costs or expenses and that the Legal Defense Benefit is not available for such demand or claim. Client is responsible for providing TotalSource with complete, accurate, and timely information necessary for TotalSource to provide Services and fulfill its responsibilities. Client will promptly notify TotalSource at any time it discovers any inaccuracies or discrepancies.

**B.   Accuracy of Payroll; Submission of Payroll; Wage and Hour Laws.** Client will provide TotalSource with complete and accurate information regarding hours worked, all legally required data elements for earning statements, job classifications, exemption status under the Fair Labor Standards Act ("FLSA") and similar state and local laws (collectively, with all regulations, rules, and judicial, regulatory and administrative orders, findings, guidance and other interpretations thereunder, "Wage and Hour Laws"), and other payroll information needed for TotalSource to accurately pay Worksite Employees and as is otherwise necessary for TotalSource to satisfy its obligations in connection with this Agreement ("Payroll Information"). In order for TotalSource to process payroll for the Worksite Employees on the designated pay date, Client must submit the Payroll Information to TotalSource using the TotalSource Payroll Processing Platform no later than three (3) business days before each pay date. Client agrees to comply with, and acknowledges that it is solely responsible for compliance with, Wage and Hour Laws (including the application of any exemptions from these requirements) applicable to Worksite Employees, including, without limitation, minimum wage, overtime, meal and rest periods, recordkeeping, paid sick leave (including any requirements to provide employees with sick leave balance information if not including this information on an earning statement), notice requirements, wage deductions (including authorization requirements) and the application of credits/allowances for board, lodging or other facilities against minimum wage and overtime pay requirements.

**C.   Bonuses, Commissions, Vacation, Holiday, Sick, Severance Pay Agreements.** Any responsibility and/or liability with regard to agreements for bonuses, commissions, vacation, holiday, sick pay or similar time off accruals, and severance pay ("Nonstandard Wages") shall remain the sole responsibility of Client. The fact that TotalSource may process Nonstandard Wages as a part of its Payroll Services, does not evidence any agreement or assumption by TotalSource of responsibility or liability for payment of Nonstandard Wages to Worksite Employees. Client must notify TotalSource of any Nonstandard Wages that must be paid out at termination for a Worksite Employee.

**D.   Use of Services.** Client acknowledges and agrees that TotalSource's Services are not intended to be and will not be relied upon by Client as either legal, financial, insurance or tax advice. TotalSource is not, and will not be, Client's record keeper. Accordingly Client will maintain such records as Client is otherwise required to maintain in the ordinary course of business. TotalSource shall not be responsible for providing Services as it relates to Client's guests, invitees, independent contractors or other third parties and shall not be liable for the acts or omissions of Client's guests, invitees, independent contractors or other third parties. Unless otherwise agreed to, Client agrees that the Services will be utilized by Client solely in the United States.

**E.   Client Responsibility for Worksite Employees.** Because Client has exclusive control over the day-to-day job duties of Worksite Employees, Client is responsible for the acts, errors, and omissions of Worksite Employees. TotalSource is not responsible for the acts, errors or omissions of Worksite Employees except when Worksite Employees are acting under the express direction and control of TotalSource.

**F.   Compliance with Laws.** Client and TotalSource shall each be solely responsible for their own compliance with all laws, government regulations and professional licensing affecting their business, products and services. TotalSource's provision of Services does not relieve Client of its responsibility and obligations to comply with all federal, state and local laws, including employment and worksite safety laws. Client understands that it may now need to comply with laws that may apply as a result of the CPEO relationship (e.g., state leave laws).

**G.   National Labor Relations Act.** Client agrees to inform TotalSource before it executes a collective bargaining agreement. Client acknowledges that it is solely responsible for determining whether to: (i) operate as a union or non-union business; (ii) be involved with a union organizing campaign and/or election; (iii) negotiate a collective bargaining agreement; and (iv) process grievances and arbitrations under the National Labor Relations Act. Client acknowledges that if it has, or at any time enters into a collective bargaining agreement, Client and the applicable union(s) will be required to enter into a Memorandum of Understanding with TotalSource explaining the nature of the CPEO relationship between TotalSource and Client. Client agrees that TotalSource will have no responsibility for paying any contributions to any multiemployer pension and/or welfare plan and will not become

a paying entity or contributing employer within the meaning of the Multiemployer Pension Plan Amendment Act and has no withdrawal liability. Client further acknowledges that TotalSource is not a collective bargaining employer with respect to Worksite Employees. TotalSource does not provide guidance with respect to the National Labor Relations Act.

**H.   Immigration; Employment Eligibility; International Employees; Overseas Travel.**

   i.   TotalSource will not be a sponsoring employer for purposes of petitioning or applying for immigration visas for Worksite Employees.

   ii.   Client is solely responsible for verification and re-verification of employment eligibility and compliance under applicable law, including any other legally required employment eligibility verification system and corrections or updates to any required forms such as the I-9.

   iii.   Client is solely responsible for determining whether any international travel of a Worksite Employee will require the issuance of a travel visa, work visa and/or work permit by a foreign government or agency.

   iv.   Payroll Services do not include processing and/or remitting to a foreign or US territory government any payroll and/or employment-related taxes or tax reports that Client and/or individual Worksite Employee has (or may) become subject to as a result of the Worksite Employee's international travel or assignment to perform work for Client in a foreign country or any US territory.

   v.   TotalSource does not provide guidance on any international laws or the laws of any US territory, including employment or tax laws.

   vi.   Worksite Employees shall not be permitted to travel to any foreign country that is actively on the United States Department of State travel warning list.

   vii.   Employees of Client assigned to work in or travel to foreign countries or any US territory for periods greater than six (6) months, in the aggregate, in any given calendar year will not be covered by this Agreement and will not be considered Worksite Employees. Client shall not assign Worksite Employees to work in or travel to foreign countries or any US territory for periods greater than six (6) months, in the aggregate, in any given calendar year.

**I.   Worker Adjustment and Retraining Act.** Client has sole control over any decisions regarding plant closings, mass layoffs, or other events covered by the Worker Adjustment and Retraining Act ("WARN") and similar state laws at any Worksite. Client shall be solely responsible for any notice required to comply with WARN and similar state laws. The termination of this Agreement shall not constitute an event requiring notification under WARN or similar state laws where Client continues to operate its business. Notwithstanding the foregoing, Client agrees to provide TotalSource at least ninety (90) days advance notice of a plant closing, mass layoff or other event covered by the WARN Act or similar state laws in case it is practicable where Client does not have ninety (90) days notice.

**J.   Additional Services Requested by Client.** TotalSource may provide Client with access to additional services upon mutual agreement and by completion of an additional agreement or work order form, if applicable ("Additional Services Document"). Each Additional Services Document is incorporated into this Agreement by this reference as if set forth in this Agreement. To the extent there is any conflict between an Additional Service Document and this Agreement, the Additional Services Document will control with respect to the additional services in the Additional Services Document.

**K.   ADP Marketplace.** TotalSource may provide Client with access to the ADP Marketplace. Client acknowledges that any application or service purchased by Client through the ADP Marketplace is provided by a third party and not TotalSource (whether or not such third party is an affiliate of TotalSource) and TotalSource makes no endorsements, representations or warranties (including any representations or warranties regarding compliance with laws) regarding such application or service. Client will enter into a relationship directly with the third party provider of such application or service. Any application or service purchased through the ADP Marketplace will be governed exclusively by the terms and conditions agreed to by Client and the third party provider and not by this Agreement (whether or not such third party is an affiliate of TotalSource). TotalSource will not provide any advice, service or support with respect to any application or service purchased on the ADP Marketplace. Client agrees to indemnify, protect, defend, release and hold harmless TotalSource, its parents, subsidiaries, affiliates, directors, officers, benefit plans and agents from and against any and all liability, expenses, losses and claims for damages arising from or in connection with Client's purchase or use of any application or service provided through the ADP Marketplace. The Legal Defense Benefit will not be available for any claim arising from or related to Client's purchase or use of any application or service provided through the ADP Marketplace.

**L.   Seasonal Business Operations.** If Client's business operation is seasonal in nature, Client agrees to notify TotalSource in writing at least thirty (30) days prior to shut down or cessation of operations of Client's business, the date Client's business will resume operations and the date Worksite Employees will resume work ("Business Shutdown"). During the Business Shutdown, TotalSource shall provide no Services to Client, including workers' compensation insurance coverage.

**M.   Worksite Safety.** Client is solely responsible for: (i) compliance with the Occupational Safety and Health Act and similar state laws (including, the responsibility





**CLIENT SERVICES AGREEMENT**

**For Manhattan Country School Inc**

**PART 2**

to report injuries to OSHA or a state agency equivalent), the Worksite and safety of Worksite Employees, regardless of where Worksite Employees are assigned to work; (ii) making any Worksite accommodations required under the Americans with Disabilities Act ("ADA"); (iii) complying with Title III of the ADA (public access to facilities); and (iv) providing and ensuring the use of safety equipment required by law or by TotalSource's workers' compensation carrier. Client will rectify an unsafe working condition or violation of any safety law of which it is aware, including any loss control recommendations made by TotalSource. Client understands that because TotalSource does not control the Worksite or the day-to-day job duties of Worksite Employees, TotalSource has no ability to abate any unsafe condition or violation of any safety law at a Worksite. Client will report to TotalSource any: (i) Worksite safety violations; (ii) work-related injuries or accidents; (iii) change in job functions and duties that affect workers' compensation classification; (iv) workers' compensation misclassification; (v) change in Worksite safety exposure; and (vi) change in the states in which Client has Worksites and in which Worksite Employees will work. Client is solely responsible for Worksite safety of Client's invitees, guests, independent contractors and other third parties. Client will allow TotalSource's workers' compensation carrier access to audit Client's Worksites upon reasonable prior notice and during regular business hours.

**N. Assignment of Worksite Employees.** Client will not assign any Worksite Employee to work as an employee for any other company, even if such company is within the same control group of Client, without the knowledge and consent of TotalSource.

**2. FEES, TAXES & PAYMENTS.**

**A. Fees & Costs.** Client shall pay TotalSource the amounts indicated on the Pricing Addendum, Client Benefit Election Form ("CBE") and related employee benefits invoices, and any Additional Services Document. Except as stated in this Section 2, TotalSource will not change the fees and costs invoiced to and payable by Client during the Initial Term, including the rates used to determine the Service Fee (as such term is described in the Pricing Addendum). Following the Initial Term, TotalSource may adjust the fees and costs invoiced to and payable by Client (including, without limitation, the rates used to determine the Service Fee) upon thirty (30) days prior written notice. TotalSource reserves the right to adjust the rates used to determine the Service Fee at any time, including during the Initial Term, under the following scenarios: (i) there is a change or an assessment related to federal, state and local taxes; (ii) Client hires individuals who should be classified in workers' compensation codes different from Client's current workers' compensation codes; (iii) the information Client provided TotalSource before executing this Agreement (e.g., gross payroll, workers' compensation classification codes) changed from the time TotalSource gave Client a quote; or (iv) a Worksite Employee is misclassified for workers' compensation coverage purposes by either TotalSource or Client, or TotalSource's workers' compensation carrier requests a classification code change, provided that (a) unless the misclassification was caused by gross negligence or willful misconduct, TotalSource will adjust the Service Fee on a prospective basis only, (b) if the misclassification is due to the gross negligence or willful misconduct of TotalSource, and the misclassification resulted in Client paying more to TotalSource than would have been due absent such misclassification, TotalSource will adjust the Service Fee in accordance with the appropriate classification code(s) retroactive to the later of the beginning of the policy year or the Effective Date of this Agreement, and (c) if the misclassification is due to the gross negligence or willful misconduct of Client, and the misclassification resulted in Client paying less to TotalSource than would have been due absent such misclassification, TotalSource will adjust the Service Fee in accordance with the appropriate classification code(s) retroactive to the later of the beginning of the policy year or the Effective Date of this Agreement and will invoice Client accordingly. The pricing set forth in the CBE will adjust with the applicable benefit plan or insurance policy renewal or anniversary date. TotalSource shall retain any Section 125 tax savings as part of its fee to offset operating costs.

**B. Payment Terms.** Client agrees to pay TotalSource no later than forty-eight (48) hours prior to Client's regularly scheduled payroll date. Client agrees to pay by Automatic Clearing House ("ACH") debit transfer and agrees to complete the necessary forms so payment can be processed. Client agrees to have sufficient funds in its designated bank account to satisfy any amounts then due to TotalSource. TotalSource, in its sole discretion, may require Client to pay any invoice through pre-wire transfer funds, certified or cashier's check, or other means. Without limiting the foregoing, should Client's payroll exceed one and one half times Client's immediate prior pay roll, TotalSource may require Client to pay the invoice through pre-wire transfer funds. Without limiting the foregoing, upon termination of this Agreement, TotalSource will require Client to pay its final payroll by pre-wire transfer funds. If Client fails to pay any amount due, after written notice, Client shall pay interest at the rate of 1.5% per month (or the maximum allowed by law if less) on such past due amount from the due date thereof until the payment date. Client shall reimburse TotalSource for any expenses incurred, including interest and reasonable attorneys' fees in collecting amounts due. Client agrees that if it fails to pay an

invoice when due, TotalSource has the discretion to cease any or all Services and TotalSource may pay Client's owners and/or officers the FLSA or state minimum wage or salary instead of the regular wage or salary.

**C. Taxes.** In addition to employment and payroll-related taxes, all invoices will include sales taxes levied or based on the Services provided pursuant to this Agreement. Client shall be responsible for the payment and administration of any federal, state and local business-related taxes including any sales or service tax that Client may be required to collect and remit.

**D. Cessation of Business; Receivership; Bankruptcy of Client.**

i. Client agrees to give TotalSource fourteen (14) days notice of its intent to make an assignment for the benefit of creditors, file for relief under Chapter 11 of the U.S. Bankruptcy Code, seek the appointment of a receiver or cease to operate its business. Client recognizes that a critical protection granted to TotalSource is its ability to terminate this Agreement without prior notice to Client in the event of Client's breach, as more fully set forth in Section 13 of these Terms and Conditions, without which protection TotalSource may require additional security by Client to ensure Client's performance.

ii. Client agrees that once it files a voluntary petition under Chapter 11 of the United States Bankruptcy Code or an involuntary petition is filed against it, it will: (i) immediately notify TotalSource of such filing; (ii) immediately seek to obtain permission from the Bankruptcy Court to pay any amounts owed on account of prepetition and post petition wages owed to the Worksite Employees and to TotalSource, including TotalSource's Service Fee; and (iii) provide TotalSource with adequate protection of performance by Client under this Agreement. In connection with any bankruptcy, TotalSource may, at its sole discretion, require the funding of payroll by the Client in advance by pre-wire transfer funds, the posting with TotalSource of a deposit or letter of credit, or other method as determined by TotalSource sufficient to cover any loss that TotalSource may sustain as a result of Client's failure to meet its payment obligations under the Agreement. Client agrees to execute any document requested by TotalSource in order to effectuate TotalSource's request under this paragraph D of this Section 2.

**3. INSURANCE.**

**A. Client Insurance Requirements.** Client shall maintain the following insurance: (i) Commercial general liability insurance coverage for all premises, completed operations, and products which relate to Worksite Employees, including blanket contractual liability coverage or contractual liability coverage specifically covering this Agreement; (ii) Comprehensive automobile liability insurance (including any personal injury protection required by any applicable state's "no-fault" laws) covering bodily injury and property damage resulting from a Worksite Employee's use of Client-owned, non-owned, or hired vehicle; (iii) Any specialized liability insurance pertaining to the nature of Client's business (e.g., marine liability insurance) as is customary for Client's industry or as required by law; (iv) Employee dishonesty (fidelity) and computer crime coverage (for losses arising out of or in connection with any fraudulent or dishonest acts committed by Worksite Employees, acting alone or in collusion with others) and (v) workers' compensation coverage for any Non-Worksite Employee or Client shall require any Non-Worksite Employee, its independent contractors, and subcontractors to maintain workers' compensation insurance coverage and will keep certificates of insurance documenting such coverage and provide evidence of such coverage to TotalSource upon request. Client agrees that it will obtain the above insurance policies with a minimum limit of $500,000 per occurrence (or such other amounts as TotalSource reasonably requires), which names TotalSource as an additional insured on such policies, and gives TotalSource thirty (30) days written notice before cancellation of any such policies. All such insurance coverage will be primary in the event of an occurrence for which both Client and TotalSource have insurance coverage, and any TotalSource insurance will be excess and non-contributory. Client agrees to give TotalSource a certificate of insurance indicating the above coverages when TotalSource reasonably requests. Client also agrees that it will promptly notify TotalSource in writing in the event any of its insurers materially modify the terms of any insurance discussed herein.

**B. Employment Practices Liability Insurance.** Client acknowledges that the insurance carrier may deny coverage if Client fails to satisfy the deductible (retention) or comply with the terms of the EPLI policy.

**4. RETIREMENT AND INCENTIVE COMPENSATION PLANS.**

Client may sponsor and maintain its own qualified or nonqualified retirement plans and incentive compensation plans (including equity-based compensation plans), provided that Client complies with the provisions outlined in this Section 4. Client shall be considered the employer, for purposes of this Section 4, of any Worksite Employee who is a participant or beneficial recipient of any Client sponsored plan.

**A. Section 401(k) Plan.** If Client sponsors its own Section 401(k) plan ("Client's 401(k) Plan"), Client will be solely responsible for ensuring that the Worksite Employees do not exceed the annual Internal Revenue Code Section 402(g) elective deferral limit ("Elective Deferral Limit") if Client's 401(k) Plan includes a Roth feature. Client will also be solely responsible for aggregating each Worksite Employee's pre-tax Section 401(k) plan deferrals with any Roth post-tax contributions





**CLIENT SERVICES AGREEMENT**

**For Manhattan Country School Inc**

**PART 2**

made for purposes of determining whether the Elective Deferral Limit has been exceeded. Client agrees to notify TotalSource when a Worksite Employee has reached the Elective Deferral Limit. Client is solely responsible for calculating any amounts that may be permitted under Client's 401(k) Plan.

**B.** **Equity-Based Compensation.** Client retains the exclusive right to grant stock or stock options or other equity-based compensation to Worksite Employees, to sponsor stock purchase plans and to determine the economic value of the labor performed. TotalSource shall process related plan payments or contributions upon written request; however, Client is solely responsible and liable for such plan payments and contributions. Client is also solely responsible for determining the appropriate tax treatment of such payments and contributions and disclosing same to TotalSource. Client has the exclusive right to determine the economic value of the services performed by Worksite Employees (including wages and the number of units and value of stock compensation or other equity-based compensation granted). Consistent with the provisions of Part 1, Section I. B. of this Agreement, Client shall have a right to hire, terminate and control the activities of Worksite Employees. It is the intent of the parties that the above provisions shall be applied consistent with FASB Accounting Standards Codification (ASC) 718 —Compensation – Stock Compensation ("FASB ASC 718") such that any Worksite Employee who receives stock compensation or other equity-based compensation from Client shall be deemed an employee of Client under FASB ASC 718; provided that TotalSource shall have no liability or obligation with respect to any financial statement or other disclosure related thereto.

**5.** **SCREENING AND SELECTION SERVICES.**

**A.** **Client Obligations and Certifications.** Client will be provided access to the Screening Services only upon Client passing SASS' credentialing process. If Client has requested access to and been approved for Screening Services that include receiving consumer reports and/or investigative consumer reports (each individually, a "Report" or collectively, "Reports") from SASS, then in connection with requesting and/or receiving any such Reports, Client makes the certifications set forth below.

i.   For Reports requested in respect of consumers in the United States, Client agrees to review the "Notice to Users of Reports: Obligations of Users" ("**Notice to Users**") under the Fair Credit Report Act ("FCRA") provided to Client at www.adpselect.com|gldocs|FCRANotices.pdf, and perform the legal obligations as set forth in such notice and Client certifies that it has read the Notice to Users. Client further acknowledges it has read and understands its obligations under the FCRA and the penalties for requesting Reports under false pretenses or knowingly without a permissible purpose. Client agrees to request reports only in accordance with applicable domestic and international law.

ii.   Client agrees to use the Reports and information provided by SASS for one-time use, for the specific permissible purposes of "Employment" (the "Permissible Purpose") only, and only in accordance with applicable domestic and international law.

iii.   Client acknowledges and agrees that it may only disclose information within any Report obtained from SASS hereunder, to the consumer, potential employee or employee who is the subject of such Report (each a "Consumer"), in accordance with applicable domestic and international law.

iv.   Client agrees to make a clear and accurate disclosure to the Consumer if an investigative consumer report (such as a reference check) will be obtained, including the nature and scope of the Report, and a statement informing the subject of the Report that additional information and a Summary of Rights is available if requested, as required by the FCRA.

v.   Client agrees to ensure full compliance with the FCRA and other related federal and state statutes and regulations as applicable to Client.

vi.   Client agrees to obtain the proper written authorization from the Consumer for each Report prior to requesting any Report and retain such written authorization.

vii.   Client is certifying by placing an order for a Report that, prior to placing each order, it provided the required disclosures to the Consumer and received the required authorizations from the Consumer in accordance with the FCRA, including but not limited to, 15 U.S.C. Sections 1681b(b)(2), 1681d(a), and 1681d(b). Client is certifying and agreeing, prior to placing each order for a Report, it has provided to the Consumer a clear and conspicuous disclosure in writing, consisting solely of the disclosure, that the Report may be obtained for employment purposes and, when required by the FCRA, a copy of Summary of Rights. Further, if a Report will be used for employment purposes, when placing an order for a Report, the Client is certifying: (1) that it will comply with the pre-adverse and adverse action notice requirements of the FCRA; and (2) that information from the consumer report will not be used in violation of any applicable domestic, international, federal, state or local law or regulation, including but not limited to, any applicable federal or state equal employment opportunity law or regulation. If Client forms an intent to take an adverse

action, based in whole or in part on any information contained in a Report obtained from SASS, Client must first provide proper additional notices to the Consumer, a copy of the Report obtained, and a Summary of Rights, as required by the FCRA or any other applicable domestic or international law. After providing these additional pre-adverse notices, Client agrees to provide the Consumer a reasonable opportunity to dispute information contained in a Report prior to Client making a final adverse hiring decision or taking any other adverse action based on any information contained in a Report. If Client then decides to make a final adverse action or decision, based in whole or in part on any information contained in a Report obtained from SASS, Client agrees to provide the Consumer with such additional notices as required under the FCRA and any other applicable domestic, international, federal, state and local law, including, but not limited to: (1) the name, address and telephone number of SASS; (2) a statement that SASS did not make the adverse decision and is not able to explain why the decision was made; (3) a statement setting forth the Consumer's right to obtain a free disclosure of the Report from SASS if the Consumer makes the request within 60 days; and (4) a statement setting forth the Consumer's right to dispute directly with SASS the accuracy or completeness of any information in the Report.   To the extent Client requests SASS to assist in any of such obligations, SASS shall do so solely at Client's direction and it shall be clear that SASS was not involved in any hiring decision. Notwithstanding the foregoing, all applicant inquiries as to why hiring decisions were made will be handled by Client.

viii.   Client agrees to take all measures to ensure that Reports will be requested, accessed and/or viewed only by Client's designated representatives; provided, however that Client may disclose information within any Report to the Consumer in accordance with applicable domestic and international law.

ix.   Client agrees to be responsible for the final verification of the Consumer's identity and for the security and dissemination of the customer number provided to Client.

x.   Client agrees to receive such communications as SASS deems necessary to ensure Client is made aware of changes in procedure or applicable domestic or international law;

xi.   Client agrees to ensure that its designated representatives shall not attempt to obtain any Report on themselves or on any other person, except in the exercise of their official duties.

xii.   Client agrees to not resell any Report or the information contained therein.

xiii.   Client agrees to notify TotalSource and SASS in writing within 10 days of any changes to company name, federal tax identification number, address, telephone number, contact person, sale or closure of business, merger, change in ownership of 50% or more of the stock or assets of Client, change in nature of Client's business that would in any way affect Client's right to request and receive Reports. Client understands that certain changes may require additional Client credentialing.

xiv.   Client certifies and agrees that it has read and understands its obligations under the FCRA and the penalties for requesting Reports under false pretenses or knowingly without a permissible purpose.

xv.   Client and SASS shall each comply at all times with its obligations under any data protection legislation applicable to it in any specific country (a "**Privacy Law**"), whether or not deriving from the General Data Protection Regulation (EU) 2016/679 ("GDPR"). In the event and to the extent of any conflict between the terms and conditions of this Section and applicable law, the provision(s) of applicable Privacy Law shall govern. In order for SASS to provide the Screening Services hereunder, Client shall provide SASS with personal information pertaining to Client employees and former employees as well as beneficiaries, agents consultants, contractors, vendors, candidates and other individuals who are personal information is needed in connection with the Screening Services ("**Data Subjects**"). "**Affiliate**" means, with respect to any entity, any other entity that it controls, is controlled by or under control with such first entity. For purposes of this Agreement, "control" (or variants of it) means the ability, whether directly or indirectly, to direct the management and action of an entity by means of ownership, contract or otherwise. Client represents and warrants that this personal information has been collected in accordance with applicable Privacy Laws and that it has the authority to provide such data to SASS for processing as contemplated by this Agreement. Each of Client and Client's Affiliates acts as the "Controller" (as defined in the GDPR), and each of SASS and its Affiliates and subcontractors providing Screening Services act as the "Processor" (as defined in the GDPR). In its capacity as the Controller and also on behalf of its Affiliates (each a Controller with respect to its employees), Client confirms that it is duly empowered to grant SASS and SASS' Affiliates and subcontractors, each as a Processor, the right to access and process Data Subjects' personal information for the purposes of this Agreement so that each such Client Affiliate shall be considered as having directly empowered SASS and each SASS Affiliate or subcontractor. Client and its Affiliates, as the respective Controller(s), shall determine the purposes of collecting, processing, and otherwise using personal information of the Data Subjects and SASS shall process such information only in accordance with the Sales Order or other pricing documentation and reasonable instructions received from Client from time to time in connection with the Screening Services. SASS shall at all times have implemented appropriate





**CLIENT SERVICES AGREEMENT**

**For Manhattan Country School Inc**

**PART 2**

operational, technical and organizational measures that are reasonably designed to protect personal information received from Client against accidental or unlawful destruction, alteration or unauthorized disclosure or access. Such measures shall ensure a level of security appropriate to the risks represented by the processing and the nature of the data to be protected having regard to the state of the art and the cost of implementation. In order to perform the Screening Services, personal information may be processed (including access and hosting) by SASS, its Affiliates or its subcontractors (collectively, **"Subprocessors"**) in countries that do not have laws that have been deemed adequate by the European Commission, including USA, Australia, Tunisia, the Philippines and India, provided SASS and its Affiliates have implemented reasonable safeguards to protect personal information with regard to all such processing, and provided further that: (a) SASS shall exercise appropriate due diligence in selecting Subprocessors and remain responsible for the quality of the Screening Services and the Subprocessors' compliance with the Privacy Laws applicable to data processors; (b) at Client's request, SASS shall provide Client with reasonable information as to (i) the identity of the Subprocessors and the applicable main data flows, and (ii) the actions and measures SASS has undertaken to comply and monitor compliance with the provisions of the Privacy Laws applicable to the Subprocessors; and (c) where required by Privacy Laws and in consultation with Client, SASS and Client shall take the necessary measures to allow lawful transfers of personal information to Subprocessors, including by using agreements containing standard contractual clauses or other documents or mechanisms approved by the relevant data protection authorities. SASS shall provide Client with all reasonable information necessary to allow Client to obtain any applicable data transfer authorization in connection with the Screening Services. Client, as Data Controller, shall cooperate with SASS to ensure a timely deployment of the documentation necessary to ensure the lawful processing of the personal information in all countries where the Screening Services are, or are requested to be, provided. SASS shall be entitled to suspend the relevant Screening Services and be excused from performance, if the adequate documentation for lawful data processing is not complete. In order to enable Client to fulfil its duties under the applicable Privacy Law, SASS will, within a reasonable time of receipt, notify Client of any complaint, inquiry or request (including access requests made pursuant to Privacy Laws) related to Client's or SASS' obligations under applicable Privacy Laws. SASS will provide Client, at Client cost, with reasonable cooperation and assistance and provide such information as may be reasonably required for the purpose of responding to Data Subjects or otherwise in order to enable Client to comply with its duties under Privacy Law in relation to such complaints, inquires and/or access requests.

**B. Additional Terms.**

i. SASS will abide by all of the provisions of the FCRA as they pertain to the obligations of SASS acting as a consumer reporting agency. The Screening Services are being provided solely at Client's request and instruction and Client acknowledges that neither TotalSource nor SASS are acting as an agent of Client nor making any hiring decisions for or on behalf of Client. Client acknowledges and agrees that ADP receives its information directly from certain furnishers ("Sources") Further, at times, Sources will require Client to complete specific documents ("Source Documents") prior to providing the end user, Client, with their services (ultimately, the Sources' information).

ii. SASS will follow reasonable quality assurance procedures with respect to obtaining Reports hereunder. However, Client recognizes that in formation within such Reports is obtained and managed by fallible sources and n either TotalSource nor SASS guarantees nor ensures the accuracy or depth of information provided.

iii. Prior to the commencement of the Screening Services, Client shall designate in writing to TotalSource the name or names of one or more persons who shall serve as SASS' designated contact for the Screening Services (the "Client Contact"). Client hereby represents and warrants to TotalSource and SASS that the Client Contact has, and shall at all times have, the requisite authority to (i) transmit information, directions and instructions on behalf of Client and (ii) issue, execute, grant, or provide any approvals (other than amendments to this Agreement), requests, notices, or other communications required or permitted under this Agreement or requested by TotalSource or SASS in connection with the Screening Services.

iv. Client will have access to the Reports for at least one year from the order date (unless such shorter period is otherwise communicated by ADP, TotalSource or SASS). Client is solely responsible for maintaining Reports sufficient to comply with Client's hiring and/or document retention policies. Neither ADP, TotalSource nor SASS will deliver copies of Reports to Client once such Reports are no longer available within the SASS background screening site or after termination of this Agreement, except as required by law.

v. Within 10 days following either TotalSource's or SASS' request, Client shall make available for review such records as either TotalSource or SASS deem necessary to determine that Client is in compliance with applicable laws and

regulations relating to the Screening Services ("Compliance Review"), which records may include, among other things, Consumer (as such term is defined below) and vendor consents, but shall not include Client's financial records. Client's cooperating with this Compliance Review is essential to continued provision of the Screening Services. If either (i) Client fails to cooperate with TotalSource and SASS in the conduct of a Compliance Review or (ii) if as part of a Compliance Review, TotalSource or SASS determine that Client has failed to comply with any applicable laws and regulations applicable to the Screening Services, TotalSource and/or SASS may, in its sole discretion and upon notice to Client, immediately suspend or terminate the Screening Services.

vi. The Screening Services may be performed by ADP affiliates located in other countries, and ADP may transfer or permit access to Client's Confidential Information (as such term is defined below) for the purposes of performing the Screening Services outside of the United States of America. Notwithstanding the foregoing, ADP will remain responsible for any unauthorized disclosure or access of Client's employees' or applicant's personal information by any ADP affiliate in the performance of any such Screening Services.

vii. Client and not TotalSource nor SASS will be responsible for (i) how it uses the Screening Services to comply with its legal and regulatory requirements and (ii) the consequences of any instructions that it gives to TotalSource and/or SASS, including as part of the initial set-up and implementation of the Screening Services, any samples of forms, whether provided in paper form or through a screening data collection tool, are samples only and Client is responsible for the content, provided TotalSource and SASS follows such instructions.

viii. The liability of ADP, TotalSource and SASS under this Agreement for damages under any circumstances for claims of any type or character arising from or related to the Screening Services will be limited in each instance to the amount of actual damages incurred by Client, provided however, that in no event will the aggregate liability hereunder of ADP, TotalSource and SASS during any calendar, as it relates to liability arising from or related to the Screening Services, exceed twelve (12) times the average monthly fee paid by Client for the Screening Services during such calendar year. In accordance with Part 2, Section 15.N, in no event will either party be responsible for special, indirect, incidental, consequential or other similar damages in connection with the Screening Services, even if it has been advised.

ix. Client acknowledges that ADP, TotalSource, SASS and their respective affiliates are relying on the representations and warranties made by Client, as set forth in this Part 2, Section 5, in order to provide Client with access to the Screening Services. The suppliers and vendors of ADP, TotalSource, and SASS who assist in providing Client with the Screening Services are intended to be third party beneficiaries, and as such, may also rely on the same representations and warranties made by Client and may also enforce the same disclaimers and limitations against Client as ADP, TotalSource, and SASS may under this Agreement.

**6. Time and Labor Management.**

**A. Use of Time and Labor Management.**

i. Client agrees that it will use Time and Labor Management and any related hardware in accordance with the terms of this Agreement and any online or shrink-wrap terms or license, or other accompanying documentation made available to Client by TotalSource, its affiliates, agents, or its licensors.

ii. Client will use Time and Labor Management solely for its own internal and proper business purposes and will not sell, lease, allow access to or otherwise provide Time and Labor Management or any portion thereof, to any third party, including any competitor of TotalSource and TotalSource's affiliates and licensors.

iii. Client may access Time and Labor Management through the Site (as such term is defined in Part 2, Section 10.B) in order to input information relating to the Worksite Employees' time and attendance and related information. TotalSource does not review the accuracy or completeness of any information submitted to the Site made by Client or the Worksite Employees. Client is solely responsible for the submission of information relating to the use of Time and Labor Management and for verifying the accuracy and completeness of such information submitted by Client or the Worksite Employees.

iv. Client will be responsible for any use Client may make of Time and Labor Management and any related hardware to assist Client in complying with applicable laws and regulations affecting Client's business.

v. Time and Labor Management is intended for use by Worksite Employees based in the United States and to permit the transmission of data from within the United States. Time and Labor Management may not be used or accessed from outside the United States or in any way that violates any applicable international, federal, state or local laws and/or regulations.

**B. Biometric Services.**

i. Definitions:

a) **"Biometric Data"** includes the information collected by timeclocks and software that use finger and/or hand scan technology, which





**CLIENT SERVICES AGREEMENT**

**For Manhattan Country School Inc**

**PART 2**

potentially may include Biometric Identifiers and Biometric Information.

b) **"Biometric Identifier"** means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry.

c) **"Biometric Information"** means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. **"Biometric Services"** means services provided by TotalSource to Client via the use of timeclocks and software in connection with TotalSource's provision of Time and Labor Management, to the extent such timeclocks or software collect, store or use Biometric Data.

d) **"Biometric User"** means Client's employees or independent contractors who use Biometric Services to record their attendance, hours worked or other work-related data.

ii. Biometric Services are optional. In certain jurisdictions, there are laws and regulations that govern the collection, use, and retention of biometric information, which potentially may apply to Client's use of Biometric Services. To the extent Client elects to use Biometric Services, Client agrees to comply with all such potentially applicable laws and regulations and acknowledges receipt of the ADP "Employer Toolkit; Biometric Time Clocks - What You Need to Know" which is available at https://www.adp.com/-/media/adp/no-cache/tos/adp-client-biometrics-toolkit.pdf. In the event Client is unwilling to comply with laws and regulations potentially applicable to Biometric Services, Client will be able to continue to use Time and Labor Management without Biometric Services. The following terms and conditions apply to Biometric Services to the extent Biometric Services are part of the scope of Services:

a) **Requirements for Receipt of Biometric Services.** Before any Client or Biometric User is permitted to use any Biometric Services in a jurisdiction where laws and regulations potentially govern such use, Client will comply with the following requirements, in addition to any other requirements imposed by potentially applicable law (to the extent there is a conflict between the requirements below and the requirements of potentially applicable law, Client will comply with potentially applicable law):

1. **Client Biometric Information Policy.** Client will implement, distribute and make available to the public, a written policy establishing Client's policy with respect to the use of Biometric Data. Such policy will include:
   A. a retention schedule and guidelines for permanently destroying Biometric Data;
   B. a commitment to destroy Biometric Data when the initial purpose for collecting or obtaining such Biometric Data has been satisfied or within 3 years of the individual's last interaction with Client, whichever occurs first; and
   C. any additional requirements as required by potentially applicable law.

2. **Biometric User Notice and Consent.** Client will provide notice to and procure and retain appropriate consents or releases from Biometric Users in the manner and to extent the same are required by potentially applicable law, including:

3. **Retention and Purging of Biometric Data.** Client will work with TotalSource to ensure that Biometric Data is retained and purged in accordance with potentially applicable law. To the extent necessary for the purging or deletion of such Biometric Data, Client agrees to provide timely notification to TotalSource of the termination of the employment, or the satisfaction of the purpose for which Biometric Data was collected with respect to any given Biometric User. TotalSource is not responsible for Client's failure to provide timely notification of the termination of the employment, or the satisfaction of the purpose for which Biometric Data was collected with respect to any given Biometric User.

4. **Storage of Biometric Data in Timedocks.** Client agrees that it shall use a reasonable standard of care consistent with potentially applicable law to store, transmit and protect from disclosure any Biometric Data. Such storage, transmission, and protection from disclosure shall be performed in a manner that is the same as or more protective than the manner in which Client stores, transmits and protects from disclosure other confidential and sensitive information,

such as genetic markers, genetic testing information, account numbers, PINs, driver's license numbers and social security numbers.

b) **Third Party Beneficiary:** Notwithstanding anything to the contrary in the Agreement, Client agrees that TotalSource and licensor of any applicable Biometric Services (and their respective successors and assigns) are third party beneficiaries of this Agreement solely as it relates to Biometric Services.

c) **Additional Termination Provisions for Biometric Services.** If TotalSource determines that Client has failed to comply with any potentially applicable laws and regulations applicable to the Biometric Services, TotalSource may, in its sole discretion and upon notice to Client, immediately suspend or terminate the Biometric Services.

**C.   Pricing; Taxes**

i.   The fees and costs for Time and Labor Management are provided in the Pricing Addendum and shall not be adjusted by TotalSource during the Initial Term. Following the Initial Term, TotalSource reserves the right to adjust such fees and costs in accordance with Part 2, Section 2A.

ii.   In addition to the fees and costs for Time and Labor Management, Client will be invoiced for any applicable taxes (e.g., sales tax).

**D.   Limitation of Liability.**   The liability of TotalSource under this Agreement for damages under any circumstances for claims of any type or character arising from or related to Time and Labor Management (including, use of any hardware) will be limited in each instance to the amount of actual damages incurred by Client, provided however, that in no event will the aggregate liability hereunder of TotalSource during any calendar year, as it relates to liability arising from or related to Time and Labor Management, exceed twelve (12) times the average monthly fee paid by Client for Time and Labor Management during such calendar year. As provided in Part 2, Section 15.N, in no event will TotalSource be liable or responsible for special, indirect, incidental, consequential or other similar damages in connection with the Time and Labor Management.

**7. Enhanced Talent Suite.** In the event Client elects to use Enhanced Talent Suite then in addition to the terms set forth in this Agreement, the provisions provided in this Part 2, Section 7 shall apply.

**A.   Use of Enhanced Talent Suite.**

i.   Client will use Enhanced Talent Suite solely for its own internal and proper business purposes and will not sell, lease, allow access to or otherwise provide Enhanced Talent Suite or any portion thereof, to any third party, including any competitor of TotalSource.

ii.   TotalSource will not be deemed to be involved with any evaluation of job candidates or compensation decisions in connection with Client's use of Enhanced Talent Suite.

iii.   Client is responsible for compliance with all state and federal laws applicable to its use of Talent Suite.

**B.   Pricing; Taxes**

i.   The fees and costs for Enhanced Talent Suite are provided in the Pricing Addendum and shall not be adjusted by TotalSource during the Initial Term. Following the Initial Term, TotalSource reserves the right to adjust such fees and costs in accordance with Part 2, Section 2A.

ii.   In addition to the fees and costs for Enhanced Talent Suite, Client will be invoiced for any applicable taxes (e.g., sales tax).

**C.   Limitation of Liability.**   The liability of TotalSource under this Agreement for damages under any circumstances for claims of any type or character arising from or related to Enhanced Talent Suite will be limited in each instance to the amount of actual damages incurred by Client, provided however, that in no event will the aggregate liability hereunder of TotalSource during any calendar year, as it relates to liability arising from or related to Enhanced Talent Suite, exceed twelve (12) times the average monthly fee paid by Client for Talent Suite during such calendar year. As provided in Part 2, Section 15.N, in no event will TotalSource be liable or responsible for special, indirect, incidental, consequential or other similar damages in connection with the Enhanced Talent Suite.

**8.   Application Programming Interface.** In the event Client elects to use API then in addition to the terms set forth in this Agreement, the provisions provided in this Part 2, Section 8 shall apply.

**A.   Use of API.**

i.   For Client to be eligible to use API, Client must have developer resources who are familiar with HTTP, REST, JSON and OAuth and who can utilize the API(s) once made available to Client. Further, Client must provide certificate signing request to TotalSource and create middleware utilizing TotalSource's custom API access.

ii.   Client will use the API(s) to access its information only.

iii.   Client is only authorized to access the API(s) provided to Client in connection with this Agreement.





**CLIENT SERVICES AGREEMENT**

**For Manhattan Country School Inc**

**PART 2**

---

iv. Client agrees that it will not (a) use the API(s) to transmit spam or other unsolicited email; (b) take any action that may impose an unreasonable or disproportionately large load on the TotalSource infrastructure, as determined by TotalSource; or (c) use the API(s) in any way that threatens the integrity, performance or reliability of the TotalSource services or TotalSource infrastructure.

v. TotalSource may limit the number of requests that Client can make to the ADP API Gateway to protect its system or to enforce reasonable limits on Client's use of the API(s).

vi. Specific throttling limits may be imposed and modified from time to time by TotalSource.

**B.** Limitation of Liability. The liability of TotalSource under this Agreement for damages under any circumstances for claims of any type or character arising from or related to API will be limited in each instance to the amount of actual damages incurred by Client, provided however, that in no event will the aggregate liability hereunder of TotalSource exceed the fee paid by Client for API during the three (3) month prior to the time at which the damages arose. As provided in Part 2, Section 15.N, in no event will TotalSource be liable or responsible for special, indirect, incidental, consequential or other similar damages in connection with the Enhanced Talent Suite.

**9. CONFIDENTIALITY.**
The parties agree that each will treat as confidential, proprietary and trade secret any information identified by the other as confidential, including all Client information and data and Worksite Employee information ("Confidential Information"). The parties will also cause their employees, officers, directors, owners, advisors, agents and affiliates that receive Confidential Information to comply with this confidentiality provision and applicable federal, state and local information security and privacy laws. Notwithstanding the foregoing, the receiving party may disclose Confidential Information of the disclosing party to the extent necessary to comply with any law, rule, regulation or ruling applicable to it; as appropriate to respond to any summons, court order or subpoena or in connection with any litigation; and to its attorneys, accountants, and other representatives with a need-to-know, provided that the disclosing party will cause the third party to comply with the confidentiality obligations contained in this Agreement. The parties agree that this Agreement and all TotalSource materials (including all TotalSource Products, as defined below, and any sales proposals) used to perform the duties of this Agreement are Confidential Information. Each party agrees to implement and maintain commercially reasonable measures and policies to physically and electronically protect Confidential Information. Upon termination of this Agreement, TotalSource and Client agree to promptly return Confidential Information and intellectual property of the other. Notwithstanding the foregoing, TotalSource may retain information for regulatory purposes or in back-up files, provided that TotalSource's confidentiality obligations hereunder continue to apply. Client agrees that TotalSource may use Client's and/or Client's Worksite Employees' and participants' information for purposes other than performance of the Services, but only in an aggregated, anonymized form, such that neither Client nor Client's Worksite Employees or participants may be identified. Client further agrees that it shall have no ownership interest in the foregoing aggregated, anonymized data. Confidential Information does not include information in the public domain. The parties specifically acknowledge that money damages alone may not be an adequate remedy for any damage suffered as a result of a breach of this provision and, therefore, an injunction or similar relief in law or equity may be appropriate to enforce this provision. The obligations of this Section shall survive for a period of two (2) years from the effective date of termination of this Agreement.

**10. PROPRIETARY INFORMATION AND INTELLECTUAL PROPERTY.**
  **A. Client's Intellectual Property; Content.**
  i. The parties acknowledge that Client is the owner of intellectual property created by Worksite Employees during the term of this Agreement relating to Client's business. Client, as owner of the intellectual property, is solely responsible for ensuring its intellectual property is protected and for the payment of any associated costs and fees. TotalSource is not responsible for, and will have no liability for, any costs, fees, damages, or losses relating to Client's intellectual property or any failure by Client to protect or exploit Client's intellectual property.
  ii. "Client Content" shall mean (i) all payroll, human resource and similar information provided by Client or its agents or Worksite Employees, including transactional information, (ii) Client's trademarks, trade names, service marks, logos and designs and (iii) any other information or materials provided by Client, regardless of form (e.g., images, graphics, text, etc.). The following provisions shall apply with respect to Client Content:
    a. Client shall be solely responsible for updating and maintaining the completeness and accuracy of all Client Content.
    b. Client shall be responsible for obtaining all required rights and licenses to use and display all Client Content in connection with the Services. Client

hereby grants and represents that it has the right to grant to TotalSource a non-exclusive, non-transferable license to use, edit, modify, adapt, translate, exhibit, publish, reproduce, copy (including backup copies) and display the Client Content as reasonably necessary to provide its Services.

c. Client and the Worksite Employees shall not include or provide to TotalSource for inclusion in any website provided by TotalSource (including, the TotalSource Front End Payroll Processing Platform a/k/a My TotalSource) any Client Content which is obscene, offensive, inappropriate, threatening, malicious, which violates any applicable law or regulation or any contract, privacy or other third party right or which otherwise exposes TotalSource to civil or criminal liability. TotalSource reserves the right to exclude or immediately remove from any website it provides Client access to any Client Content which it determines in its sole discretion violates the previous sentence, provided that TotalSource has no obligation to review or monitor the Client Content.

d. Client shall only provide TotalSource with Client Content that is required to perform the Services. To the extent Client elects to provide TotalSource with Client Content beyond that which is required to perform the Services, Client will be solely responsible for the collection and processing of such data.

**B. TotalSource's Intellectual Property.** All TotalSource Products, as defined below, licensed or provided to Client, are the licensed and/or owned property of, and embody the proprietary trade secret technology of, TotalSource, its parent company, its affiliates and/or its licensor(s). The TotalSource Products are protected by copyright laws, international copyright treaties, as well as any Intellectual Property Rights TotalSource may have, including those that prohibit the unauthorized use and copying of any TotalSource Products. "Intellectual Property Rights" means all (i) trademarks, service marks and names, including all trademark and service mark registrations; (ii) copyrights, copyright registrations and copyright applications; (iii) patent rights, including issued patents, applications, divisions, continuations, continuations-in-part, reissues, patents of additions, utility models and inventors' certificates; (iv) trade secrets, proprietary information, know-how, processes, inventions, inventor's notes, drawings and designs; (v) domain names, and (vi) goodwill associated with any of the foregoing. Client receives no rights to any TotalSource Products or any intellectual property of TotalSource, its parent company, its affiliates or its licensors, except as expressly stated herein. For purposes of this Agreement, "TotalSource Products" is defined as all computer programs, software, hardware, including time clocks, P.C. entry systems, and related documentation, such as tutorials and training manuals (whether online or in-person training), made available to Client by TotalSource, ADP, Inc, their affiliates or their licensor(s). Under this Agreement, TotalSource's license to Client for use of the TotalSource Products is a personal, non-exclusive, non-transferable license for the term of this Agreement to any application program included in the TotalSource Products (the "Application Programs") provided that it is only used for Client's business, only for the term of this Agreement, and only for the purposes of this Agreement. At no additional cost unless otherwise indicated in this Agreement or any attachments, and subject to the license described in this Section, TotalSource will provide Client with improvements, enhancements, modifications, and updates to the Application Programs if and as they are made generally available by TotalSource. Client agrees to use the current release of the TotalSource Products on the hardware indicated by TotalSource. Client agrees not to make any alteration, change, or modification to any of the TotalSource Products or Application Programs. Client agrees not to recompile, decompile, disassemble, reverse engineer, or make or distribute any other form of, or any derivative work, related to, the TotalSource Products or Application Programs. Client may make a single archival copy of the TotalSource Products for back-up purposes only, provided that TotalSource's copyright and other intellectual property rights are noticed.

**11. INFORMATION SECURITY; DATA ACCESS; PRIVACY.**
  **A. Information Security.** TotalSource and its parent company, ADP, Inc, maintain information security and safeguarding policies and employ commercially reasonable storage (including backup, archive and redundant data storage, on-site and off-site) and reasonable precautions to prevent the disclosure to an unauthorized third party, loss or alteration of Client's information, data and/or Worksite Employee information in TotalSource's possession, but TotalSource does not undertake to guarantee against any such loss or alteration. In the event that Client requests that TotalSource provide any Client or Worksite Employee or plan participant information to any third party or to any non-U.S. Client location, Client represents that it has acquired any consents or provided any notices required to transfer such content or information and that such transfer does not violate any applicable international, federal, state or local laws and/or regulations. TotalSource reserves the right to request additional consents or documentation regarding any release of Client or Worksite Employee information to a third party or to any non-U.S. Client location.
  **B. Data Access, Transmissions, and Information Security Breaches.** Certain TotalSource Products and Services may be provided through and accessed by Client and Worksite Employees through the Internet at a website provided by TotalSource (including, without limitation, the TotalSource Front End Payroll Processing Platform),





**CLIENT SERVICES AGREEMENT**

**For Manhattan Country School Inc**

**PART 2**

including those hosted by TotalSource on behalf of Client ("Site"). To the extent any Services are provided through the Internet, such Services are referred to as "Internet Professional Employer Services." Client acknowledges that TotalSource is not responsible for information submitted by Client or Worksite Employees through the Site and absolves TotalSource of any liability for any claims arising from Client or Worksite Employee information submitted through the Site. Client agrees to take commercially reasonable precautions to maintain the privacy of usernames and passwords for any Internet Professional Employer Services. In addition, Client acknowledges that security of transmissions over the Internet cannot be guaranteed. TotalSource is not responsible for (i) Client's or Worksite Employees' access to the Internet; (ii) interception or interruptions of communications through the Internet; or (iii) changes or losses of data through the Internet. Each party will be responsible for complying with all requirements of applicable law or regulation regarding information security including information security breaches involving Client's information, data files and Worksite Employees' information that is stored on the computer systems of such party or its affiliates or vendors.

**C.  Links to Third Party Sites.** The Site(s) may contain links to other Internet sites.  Links to and from the Site to other third party sites do not constitute an endorsement by TotalSource, ADP, Inc or any of their subsidiaries or affiliates of such third party sites or the acceptance of responsibility for the content on such sites.

**D.  Privacy.** TotalSource and Client agree to abide by all applicable federal, state and local privacy laws with respect to information regarding Worksite Employees and information and data of each other, which is subject to such privacy laws, including information not deemed to be Confidential Information.

**12. INDEMNIFICATION**

**A.  General Provisions.** The parties agree that the indemnification provisions contained in this Section apply to claims, expenses (including cost of investigation, court costs and reasonable attorneys' fees), or liabilities for which one of the parties is solely liable and/or for which the parties are both liable. In the event one party pays funds in connection with a claim, expense, or liability in excess of its obligation (" Paying Party"), such obligation being determined by the parties' written agreement or by a court's adjudication or other legally binding decision, the other party will indemnify and promptly pay the Paying Party for the excess amount. Further, if one party intends to make a settlement offer on a claim or lawsuit for which it also intends to seek indemnification from the other party, that party agrees to provide the other party with at least  ten (10) business days' written notice prior to making such offer. In accordance with Part 2, Section 15.N, neither party will be liable to the other party for special, incidental, consequential, or punitive damages. Each party 's indemnification provision survives the termination or expiration of this Agreement.

**B.  TotalSource's Indemnification.** TotalSource agrees to indemnify, protect, defend, release, and hold harmless Client, its parent(s), subsidiaries, affiliates, directors, officers, and agents from and against any and all liability, expenses, losses, and claims for damages arising from or in connection with: (i) any actions or inactions of Worksite Employees, TotalSource Corporate Employees, TotalSource officers, directors, agents or independent contractors, in each case, while under TotalSource's direction, supervision, or control; (ii) TotalSource's breach of this Agreement; or (iii) TotalSource's negligent, fraudulent, willful, or reckless performance or non-performance of any of its responsibilities described in this Agreement.

**C.  Client's Indemnification.** Client agrees to indemnify, protect, defend, release, and hold harmless TotalSource, its parents, subsidiaries, affiliates, directors, officers, benefit plans and agents from and against any and all liability, expenses, losses, and claims for damages arising from or in connection with: (i) any actions or inactions of Worksite Employees, Client's officers, SEI's, directors, agents, or independent contractors, in each case, while under Client's direction, supervision, or control; (ii) Client's breach of this Agreement; or (iii) Client's negligent, fraudulent, willful, or reckless performance or non-performance of any of the responsibilities described in this Agreement.

**13. TERMINATION; DEFAULT; REMEDIES UPON DEFAULT.**

**A.  Termination; Default.** Client or TotalSource may terminate this Agreement at any time, including during the Initial Term, for any reason upon at least thirty (30) days prior written notice.  Either party may terminate this Agreement immediately and without prior notice for Cause, as defined below. Cause as it relates to the right of either party to terminate this Agreement immediately and without prior notice includes the following: (i) the other party's material violation of law; (ii) the other party 's material breach of this Agreement; or (iii) the other party filing for relief under the Bankruptcy Code, seeking the appointment of a receiver or trustee, or dissolving the entity. Cause as it relates solely to the right of TotalSource to terminate this Agreement, immediately and without prior notice to Client, includes the following: (i) Client's non-payment of any amount due to TotalSource; (ii) Client's material adverse change in financial position or operations; (iii) Client's inability to pay debts as they become due in the ordinary course of business; (iv) Client's assignment of Worksite Employees to operations which contain a workers' compensation code different from that disclosed to TotalSource prior to the

execution of this Agreement without TotalSource's prior consent; (v) TotalSource receives notification from the bank from which TotalSource debits Client's account that such bank is no longer willing, for any reason, to originate debits and credits;

(vi) Client's termination of its authorization to allow TotalSource to debit Client's account; or (vii) failure of Client to pay the EPLI deductibles (retention). The effective date of termination of this Agreement shall be the last day of the last payroll period for which TotalSource received full payment from Client in the event TotalSource terminates this Agreement for any of the following reasons: (i) Client's non-payment of any amount due to TotalSource, including receipt of full payment as set forth in Section 2 herein; (ii) Client's material adverse change in financial position or operations; or (iii) Client's inability to pay debts as they become due in the ordinary course of business.  Client understands that failure to give the required notice of termination is a breach of this Agreement and Client is responsible to pay TotalSource the Service Fee that would have been due to TotalSource for the number of days remaining in the notice period.

**B.  Remedies.** Upon termination of this Agreement, both parties have all rights and remedies available under law, whether in law or in equity. Upon either parties' notice to terminate this Agreement and without further notice or demand to Client, TotalSource may: (i) accelerate all obligations, together with all accrued, unpaid charges, so that they are immediately due and payable and may be collected immediately regardless of the due date; and (ii) set off and deduct any amount due from any account or deposit that Client may have with TotalSource or other monies to which TotalSource may be entitled from Client (including a letter of credit). Termination of this Agreement shall not relieve Client of its obligations, including its payment obligation to TotalSource.

**14. PROFESSIONAL EMPLOYER SERVICES POST-TERMINATION.**

Upon the effective date of termination of this Agreement, all Services will cease and the CPEO relationship between TotalSource, Client and Worksite Employees will end. However, TotalSource will cease to be an employer of the Worksite Employees. TotalSource will cause all insurance policies and/or endorsements covering Client and Worksite Employees, including workers' compensation insurance, to terminate as of the effective date of termination except that health insurance will continue to the end of the month of termination if Client has paid the benefits invoice for that month. On the effective date of termination of this Agreement, Client becomes immediately responsible for all employer obligations including payroll, workers' compensation insurance, accrued vacation, sick leave, and employee benefits and TotalSource will provide Client with access to the information necessary to resume full employer responsibility, but only to the extent in which such information is in TotalSource's possession and control. Except as required by state law, TotalSource is not obligated to provide access to the foregoing information if the termination of this Agreement is due to Client's non-payment. Client agrees to notify the former Worksite Employees in writing about the termination of this Agreement and its effect, including the change in employment status and the fact that the Worksite Employees are no longer covered by TotalSource insurance.

**15. MISCELLANEOUS.**

**A.  Assignment; Acquisition by Client.** Neither party may assign its rights or obligations under this Agreement without the prior written consent of the other party. However, TotalSource may assign its rights and obligations under this Agreement to an affiliate of TotalSource or ADP, Inc without the prior written notice or consent of Client, provided that no such assignment will relieve ADP TotalSource, Inc. of its obligations under this Agreement. If Client merges with another entity, is acquired by another company, or undergoes a change of ownership or control, such action shall constitute an assignment and Client shall provide prior notice to TotalSource. In such case, TotalSource may terminate this Agreement immediately or may continue providing Services pursuant to this Agreement. In its determination of whether to continue providing Services, TotalSource may require the new entity (ies), as applicable, to undergo an evaluation process, including creditworthiness. If TotalSource decides to continue to provide its Services to Client under the new corporate structure of Client, TotalSource may require the new entity (ies), as applicable, to sign a new Client Services Agreement and/or guarantee payment to TotalSource.  In the event Client determines not to continue its relationship with TotalSource, notwithstanding anything in this Agreement to the contrary, Client will continue to be obligated under Part 2, Section 13 to provide TotalSource with the proper notice of its intent to terminate.

**B.  Entire Agreement; Modification.** Client has not been induced to enter into this Agreement by any representation or warranty not set forth in this Agreement. This Agreement and all Exhibits and Addenda contain the entire agreement of the parties with respect to its subject matter and supersede all prior writings. This Agreement shall not be modified except by a writing signed by TotalSource and Client.

**C.  Third-Party Beneficiaries.** With respect to the Services and TotalSource Products, TotalSource suppliers, vendors and referral partners may enforce the same disclaimers and limitations against Client as TotalSource may under this Agreement.  Other than TotalSource suppliers, vendors, and referral partners who are intended third party beneficiaries of this Agreement, nothing in this Agreement creates, or will be deemed to





## CLIENT SERVICES AGREEMENT

### For Manhattan Country School Inc

### PART 2

create, third party beneficiaries of or under this Agreement. TotalSource has no obligation to any third party by virtue of this Agreement.

**D.   Force Majeure.** Excluding any payment obligations to TotalSource as provided hereunder, any party hereto will be excused from performance under this Agreement for any period of time that the party is prevented from performing its obligations hereunder as a result of an act of God, war, utility or communication failures, or other cause beyond the party's reasonable control. Both parties will use reasonable efforts to mitigate the effect of a force majeure event.

**E.   Waiver.** The failure of either party at any time to enforce any right or remedy available to it under this Agreement or otherwise with respect to any breach of failure by the other party shall not be construed to be a waiver of such right or remedy with respect to any other breach or failure by the other party.

**F.   Severability.** If any of the provisions of this Agreement shall be invalid or unenforceable, such invalidity or unenforceability shall not invalidate or render unenforceable the entire Agreement, but rather the entire Agreement shall be construed as if not containing the particular invalid or unenforceable provision or provisions, and the rights and obligations of Client and TotalSource shall be construed and enforced accordingly.

**G.   Governing Law; Waiver of Jury Trial.** This Agreement is governed by the laws of the State of New York without giving effect to its conflict of law provisions. The parties agree to waive all rights or claims to a trial by jury.

**H.   Use of Agents.** TotalSource may designate any agent or subcontractor, without notice to, or the consent of, Client, to perform such tasks and functions to complete any Services covered under this Agreement. However, nothing in the preceding sentence shall relieve TotalSource from responsibility for performance of its duties under the terms of this Agreement.

**I.   Notices.** All communications or notices required to be sent or given under this Agreement will be in writing and will be effective immediately if delivered in person or upon confirmation of signature recording delivery by overnight courier. In addition to the foregoing, TotalSource may also send all communications or notices required to be sent or given under this Agreement to Client by way of electronic mail ("E-mail"). A copy of all notices required under this Agreement must be sent to ADP TotalSource, Inc. at 10200 Sunset Drive, Miami, Florida 33173 Attention: Vice President – Assistant General Counsel. Notices required to be sent to Client under this Agreement that are not sent by E-mail will be sent to the address for Client indicated in the signature block of this Agreement. In the event no address for Client is indicated, the address of Client at which the professional employer services are delivered by TotalSource may be substituted.

**J.   Non-Hire.** Client agrees not to solicit or hire for employment, directly or indirectly, any TotalSource Corporate Employee involved in the provision of services hereunder during the term of this Agreement and for a period of one (1) year subsequent to the termination or expiration of this Agreement. TotalSource agrees not to solicit for employment, directly or indirectly, Client's Worksite Employees to become TotalSource Corporate Employees during the term of this Agreement and for a period of one (1) year subsequent to the termination or expiration of this Agreement (other than general solicitations).

**K.   Scope of Authority.** The parties acknowledge that neither is an agent of the other. Each agrees that it will not hold itself out as an agent of the other, directly or indirectly. Neither party is authorized to bind the other in any fashion (either through representations or actions) unless such act is specifically authorized and ratified by the other in writing. Client acknowledges that TotalSource may act on the behalf of Client as contemplated by this Agreement.

**L.   Legal Entity.** Each party represents that it is a legal entity authorized to conduct business in the states where this Agreement will be performed and that the officers who sign on behalf of such party are duly authorized to enter into this Agreement.

**M.   Attorney's Fees and Costs.** In the event of any litigation arising out of or related to this Agreement, the prevailing party shall be entitled to an award of reasonable attorneys' fees and costs incurred at all trial and appellate levels.

**N.   NO CONSEQUENTIAL DAMAGES.** NEITHER TOTALSOURCE NOR CLIENT WILL BE RESPONSIBLE FOR SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE, CONSEQUENTIAL OR OTHER SIMILAR DAMAGES (INCLUDING WITHOUT LIMITATION, ANY LOST PROFITS OR DAMAGES FOR BUSINESS INTERRUPTION OR LOSS OF INFORMATION) THAT THE OTHER PARTY MAY INCUR OR EXPERIENCE IN CONNECTION WITH THIS AGREEMENT OR THE SERVICES OR TOTALSOURCE PRODUCTS, HOWEVER CAUSED AND UNDER WHATEVER THEORY OF LIABILITY, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**O.   Survival.** No termination or expiration of this Agreement affects or impairs any obligations, duties, indemnities, and liabilities of either party that, by their nature, continue beyond termination, or the rights of TotalSource relating to any unpaid obligations. Such obligations, duties, indemnities, and liabilities shall not terminate or expire, but rather survive such termination or expiration and continue in full force and effect until the longer of (i) such time as all the obligations have been paid in full or (ii) such time as is expressly provided in this Agreement.

**P.   Rules of Construction.** In this Agreement, unless the context requires otherwise, the words "including," "include", "includes", or "included" shall be deemed to be followed by the words "without limitation".





**CLIENT SERVICES AGREEMENT**

**For Manhattan Country School Inc**

**PART 3**

This Federal and State Addendum applies to the extent Client has, or may have in the future, Worksite Employees in the applicable jurisdictions listed below. The language indicated under each jurisdiction below is specifically required by law to be included in this Agreement and shall only apply with respect to Worksite Employees within the applicable jurisdiction. To the extent provisions in this Addendum conflict another provision in this Agreement, the applicable language in this Addendum shall control for the applicable jurisdiction.

**UNITED STATES FEDERAL LAW**
TotalSource agrees to be treated as a CPEO for purposes of 26 U.S.C. § 3511 with respect to the Worksite Employees and TotalSource shall: (a) assume responsibility for payment of wages to the Worksite Employees, without regard to the receipt or adequacy of payment from Client for such services, (b) assume responsibility for reporting, withholding, and paying any applicable taxes under subtitle C of the Code, with respect to Worksite Employees' wages, without regard to the receipt or adequacy of payment from Client for such services, (c) assume responsibility for any employee benefits which this Agreement may require TotalSource to provide, without regard to the receipt or adequacy of payment from Client for such benefits, (d) assume responsibility for recruiting, hiring, and firing workers in addition to Client's responsibility for recruiting, hiring, and firing workers, and (e) maintain employee records relating to Worksite Employees. TotalSource will also (i) notify Client if this Agreement is transferred to another person (or if another person will report, withhold, or pay, under such other person's Employer Identification Number ("EIN") any applicable federal employment taxes with respect to the wages of any individuals covered by this Agreement and provide Client with the name and EIN of such other person; (ii) notify Client if TotalSource's CPEO certification is suspended or revoked as described in 26 CFR § 301.7705-2T(n); (iii) notify Client that if any employees covered under this Agreement are not or cease to be "work site employees" (as defined in the Code) because they perform services at a location at which the 85 percent threshold described in 26 CFR § 301.7705-1(b)(17) is not met then Client may also be liable for federal employment taxes imposed on remuneration remitted by TotalSource to such employees, as described in 26 CFR § 31.3511-1(a)(3); and (iv) provide Client with the information necessary for Client to claim the following credits: (A) credit for increasing research activity (26 U.S.C. § 41); (B) Indian employment credit (26 U.S.C. § 45A); (C) credit for portion of employer social security taxes paid with respect to employee cash tips (26 U.S.C. § 45B); (D) clinical testing expenses for certain drugs for rare diseases or conditions (26 U.S.C. § 45C); (E) employee health insurance expenses for small employers (26 U.S.C. § 45R); (F) work opportunity credit (26 U.S.C. § 51); (G) empowerment zone employment credit (26 U.S.C. § 1396); and (H) any other credits specified by the Commissioner of the Internal Revenue Service. Such information may include applicant/employee data and characteristics and payroll data. Nothing contained under this heading United States Federal Law shall be construed to create any inference with respect to the determination of who is an employee or employer (1) for Federal tax purposes (other than Federal employment tax purposes) or (2) for purposes of any other provision of law. Remuneration paid by TotalSource to any SEI is not covered by 26 U.S.C. § 3511.

**ALABAMA**
TotalSource will maintain authority to resolve and decide Worksite Employee grievances and disputes, subject to the terms of any collective bargaining agreement which may exist. The parties agree that the term "Worksite Employee" includes officers, directors, shareholders, partners and managers of Client that are participating in the CPEO relationship. TotalSource assumes responsibility to pay wages to Worksite Employees, withhold, collect, report and remit payroll-related and unemployment taxes to the extent that Client has funded the obligations. TotalSource and Client both have the right to hire, terminate, and discipline the Worksite Employees subject to the terms of any collective bargaining agreement which may exist. TotalSource shall maintain and provide to Client at Client's request, at the time of termination of the Agreement, records regarding loss experience related to workers' compensation coverage provided by TotalSource.

**ARIZONA**
TotalSource shall maintain and provide to Client at Client's request at the time of termination of the Agreement, records regarding loss experience related to workers' compensation coverage provided by TotalSource.

**ARKANSAS**
TotalSource will maintain records regarding the premium and loss experience related to workers' compensation insurance provided to Worksite Employees. TotalSource shall maintain and provide to Client at Client's request at the time of termination of the Agreement, records regarding loss experience related to workers' compensation coverage provided by TotalSource. As provided by Arkansas Professional Employer Organization Recognition and Licensing Act, Section 23-92-411(a)(3), Client shall ensure, with the assistance of a licensed insurance producer, that any subcontractor of Client has workers' compensation coverage as required by law.

**CALIFORNIA**
Client hereby retains and/or assumes all civil legal responsibility and civil liability under Section 2810.3 of the Labor Code for the payment of wages to Worksite Employees, under Section 6300 of the Labor Code - the California Safety and Health Act, and for the failure to secure workers' compensation coverage. TotalSource has the obligation pursuant to Rule 4 of Section V of the California Workers' Compensation Experience Rating Plan to provide workers' compensation coverage for all Worksite Employees. The workers' compensation

coverage provided to Client in accordance with the terms of this Agreement does not include coverage or defense for Serious and Willful Misconducts claims.

**DISTRICT OF COLUMBIA**
As of the Effective Date of the Agreement, should Client have any outstanding amounts owed to the District of Columbia's Department of Employment Services – Unemployment Compensation Office (DES), TotalSource agrees to remit to the DES Client's outstanding balance as evidenced by a Statement of Account. However, Client further acknowledges that it shall reimburse TotalSource for the total amount paid by TotalSource including, but not limited to, any owed contributions, administrative assessments, penalties and/or interest imposed by the DES against Client's UI account.

**FLORIDA**
Client understands that pursuant to Florida law, it may not enter into a professional employer organization (sometimes referred to as employee leasing) agreement with TotalSource if Client owes a current or prior professional employer organization any money pursuant to any service agreement which existed between the current or prior professional employer organization and Client, or if Client owes a current or prior insurer any premium for workers' compensation insurance. Client represents that it has met any and all prior premium and fee obligations with regard to workers' compensation premiums and professional employer organization payments. This representation is in addition to any representation contained in the Client Services Agreement. Under the penalty of perjury, I the undersigned to the Agreement, declare that I have read this provision and that the facts in it are true. In addition, I agree to the terms and conditions of this provision. TotalSource reserves a right of direction and control over leased employees assigned to Client's location. However, Client may retain such sufficient direction and control over the leased employees as is necessary to conduct its business, discharge any fiduciary responsibility it may have, or comply with any applicable licensure, regulatory, or statutory requirement of the Client. TotalSource also assumes full responsibility for payment of payroll taxes and collection of taxes from payroll on leased employees. TotalSource retains a right of direction and control over the management of safety, risk, and hazard control at the Worksite affecting the Worksite Employees, including responsibility for performing safety inspections of Client equipment and premises and for the promulgation and administration of employment and safety policies. TotalSource and its assigns may conduct an annual onsite physical examination of Client's Worksite. TotalSource assumes responsibility for the payment of wages to the leased employees without regard to payments by the Client. TotalSource retains the authority to hire, terminate, discipline and reassign the leased employees. However, Client may have the right to accept or cancel the assignment of any leased employee.

**GEORGIA**
In the proposal process and during the term of the Agreement, TotalSource and Client have and will continue to negotiate, as necessary, over matters of time, place, type of work, working conditions, quality and price of Services. TotalSource has the right to determine and set the rate of pay for the Worksite Employee whether or not through negotiations with Client.

**IDAHO**
TotalSource retains the authority to hire, terminate, discipline and reassign Worksite Employees. However, Client, if it accepts the responsibility for its action, may have the right to accept or cancel the assignment of any Worksite Employee. Upon the Effective Date of the Agreement, should Client have any outstanding amounts owed to the State's unemployment compensation agency, TotalSource agrees to remit to said agency Client's outstanding balance as evidenced by any applicable invoice or statement of account. However, Client further acknowledges that it shall reimburse TotalSource for the total amount paid by TotalSource including, but not limited to, any owed contributions, administrative assessments, penalties and/or interest imposed by the agency against Client's UI account.

**INDIANA**
TotalSource shall maintain and provide to Client at Client's request at the time of termination of the Agreement, records regarding loss experience related to workers' compensation coverage provided by TotalSource. TotalSource has the right to determine and set the rate of pay for the Worksite Employee whether or not through negotiations with Client. TotalSource assumes responsibilities for unemployment insurance coverage under both state and federal law on behalf of Client.

**KANSAS**
TotalSource and Client assume the responsibilities required by the provisions of section 1 through 11, and amendments thereto, of the State of Kansas Professional Employer Organization Registration Act ("Act"). In addition to Client's right to hire, discipline and terminate a Worksite Employee, TotalSource shall have a right to hire, discipline and terminate a Worksite Employee only as may be necessary to fulfill TotalSource's responsibilities under the provisions of the Act or this Agreement. TotalSource shall have the responsibility to pay wages to Worksite Employees, to withhold, collect, report and remit payroll-related and unemployment taxes and, to the extent TotalSource has assumed such responsibility in this Agreement, to make payments for employee benefits for Worksite Employees. Wages do not include any obligation between Client and a Worksite Employee for payments beyond, or in addition to, the Worksite Employee's salary, draw or regular rate of pay, such as bonuses commissions, severance pay, deferred compensation, profit sharing or vacation, sick or other paid time off, unless TotalSource has expressly agreed to assume liability for such payments in this Agreement.





**CLIENT SERVICES AGREEMENT**

**For Manhattan Country School Inc**

**PART 3**

**LOUISIANA**
Client retains control over its business enterprise and exercises direction and control over the Worksite Employees as to the manner and method of work done in furtherance of the Client's business, but authority and responsibility as to other employment matters, including but not limited to hiring, firing, discipline, and compensation, are allocated to and shall be between TotalSource and Client. This Agreement is executed between the parties subject to the provisions of sections 1741 through 1751, Louisiana Revised Statutes (Part XXV-E, The Louisiana Professional Employer Act) and sections 23:1761 through 23:1768, Louisiana Revised Statutes (Part XII, Professional Employer Organization). This Agreement is intended to be ongoing rather than temporary.

**MAINE**
Should Client have any complaints regarding TotalSource then Client may report such complaints to the Superintendent of Consumer Credit Protection.

**MARYLAND**
A professional employer organization is an employing unit which places all or part of a Client's employees on its payroll and by written agreement assigns or leases the workers to the Client. Upon the Effective Date of the Agreement, should Client have any outstanding amounts owed to the State's unemployment compensation agency, TotalSource agrees to remit to said agency Client's outstanding balance as evidenced by any applicable invoice or statement of account. However, Client further acknowledges that it shall reimburse TotalSource for the total amount paid by TotalSource including, but not limited to, any owed contributions, administrative assessments, penalties and/or interest imposed by the agency against Client's UI account.

**MASSACHUSETTS**
Both TotalSource and Client are employers of the Worksite Employees and intend for both TotalSource and Client to receive exclusive remedy protection under the Massachusetts General Laws. By contracting with TotalSource Client is fulfilling its obligation to obtain workers' compensation insurance for the Worksite Employees. TotalSource represents that it is in compliance with the applicable provisions of the Massachusetts Standards for the Protection of Personal Information of Residents of the Commonwealth (201 CMR 17.00) as of the effective date of such regulations.

**MICHIGAN**
Mortgage brokers and/or lenders retain the ability to direct and control the activities of a professional employer organization employee for purposes of their Licensing Act (Section 2(d) (i) and (ii)). TotalSource has the right to hire, promote, reassign, discipline and terminate Worksite Employees.

**MONTANA**
TotalSource assumes responsibility for payment of employee wages, workers' compensation premiums, payroll related taxes and employee benefits from its own accounts without regard to payments by the client company. TotalSource retains the authority to hire, terminate, discipline and reassign Worksite Employees and Client has the right to accept or cancel the assignment of a Worksite Employee. With respect to a worker supplied to Client by TotalSource, Client shares joint and several liability for any wages, workers' compensation premiums, payroll related taxes and for any benefits left unpaid by TotalSource, and that in the event that TotalSource's license is suspended or revoked, this liability is retroactive to Client. TotalSource assumes responsibility for the payments of workers' compensation premiums, and employee benefits from its own accounts without regard to payments by Client. Client is responsible for compliance with the Montana Safety Culture Act, Title 39, Chapter 71, part 15.

**NEBRASKA**
TotalSource and Client assume the responsibilities required by the Professional Employer Organization Act (sections 48-2701 to 48-2711 of the Nebraska Revised Statutes). Employer responsibilities for Worksite Employees, including those of hiring, firing and disciplining, are shared between TotalSource and Client. TotalSource shall have the right to hire, discipline and terminate a Worksite Employee as may be necessary to fulfill TotalSource's responsibilities under the Professional Employer Organization Act, any state regulations, and this Agreement. Client is liable for the payment of unpaid combined tax penalties and interest owed upon wages to Worksite Employees. Worksite Employees shall be considered employees of Client for purposes of Employment Security Law. Client shall not be relieved of its obligations for workers' compensation in the event TotalSource fails to obtain workers' compensation insurance for which it has assumed responsibility. This Agreement is intended to be ongoing rather than temporary.

**NEVADA**
TotalSource will place all of the regular full-time employees of Client on its payroll and, for a fee, lease them to Client company on a regular basis without any limitation on the duration of employment or lease to Client five (5) or more part-time or full-time employees or 10% or more of the total number of employees within a classification of risk. Coverage for workers' compensation does not take effect until the Effective Date of the Agreement. TotalSource will pay all premiums required by the workers' compensation policy, including without limitation, any adjustments or assessments, and will be entitled to any refunds of premiums. The loss experience of Client will continue to be reported in the name of the Client to the Commissioner of the Nevada Department of Business and Industry and will be available to subsequent insurers upon request. Upon request Client must provide TotalSource's workers' compensation insurer satisfactory evidence of workers' compensation coverage for Non-Worksite Employees.

**NEW HAMPSHIRE**
TotalSource is the rated employer for unemployment compensation purposes at the time Client enters into this Agreement. Upon request, Client must provide TotalSource's workers' compensation insurer satisfactory evidence, as determined by the insurer, of workers' compensation coverage for Non-Worksite Employees. Upon termination of the arrangement, Client shall return to its previous rate and account balance, if applicable, and shall assume a new wage base.

**NEW JERSEY**
TotalSource assumes responsibility for the payment of wages to each Worksite Employee without regard to payments by Client, except this requirement shall not affect the Client's obligations with respect to the payment of wages to Worksite Employees. TotalSource assumes responsibility for the payment of payroll taxes and the collection of taxes from payroll on each Worksite Employee. TotalSource retains the authority to reassign a Worksite Employee. No Worksite Employee shall be reassigned to another Client company without that Worksite Employee's consent and Client may have the right to accept or cancel the assignment of any Worksite Employee. TotalSource shall, except for newly established business entities, hire its initial employee complement from among employees of the Client at the time of execution of the Agreement at comparable terms and conditions of employment as are in existence at the Client's jobsite at the time of execution of the Agreement and as designated by the Client. Throughout the term of the Agreement, the Worksite Employees shall be considered employees of TotalSource and Client and upon the termination of the Agreement, the former Worksite Employees shall be considered employees of the Client. Clients with collective bargaining agreements in place shall continue to honor and abide by the terms of any applicable collective bargaining agreements, and upon expiration thereof, any obligations of Client to bargain in good faith in connection with such collective bargaining agreements shall not be affected in any manner by this Agreement. TotalSource and Client shall each retain a right of direction and control over management of safety, risk and hazard control at the work site or sites affecting each Worksite Employee including: responsibility for performing safety inspections of Client equipment and premises; responsibility for the promulgation and administration of employment and safety policies; and responsibility for the management of workers' compensation claims, the filings thereof, and procedures related thereto. Upon termination of the CSA, Client shall retain the experience balance, liabilities, and wage credits for the Client's employing unit account; Client's federal employer identification number (FEIN) shall become the primary FEIN on the employing unit's account.

**NEW YORK**
TotalSource assumes responsibility for the withholding and remittance of payroll related taxes and employee benefits for which TotalSource has contractually assumed responsibility from its own account. TotalSource expressly assumes the rights and responsibilities required by 31-922, Laws of New York which require a Professional Employer Organization's (PEO) contract to set forth the responsibilities and duties of the professional employer organization and of the client company; describe the type of services to be rendered by the professional employer organization and the respective rights and obligations of the professional employer organization and the client company; and that the professional employer organization reserves a right of direction and control over the Worksite Employees. TotalSource expressly agrees to co-employ Client's Worksite Employees. This Agreement is intended to be ongoing rather than temporary.

**NORTH CAROLINA**
TotalSource agrees not access or request from Client any confidential information belonging to a client of Client and TotalSource will implement policies to prevent such access or disclosures. Nothing in this Agreement shall be construed to require conduct that is contrary to North Carolina accountancy laws and rules. Employment responsibilities not allocated to TotalSource by Client or Section 58-89A-100 of the North Carolina Professional Employer Organization Act, remain with Client. Client retains a right of direction and control over the adoption of employment policies. Client understands that pursuant to North Carolina law, it may not enter into a professional employer organization (sometimes referred to as employee leasing) agreement with TotalSource if Client owes a current or prior professional employer organization any money pursuant to any service agreement which existed between the current or prior professional employer organization and Client, or if Client owes a current or prior insurer any premium for workers' compensation insurance. Client represents that it has met any and all prior premium and fee obligations with regard to workers' compensation premiums and professional employer organization payments. This representation is in addition to any representation contained in the Client Services Agreement. Under the penalty of perjury, I the undersigned, declare that I have read this provision and that the facts in it are true. In addition, I agree to the terms and conditions of this provision. Upon termination of the Agreement, if requested by Client, TotalSource will provide records regarding the loss experience related to workers' compensation insurance if provided to Worksite Employees pursuant to the Agreement. Employment responsibilities not allocated to TotalSource by this Agreement or Article 89A (the professional employer organization licensing statute) remain with the Client.




# CLIENT SERVICES AGREEMENT

## For Manhattan Country School Inc

### PART 3

**NORTH DAKOTA**
TotalSource has the right to hire, discipline, and terminate a Worksite Employee as may be necessary to fulfill its responsibilities under the Agreement.

**OHIO**
The Client Services Agreement may not terminate without cause prior to the one (1) year anniversary of the Effective Date of the Client Services Agreement. This Agreement is intended to be ongoing rather than temporary in nature and Worksite Employees are intended to be assigned to Client on a permanent basis.

**OKLAHOMA**
TotalSource shall make payments for employee benefits for covered Worksite Employees to the extent TotalSource has assumed responsibility in the Client Services Agreement. At termination, if requested, TotalSource will provide Client with records regarding the experience related to worker's compensation insurance provided to covered Worksite Employees.

**PENNSYLVANIA**
TotalSource and Client assume the responsibilities required by the State of Pennsylvania Professional Employer Organization Act ("Act"). Client shall be entitled to exercise all rights, and shall be obligated to perform all duties and responsibilities, otherwise applicable to an employer in an employment relationship. Unless otherwise expressly agreed to in this Agreement, Client shall retain the exclusive right to direct and control the Worksite Employees as necessary to conduct its business, to discharge its responsibilities or to comply with licensure requirements applicable to Client or the Worksite Employees. TotalSource shall be entitled to exercise only those rights, and obligated to perform only those duties and responsibilities, specifically required by the Act or set forth in this Agreement. The rights, duties and obligations of TotalSource as a co-employer with respect to any Worksite Employee shall be limited to those arising pursuant to this Agreement and the Act during the term of co-employment by TotalSource of the Worksite Employee. TotalSource shall have the responsibility to pay wages to Worksite Employees, to withhold, collect, report, and remit payroll-related taxes and unemployment taxes; and, to the extent TotalSource has assumed such responsibility, to make payments for employee benefits for the Worksite Employees. As used in this paragraph, the term "wages" does not include any obligation between Client and a Worksite Employee for payments beyond or in addition to the Worksite Employee's salary, draw or regular rate of pay, such as bonuses, commissions, severance pay, deferred compensation, profit sharing or vacation, sick or other paid time off pay, unless TotalSource has expressly agreed to assume liability for these payments in this Agreement. Nothing in the Act or in this Agreement shall relieve Client from compliance with the Commonwealth's wage and labors laws, including the act of May 13, 1915 (P.L.286, No.177), known as the Child Labor Law, the act of August 15, 1961 (P.L.987, No.442), known as the Pennsylvania Prevailing Wage Act, the act of July 14, 1961 (P.L.637, No.329), known as the Wage Payment and Collection Law, and the act of January 17, 1968 (P.L.11, No.5), known as The Minimum Wage Act of 1968. If Client is a health care facility as defined in section 2 of the act of October 9, 2008 (P.L.1376, No.102), known as the Prohibition of Excessive Overtime in Health Care Act, Client shall comply with that act. TotalSource shall not knowingly engage in or assist in the violation of the statutes referenced herein. TotalSource shall have a right to hire, discipline and terminate a Worksite Employee as necessary to fulfill its responsibilities under the Act and this Agreement.

**SOUTH CAROLINA**
TotalSource and Client agree that for the purposes of the South Carolina Code of Laws, Title 42, Workers' Compensation, the jurisdiction of the Client is the jurisdiction of TotalSource and its workers' compensation insurer. TotalSource agrees that TotalSource and its workers' compensation insurer are bound by and subject to the awards, judgments, or decrees rendered against them under the provisions of South Carolina Code of Laws, Title 42, Workers' Compensation. TotalSource and Client agree that insolvency, bankruptcy, or discharge in bankruptcy of TotalSource or Client does not relieve TotalSource, Client, and their respective workers' compensation insurers from payment of compensation for disability or death sustained by an employee during the life of a workers' compensation insurance policy. Notice to or acknowledgement of the occurrence of an injury on the part of Client is notice to or knowledge on the part of the licensee and its workers' compensation insurer. TotalSource assumes the responsibility to pay wages without regard to payments by Client. TotalSource reserves the right to reassign Worksite Employees. TotalSource retains a right of direction and control over the adoption of employment and safety policies and the management of workers' compensation claims, claim filings, and related procedures. TotalSource is in a co-employment relationship with Client and is licensed and regulated by the South Carolina Department of Consumer Affairs. Any questions or complaints regarding ADP TotalSource should be directed to the Department at P.O. Box 5757; Columbia, SC 29250-5757; www.consumer.sc.gov; 1-800-922-1594 or (803) 734-4200.

**SOUTH DAKOTA**
TotalSource assumes the responsibilities provided in §64:06:02:89 of the Administrative Rules of South Dakota, including the payment of wages, salaries, payroll taxes, payroll deductions, workers compensation costs, insurance premiums, welfare benefits, and retirement benefits, and preparing and filing necessary tax returns and other documents as required by state or federal law. Client represents that prior to entering into the Agreement, Client was the employer of its existing workforce. If the Agreement is terminated, TotalSource's employment of the Worksite Employees will also terminate. If a Worksite Employee

terminates with Client, the Worksite Employees employment with TotalSource will also terminate. Client retains primary control over the hiring, firing, wage rates, salary increases, training, directing the day-to-day activities of the Worksite Employees. TotalSource will not manage or direct the operation of Client's business.

**TENNESSEE**
TotalSource and Client assume the responsibilities required by the Tennessee Professional Employer Organization Act as provided in Title 62, Chapter 43 of the Tennessee Code Annotated. TotalSource assumes responsibility for the payment of wages, payroll related taxes and employee benefits from its own accounts without regard to payments by Client. TotalSource retains the authority to reassign Worksite Employees and Client has the right to accept or cancel the assignment of any Worksite Employee.

**TEXAS**
PURSUANT TO §91.032(C) OF THE TEXAS LABOR CODE, CLIENT IS SOLELY OBLIGATED TO PAY ANY WAGES FOR WHICH THE OBLIGATION TO PAY IS CREATED BY AN AGREEMENT, CONTRACT, PLAN, OR POLICY BETWEEN THE CLIENT COMPANY AND WORKSITE EMPLOYEE, AND THAT TOTALSOURCE HAS NOT CONTRACTED TO PAY. THIS DOES NOT HINDER TOTALSOURCE'S ABILITY TO PROCESS PAYMENTS FOR SUCH WAGES AT THE REQUEST OR DIRECTION OF THE CLIENT. UNRESOLVED COMPLAINTS INVOLVING TOTALSOURCE OR QUESTIONS CONCERNING THE REGULATION OF STAFF LEASING SERVICES MAY BE ADDRESSED TO THE TEXAS DEPARTMENT OF LICENSING AND REGULATION AT P.O. BOX 12157, AUSTIN, TX 78711 (512) 463-6599 OR (800) 803-9202 (TEXAS). TotalSource and Client share the right of direction and control over the Worksite Employees, the right to hire, discipline and reassign Worksite Employees, the right of direction and control over the adoption of employment and safety policies and the management of workers' compensation claims, claims flings, and related procedures. Client retains sole responsibility for the direction and control of Worksite Employees as necessary to conduct Client's business, discharge any applicable fiduciary duty, or comply with any licensure, regulatory, or statutory requirements. TotalSource assumes the responsibility for the payment of wages to the Worksite Employees without regard to payment by the Client to TotalSource.

**UTAH**
The responsibility to obtain workers' compensation coverage for covered employees, from a carrier licensed to do business in Utah shall be allocated to Client. TotalSource shall arrange for workers' compensation coverage for Client and covered employees through an umbrella policy providing a separate endorsement for each Client company pursuant to R612-5-3.

**VIRGINIA**
Client acknowledges that it is obligated to comply with the insuring requirement of §65.2-801 of the Code of Virginia with respect to Client employees who are not Worksite Employees covered under the TotalSource workers' compensation policy.
Client agrees to obtain workers compensation coverage for those employees, in accordance with Virginia law.

**WASHINGTON**
TotalSource retains the right to control the Worksite Employees' physical conduct in the performance of his/her duties. Both TotalSource and Client are co-employers of the Worksite Employees and intend for both TotalSource (the general employer) and Client (the special employer) to receive exclusive remedy protection under the Washington's Industrial Insurance Act, Title 51 RCW. Notwithstanding Part 1, Section VI.A, TotalSource will not maintain workers' compensation coverage for those certain Worksite Employees whose primary worksites are located within the State of Washington. Client shall purchase and maintain workers' compensation coverage through the Washington State Department of Labor & Industries ("WSDLI") for such Worksite Employees, owner(s) and those persons identified by Client as self-employed individuals (as such term is described in Part 1, Section II.C). TotalSource will assist Client with the maintenance of such coverage by reporting the information and submitting the payments (on behalf of Client) to the WSDLI that is required by the WSDLI to purchase and maintain workers' compensation coverage. However, the foregoing assistance provided by TotalSource is dependent upon the accurate and timely submission of information and payment by Client to TotalSource. Further, the worker's compensation claims administration described in Part 1, Section IV.K, shall not be available to claims that are subject to the workers' compensation coverage maintained by Client through the WSDLI. Client will notify TotalSource of any such claims and will also be the responsible party for reporting such claims directly to the WSDLI.

**WEST VIRGINIA**
Client shall retain the right to hire, discipline, and terminate Worksite Employees provided TotalSource has the right to terminate the Agreement if Client refuses without good cause a request form TotalSource that the Client discipline or terminate a Worksite Employee as may be necessary to fulfill TotalSource's statutory and or contractual responsibilities. TotalSource shall maintain and provide workers' compensation coverage for the Worksite Employees from a carrier authorized to do business in West Virginia.

**WISCONSIN**
Client assumes all obligations and responsibilities as provided under Chapter 202 (Professional Employer Organizations) of the Wisconsin State Statutes.

**WYOMING**
In accordance with § 27-3-501(a)(viii)(B) of the Wyoming Employment Security Law, TotalSource has the right to determine and set the rate of pay for the Worksite Employee whether or not through





**CLIENT SERVICES AGREEMENT**

**For Manhattan Country School Inc**

**PART 3**

negotiations with Client. Client is responsible for submitting to TotalSource the recommended rate of pay for each Worksite Employee. TotalSource will review the rates of pay for each Worksite Employee and accept, reject, or negotiate with Client the rate of pay, to be mutually agreed upon with Client. TotalSource has the right to determine the assignment of a Worksite Employee even though the Worksite Employee retains the right to refuse a specific assignment. A Worksite Employee will not be assigned to a Client's worksite until after the individual has satisfactorily completed TotalSource pre-employment paperwork and background screens as necessary. TotalSource has the right to terminate or suspend the assignment of a Worksite Employee to a particular worksite for reasons relating to the suitability of the Worksite Employee or the suitability and safety of the Worksite, and at any time TotalSource concludes it is necessary to terminate or suspend the assignment of a Worksite Employee for reasons relating to TotalSource's compliance with applicable laws or regulations. In the proposal process and during the term of the         Agreement, TotalSource and Client have and will continue to negotiate, as necessary, over matters of time, place, type of work, working conditions, quality and price of services.



**E X H I B I T**

**B**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**RUBIN AND RUDMAN LLP**
53 State Street
Boston, MA 02109
(617) 330-7038 (Tel)
(617) 330-7550 (Fax)
email: jbodoff@rubinrudman.com
Joseph S.U. Bodoff, Esq.
*Co-Counsel to ADP TotalSource Group Inc.*

**SCARINCI HOLLENBECK, LLC**
519 8TH Avenue, 25th Floor
New York, New York 10018
(201) 896-7701 (Tel)
(201) 896-7084 (Fax)
dedelberg@sh-law.com
David Edelberg, Esq.
*Co-Counsel to ADP TotalSource Group Inc.*

| | |
|---|---|
| In re: | Chapter 11 |
| MANHATTAN COUNTRY SCHOOL, a/k/a MANHATTAN COUNTRY SCHOOL, INC., | Case No. 25-11009 (DSJ) |
| Debtor. | |

**ORDER GRANTING APPLICATION OF ADP TOTALSOURCE GROUP, INC.
SEEKING RELIEF FROM THE AUTOMATIC STAY**

Upon consideration of the application filed by ADP TotalSource Group, Inc. ("TotalSource") seeking relief from the automatic stay (the "Motion"), and any objections to the Motion, and after due deliberation, and good cause having been shown, it is hereby:

ORDERED, that the Motion is granted; and it is further

ORDERED, that TotalSource is hereby granted relief from the automatic stay for purposes of terminating its Client Services Agreement entered into with Manhattan Country School in accordance with the terms of such agreement; and it is further

**ORDER GRANTING APPLICATION OF ADP TOTALSOURCE GROUP, INC. SEEKING
RELIEF FROM THE AUTOMATIC STAY
Page 2**

ORDERED, that the stay imposed by Bankruptcy Rule 4001(a)(3) of the Federal Rules of

Bankruptcy Procedures is hereby waived.


Dated: _____        _____
       New York, New York                    Honorable David S. Jones
                                             United States Bankruptcy Judge