**LEVY RATNER, P.C.**
Ryan J. Barbur, Esq.
80 Eighth Avenue, 8th Floor
New York, NY  10011-7175
(212) 627 8100
(212) 627-8182 (fax)
rbarbur@levyratner.com
Attorneys for *Local 2110, Technical, Office and Professional Union, UAW, AFL-CIO*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

IN RE:

**Manhattan Country School** *a/k/a* **Manhattan Country School, Inc.,**

Debtor.

Chapter 7

CASE NO. 25-11009 (DSJ)

Hearing Date: February 24, 2026 at 10:00 a.m.

Objection Deadline: February 17, 2026

-----------------------------------------------------------------X

## MOTION OF LOCAL 2110, TECHNICAL, OFFICE AND PROFESSIONAL UNION, UAW, AFL-CIO FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIMS PURSUANT TO SECTIONS 503(b)(1)(A) AND 507 OF THE BANKRUPTCY CODE

Local 2110, Technical, Office and Professional Union, UAW, AFL-CIO ("**Local 2110**" or the "**Union**"), by and through its undersigned counsel, hereby moves (the "**Motion**") for allowance of administrative expense claims pursuant to sections 503(a), 503(b)(1)(A), and 507 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"). In support of this Motion, Local 2110 respectfully states as follows:

### BACKGROUND

1

1. Local 2110 is a labor organization within the meaning of Section 2(5) of the National Labor Relations Act, as amended, 29 U.S.C. § 153(5) (the "**NLRA**") and maintains its principal place of business at 350 West 31st Street, 4th Floor, New York, New York, 10001.

2. Pursuant to Section 9(a) of the NLRA, Local 2110 is the exclusive representative of Local 2110 bargaining unit employees (the "**Bargaining Unit Employees**") formerly employed by Manhattan Country School Inc. ("**MCS**" or "**Debtor**"). As such, Local 2110 submits this claim against the Debtor on behalf of the Bargaining Unit Employees formerly employed by the Debtor.

3. On May 16, 2025 ("**Petition Date**"), the Debtor filed a petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code ("Code").

4. MCS and Local 2110 are parties to a collective bargaining agreement for the term of March 14, 2022 through March 13, 2025, as amended and extended by a memorandum of agreement effective March 14, 2025 through March 13, 2026 (together the "**CBA**").[1] The collective bargaining agreement and the extension memorandum of agreement are attached as Exhibits "A" and "B" to the Declaration of Ava Parnes in Support of the Motion ("**Parnes Declaration**").

5. On May 31, 2025, the Debtor sent an email to all staff announcing that the Court did not approve the Debtor's request for an emergency $1 million loan from the Casa Laxmi Foundation. The email suggests that the Debtor's financial situation was changing rapidly, but it does not reference the possibility of layoffs. A copy of this email is attached as Exhibit "C" to the Parnes Declaration.

---

[1] On September 16, 2025, the CBA was rejected as of the Conversion Date pursuant to a So Ordered Stipulation between the Chapter 7 Trustee and Local 2110 [Docket No. 89].

6. On June 11, 2025, the Debtor sent an email to all staff that mentions that while the employer "had been planning to move forward with a June lay off date" it was now exploring the possibility of financing that would allow the Debtor to continue paying salaries for a longer period of time. A copy of this email is attached hereto as Exhibit "D" to the Parnes Declaration.

7. On June 13, 2025, the Debtor sent an email to all staff discussing its intent to file a motion to convert the bankruptcy case from Chapter 11 to Chapter 7. The email does not provide any information regarding layoffs. A copy of this email is attached hereto as Exhibit "E" to the Parnes Declaration.

8. On June 16, 2025, the Debtor sent an email to all staff announcing that "many decisions must be temporarily paused" following the conversion of the case from Chapter 11 to Chapter 7, including "[w]hether staff layoffs will take place immediately, in a few weeks, or at the end of the summer." A copy of this email is attached hereto as Exhibit "F" to the Parnes Declaration.

9. On June 18, 2025 ("**Conversion Date**"), the court entered an Order granting the Debtor's motion to convert the Chapter 11 case to a Chapter 7 case [Docket No. 49]. On the Conversion Date, the Office of the United States Trustee appointed Albert Togut as the Interim Chapter 7 Trustee in the converted case (the "**Trustee**") [Docket No. 50].

10. On June 19, 2025, with no other warning or notice, the Debtor sent another email to all staff announcing that "the conversion of our case to Chapter 7 has effectively resulted in a layoff of all staff." The email went on to note that the Debtor was "in the process of preparing formal notification letters for all individuals employed by MCS as of June 18." A copy of this email is attached hereto as Exhibit "G" to the Parnes Declaration. Upon information and belief, this resulted in the layoff of all the Debtor's approximately 74 employees, at least 65 of whom

3

would be considered "full-time" employees for the purposes of the New York State Worker Adjustment and Retraining Notification Act ("**NY WARN Act**"), New York Labor Law ("**NYLL**") §§ 860 et seq. Despite this, the Debtor failed to provide notices required under the NY WARN Act.

11. The notification letters provided by the Debtor informed all Bargaining Unit Employees that they were laid off effective June 16, 2025. An example of these notification letters is attached hereto as Exhibit "H" to the Parnes Declaration.

## JURISDICTION AND VENUE

12. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

13. By this Motion, the Union seeks the entry of an order granting the allowance and payment of administrative expense claims pursuant to sections 503(b)(1)(A) and 507 of the Bankruptcy Code for post-petition wages owed by the Debtor under the CBA and violations of state law.

## BASIS FOR RELIEF REQUESTED

14. Section 503(b) of the Bankruptcy Code provides administrative expense status for the "actual, necessary costs and expenses of preserving the estate. . ." 11 U.S.C. § 503(b)(1)(A). These include "wages, salaries and commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A)(i). These expenses are afforded priority under section 507(a)(2) of the Bankruptcy Code.

15. The Bargaining Unit Employees rendered post-petition services to the Debtor that were vital to the Debtor's ability to continue operations through the Conversion Date. Wages earned under the collective bargaining agreement for providing these services are "actual, necessary costs and expenses of preserving the estate" as required for administrative expense status under section 503(b)(1)(A) of the Bankruptcy Code.

16. Accordingly, Local 2110 submits the following administrative expense claims on behalf of the Bargaining Unit Employees for wages earned under the CBA during the post-petition period:[2]

    a. **Severance**. Pursuant to the CBA, Local 2110 bargaining unit employees who were laid off by Debtor are entitled to severance pay at the rate of two weeks per year of service, with a minimum of four weeks' pay and a maximum of thirty weeks' pay. *See* Exh. A, Art. XV(3)(c). The 65 Bargaining Unit Employees laid off by the Debtor effective June 16, 2025 are owed severance pay in the total amount of $1,194,151.72.[3] A breakdown of the severance amounts owed to Bargaining Unit Employees is attached as Exhibit "I" to the Parnes Declaration. As all 65 laid off Bargaining Unit Employees were laid off after the Petition Date, Claimant demands payment of its claim for severance pay as an administrative expense under Code § 503(b). See In re Straus-Duparquet, Inc., 386 F.2d 649 (2d Cir. 1967).

---

[2] The amounts set forth in this Motion are based upon the best information available to the Union at the time of filing. In some instances, the Union's calculations may be based upon incomplete or estimated information. Local 2110 expressly reserves the right to supplement or amend its claim, and to provide further explanation or evidence, as may be necessary.

[3] Severance owed per employee is estimated as the number of weeks of severance owed, based on school years of service, times weekly pay, consisting of salary plus applicable annual stipends under Art. XXI of the CBA. *See* Exh. A, Art. XXI.

b.  **Summer Pay**. Teaching staff in the Local 2110 bargaining unit worked a 10-month schedule during the school year, from September to June. *See* Exh. A, Art. XXX. However, salaries for teaching staff were spread over a 12-month period, including the summer months when school was not in session, with paychecks issued twice every month. The summer pay constitutes deferred compensation for services rendered during the school year. When the Debtor laid off all bargaining unit teaching staff effective June 16, 2025, it still owed the teaching staff 5 pay periods' worth of summer pay. A portion of the summer pay is deferred compensation for services rendered after the Petition Date.[4] As such, the Claimant demands payment of $66,732.50 as an administrative expense under Code § 503(b). A breakdown of the summer pay amounts and priorities owed to Bargaining Unit Employees is attached as Exhibit "J" to the Parnes Declaration.[5]

c.  **Unpaid Farm Stipends**. Pursuant to the CBA, teaching staff who accompanied a student to the MCS Farm were entitled to a stipend. Under the CBA effective March 14, 2022 through March 13, 2025, the stipend was $200 per trip. *See* Exh. A, Art. XXI. Effective March 14, 2025 through March 13, 2026, the stipend increased to $250 per trip. *See* Exh. B, Art. XXI. Accordingly, Claimant submits a claim for five (5) farm stipends for trips that occurred after the Petition Date, in the

---

[4] Teaching staff worked for two pay periods after the Debtor filed its Chapter 11 case and before the layoffs occurred: the pay period ending June 1, 2025 and the pay period ending June 15, 2025.

[5] The summer pay owed is estimated as 5/24 of a teaching staff employee's annual pay, consisting of salary plus applicable yearly stipends under Art. XXI of the CBA. *See* Exh. A, Art. XXI. The administrative expense claim is calculated as 2/19 of the total summer pay owed, reflecting the pro rata share attributable to the 2 post-petition pay periods out of the 19 pay periods during the school year from which the compensation was deferred.

6

total amount of $1,250.00 as an administrative expense under Code § 503(b). A breakdown of the farm stipend amounts and priorities owed to Bargaining Unit Employees is attached as Exhibit "K" to the Parnes Declaration.

    d.    **Other Post-Petition Wages Owed**.  Some employees in the bargaining unit have not received payment for work performed for the Debtor after the Petition Date. As such, Claimant submits a claim for $12,538.13 in unpaid wages. A breakdown of the amounts owed per employee is attached as Exhibit "L" to the Parnes Declaration.  All of this work was performed after the Petition Date. As such, Claimant demands payment of the full amount of $12,538.13 as an administrative expense under Code § 503(b).

    e.    **Dues**.  Pursuant to the CBA, the Debtor was required to deduct regular and authorized Union Dues ("Dues") from Bargaining Unit Employee Wages and then to remit the Dues to Local 2110. *See* Exh. A, Art. II. However, the Debtor failed to remit Dues to Local 2110 that were deducted from employee payroll for the periods of February 2025 through June 2025, in the total amount of $24,603.41. Approximately half of the Dues for May 2025 and all of the Dues for June 2025 were deducted from compensation for services rendered after the Petition Date. As such, the Claimant demands payment of $5,498.26 as an administrative expense under Code § 503(b).  A breakdown of the amount and priority of Dues owed per is attached hereto as Exhibit "M" to the Parnes Declaration.

17. **NY WARN Act Claims**.[6] In addition to the foregoing, the Debtor's abrupt closure and the corresponding post-petition termination of the Bargaining Unit Employees' employment triggered a mass layoff and/or a plant closing under the NY WARN Act. Pursuant to the NY WARN Act, the Debtor was required to provide ninety (90) days' notice of such layoff to the Bargaining Unit Employees or to compensate them for each day of the sixty (60) day violation period. The Debtor failed to provide the required notices. As such, the Debtor is liable to each of the Local 2110 Bargaining Unit Employees for wages for each day of the violation, as well as accrued benefits and contributions due to Empire Blue Cross Blue Shield and the Teachers Insurance and Annuity Association of America ("TIAA"). Accordingly, Claimant submits a claim in the amount of $871,856.85 on behalf of its members for all wages and benefit contributions due pursuant to the NY WARN Act. As the layoffs occurred after the Petition Date, Claimant demands payment of its claim for NY WARN Act violations as an administrative expense under Code § 503(b). A calculation of the amount owed per employee under the NY WARN Act is attached hereto as Exhibit "N" to the Parnes Declaration.

## RESERVATION OF RIGHTS

18. The Union reserves the right to amend, modify or supplement this claim.

## NOTICE OF MOTION

19. Notice of this Motion has been given to: (i) counsel to the Trustee; (ii) the Office of the United States Trustee; and (iii) all other parties in interest that have filed a notice of

---

[6] The amounts set forth in this proof of claim are based upon the best information available to the Union at the time of filing. In some instances, the Union's calculations may be based upon incomplete or estimated information. Local 2110 expressly reserves the right to supplement or amend its claim, and to provide further explanation or evidence, as may be necessary.

appearance in this Chapter 7 case. In light of the nature of the relief requested herein, the Union submits that no other or further notice is necessary.

## NO PRIOR REQUEST

20.    No previous application for the relief sought herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Union respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit A, granting the Union: (a) administrative expense claims pursuant to sections 503(b)(1)(A), and 507 of the Bankruptcy Code, in the total amount of $2,152,027.46, as set forth herein and (b) such other and further relief as the Court deems just and proper.

Dated: New York, New York
      December 29, 2025

**LEVY RATNER P.C.**

By: _/s/ Ryan J. Barbur_

Ryan J. Barbur
Attorneys for *Local 2110, Technical, Office and Professional Union, UAW, AFL-CIO*
80 8th Avenue, 8th Floor
New York, New York 10011