**Hearing Date: May 28, 2026 at 10:00 a.m. (Eastern Time)**
**Objection Deadline: May 27, 2026 at 12:00 p.m. (Eastern Time)**

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Brian F. Moore
Anthony L. Greene
Christian Ribeiro

*Attorneys for Albert Togut,*
*Not Individually But Solely in His Capacity*
*as Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                              :
In re:                                        :        Chapter 7
                                              :
MANHATTAN COUNTRY SCHOOL *et al.,*[1]         :        Case No. 25-11009 (DSJ)
                                              :
                        Debtors.              :        (Jointly Administered)
                                              :
-------------------------------------------------------------------x

**NOTICE OF HEARING ON TRUSTEE'S APPLICATION FOR ENTRY OF:
(I) AN ORDER APPROVING (A) BIDDING PROCEDURES FOR
THE SALE OF REAL PROPERTY, (B) DESIGNATION OF STALKING HORSE
BIDDER, (C) BID PROTECTIONS IN FAVOR OF THE STALKING HORSE
BIDDER, (D) DATE AND TIME FOR AN AUCTION AND A HEARING
FOR APPROVAL OF THE SALE, AND (E) THE FORM AND MANNER
OF NOTICE THEREOF; AND (II) AN ORDER APPROVING (A) THE SALE OF
REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES
AND OTHER INTERESTS, AND (B) PAYMENT OF BROKER COMMISSION**

**PLEASE TAKE NOTICE** that the Court will consider the attached

*Trustee's Application for Entry of: (I) an Order Approving (A) Bidding Procedures for the Sale*

*of Real Property, (B) Designation of Stalking Horse Bidder, (C) Bid Protections in Favor of the*

*Stalking Horse Bidder, (D) Date and Time for an Auction and a Hearing for Approval of the*

*Sale, and (E) the Form and Manner of Notice Thereof; and (II) an Order Approving (A) the*

*Sale of Real Property Free and Clear of Liens, Claims, Encumbrances and Other Interests, and*

---

[1]   The Debtors in these cases, along with the last four digits of their federal tax identification numbers
      are (i) Manhattan Country School (6971) (Case No. 25-11009 (DSJ); and (ii) West 85th Street Owner
      LLC (6971) (Case No. 25-11922) (DSJ).

*(B) Payment of Broker Commission* (the "<u>Application</u>")[2] of Albert Togut, not individually but solely in his capacity as the Chapter 7 Trustee (the "<u>Trustee</u>") of the estate of Manhattan Country School ("<u>MCS</u>") and the Chapter 7 Trustee (in such respective capacities, as applicable, the "<u>Trustee</u>") of the estate of West 85th Street Owner LLC ("<u>Owner LLC</u>," and, together with MCS, the "<u>Debtors</u>"), at a hearing before the Honorable David S. Jones, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408 on **May 28, 2026, at 10:00 a.m. (prevailing Eastern Time)** (the "<u>Hearing</u>").

 **PLEASE TAKE FURTHER NOTICE** that the Hearing will be held via Zoom for Government.  Those wishing to participate in the Hearing must register for an appearance utilizing the Electronic Appearance portal located at the Court's website: https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.  Appearances must be entered no later than May 27, 2026, at 4:00 p.m. (prevailing Eastern Time).

 **PLEASE TAKE FURTHER NOTICE** that responses or objections, if any, to the Application must also be filed with the Court electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Court's case filing system and by all other parties in interest, with paper copies delivered directly to Bankruptcy Judge Jones' Chambers and be served by email upon:  (i) Togut, Segal & Segal LLP, attorneys for the Trustee, One Penn Plaza, Suite 3335, New York, New York 10119, Attn: Anthony L. Greene, Esq. (agreene@teamtogut.com) and Christian Ribeiro, Esq. (cribeiro@teamtogut.com);  (ii) the United States Trustee for the Southern District of New York, One Bowling Green,

---

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

Room 534, New York, NY 10004-1408, Attn: Mark Bruh, Esq. (mark.bruh@usdoj.gov);

and (iii) any other parties required to be served under any applicable Bankruptcy Rule

or Local Rule, so as to be received no later than **May 27, 2026, at 12:00 p.m. (prevailing**

**Eastern Time)** (the "Objection Deadline").  Objections not timely served and filed may

not be considered by the Court.

    **PLEASE TAKE FURTHER NOTICE** if no objections are received prior to

the Objection Deadline, the Court may cancel the Hearing and enter the proposed order

attached to the Application without holding the Hearing.


Dated:  May 19, 2026
      New York, New York

           ALBERT TOGUT, not individually but
           solely in his capacity as Chapter 7 Trustee
           By His Attorneys,
           TOGUT, SEGAL & SEGAL LLP
           By:

           */s/ Brian F. Moore*
           BRIAN F. MOORE
           ANTHONY L. GREENE
           CHRISTIAN RIBEIRO
           One Penn Plaza, Suite 3335
           New York, New York 10119
           (212) 594-5000
           bmoore@teamtogut.com
           agreene@teamtogut.com
           cribeiro@teamtogut.com

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Brian F. Moore
Anthony L. Greene
Christian Ribeiro

*Attorneys for Albert Togut,*
*Not Individually But Solely in His Capacity*
*as Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
                                                    :
In re:                                              :        Chapter 7
                                                    :
MANHATTAN COUNTRY SCHOOL *et al.*,[1]               :        Case No. 25-11009 (DSJ)
                                                    :
                                    Debtors.        :        (Jointly Administered)
                                                    :
------------------------------------------------------------------------x

### TRUSTEE'S APPLICATION FOR ENTRY OF:
### (I) AN ORDER APPROVING (A) BIDDING PROCEDURES FOR THE SALE OF REAL PROPERTY, (B) DESIGNATION OF STALKING HORSE BIDDER, (C) BID PROTECTIONS IN FAVOR OF THE STALKING HORSE BIDDER, (D) DATE AND TIME FOR AN AUCTION AND A HEARING FOR APPROVAL OF THE SALE, AND (E) THE FORM AND MANNER OF NOTICE THEREOF;  AND (II) AN ORDER APPROVING (A) THE SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, AND (B) PAYMENT OF BROKER COMMISSION

TO THE HONORABLE DAVID S. JONES,
UNITED STATES BANKRUPTCY JUDGE:

Albert Togut, not individually but solely in his capacity as the Chapter 7

Trustee of the estate of Manhattan Country School ("MCS") and the Chapter 7 Trustee

(in such respective capacities, as applicable, the "Trustee") of the estate of West 85th

Street Owner LLC ("Owner LLC," and, together with MCS, the "Debtors"), by his

attorneys, Togut, Segal & Segal LLP (the "Togut Firm"), hereby submits this application

---

[1]   The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) Manhattan Country School (6971) (Case No. 25-11009 (DSJ);  and (ii) West 85th Street Owner LLC (6971) (Case No. 25-11922) (DSJ).

1

(the "Application") pursuant to sections 105(a), 330, 363, and 506(c) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 9006(c), and 9007 of the Federal Rules of Bankruptcy Procedure Rules (the "Bankruptcy Rules"), Rule 6004-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), and the *Amended Guidelines for the Conduct of Asset Sales Established and Adopted by the United States Bankruptcy Court for the Southern District of New York* pursuant to General Order M-383 (the "Sale Guidelines") for entry of (i) an order, substantially in the form annexed hereto as **Exhibit A** (the "Bidding Procedures Order"), approving (a) bidding procedures, substantially in the form annexed as **Exhibit 1** to the proposed Bidding Procedures Order (the "Bidding Procedures"),[2] for the sale of the real property known as 150 West 85th Street, New York, New York, 10024 (the "Property") pursuant to Bankruptcy Code sections 363(b), (f) and (m) (the "Sale");  (b) the proposed asset purchase agreement with Geneva School of Manhattan, a New York not-for-profit corporation or its permitted assignee or affiliate (the "Stalking Horse Bidder"), annexed hereto as **Exhibit B** (the "Stalking Horse APA") and designation of the Stalking Horse Bidder as the "stalking horse bidder" for the Sale of the Property;  (c) bid protections in favor of the Stalking Horse Bidder;  (d) the date, place, and time for an auction (the "Auction") and a hearing (the "Sale Hearing") to approve the Sale of the Property to the Successful Bidder (defined below), and (e) the form and manner of notice thereof;  and (ii) an order substantially in the form to be filed prior to the Sale Hearing, a form of which is attached hereto as **Exhibit C** (the "Sale Order") approving (a) the sale of the Property free and clear of liens, claims, encumbrances, and other interests;  and (b) the payment of the Broker Commission (defined below).

---

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures or, alternatively, the Stalking Horse APA (as hereinafter defined).

2

In support of this Application, the Trustee submits the declaration of Robert A. Knakal, Chairman and Chief Executive Officer of BKREA, annexed hereto as **Exhibit D** (the "Knakal Declaration"), and respectfully states:

**JURISDICTION AND VENUE**

1. The Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this Application and the relief requested herein pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The predicates for the relief requested herein are Bankruptcy Code sections 105(a), 330, 363, and 506(c), Bankruptcy Rules 2002, 6004, 9006(c), and 9007, and Local Rule 6004-1.

**BACKGROUND**

**I.     The Chapter 7 Cases**

3. On May 16, 2025 (the "Petition Date"), MCS filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in this Court. On June 13, 2025, MCS filed a motion to convert the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code (this "Chapter 7 Case"), which the Court approved by an order dated June 18, 2025 [Docket No. 49].

4. On June 18, 2025, Mr. Togut was appointed as the Chapter 7 Interim Trustee of MCS [Docket No. 50]. Mr. Togut is duly qualified and is acting as the Trustee herein.

5. Owner LLC is a wholly owned subsidiary of MCS, which owns the Property. On September 3, 2025, following consultation with the Debtors' secured creditors and the United States Trustee (the "U.S. Trustee"), the Trustee filed a

3

voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court for Owner LLC to facilitate his efforts to administer the Debtors' estates. *See In re West 85th Street Owner LLC*, Case No. 25-11922 (DSJ) (Bankr. S.D.N.Y. 2026) (the "Owner Chapter 7 Case" and, together with the Chapter 7 Case, the "Chapter 7 Cases").

6.      On September 4, 2025, Mr. Togut was appointed as the Chapter 7 Interim Trustee of Owner LLC.  He is duly qualified and is acting as Interim Trustee for the estate of Owner LLC.

7.      On September 12, 2025, the Court entered an order directing the joint administration of the Chapter 7 Cases for procedural purposes only [Docket No. 84].

8.      No committee of unsecured creditors has been appointed in the Chapter 7 Cases.

## II.      Retention of BKREA and Marketing the Property

9.      Prior to these Chapter 7 Cases and the termination of MCS's operations, MCS operated a private school at the Property in the Upper West Side of Manhattan.  Based upon a review and analysis of the information available to the Trustee, and in consultation with Flushing Bank (the "Lender"), the Trustee determined that a sale of the Property would be in the best interest of the Debtors' estates and their creditors.

10.      On July 15, 2025, the Court approved and entered a stipulation [Docket No. 69] (the "506(c) Stipulation") between the Trustee and the Lender and U.S. Bank National Association, solely in its capacity as Trustee for the Series 2016 Bonds, and as directed by Lender as beneficial owner of 100% of the Series 2016 Bonds ("U.S. Bank"), in which, among other things, the Lender and U.S. Bank acknowledged that, pursuant to section 506(c) of the Bankruptcy Code, the reasonable and necessary costs,

4

commissions, compensation, and other expenses incurred by the Trustee and his retained professionals in connection with the sale of the Property, including customary closing expenses and taxes associated with the sale of the Property, are recoverable and senior to all other liens and interests, including the Lender's and U.S. Bank's interests, in the proceeds of a sale of the Property.

11.     On September 19, 2025, the Trustee filed an application [Docket No. 95] (the "BKREA Retention Application") seeking approval of the retention of BK Real Estate Advisors, LLC ("BKREA") as real estate broker to market and assist in the sale of the Property.  Pursuant to the terms of BKREA's listing agreement, attached to the Retention Application as Exhibit B (the "Listing Agreement"), if the sale is effectuated by a broker other than BKREA, the total commission shall be four percent (4.0%) of the gross sale price (the "Broker Commission"), out of which BKREA shall compensate the outside broker(s) with two percent (2.0%) of the gross sale price as, if, and when actually received by BKREA.  See Listing Agreement ¶ 6.

12.     On October 7, 2025, the Court entered an order authorizing the retention of BKREA [Docket No. 104] (the "Retention Order") which, among other things, approved the Listing Agreement.

13.     As discussed in further detail in the BKREA Retention Application, BKREA and its founder, Mr. Knakal, have extensive experience selling "user" buildings like the Property.  See Knakal Decl. ¶ 5.  Indeed, Mr. Knakal's prior firm, Massey Knakal, served as broker to the former owner of the Property when it sold the Property to Owner LLC in January 2015.  See id.

14.     On September 4, 2025, BKREA began its marketing efforts for the Property and thereafter engaged in discussions with numerous parties that BKREA believed would have interest in purchasing the Property either for operation as a school

5

or other institutional use, or alternatively for redevelopment or conversion potential. *See id.* ¶ 6.

16. BKREA's formal marketing efforts included the preparation and distribution of marketing materials to targeted investors, developers, and user groups. In addition to direct outreach, BKREA conducted eight internal e-blasts to its proprietary database, reaching approximately 30,293 active investors, principals, and companies related to the industry. *See id.* ¶ 7. BKREA also issued a press release on February 7, 2026, which was distributed through a network of media and industry distribution channels to further expand market awareness of the opportunity. *See id.*

16. The Property was also listed on major commercial real estate platforms, including LoopNet, CoStar, and Crexi, generating approximately 10,524 combined views on LoopNet and CoStar and 38,083 impressions on Crexi. *See id.* ¶ 8.

17. In connection with these marketing efforts, BKREA conducted extensive direct outreach to principals and owners within the brokerage's network. *See id.* ¶ 9. Since the listing was posted, BKREA has performed and connected with principals and ownership groups approximately 353 times by telephone, including follow-up conversations and additional outreach to parties that had previously expressed interest in similar assets. *See id.* These efforts resulted in 37 inspection tours of the Property conducted and arranged by BKREA. *See id.*

18. As a result of these marketing efforts, to date, BKREA has received 21 bids or pricing indications for the Property, including 17 active bids, two indications of interest, and three bids that were later withdrawn. *See id.* ¶ 10. BKREA continues to maintain active dialogue with numerous prospective purchasers and believes there remains meaningful and ongoing interest in the Property. *See id.*

6

**III.    The Stalking Horse APA and Bid Protections**

19.    As a result of these extensive marketing efforts, the Trustee received a formal written offer from the Stalking Horse Bidder to purchase the Property.

20.    After considering the Stalking Horse Bidder's offer and in consultation with the Lender, the Trustee and the Stalking Horse Bidder negotiated the Stalking Horse APA which, as more fully described herein, provides for the sale of the Property for an all-cash purchase price of $20 million (the "Purchase Price"), subject to higher or better offers and Court approval.

**A.    Summary of Stalking Horse APA**

21.    Following is a summary of the material terms of the Stalking Horse APA:[3]

(a)    **Purchase Price**:   $20,000,000.00;

(b)    **Deposit**:   $2,000,000.00, which has been delivered to the Trustee (the "Deposit").

(c)    **Closing Conditions Required by the Stalking Horse Bidder:**   The Stalking Horse Bidder's closing conditions include, among other things: (i) the conditions of title to the Property, and the ability of the Trustee to deliver possession of the Property at closing vacant and free of liens, claims and encumbrances, as provided in the Stalking Horse APA; (ii) the performance of the Trustee's obligations under the Stalking Horse APA, including depositing the deed to the Property into escrow; and (iii) the accuracy of the Trustee's representations and warranties.

(d)    **Closing Conditions Required by the Trustee:**   The Trustee's closing conditions will generally be limited to the accuracy of the Stalking Horse Bidder's representations and warranties.

(e)    **Closing Conditions of Both the Trustee and the Stalking Horse Bidder:** The Trustee and the Stalking Horse Bidder's mutual closing conditions include the entry of the Sale Order pursuant to

---

[3]    The summary of the Stalking Horse APA is provided for the convenience of the Court and parties in interest.  In the event of any inconsistency between the summary in this Application and the terms of the Stalking Horse APA, the terms of the Stalking Horse APA shall govern.

Bankruptcy Code Section 363, which Sale Order has not been stayed.

(f) **Closing Date:**   The closing of title shall take place at the offices of Phillips Nizer LLP on the date which is no later than fifteen (15) days following the date that the Sale Order becomes a final, non-appealable order, or such earlier date as the parties may mutually agree in writing (the occurrence of the consummation of the Stalking Horse APA, the "Closing" and such date, the "Closing Date").  The Trustee may adjourn the Closing for reasonable periods to effectuate the transfer, subject to the Outside Date.[4]

(g) **No Reliance on Warranties or Representations:** The Stalking Horse Bidder has inspected the Property, is fully familiar with the physical condition and state of repair thereof and shall accept the Property "as is", "where is" and in its present condition, without any representations or warranties of any kind whatsoever except as may be expressly set forth in the Stalking Horse APA, subject to use, wear, tear and natural deterioration between now and the Closing Date, without any reduction in the Purchase Price for any change in such condition by reason thereof subsequent to the date of the Stalking Horse APA.

**B.   Stalking Horse Bid Protections**

22.   The Stalking Horse APA provides that if the Court approves the Sale of the Property to a purchaser other than the Stalking Horse Bidder, the Stalking Horse Bidder will be entitled to (i) a break-up fee equal to 2.5% of the Purchase Price (i.e., $500,000) (the "Breakup Fee");[5] and (ii) reimbursement of the Stalking Horse Bidder's actual and documented due diligence and out-of-pocket costs, not to exceed $40,000 (the "Expense Reimbursement" and, together with the Breakup Fee, the "Bid Protections").  *See* Stalking Horse APA § 8(a).

---

[4]   The Stalking Horse APA defines "Outside Date" as the date that is ninety (90) day after the Sale Order becomes a final, non-appealable order, unless the Parties agree to extend such ninety (90)-day period, which the Parties may agree to do from time to time, and the aggregate of such extensions shall be no longer than one hundred eighty (180) days in the aggregate.  *See* Stalking Horse APA § 11(a).

[5]   The Breakup Fee would be payable upon closing of the Sale of the Property to the Successful Bidder, and until paid will be allowed as an administrative claim pursuant to section 503(b) of the Bankruptcy Code.

**RELIEF REQUESTED**

23.     By this Application, the Trustee seeks entry of:  (i) the Bidding Procedures Order approving (a) the Bidding Procedures, (b) the Stalking Horse APA and designation of the Stalking Horse Bidder as the "stalking horse bidder" for the sale of the Property, (c) the Bid Protections, including the Breakup Fee and Expense Reimbursement, (d) the date, place, and time of the Auction and the Sale Hearing; and (e) the form and manner of notice thereof;  and, following entry of the Bidding Procedures Order, (ii) the Sale Order, substantially in the form to be filed prior to the Sale Hearing, approving (a) the Sale of the Property as described herein and provided for in the Stalking Horse APA or, alternatively, in the sale contract with the Successful Bidder, and (b) the payment of the Broker Commission.

I.      **The Proposed Bidding Procedures and Auction**

24.     To advance the sale process, including the potential sale of the Property to the Stalking Horse Bidder, the Trustee is now seeking approval of the Bidding Procedures, which are designed to maximize value for the estate, while ensuring an orderly sale process.  The Bidding Procedures describe, among other things, the procedures for interested parties to access due diligence, the manner in which bids become Qualified Bids (as defined in the Bidding Procedures), the receipt and negotiation of bids received, the conduct of any Auction, the selection and approval of any ultimately Successful Bidder, and the deadlines with respect to the foregoing. The Trustee believes that the Bidding Procedures afford the Trustee a sufficient opportunity to maximize the value of the Property for the Debtors' estate.

25.     The Sale of the Property under the proposed Bidding Procedures will be without representations or warranties other than those specifically set forth in the sale contract with the Successful Bidder.

9

26.     To assist the Court and parties in interest, certain key dates and deadlines of the Bidding Procedures which have been proposed by the Trustee (and are subject to approval by the Court) are summarized below:

| Event | Date |
|---|---|
| Deadline to submit Qualified Bids | June 15, 2026 at 12:00 p.m. (ET) |
| Deadline for the Trustee to file notice canceling the Auction and designating the Stalking Horse APA as the Successful Bid, if no Qualified Bid is received | June 17, 2026 at 5:00 p.m. (ET) |
| Deadline for the Trustee to notify bidders of (i) status as Qualified Bidders and (ii) selection of Starting Auction Bid | June 17, 2026 at 5:00 p.m. (ET) |
| Auction (if any) to be held if the Trustee receives more than one Qualified Bid | June 23, 2026 at 12:00 p.m. (ET) |
| Deadline for the Trustee to file notice of Auction results and designation of the Successful Bid and the Second Highest Bid | June 23, 2026 at 11:59 p.m. (ET) |
| Deadline to file objections to Sale | June 24, 2026 at 4:00 p.m. (ET) |
| Sale Hearing | June 25, 2026 at 10:00 a.m. (ET) |

27.     The Trustee proposes to fix **June 15, 2026 at 12:00 p.m. (ET)** as the Bid Deadline.  In the event that a Qualified Bid (as defined in the Bidding Procedures) is received on or before the Bid Deadline, the Trustee proposes to hold an Auction on **June 23, 2026 at 12:00 p.m. (ET)**.[6]   The Bidding Procedures contain the terms and procedures that will govern the submission of bids for the Property.   The Auction will only be held if a Qualified Bid (as defined herein) is received for the Property pursuant to the Bidding Procedures before the Bid Deadline.[7]

---

[6]   The Trustee reserves the right to extend the deadlines set forth in the Bidding Procedures Order and/or adjourn, continue or cancel the Auction and/or the Sale Hearing for any reason, including in the event the Trustee determines that a more favorable transaction is available that can be consummated without significant delay, without further order of the Court, by filing a notice with the Court and serving such notice on all Potential Bidders (as defined herein).

[7]   Notwithstanding the procedures for submitting a Qualified Bid, the Trustee may, in the exercise of his business judgment, entertain bids that do not conform to one or more of the requirements set forth herein and in the Bidding Procedures.

10

28.     At the Auction, and subject to the Bidding Procedures, all Qualified Bidders will be allowed to bid to purchase the Property.   The Trustee, in consultation with the Lender, will determine the highest or best bid for the Property, with the goal of maximizing the net value to the estate.   In evaluating bids, the Trustee intends to consider the following factors, among others and without limitation:  (a) the amount and form of consideration offered;  (b) the changes to the Stalking Horse APA, if any, required by the bidder;  and (c) the bidder's ability to timely consummate the Sale.

29.     At the Sale Hearing, the Trustee will seek approval of the Sale to the Successful Bidder.

30.     The Bidding Procedures provide, in pertinent part:[8]

(a)     **Qualified Bidders.**   To participate in the bidding process, a bidder (a "Potential Bidder") must first deliver to the Trustee a Qualified Bid (as defined below) for the Property.

(b)     **Qualified Bid.**   A Qualified Bid[9] for the Property must:  (a) be irrevocable through the earlier of the Closing Date and thirty (30) days after the entry of the Sale Order; provided, however, that (i) if such Qualified Bid becomes the Successful Bid, such bid shall be irrevocable through the Closing Date or such earlier date as such sale contract may be terminated in accordance with its terms, and (ii) if such Qualified Bid becomes the Second Highest Bid (as defined in the Bidding Procedures), such bid shall remain irrevocable through the earlier of (A) the closing of the sale with the Successful Bidder, and (B) sixty (60) days after the entry of the Sale Order approving the Successful Bid, unless the Successful Bidder fails to close and the Trustee shall have given notice to the Second Highest Bidder that he has decided to consummate the transaction contemplated by the Second Highest Bid, in which case the Second Highest Bid shall remain open through the closing of the sale with such Second Highest Bidder;   (b) be submitted to the proper parties, as described in the Bidding Procedures, prior to the Bid Deadline, and (c) satisfy the requirements set forth in the Bidding Procedures, including the

---

[8]     To the extent that there are any inconsistencies between the description of the Bidding Procedures contained herein and the actual Bidding Procedures, the terms of the Bidding Procedures shall control.

[9]     For the avoidance of doubt, the Stalking Horse APA constitutes a Qualified Bid.

following:

i.  The bid must be in writing and on the same (or better) terms and conditions as those set forth in the Stalking Horse APA, and must include an agreement substantially similar to the Stalking Horse APA and marked to show any changes thereto;

ii.  The bid must identify the Potential Purchaser by its legal name (including any equity holders or other financial backers, if the Potential Bidder is an entity formed for the purpose of submitting bids or consummating a sale transaction), and any other party that will be participating in connection with the bid or the sale transaction;

iii.  The bid must be (i) for a price of at least $20,640,000, which is $100,000 greater than the Stalking Horse Bidder's proposed purchase price plus the Bid Protections, and (ii) under terms which the Trustee believes to be higher and better than the Stalking Horse Bidder's bid;

iv.  The bid must be accompanied by a deposit in an amount equal to at least ten percent (10%) of the proposed purchase price, which must be in the form of a wire transfer, certified or cashier's check, and such deposit will be non-refundable in the event such bid is accepted by the Trustee and approved by the Court (except as otherwise provided in such bidder's sale contract);   provided, that, the Trustee, in his reasonable discretion after consultation of the Lender, may waive the requirement to provide a Deposit in the event a request is made for such waiver by any Potential Bidder that is a governmental unit (as defined in section 101(27) of the Bankruptcy Code);

v.  The bid must be accompanied by sufficient information to demonstrate, as determined by the Trustee after consultation with the Lender, that the Potential Bidder has the financial ability to timely consummate the proposed transaction, including, but not limited to, current bank account statements, current audited financial statements, commitments or other proof of available and non-contingent financing, and such other forms of financial disclosure and credit quality in support of such Potential Bidder (including financial information from any entities that will finance or guarantee the obligations of such Potential Bidder), which the Trustee requests;

vi.  The bid must be firm and unconditional and not subject to any contingencies that are not also provided in the Stalking Horse

APA, including, without limitation, further due diligence review or receipt of debt or equity financing;

vii.     The bid must expressly acknowledge that no offer or bid for the Property shall be deemed accepted by, or binding upon, the Debtors' estate unless and until such offer or bid is accepted in writing by the Trustee and approved by order of the Court;

viii.    The bid must expressly acknowledge that the Property is being sold **"AS IS", "WHERE IS" IN ITS CURRENT CONDITION, WITHOUT ANY REPRESENTATIONS, COVENANTS, GUARANTEES OR WARRANTIES OF ANY KIND OR NATURE WHATSOEVER**, and free and clear of any liens, claims or encumbrances of whatever kind or nature, with such liens, if any, to attach to the proceeds of sale, and is subject to among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; and (d) any building or zoning ordinances or any other applicable municipal regulations and violations thereof; and (e) environmental conditions;

ix.      The bid must state that the Potential Bidder (a) has had an opportunity to conduct due diligence regarding Property prior to making its offer and does not require further due diligence, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Property in making its bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Property, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures;

x.       The bid must state that the Potential Bidder has obtained all necessary approvals to make its bid and to enter into and consummate the transaction set forth in the bidder's sale contract;

xi.      The bid must state that the Potential Bidder is not a partner, officer, director, stockholder, agent, employee, insider, or affiliates of the Debtors, the Debtors' principal(s), the Broker or any relative of any of the foregoing; provided, that, to the extent that the Potential Bidder is a partner, officer, director, stockholder, agent, employee, insider, or affiliate of the Debtors, the Debtors' principal(s), or any relative of any of the

13

foregoing, or that any of the foregoing have any pecuniary interest whatsoever in the Potential Bidder, such affiliates, connection, or interest must be disclosed and be subject to further inquiry by the Trustee, the creditors, or any party in interest; and

xii.   The bid must expressly state that the Potential Bidder has not engaged in any bad faith or collusion in connection with the Auction or Sale.

(c)   **Bid Deadline.**   All bids for the Property must be received by the Trustee by **12:00 p.m. (ET) on June 15, 2026**.

(d)   **The Auction.**   If a Qualified Bid or Bids for the Property is received by the Bid Deadline, the Auction will be held commencing at **12:00 p.m. (ET) on June 23, 2026** and continued, if the Trustee deems necessary, from time to time, to such date(s) and time(s) as the Trustee shall determine.   Only Qualified Bidders will be eligible to participate at the Auction.   The Trustee, in consultation with the Lender, will determine the highest and best Qualified Bid received prior to the Bid Deadline, and such Qualified Bid will be the starting bid at the Auction (the "Starting Auction Bid").

(e)   **Auction Rules.**   At the Auction, the minimum initial overbid will be at least $100,000 greater than the Starting Auction Bid unless otherwise determined by the Trustee, in consultation with the Lender.[10]   The Trustee will, from time to time, advise all participants in the Auction as to the determination of the highest or best bid or bids currently offered.   Subject to the Stalking Horse APA, the Trustee, after consultation with the Lender, may adopt other rules for the Auction that, in his reasonable judgment, will promote the goals of the Auction.   All such rules will provide that: (a) the Auction procedures must be fair and open, and (b) all bids shall be made known to all other participating Qualified Bidders, and the Trustee will advise all participants in the Auction of such other rules before they are implemented.

(f)   **Successful Bid.**   At the conclusion of the Auction, the Trustee will select, in consultation with the Lender, subject to Court approval, a bid as the highest and best for the Property.   The Qualified Bidder submitting the Successful Bid for the Property will be the "Successful Bidder."   The Trustee will also select an alternate bid for the Property, which will become the Successful Bid should the Successful Bidder fail to close the Sale (the "Second Highest Bid"). If no Auction is held, the Stalking Horse APA will be considered the

---

[10]   For the avoidance of doubt, if the Stalking Horse APA is the Starting Auction Bid, the minimum initial overbid must be, in the aggregate, at least $640,000 greater than the purchase price in the Stalking Horse APA.

14

Successful Bid.   In determining whether a Qualified Bid is the Successful Bid, the Trustee may also consider the potential costs of satisfying the conditions of any bid.

(g)   **Sale Hearing.**   The Sale Hearing will be held shortly following the Auction at a date and time established by the Court and set forth in the Bidding Procedures Order.  The Trustee proposes **June 25, 2026 at 10:00 a.m. (ET)** for the Sale Hearing.  At the Sale Hearing, the Trustee will seek entry of the Sale Order approving the Sale of the Property to the Successful Bidder.

## II.   The Extraordinary Provisions of the Stalking Horse APA

31.   Pursuant to the Sale Guidelines, the Trustee is required to highlight any "extraordinary provisions" in the Stalking Horse APA or the proposed Sale Order. The extraordinary provisions are as follows:

(a)   **"Sale Free and Clear."**  The Property shall be transferred to the purchaser free and clear of all encumbrances to the fullest extent permitted by Bankruptcy Code section 363.

(b)   **"Successor Liability."**  Under the Sale Order, the purchaser shall not be liable for any Claims against any of the Debtors or any of their respective predecessors or affiliates, and the purchaser shall have no successor or vicarious liabilities of any kind of character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, successor or successor employer liability, de facto merger or joint venture, mere continuation or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, intercompany loans and receivables between any of the Debtor and any non-debtor subsidiary, liabilities relating to or arising from any environmental laws, and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Property prior to Closing.

(c)   **"Relief from Bankruptcy Rule 6004(h)."**  The Trustee requests that any Sale Order provide for a waiver of the automatic 14-day stay imposed by Bankruptcy Rule 6004(h).

## III.   Notice of Bidding Procedures, Auction, and Sale

32.   The Trustee will serve a copy of this Application, with exhibits, by

15

first class mail and/or e-mail, upon the following parties (the "Notice Parties"):   (a) counsel for the Stalking Horse Bidder, Katten Muchin Rosenman LLP, 50 Rockefeller Plaza, New York, NY 10020, Attn: Eddy Park, Esq.;   (b) co-counsel to the Debtors, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019, Attn: Brian S. Lennon, Esq. (blennon@willkie.com); (c) co-counsel to the Debtors, Lester Korinman Kamran & Masini, P.C., 600 Old Country Road Suite 330, Garden City, New York 11530, Attn: Peter K. Kamran, Esq.;  (d) counsel for Lender, Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, 9th Floor, East Meadow, NY 11554, Attn: Richard J. McCord Esq.;  (e) counsel for U.S. Bank National Association, Shipman & Goodwin LLP, One Constitution Plaza, Hartford, CT 06103, Attn: Kathleen M. LaManna and Anthony R. Scarcella;  (f) the U.S. Trustee, One Bowling Green, Room 534, New York, NY 10004, Attn: Mark Bruh, Esq.;   (g) all parties that have recorded liens against or have an interest in the Property;   (h) all of the Debtor's known creditors; (i) all parties that have filed a notice of appearance in the Chapter 7 Cases;   (j) the Internal Revenue Service, Centralized Insolvency Operations, P.O. Box 7346, Philadelphia, PA 19101-7346; (k) the New York City Department of Finance, 345 Adams Street, 3rd Floor, Brooklyn, New York 11201 Attn: Bankruptcy Unit;   (l) New York State Department of Taxation and Finance, Bankruptcy/Special Procedures, P.O. Box 5300, Albany, New York 12205-0300;   (m) the United States Attorney for the Southern District of New York, Attn: Tax and Bankruptcy Unit, 86 Chambers Street, 3rd Floor, New York, New York 10007;   (n) Corporation Counsel for the City of New York, Bankruptcy Unit, 100 Church Street, #4, New York, New York 10007 Attn: Hugh Shull, Esq.;   and (o) the New York State Attorney General, 120 Broad Street, New York, New York 10271-0332.   The Trustee submits that no other or further notice of the proposed Bidding Procedures Order is necessary and respectfully requests that, if satisfactory to the Court, the Bidding

16

Procedures Order should be approved and entered by the Court.

33. Within one (1) business day after entry of the Bidding Procedures Order, the Trustee will cause copies of the Bidding Procedures Order, as entered by the Court, together with the exhibits thereto, including the Bidding Procedures and the notice of the Auction and Sale Hearing, attached to the Bidding Procedures Order as **Exhibit 2** (the "Notice of Auction and Sale Hearing"), to be served on the Notice Parties, as well as to all of the parties that have expressed an interest in purchasing the Property to BKREA. The Trustee submits that no other or further notice of the Bidding Procedures Order, the Bidding Procedures, the Bid Deadline, the Auction and the Sale Hearing is necessary.

## IV. Objections to the Sale

34. The Trustee proposes that objections, if any, to the Sale, must be filed with this Court and served so as to be actually received no later than **4:00 p.m. (ET) on June 24, 2026** (the "Objection Deadline") by: (a) counsel to the Trustee, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119, Attn: Anthony L. Greene (agreene@teamtogut.com); (b) counsel for the Stalking Horse Bidder, Katten Muchin Rosenman LLP, 50 Rockefeller Plaza, New York, NY 10020, Attn: Eddy Park, Esq. (eddy.park@katten.com); (c) co-counsel to the Debtors, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019, Attn: Brian S. Lennon, Esq. (blennon@willkie.com); (d) co-counsel to the Debtors, Lester Korinman Kamran & Masini, P.C., 600 Old Country Road Suite 330, Garden City, New York 11530, Attn: Roy J. Lester, Esq. (rlester@lesterfirm.com); (e) counsel for Lender, Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, 9th Floor, East Meadow, NY 11554, Attn: Richard J. McCord Esq. (rmccord@certilmanbalin.com); (f) counsel for U.S. Bank National Association, Shipman & Goodwin LLP, One Constitution Plaza, Hartford, CT 06103,

17

Attn: Kathleen M. LaManna (klamanna@goodwin.com) and Anthony R. Scarcella (ascarcella@goodwin.com);  (g) the U.S. Trustee, One Bowling Green, Room 534, New York, NY 10004, Attn: Mark Bruh, Esq. (mark.bruh@usdoj.gov);   and (h) all parties that have filed a notice of appearance in the Chapter 7 Cases.   Objections, if any, shall state the party's interest in the Chapter 7 Cases and shall also set forth the specific grounds, legal and/or factual, for the objection.

35.     The Trustee further requests that the Bidding Procedures Order provide that the failure of any objecting person or entity to timely file an objection to the Sale shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale, or to any portion of the agreement with the Successful Bidder to the extent it is based on a ground that should have been known prior to the Objection Deadline.

### BASIS FOR RELIEF

**I.      The Bidding Procedures Should be Approved
and the Bidding Procedures Order Entered**

36.     The Bidding Procedures, which are standard for the sale of assets in similar cases, will ensure that the Trustee receives the greatest benefit available from the Sale of the Property.   Further, the Bidding Procedures are fair and open, and do not unfairly favor any potential purchaser.   Finally, the Trustee submits that the Bidding Procedures set out a timeframe that will allow potential purchasers sufficient time to conduct due diligence and submit informed bids, while still providing for the prompt sale of the Property, given that a property is a school and a sale must close with sufficient time to allow any potential purchaser to prepare the premises for the upcoming school year in the fall.

37.     The Trustee respectfully submits that the Bidding Procedures are reasonably designed to ensure that the Debtors' estates receive the highest or best

18

purchase price for the Property and, therefore, warrant Court approval.

### A. The Sale Schedule and Notice are Reasonable and Should be Approved

38. Bankruptcy Rule 6004(a) provides that notice of a proposed sale of property of the estate, other than in the ordinary course of business, shall be given to all known creditors and parties-in-interest pursuant to Bankruptcy Rule 2002(a)(2), (c)(1), (i) and (k).

39. Bankruptcy Rule 2002(a) requires that "the clerk, or some other person as the court may direct," give "the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of: (2) a proposed use, sale, or lease of property of the estate other than in the ordinary course of business—unless the court, for cause, shortens the time or orders another method of giving notice[.]" Fed. R. Bankr. P. 2002(a). Bankruptcy Rule 2002(c) requires that this notice include "the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections." Fed. R. Bankr. P. 2002(c).

40. Bankruptcy Rule 6004(c) requires that an application pursuant to section 363(f) of the Bankruptcy Code for authority to sell property free and clear of liens or other interests "shall be served on the parties who have liens or other interest in the property to be sold." Fed. R. Bankr. P. 6004(c). The Trustee intends to provide notice of the Bidding Procedures and the proposed Sale to parties holding liens and interests in the Property so that they have an opportunity to review the terms of the Sale and the relief requested. Accordingly, the Trustee submits that Rule 6004(c) is satisfied.

41. As described above, the Trustee is proposing that the Bid Deadline be set approximately twenty-seven (27) days following the filing of this Application, with the Auction to be held the following day. The Trustee also proposes that the Sale Hearing take place on June 25, 2026, twenty-eight (28) days following the hearing on

19

this Application.  The Trustee submits that this timeline is appropriate because of the nature of the Property and to accommodate the needs of the most likely potential purchasers for this Property.  As set forth above, the Property is a schoolhouse, and the Stalking Horse Bidder intends to operate a school at the Property if it consummates the Stalking Horse APA.  The Stalking Horse Bidder has indicated that it requires a sale to close by the end of June to have sufficient time to prepare the premises for the upcoming school year in August.  Moreover, the procedures and time periods are supported by the Lender.

42.    The Bidding Procedures Order and Notice of Auction and Sale Hearing sets forth all the information a potential bidder and any other party in interest should require  concerning the bidding process for the Property, including:   the property of the estate that is being sold by the Trustee;   the terms of the Sale;  notice of the Bidding Procedures and information on how to obtain a copy of the Bidding Procedures;   the Bid Deadline;   the time, date, and location of the Auction;   and the time, date, and location of the Sale Hearing.   The Bidding Procedures Order and Notice of Auction and Sale Hearing will be served on all of the Notice Parties, all of the Debtor's known creditors, and all of the parties that inspected or otherwise expressed an interest to BKREA in acquiring the Property.

43.    The Trustee respectfully submits that all of these notice procedures satisfy the requirements of Bankruptcy Rules 2002 and 6004 and Local Rules 6004-1 and 6004-2, and respectfully requests that the Court approve them.[11]

---

[11]    To the extent any of the proposed deadlines do not satisfy the applicable requirements of the Bankruptcy Rules, the Local Rules, or the Sale Guidelines, the Trustee respectfully submits that, based on the foregoing, cause exists to modify such requirements given the circumstances of these Chapter 7 Cases and the nature of the Property.

**B.     The Bid Protections Should Be Approved**

44.     The Trustee seeks authority to provide customary "stalking horse" bid protections to the Stalking Horse Bidder in the form of the Breakup Fee, equal to 2.5% of the Purchase Price and the Expense Reimbursement of up to $40,000.  The use of bid protections, such as break-up fees and expense reimbursements, is a normal and in many cases necessary component of sales under the Bankruptcy Code. *See Official Comm. Of Subordinated Bondholders v. Integrated Res., Inc.*, 147 B.R. 650, 659-60 (S.D.N.Y. 1992) ("Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . [due to the] duty to encourage bidding, break-up fees can be necessary to discharge [such] duties to maximize value.")

45.     Bidder protections, such as the Breakup Fee, are granted "when a bidder provides a floor for bidding by expending resources to conduct due diligence and allowing its bid to be shopped around for a higher offer." *In re Metaldyne Corp.*, 409 B.R. 661, 670 (Bankr. S.D.N.Y. 2009).  In this District, courts evaluate break-up fees based on a three-part test:  (1) whether the relationship of the parties who negotiated the breakup fee is tainted by self-dealing or manipulation;  (2) whether the fee hampers, rather than encourages, bidding;  and (3) whether the amount of the fee is unreasonable relative to the proposed purchase price.  *See id.;  see also In re Integrated Resources*, 147 B.R. 650, 659 (Bankr. S.D.N.Y. 1992).

46.     The Trustee asserts that the standard for approval of the Breakup Fee is met.  The Stalking Horse Bidder and the Debtors are not related or affiliated parties, and the Breakup Fee was negotiated at arms'-length and there has not been any self-dealing or manipulation.  Rather, the Breakup Fee is meant solely to incentivize the Stalking Horse Bidder to provide the floor for bidding and incentivize others to participate in the Auction by providing them the opportunity to base their bid off of the

21

Stalking Horse APA.  The Trustee believes the Breakup Fee will establish a floor for bidding that may ultimately increase the net purchase price received by the Trustee in exchange for the Property.  *See, e.g.*, *In re Marrose Corp.*, Case Nos. 89-B-12171 (CB) to 89-B-12179 (CB), 1992 WL 33848, at *5 (Bankr. S.D.N.Y. Feb. 15, 1991) (stating that "agreements to provide reimbursement of fees and expenses are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers").  Moreover, the Breakup Fee is reasonable in relation to the size of the proposed Sale and the facts and uncertainties of this transaction.  The Breakup Fee is 2.5% of the Purchase Price, an amount well below or similar to break-up fees or expense reimbursements approved in other similar cases.  *See, e.g., In re the D&M Capital Group, LLC*, No. 19-11711 (SCC) (Bankr. S.D.N.Y. Feb. 2, 2021) [Docket No. 174] (approving a 3% break-up fee);  *In re 60 91st Street Corp.*, No. 20-10338 (SCC) (Bankr. S.D.N.Y. Sept. 18, 2020) [Docket No. 162] (approving a 3% break-up fee and expense reimbursement not to exceed $25,000);  *In re Cabrini Med. Ctr.*, Case No. 09-14398 (AJG) (Bankr. S.D.N.Y. Dec. 30, 2009) (approving a break-up fee of 3.75% for an $80 million sale);  *In re Bearingpoint, Inc.* No. 09-10691 (REG) (Bankr. S.D.N.Y. Apr. 7, 2009) (approving a break-up fee of 3% on a $350 million sale);  *In re Metaldyne Corp.*, 409 B.R. at 670 (approving break-up fee of less than 3%);  *In re Adelphia Bus. Solutions, Inc.*, No. 02-11389 (REG) (Bankr. S.D.N.Y. Dec. 16, 2002) (approving a termination fee of 2.5% on a $10.7 million sale).

47.     Accordingly, the Trustee respectfully submits that the Bid Protections will not deter or chill bidding, are reasonable, and will enable the Trustee to maximize the value of the estates to ensure that the estates receive the highest or best purchase price for the Property and, therefore, warrant Court approval.

## II.     The Sale Order Should Be Entered

### A.     The Sale of the Property is a Sound Exercise of the Trustee's Business Judgment

48.     Bankruptcy Code section 363(b) governs transactions outside the ordinary course of business involving property of a debtor's estate and provides, in relevant part, that, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…." 11 U.S.C. § 363(b).

49.     A Chapter 7 trustee's sale or use of property of the estate outside the ordinary course of business should be approved by the Court if the Trustee can demonstrate a sound business justification for the proposed transaction. *See In re Chrysler LLC*, 576 F.3d 108, 117-18 (2d Cir. 2009) (citing *In re Iridium Operating LLC*, 478 F.3d 452, 466 (2d Cir. 2007) ("In this Circuit, the sale of an asset of the estates under § 363(b) is permissible if the 'judge determining [the] § 363(b) application expressly find[s] from the evidence presented before [him or her] at the hearing [that there is] a good business reason to grant such an application.'"); *In re Gen. Motors Corp.*, 407 B.R. 463, 491 (Bankr. S.D.N.Y. 2009).

50.     Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets. *See, e.g. In re Culp*, 550 B.R. 683, 697 (D. Del. 2015) ("'In determining whether to authorize use, sale or lease of property of the estate under Section 363, courts require the [debtor] to show that a sound business purpose justifies such actions.' If the [debtor's] decision evidences a sound business purpose, then the Bankruptcy Court should approve the sale.") (quoting *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999)); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (internal citations and quotations omitted) ("Under Section

23

363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification'"); *see also In re Integrated Res., Inc.*, 147 B.R. at 656 (applying business judgment rule to bidding procedures and incentives and noting that "[c]ourts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence").

51.     The Property is the primary asset of Owner LLC's estate and is the primary source of funds to pay administrative fees and expenses of the Owner Chapter 7 Case, as well as any allowed claims.  The Trustee, in consultation with his professionals, has determined in his business judgment that selling the Property is in the best interests of the estate because there is no other viable alternative to pay creditors and expenses of the estate.  *See* Knakal Decl. ¶¶ 11-12.

52.     The services provided by the Trustee and his retained professionals have benefitted the holders of secured claims.  Consequently, those administrative fees and expenses, when allowed, and priority tax claims, should be paid from the net sale proceeds before payments are made to the holders of allowed secured claims.  *See* 11 U.S.C. § 506(c) ("The trustee may recover . . . reasonable, necessary costs and expenses . . . to the extent of any benefit to the holder of such claim.");  *see also In re Pudgie's Dev. of NY, Inc.*, 239 B.R. 688, 697 (S.D.N.Y. 1999) (allowing debtor's counsel to surcharge attorney fees pursuant to section 506(c) of the Bankruptcy Code against secured collateral to the extent that such services benefited the creditor);  *Matter of Stable Mews Assocs.*, 49 B.R. 395, 406 (Bankr. S.D.N.Y. 1985) (allowing Trustee's commission and counsel fees to be surcharged against secured creditor collateral pursuant to section 506(c) of the Bankruptcy Code over objection of second mortgage holder).

53.     Here, the 506(c) Stipulation between the Trustee and Lender expressly enables the Trustee to recover these fees and expenses.

24

54.     Consequently, the Trustee has determined in his business judgment that selling the Property pursuant to the Stalking Horse APA, or such higher or better offer which may be received, is in the best interests of the Estate.

55.     Moreover, the Trustee submits that the Purchase Price is fair and reasonable in light of the current real estate market, sale listings for comparable properties in the neighborhood where the Property is located, the extensive marketing of the Property that has occurred, and the offers received for the Property to date. *See* Knakal Declaration ¶ 11-12. Finally, any concern that the Trustee may be able to sell the Property on better overall terms than those provided for in the Stalking Horse APA should be allayed by the fact that the Stalking Horse APA will be tested through the Bidding Procedures and at the Auction.

56.     Based upon the foregoing, the Trustee respectfully submits that the Sale of the Property offers the greatest benefit to the Debtors' estates, and is a sound exercise of his business judgment.

B.     **The Property Should be Sold Free and Clear of any Interests to the Extent Permitted by Section 363(f) of the Bankruptcy Code**

57.     Pursuant to section 363(f) of the Bankruptcy Code, a Trustee may sell property under Bankruptcy Code section 363(b) free and clear of any interests if one of the following conditions is satisfied:   (a) applicable nonbankruptcy law permits the sale of the property free and clear of such interest;   (b) the entity holding the lien, claim or interest consents to the sale;   (c) the interest is a lien and the price at which such property to be sold is greater than the aggregate value of all liens on the property;   (d) the interest is in bona fide dispute;   or (e) the entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest. *See* 11 U.S.C. § 363(f);   *see also See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f

25

any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."); *In re Smart World Tech., LLC*, 423 F.3d 166, 169 n. 3 (2d Cir. 2005) ("Section 363 permits sales of assets free and clear of claims and interests. It thus allows Purchaser . . . to acquire assets [from a debtor] without any accompanying liabilities.").

58.     The Trustee respectfully submits that cause exists to authorize the Sale of the Property pursuant to the Stalking Horse APA free and clear of all interests and liens, as described herein and as provided in the Stalking Horse APA, because more than one of the conditions contained in Bankruptcy Code section 363(f) are satisfied, with such liens to attach to the Sale proceeds.

    ***i.  Section 363(f)(2) Is Satisfied:  Holders of Liens
      and Interests Implied Consent to the Sale***

59.     All parties in interest will be given sufficient opportunity to object to the relief requested by the Trustee, and any such entity that does not object to the Sale should be deemed to have consented. *See Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who *might* have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same). Moreover, the Lender, the senior secured party, has expressly

26

consented to the sale.  Courts in this district have applied the same principle.  *See In re*

*Enron Corp.,* 2003 WL 21755006 at *2 (AJG) (Bankr. S.D.N.Y. 2003) (order deeming all

parties who did not object to proposed sale to have consented under section 363(f)(2)).

### ii.    Section 363(f)(5) Is Satisfied:  Any Party Holding a Lien Can Be Compelled to Accept Monetary Satisfaction of a Lien

60.    The Sale satisfies Bankruptcy Code section 363(f)(5) because (a) any

entity holding a lien against the Property could be compelled to accept a monetary

satisfaction of its lien, and (b) the Trustee proposes that any lien against the Property

will attach to the net proceeds of the Sale, subject to all claims and defenses that the

estate may possess regarding such liens, with the same priority, validity and extent they

had on the Petition Date.

61.    Here, entities that hold liens against the Property can be compelled

to accept a monetary satisfaction of their liens through a foreclosure sale.  *See In re*

*Urban Commons 2 West LLC*, 668 B.R. 42, 49-50 (Bankr. S.D.N.Y. 2025) (finding "the

availability of a foreclosure proceeding under state law satisfies Bankruptcy Code §

363(f)(5)");  *see also In re BAMC Development Holding, LLC*, No. 8:22-BK-1487-CPM, 2025

WL 770521, at *19 (M.D. Fla. Mar. 11, 2025) ("The existence of judicial and nonjudicial

foreclosure and enforcement actions under state law, among other proceedings, have

been held to satisfy § 363(f)(5).") (quoting *In re Hamilton Road Realty, LLC*, No. 8-19-

72596, 2021 WL 1620046, at *5 (Bankr. E.D.N.Y. Apr. 26, 2021);  *In re Boston Generating*,

440 B.R. 302, 333 (Bankr. S.D.N.Y. 2010) (same).

62.    As a result, the Trustee respectfully submits the Sale of the

Property free and clear of all liens satisfies section 363(f)(5) of the Bankruptcy Code.

63.    Based upon all of the foregoing, sufficient cause exists for the sale

of the Property free and clear of all liens, with the liens to attach to the proceeds of the

Sale.

### C. The Stalking Horse Bidder Should be Afforded All Protections Under Section 363(m) as a Good Faith Purchaser

64.     Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from the estate notwithstanding that the sale conducted under section 363(b) may later be reversed or modified on appeal. Specifically, section 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)] … does not affect the validity of a sale … to an entity that purchased … such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale … were stayed pending appeal.

11 U.S.C. § 363(m); *see also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) … provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

65.     While the Bankruptcy Code does not define "good faith," courts have held that a purchaser shows its good faith through the integrity of its conduct during the course of the sale proceedings, finding that where there is a lack of such integrity, a good-faith finding may not be made. *See, e.g., In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)) ("Typically, the misconduct that would destroy a [buyer's] good faith status at a judicial sale involves fraud, collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *In the Matter of Andy Frain Services, Inc.*, 798 F.2d 1113

28

(7th Cir. 1986) (same); *In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (same).

66.    Here, the Stalking Horse Bidder and Trustee have satisfied the requirements of Section 363(m).   The Stalking Horse APA is the result of arm's-length, good-faith negotiations between the Trustee and the Stalking Horse Bidder, and each of them have been represented by their respective professionals.   The Trustee submits that the Stalking Horse Bidder is a "good-faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code and should be entitled to its protection.   Accordingly, the Trustee requests that the Court make a finding that the Stalking Horse Bidder is entitled to the protections of section 363(m) of the Bankruptcy Code.

67.    To the extent that the Stalking Horse Bidder is not the Successful Bidder at the Auction, the Trustee will seek a finding from the Court at the Sale Hearing that the Successful Bidder is a good faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

**D.    The Broker Commission Should be Allowed and Paid**

68.    Pursuant to the BKREA Retention Order, BKREA is entitled to the Broker Commission, which, in the event the purchaser is represented by a broker, consists of four percent (4.0%) of the Purchase Price for the Property, out of which BKREA shall compensate the purchaser's broker with two percent (2.0%) of the Purchase Price.  The BKREA Retention Order permits BKREA to request the payment of the Broker Commission in an application for approval of the Sale of the Property.  *See* BKREA Retention Order at 3.

69.    Here, BKREA procured the Stalking Horse Bidder, who is represented by an outside broker, Denham Wolf (the "Outside Broker"), which entitles BKREA to a Broker Commission of four percent (4.0%), of which half (or 2% of the

29

Purchase Price) shall be paid to the Outside Broker.[12]

70.     Because the Broker Commission was a material term of the Listing Agreement, which was approved by the Court in the BKREA Retention Order, and pursuant to its terms, the Trustee is "authorized to compensate BKREA, and the Outside Broker . . . pursuant to the commission fee arrangement set forth in the BKREA Listing Agreement", *see* BKREA Retention Order at 3, the Trustee respectfully submits that the Broker Commission should be approved and the Trustee should be authorized to pay the Broker Commission to BKREA from the proceeds of the Sale.

## **WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)**

71.     The Trustee respectfully requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).   In light of the notice of the Sale that was provided to parties in interest, and the fact that liens against the Property will attach to the proceeds (with the exception of Permitted Liens and interests governed by section 363(e)), yet continue to accrue interest, the Trustee submits that no party will be prejudiced by a waiver of the stay imposed by Bankruptcy Rule 6004(h) and that such waiver will help to limit the accrual of interest charges.

## **NO PRIOR REQUEST**

72.     No prior application for the relief requested herein has been made to this or any other Court.

---

[12]    The amount of the Broker Commission may increase if the total sale price increases as a result of the Auction.

## CONCLUSION

**WHEREFORE** the Trustee respectfully requests entry of the orders authorizing the relief requested herein and such other and further relief as is just and proper.

Dated:  New York, New York
          May 19, 2026

> ALBERT TOGUT, not individually but solely in his capacity as Chapter 7 Trustee,
> By His Attorneys,
> TOGUT, SEGAL & SEGAL LLP
> By:
>
> */s/ Brian F. Moore*
> BRIAN F. MOORE
> ANTHONY L. GREENE
> CHRISTIAN RIBEIRO
> One Penn Plaza, Suite 3335
> New York, NY 10119
> (212) 594-5000

31

**Exhibit A**

**Bidding Procedures Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                                :
In re:                                          :        Chapter 7
                                                :
MANHATTAN COUNTRY SCHOOL *et al.,*[1]           :        Case No. 25-11009 (DSJ)
                                                :
                                Debtors.        :        (Jointly Administered)
                                                :
------------------------------------------------------------------x

**ORDER APPROVING (A) BIDDING PROCEDURES FOR
THE SALE OF REAL PROPERTY, (B) STALKING HORSE PURCHASE
AGREEMENT, (C) BID PROTECTIONS IN FAVOR OF THE STALKING HORSE
BIDDER, (D) DATE AND TIME FOR AN AUCTION AND A HEARING FOR
APPROVAL OF THE SALE, AND (E) APPROVING THE FORM AND MANNER
OF NOTICE THEREOF;  (II) AN ORDER APPROVING (A) THE SALE OF
REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES
AND OTHER INTERESTS;  AND (B) PAYMENT OF BROKER COMMISSION**

Upon the application (the "Application")[2] of Albert Togut, not

individually but solely in his capacity as the Chapter 7 trustee of the estate of

Manhattan Country School ("MCS") and the Chapter 7 Trustee (in such respective

capacities, as applicable, the "Trustee") of the estate of West 85th Street Owner LLC

("Owner LLC," and, together with MCS, the "Debtors"), by his attorneys, Togut, Segal

& Segal LLP, for entry of an order pursuant to sections 105(a), 330, 363 and 506(c) of title

11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 9006(c), and

9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 6004-

1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local

Rules"), and the *Amended Guidelines for the Conduct of Asset Sales Established and Adopted

by the United States Bankruptcy Court for the Southern District of New York* pursuant to

---

[1]     The Debtors in these cases, along with the last four digits of their federal tax identification numbers
        are (i) Manhattan Country School (6971) (Case No. 25-11009 (DSJ); and (ii) West 85th Street Owner
        LLC (6971) (Case No. 25-11922) (DSJ).

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the
        Application or the Bidding Procedures.

2

General Order M-383 (the "Sale Guidelines") (a) approving the proposed bidding procedures, annexed hereto as **Exhibit 1** (the "Bidding Procedures") for the Trustee's proposed sale (the "Sale") of Owner LLC's real property located at 150 West 85th Street, New York, New York, 10024 (the "Property"), (b) approving the proposed asset purchase agreement with Geneva School of Manhattan, a New York not-for profit corporation or its permitted assignee or affiliate (the "Stalking Horse Bidder"), annexed to the Application as Exhibit B (the "Stalking Horse APA"), (c) approving the Bid Protections in favor of the Stalking Horse Bidder, (d) scheduling an auction (the "Auction") and a hearing (the "Sale Hearing") to consider approval of the Sale of the Property to the Successful Bidder, and (e) approving the form and manner of notice of the Auction and the Sale Hearing;   and this Court having considered the Application; and based on the Application, it appearing that the relief requested in the Application is in the best interests of the Debtors' estates and all parties in interest;   and after due deliberation thereon and good cause appearing therefor, it is hereby:

### FOUND AND DETERMINED THAT:[3]

A.     Jurisdiction.  This Court has jurisdiction over the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.   Consideration of the Application and the relief requested therein is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N) and (O).   Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     Notice of the Application.  Good and sufficient notice of the relief sought in the Application has been given, and no further notice is required.   A reasonable opportunity to object or be heard regarding the relief requested in the

---

[3]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, when appropriate.  *See* Fed. R. Bankr. P. 7052.

3

Application has been afforded to all interested persons and entities, including the Notice Parties.

C.    Notice of the Auction and Sale Hearing.  The proposed notice of the Bidding Procedures, the Auction, the Sale Hearing and the proposed Sale, as set forth in the Application, including the Notice of Auction and Sale Hearing, the form of which is attached hereto as **Exhibit 2**, is good, appropriate, sufficient, and is reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Auction, the Sale Hearing and the Sale, and no other or further notice of the Sale, the Auction or the Bidding Procedures, other than as set forth herein and in the Application, is required.

D.    Designation of Stalking Horse Bid.  The Stalking Horse APA represents the highest or best offer the Trustee received during the sale process for the Property and the Trustee's designation of the Stalking Horse APA as a "stalking horse bid" is a sound exercise of his business judgment.  Without the Stalking Horse APA, the Trustee would likely realize a lower price for the Property.  The contributions of the Stalking Horse Bidder to the process appear to have provided a substantial benefit to the Trustee, the estates, and the creditors in these Chapter 7 Cases.  The Stalking Horse APA will enable the Trustee to secure a fair and adequate baseline price for the Property at the Auction (if any), and accordingly, will provide a clear benefit to the estates, the Debtors' creditors, and all other parties in interest.

E.    Designation of Stalking Horse Bidder.  The Stalking Horse Bidder shall act as the "stalking horse bidder" pursuant to the Stalking Horse APA, which shall be subject to higher or better offers in accordance with the Bidding Procedures.  The Stalking Horse Bidder is not an "insider" or "affiliate" of the Debtors or the Trustee, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity

4

of incorporators, directors, or controlling stockholders exists between the Stalking

Horse Bidder, the Debtors, or the Trustee.  Designation of the Stalking Horse Bidder as

a "stalking horse bidder" and the Stalking Horse APA as a "stalking horse" purchase

agreement is in the best interests of the estates and creditors, and it reflects a sound

exercise of the Trustee's business judgment.

F.      Stalking Horse Bid Protections.  The Stalking Horse Bid Protections

(as defined in the Application) (i) have been negotiated by the Stalking Horse Bidder

and the Trustee and their respective advisors at arm's-length and in good faith, and (ii)

are necessary to ensure that the Stalking Horse Bidder will continue to pursue its

Stalking Horse APA and the sale transaction contemplated thereby.  The Bid Protections

are a material inducement for, and condition of, the Stalking Horse Bidder's execution

of the Stalking Horse APA.  Unless it is assured that the Bid Protections will be

available, the Stalking Horse Bidder is unwilling to remain obligated to consummate

the Sale or otherwise be bound under the Stalking Horse APA (including the

obligations to maintain its committed offer while such offer is subject to higher or better

offers as contemplated by the Bidding Procedures).

G.      The Trustee has articulated good and sufficient cause for this Court

to grant the relief requested in the Application, including this Court's (a) approval of

the Bidding Procedures, attached hereto as **Exhibit 1**;   (b) designation of the Stalking

Horse Bidder and approval of the Bid Protections;  (c) approval of the Notice of Auction

and Sale Hearing.

H.      The Trustee has articulated good and sufficient cause for, and the

best interests of the Debtors' estates will be served by, this Court scheduling a

subsequent hearing to consider whether to grant the remainder of the relief requested in

the Application, including approval of the proposed Sale free and clear of, among other

5

things, all liens, claims, encumbrances, and interests, other than permitted exceptions (collectively, "Liens"), with such Liens to attach to the proceeds of the Property.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Application is GRANTED to the extent provided in this Order.

2.      Except as specified below, all objections to entry of this Order or to the relief provided herein and requested in the Application that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled in their entirety.

**THE BIDDING PROCEDURES**

3.      The Bidding Procedures, as set forth in **Exhibit 1** hereto and incorporated herein by reference as if fully set forth herein, are hereby approved in all respects and shall govern all bids and bid proceedings relating to the Property.  The procedures and requirements set forth in the Bidding Procedures, including those associated with submitting a "Qualified Bid" are fair, reasonable, and appropriate, and are designed to maximize recoveries for the benefit of the estates, creditors, and other parties in interest.

4.      The deadline for submitting bids for the Property shall be **June 15, 2026, at 12:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline"), unless otherwise extended by the Trustee in consultation with the Lender.   In the event the Bid Deadline is extended, the Trustee may adjourn the dates for the Auction and the Sale Hearing, with notice to the Stalking Horse Bidder, the Lender, all parties with an interest in the Property, and all known Potential Bidders.  Any party that does not submit a Qualified Bid by the Bid Deadline in accordance with the Bidding Procedures will not be allowed to (a) submit any offer after the Bid Deadline or (b) participate in the Auction.

6

5.      Except as may be limited by the Stalking Horse APA, and subject to the consultation rights provided for in the Bidding Procedures, the Trustee is authorized to extend the deadlines set forth in this Order and/or adjourn, continue or suspend the Auction and/or the Sale Hearing for any reason, without further order of this Court, by filing a notice with this Court and serving such notice on all Notice Parties and Potential Bidders.

6.      The Trustee is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

7.      Notwithstanding anything to the contrary in the Bidding Procedures, any credit bid submitted by the Lender shall be made at or prior to the Auction, and a failure by the Lender to make a timely credit bid shall be deemed a waiver of its right to make a credit bid.

8.      All Potential Bidders submitting bids determined by the Trustee to be Qualified Bids in accordance with the Bidding Procedures are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the Sale or transfer of the Property.

9.      Absent further order of the Court, no Qualified Bidder (other than the Stalking Horse Bidder solely as provided herein) shall be entitled to any expense reimbursement, break-up fee, termination fee, or other similar fee or payment in connection with the Sale of the Property, and by submitting a bid, such Qualified Bidder is deemed to have waived their right to request or to file with the Court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code, or otherwise.

### STALKING HORSE BID PROTECTIONS

10.     The Stalking Horse APA shall be subject to higher or better

7

Qualified Bids, in accordance with the Bidding Procedures.

11.     The Bid Protections are approved in their entirety.  The Breakup Fee and the Expense Reimbursement (each, as defined in the Application) shall be payable in accordance with, and subject to the terms of, the Stalking Horse APA, and the Bidding Procedures.

12.     The Trustee is authorized to pay the Breakup Fee and Expense Reimbursement by wire transfer of immediately available funds in accordance with the Stalking Horse APA and without further order of the Court.  Upon receiving the purchase price from a Successful Bidder (other than the Stalking Horse Bidder), the Trustee shall set aside an amount in cash for payment of the Breakup Fee and Expense Reimbursement, pursuant to the terms of the Stalking Horse APA.

## THE AUCTION

13.     The Auction shall commence on **June 23 2026 at 12:00 p.m. (prevailing Eastern Time)** at the New York offices of Togut, Segal & Segal, LLP, attorneys for the Trustee, One Penn Plaza, Suite 3335, New York, NY 10119, or such later time or other place, within New York City or conducted virtually, as decided by the Trustee.  The Trustee shall notify all Qualified Bidders of such later time or place; provided, however, in the event that no Qualified Bids other than the one submitted by the Stalking Horse Bidder are received by the Bid Deadline, the Trustee shall not be required to conduct an Auction, and in such event the Trustee shall file a notice of cancellation of the Auction on the electronic docket that is maintained for the jointly-administered cases, and serve such notice on all of the Notice Parties and proceed with the approval of the Sale of the Property to the Stalking Horse Bidder.

**SALE HEARING**

14.     The Sale Hearing shall be held before the Honorable David S. Jones, United States Bankruptcy Judge of the Bankruptcy Court, on **June 25, 2026 at 10:00 a.m. (prevailing Eastern Time)** at the United States Bankruptcy Court, One Bowling Green, New York, New York 10004, at which time this Court shall consider:   (a) approval of the Sale to the Successful Bidder free and clear of all Liens;   (b) entry of the proposed Sale Order, substantially in the form attached to the Application as Exhibit C;   (c) any other issues or objections that are timely interposed by any parties;   and (d) the granting of such other or further relief as this Court may deem just or proper.

15.     Except as may be limited by the Stalking Horse APA, the Sale Hearing may be adjourned by the Trustee, after consultation with the Successful Bidder, as applicable, from time to time without further order of this Court, by filing a notice on the electronic docket that is maintained for the jointly-administered cases, and serving such notice on the Notice Parties and all Qualified Bidders.

16.     The Successful Bidder (which may be the Stalking Horse Bidder) shall appear at the Sale Hearing and be prepared, if necessary, to have a representative testify in support of the Stalking Horse APA and the Successful Bidder's ability to close in a timely manner.

**NOTICE**

17.     The Notice of Auction and Sale Hearing, substantially in the form attached hereto as **Exhibit 2**, is hereby approved.

18.     Within one (1) business day after the entry of this Order, the Trustee shall cause this Bidding Procedures Order, together with the exhibits hereto, including the Bidding Procedures and the Notice of Auction and Sale Hearing, to be

9

served on all of the Notice Parties and all of the Debtor's known creditors, all of the

parties that have recorded Liens against the Property. The Trustee may serve only the

Notice of Auction and Sale Hearing and the Bidding Procedures to parties which the

Trustee and the Broker have identified as having an interest in acquiring the Property.

19.     The notice as set forth in the preceding paragraph shall constitute

good and sufficient notice of the Auction, the Sale Hearing and the proposed Sale

Order, and no other or further notice of the Auction, the Sale Hearing and/or the

proposed Sale Order shall be necessary or required.

20.     Notwithstanding the applicability of Local Rule 6004-1(h) or any

other provision of the Bankruptcy Rules or Local Rules stating to the contrary, the

requirement for publication notice is hereby waived.

### OBJECTIONS TO THE SALE

21.     Objections, if any, to the Sale of the Property pursuant to the

Application, other than with respect to the relief granted herein, shall be filed with this

Court and served so as to be **actually received** no later than **4:00 p.m. (prevailing

Eastern Time) on June 24, 2026** (the "Objection Deadline"), by: (a) counsel to the

Trustee, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York

10119, Attn: Anthony L. Greene (agreene@teamtogut.com); (b) counsel for the Stalking

Horse Bidder, Katten Muchin Rosenman LLP, 50 Rockefeller Plaza, New York, NY

10020, Attn: Eddy Park, Esq. (eddy.park@katten.com); (c) co-counsel to the Debtors,

Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019, Attn:

Brian S. Lennon, Esq. (blennon@willkie.com); (d) co-counsel to the Debtors, Lester

Korinman Kamran & Masini, P.C., 600 Old Country Road Suite 330, Garden City, New

York 11530, Attn: Roy J. Lester, Esq. (rlester@lesterfirm.com); (e) counsel for Lender,

10

Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, 9th Floor, East Meadow, NY 11554, Attn: Richard J. McCord Esq. (rmccord@certilmanbalin.com);  (f) counsel for U.S. Bank National Association, Shipman & Goodwin LLP, One Constitution Plaza, Hartford, CT 06103, Attn: Kathleen M. LaManna (klamanna@goodwin.com) and Anthony R. Scarcella (ascarcella@goodwin.com);  (g) the U.S. Trustee, One Bowling Green, Room 534, New York, NY 10004, Attn: Mark Bruh, Esq. (mark.bruh@usdoj.gov); and (h) all parties that have filed a notice of appearance in the Chapter 7 Cases, and shall also set forth the specific grounds, legal and/or factual, for the objection.  Only timely filed and served responses, objections, and other pleadings may be considered by this Court at the Sale Hearing.

22.     The failure of any person or entity to file an objection to the Application or before the Objection Deadline shall forever bar any such objection to the Application or the relief requested therein, or to the consummation of the Sale contemplated by the Stalking Horse APA or agreement with the Successful Bidder(s), if any, including the transfer of the Property free and clear of Liens.  Failure to object shall constitute consent for the purposes of section 363(f) of the Bankruptcy Code.

23.     The deadline to file any replies to any objections to the Sale is **June 25, 2026 at 10:00 a.m. (prevailing Eastern Time)** or the Trustee may address any objections on the record at the Sale Hearing.

**ADDITIONAL PROVISIONS**

24.     The terms and conditions of this Order shall be effective immediately upon its entry.

25.     Notwithstanding the applicability of Bankruptcy Rule 6004(h) or any other provision of the Bankruptcy Rules or Local Rules stating to the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon

11

its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived.

26.     The Trustee is authorized and empowered to take such steps, incur and pay such costs and expenses, and do such things as may be reasonably necessary to fulfill the notice requirements established by this Order.

27.     Entry of this Order shall in no way impair the ability of the Court, United States Trustee, or the Trustee to implement or enforce other orders of the Court entered in the Chapter 7 Cases, and all such orders shall continue in full force and effect.

28.     This Court shall retain exclusive jurisdiction over any matter or dispute arising from or relating to the implementation, interpretation, or enforcement of this Order.

DATED:  New York, New York
        May __, 2026

_____
HONORABLE DAVID S. JONES
UNITED STATES BANKRUPTCY JUDGE

12

# Exhibit 1

## Bidding Procedures

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Brian F. Moore
Anthony L. Greene
Christian Ribeiro

*Attorneys for Albert Togut,*
*Not Individually But Solely in His Capacity*
*as Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

In re:  :  Chapter 7
 :
MANHATTAN COUNTRY SCHOOL *et al.*,[1]  :  Case No. 25-11009 (DSJ)
 :
 Debtors.  :  (Jointly Administered)
 :

------------------------------------------------------------------------x

## BIDDING PROCEDURES

The following bidding procedures (the "Bidding Procedures") shall govern the sale by Albert Togut, not individually but solely in his capacity as Chapter 7 trustee (the "Trustee") of the estates (the "Estates") of the above captioned debtors (the "Debtor") in the above captioned jointly-administered cases (the "Chapter 7 Cases"), of the Debtor's real property located at 150 West 85th Street, New York, New York 10024 (the "Property") pursuant to the sale contract for the Property attached as Exhibit A (the "Stalking Horse APA") to the *Trustee's Application for Entry of: (I) an Order Approving (A) Bidding Procedures for the Sale of Real Property, (B) Designation of Stalking Horse Bidder, (C) Bid Protections in Favor of the Stalking Horse Bidder, (D) Date and Time for Auction and a Hearing for Approval of the Sale, and (E) the Form and Manner of Notice Thereof; and (II) an Order Approving (A) the Sale of Real Property Free and Clear of Liens, Claims, Encumbrances and Other Interests; and (B) Payment of Broker Commission* [Docket No. __] (the "Application"),[2] subject to higher and better offers as provided in the Bidding Procedures. On [_____], 2026, the Bankruptcy Court entered an order approving the Application, including these Bidding Procedures [Docket No. ___] (the "Bidding Procedures Order").

The Bidding Procedures Order authorizes the Trustee to enter into the Stalking Horse APA with Geneva School of Manhattan, a New York not-for-profit corporation, or its permitted assignee or affiliate (the "Stalking Horse Bidder") and approves the sale of the Property to the Stalking Horse Bidder for a purchase price of

---

[1]  The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) Manhattan Country School (6971) (Case No. 25-11009 (DSJ); and (ii) West 85th Street Owner LLC (6971) (Case No. 25-11922) (DSJ).

[2]  Capitalized terms not defined herein shall have the meaning ascribed to them in the Application.

2

$20,000,000 (the "Purchase Price") pursuant to the Stalking Horse APA, subject to higher and better bids received through a bidding process and auction (the "Auction"), if any, to be conducted pursuant to these Bidding Procedures.

The Stalking Horse APA includes certain bid protections in favor of the Stalking Horse Bidder (the "Bid Protections") consisting of (i) a break-up fee equal to two and one-half percent (2.5%) of the Purchase Price (i.e., $500,000) (the "Breakup Fee") and (ii) reimbursement of the Stalking Horse Bidder's actual and documented due-diligence and out-of-pocket costs, not to exceed $40,000 (the "Expense Reimbursement").

## DUE DILIGENCE

Parties interested in conducting due diligence regarding the Property (each a "Potential Bidder") should contact the Trustee's retained real estate broker, BK Real Estate Advisors LLC (the "Broker"), Attn: Tom Brady (email: tom.brady@bkrea.com).

The Trustee shall allow Potential Bidders to conduct due diligence regarding the Property;  provided, however, that the Trustee is not obligated to furnish any due diligence information after the Bid Deadline (as defined below).

## QUALIFIED BID REQUIREMENTS

To be considered, any bid submitted by a Potential Bidder for the Property (parties interested in bidding on the Property must submit a separate bid for the Property in accordance with these Bidding Procedures) must be in writing and identify the Potential Bidder by its legal name (including any equity holders or other financial backers, if the Potential Bidder is an entity formed for the purpose of submitting bids or consummating a sale transaction), and any other party that will be participating in connection with the bid or the sale transaction.  The bid must also include language:

    a. stating that the bid is irrevocable through the earlier of the Closing Date and thirty (30) days after the entry of the Sale Order; provided, however, that (a) if a Qualified Bid (defined below) becomes the Successful Bid (as defined below), such bid shall be irrevocable through the Closing Date or such earlier date as such sale contract may be terminated in accordance with its terms, and (b) if the Qualified Bid becomes the Second Highest Bid (defined below), such bid shall remain irrevocable through the earlier of: (i) the closing of the sale with the Successful Bidder;  and (ii) sixty (60) days after the entry of the Sale Order approving the Successful Bid, unless the Successful Bidder fails to close and the Trustee shall have given notice to the Second Highest Bidder that he has decided to consummate the transaction contemplated by the Second Highest Bid, in which case the Second Highest Bid shall

3

remain open through the closing of the sale with such Second Highest Bidder;

b. be submitted in writing to (i) the Trustee's Broker, Attn: Bob Knakal (email: bk@bkrea.com), (ii) counsel to the Trustee, Togut, Segal & Segal LLP, Attn: Anthony Greene, Esq. (email: agreene@teamtogut.com), so as to be received no later than **12:00 p.m. (ET) on June 15, 2026** (the "Bid Deadline") or such other date established by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in the Bidding Procedures Order.

In addition to the foregoing, a "Qualified Bidder" is a Potential Bidder that delivers a binding bid ("Qualified Bid") that satisfies the following:

a. the bid must be for the Property and must be made on the same (or better) terms and conditions as those set forth in the Stalking Horse APA, and must include an agreement substantially similar to such Stalking Horse APA, marked to show any changes thereto;

b. includes a bid for a price at least $640,000 greater than the Purchase Price set forth in the Stalking Horse APA (which amount includes the Bid Protections (defined below)) and under terms which the Trustee believes to be higher or better than the terms set forth in the Stalking Horse APA;

c. is accompanied by a deposit (the "Deposit") in an amount equal to at least 10% of the purchase price proposed by the Potential Bidder, in the form of a wire transfer, certified or cashier's check made payable to: "Albert Togut, as Chapter 7 Trustee"; provided, that, the Trustee, in his reasonable discretion after consultation of the Lender, may waive the requirement to provide a Deposit in the event a request is made for such waiver by any Potential Bidder that is a governmental unit (as defined in section 101(27) of the Bankruptcy Code);

d. is accompanied by sufficient information to demonstrate, in the Trustee's discretion, subject to consultation with the Lender, that the Potential Bidder has the financial ability to timely consummate the proposed transaction, including, but not limited to, current bank account statements, current audited financial statements, commitments or other proof of available and non-contingent financing, and such other forms of financial disclosure and credit quality in support of such Potential Bidder (including financial information from any entities that will finance or

4

guarantee the obligations of such Potential Bidder), which the Trustee requests;

e. is firm and unconditional and not subject to any contingencies that are not also provided in the Stalking Horse APA including, without limitation, further due diligence review or receipt of debt or equity financing;

f. expressly acknowledges that no offer or bid for the Property shall be deemed accepted by, or binding upon, the Debtor's estate unless and until such offer or bid is accepted in writing by the Trustee and approved by order of the Bankruptcy Court;

g. expressly acknowledges that the Property is being sold **"AS IS", "WHERE IS" IN ITS CURRENT CONDITION, WITHOUT ANY REPRESENTATIONS, COVENANTS, GUARANTEES OR WARRANTIES OF ANY KIND OR NATURE WHATSOEVER**, and free and clear of any liens, claims or encumbrances of whatever kind or nature, with such liens, if any, to attach to the proceeds of sale, and is subject to among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; and (d) any building or zoning ordinances or any other applicable municipal regulations and violations thereof; and (e) environmental conditions;

h. states that the Potential Bidder (a) has had an opportunity to conduct due diligence regarding Property prior to making its offer and does not require further due diligence, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Property in making its bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Property, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures; and

i. states that the Potential Bidder has obtained all necessary approvals to make its bid and to enter into and consummate the transaction set forth in the bidder's sale contract;

j. states that the Potential Bidder is not a partner, officer, director, stockholder, agent, employee, insider, or affiliates

of the Debtors, the Debtors' principal(s), the Broker or any relative of any of the foregoing;  provided, that, to the extent that the Potential Bidder is a partner, officer, director, stockholder, agent, employee, insider, or affiliate of the Debtors, the Debtors' principal(s), or any relative of any of the foregoing, or that any of the foregoing have any pecuniary interest whatsoever in the Potential Bidder, such affiliates, connection, or interest must be disclosed and be subject to further inquiry by the Trustee, the creditors, or any party in interest;  and

k. expressly states that that the Potential Bidder has not engaged in any bad faith or collusion in connection with the Auction or Sale.

Except with respect to the Stalking Horse Bidder, a bid shall not entitled any Potential Bidder to any break-up fee, termination fee, transaction fee, expense reimbursement, or any similar type of payment or reimbursement and, by submitting a bid, the Potential Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its bid or participation in any Auction.  Each Potential Bidder (other than the Lender, if applicable) presenting a bid will bear its own costs and expenses (including legal fees) in connection with any proposed sale.

Following entry of the Bidding Procedures Order, the Trustee, after consultation with his professionals and the Lender, may reject any bid that is on terms that are more burdensome or conditional than the terms of the Stalking Horse APA; requires any indemnification of the Potential Bidder other than as set forth in the Stalking Horse APA;  includes non-cash consideration;  entitles the Potential Bidder to any break-up fee, termination fee, or similar type of payment;  is not in conformity with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules of the Bankruptcy Court or an order of this Court;  is from a person or an entity that the Trustee concludes, after consultation with the Lender, does not demonstrate that the party making the bid has the financial ability to consummate the transaction or fulfill financial commitments under its proposal;  or is contrary to the best interests of the Debtor's estate.   In addition, notwithstanding anything contained herein to the contrary, the Trustee shall have the right, after consultation with the Lender, to entertain bids that do not conform to one or more of the requirements set forth herein and deem any such bids as a Qualified Bid.

The Trustee reserves the right to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualified Bid. If a bid is received and, in the Trustee's judgment it is not clear whether the bid is a Qualified Bid, the Debtor and Agent may consult with the Potential Bidder and seek additional information in an effort to establish whether or not the bid is a Qualified Bid.

The Trustee may, after consultation with the Lender, communicate prior to the Auction with any Potential Bidder and may request any additional information

6

reasonably required by the Trustee in connection with his evaluation of such Potential Bidder's bid.

Without the written consent of the Trustee or the Broker, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Bid during the period that such Qualified Bid remains binding as specified herein;  provided, that, any Qualified Bid may be improved at the Auction as set forth herein.

Notwithstanding anything herein to the contrary, although under no obligation to do so, the Lender or its nominee, designee, or assignee is entitled to credit bid jointly up to and including the total Allowed amount of its claim as of the date of the Auction pursuant to 11 U.S.C. § 363(k).  If the Lender is the Successful Bidder (as defined below), the Lender, or its nominee, designee, or assignee may close on the purchase of the Property as otherwise provided in these Bidding Procedures.[3]

By **5:00 p.m. (ET) on June 17, 2026**, the Trustee shall inform each Potential Bidder who has submitted a bid whether it is a Qualified Bidder.

## SALE WITHOUT HOLDING AN AUCTION

If (i) no Qualified Bids have been submitted (other than that submitted by the Stalking Horse Bidder) by the Bid Deadline or (ii) the aggregate value of the highest Qualified Bid by its terms submitted by the Bid Deadline for the Property is for a price and under terms which the Trustee believes to not be higher or better than the Purchase Price in the Stalking Horse APA, the Trustee will report the same to the Bankruptcy Court and proceed with a hearing to approve the sale of the Property (the "Sale Hearing") based on the Stalking Horse APA without holding an auction.

## AUCTION

If the value of the highest or best Qualified Bid submitted (other than that submitted by the Stalking Horse Bidder) on or before the Bid Deadline for the Property (as determined by the Trustee, in consultation with the Lender) is for a price and under terms that the Trustee believes to be equal to or higher or better than the Purchase Price set forth in the Stalking Horse APA, an auction (the "Auction") for the Property will take place on **June 23, 2026 at 12:00 p.m. (ET)** at the New York law offices of Togut, Segal & Segal LLP, One Penn Plaza Suite 3335, New York, NY 10119 (which may also be conducted virtually); provided, however, that the Trustee, in consultation with the Lender, may change the location of the Auction by providing notice of such change to each Qualified Bidder.   Subject to the terms of the Stalking Horse APA, the Trustee may extend the deadlines set forth in the Bidding Procedures Order and/or adjourn, continue or cancel the Auction and/or the Sale Hearing for any reason, including in the event the Trustee determines that a more favorable transaction is available that can be consummated without significant delay, without further order of the Bankruptcy Court, by filing a notice with the Bankruptcy Court and serving

---

[3]    To the extent the Lender submits a credit bid at the Auction, such credit bid shall include cash consideration in an amount equal to the Bid Protections granted to the Stalking Horse Bidder.

7

such notice on all Potential Bidders.

Only a Qualified Bidder that has submitted a timely Qualified Bid will be eligible to participate at the Auction.   The Trustee and his professionals will evaluate all Qualified Bids received and, after consultation with his professionals, will select the Qualified Bid that reflects the highest or best offer for the Property as the "Starting Auction Bid."   In considering which Qualified Bid shall be the Starting Auction Bid for the Property, the Trustee will consider, among other things, the Qualified Bid, the changes to the Stalking Horse APA required by the Qualified Bid, and the Qualified Bidder's ability to timely consummate the purchase of the Property.

The following rules shall apply at the Auction:  the minimum initial overbid(s) must be, in the aggregate, at least $100,000 greater than the Starting Auction Bid, unless otherwise determined by the Trustee, in consultation with the Lender.[4] From time to time, the Trustee, in an open forum, may advise Qualified Bidders participating in the Auction of his determination as to the terms of the then highest or otherwise best bid for the Property.  The Trustee shall also consider the potential costs of satisfying the conditions of any bid.

Each Qualified Bidder shall be required to confirm, both before and after the Auction, that it has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction.

Subject to the Stalking Horse APA, the Trustee, after consultation with his professionals and with the Lender, may adopt other rules for the Auction at the Auction that, in his reasonable judgment, will better promote the goals of the Auction.  All such rules will provide that:   (a) the procedures must be fair and open, with no participating Qualified Bidder disadvantaged in any material way as compared to any other Qualified Bidder, (b) the Auction will be conducted openly and all Qualified Bidders will be permitted to attend;  and (c) the bidding at the Auction will be documented, recorded, or videotaped.   Nothing herein shall prohibit the Trustee from meeting privately with any Qualified Bidder to negotiate the terms of a bid or overbid.

During the Auction, the Trustee will review each bid or overbid submitted by a Qualified Bidder to identify, after consultation with his professionals and the Lender, the bid or overbid that constitutes the highest or otherwise best bid for the Property.   The Trustee may consider, among other things, (a) the amount of consideration offered under the Qualified Bid;   (b) the changes to the Stalking Horse APA required by the Qualified Bid;   and (c) the Qualified Bidder's ability to timely consummate the purchase of Property.   The bid that is selected by the Trustee as the highest or otherwise best bid for the Property will be considered the "Successful Bid" and such bidder the "Successful Bidder" for the Property.  The Trustee may also, after consultation with his professionals and the Lender, determine which Qualified Bid is the next highest or best bid from the Auction (the "Second Highest Bid" and such bidder, the "Second Highest Bidder").

---

[4]   For the avoidance of doubt, if the Stalking Horse APA is the Starting Auction Bid, the minimum initial overbid must be, in the aggregate, at least $640,000 greater than the purchase price in the Stalking Horse APA.

Within one (1) business day of the Auction, the Trustee shall file with the Bankruptcy Court notice of the Successful Bid and the Successful Bidder, as well as the Second Highest Bid and Second Highest Bidder (if any), and the amount and other material terms of the respective bids.

The Successful Bid may not be assigned to any party without the consent of the Debtor and the Lender.

Unless otherwise required pursuant to the Trustee's fiduciary duties, any bid submitted after the conclusion of the Auction shall not be considered for any purpose unless an order of the Bankruptcy Court is entered directing that such bid be considered, and neither the Trustee nor any other person or entity shall have any obligation to seek such an order from the Bankruptcy Court.

### THE SALE HEARING AND RETURN OF DEPOSITS

The Sale Hearing will be held on **June 25, 2026 at 10:00 a.m (ET)**.   At the Sale Hearing, the Trustee will seek entry of a Sale Order, among other things, authorizing and approving the sale of the Property to the Successful Bidder pursuant to the terms and conditions set forth in the Successful Bid.

Subject to the Stalking Horse APA and the terms of the Successful Bid, the Sale Hearing may be adjourned or rescheduled at the Trustee's discretion, subject to consultation with the Lender, and the Trustee will notify all relevant parties of such adjournment or rescheduling in an appropriate manner, including by an announcement of the adjourned date at the Sale Hearing.

No offer shall be deemed finally accepted by the Trustee unless and until it is approved by the Bankruptcy Court.

In the event the Successful Bidder fails to consummate the purchase of the Property because of a breach or failure to perform on the part of such bidder, the Second Highest Bid will be deemed to be the Successful Bid, and the Trustee will be authorized, but not required, without further order of the Court, to consummate the transaction with the Second Highest Bidder with respect to the Property.  In this event, the Successful Bidder's Deposit shall be forfeited to the Trustee on behalf of the Debtor's estate, provided that the Trustee reserves the right to seek all available damages from the defaulting bidder.

All Deposits, other than the Deposit of the Successful Bidder and the Second Highest Bidder for the Property, will be returned within seven (7) business days following entry of the Sale Order.  The Deposit of the Successful Bidder shall be applied against the Purchase Price of such Successful Bidder upon the consummation of the sale proposed in the Successful Bid.  The Deposit of the Second Highest Bidder will be returned as soon as practicable following the earlier of (a) three (3) business days after the closing of the sale with the Successful Bidder pursuant to the Successful Bid and (b) sixty (60) days after entry of the Sale Order, unless the Trustee has elected to regard the Second Highest Bid as the highest or best bid for the Property, as described above. Upon the return of any Deposit, such Potential Bidder's bid shall be deemed revoked

9

and no longer enforceable.  The Trustee will not be required to maintain any Deposit in an interest-bearing account, but any interest earned on any Deposit will be remitted to the appropriate Qualified Bidder if the Deposit is returned to the Qualified Bidder pursuant to the above.  The Trustee shall not have any liability with respect to any Deposit.

## FIDUCIARY OUT

Notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures shall require the Trustee to take any action or to refrain from taking any action related to any sale transaction or with respect to these Bidding Procedures, to the extent the Trustee reasonably determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Further, notwithstanding anything to the contrary in these Bidding Procedures or the Bidding Procedures Order, through the date of the Auction (if held), nothing in these Bidding Procedures shall diminish the right of the Trustee or his professionals to:  (a) consider, respond to, and facilitate alternate proposals for sales or other restructuring transactions involving the Property (each an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity with respect to Alternative Proposals;  (c) maintain or continue discussions or negotiations with respect to Alternate Proposals;  (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiations of Alternate Proposals; and (e) enter into or continue discussions or negotiations with any person or entity regarding any Alternate Proposal.

Except as otherwise provided in the Stalking Horse APA, the Bidding Procedures, or the Bidding Procedures Order, the Trustee, in consultation with the Lender, reserves the right, as he may reasonably determine to be in the best interests of the Debtors' estates and in the exercise of his fiduciary duties, to:  (a) determine which Potential Bidders are Qualified Bidders;  (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal with respect to the Sale;  (d) reject any bid that is (1) not in conformity with the requirements of the Bidding Procedures, the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, or (2) contrary to the best interests of the Debtors' estates and creditors;  (e) waive terms and conditions of the Bidding Procedures otherwise applicable to bidders in his reasonable business judgment, except that all bids must be for cash;  (f) impose additional terms and conditions with respect to Potential Bidders;  (g) modify the deadlines set forth in the Bidding Procedures and the Bidding Procedures Order, subject to any ruling or order of the Court or to accommodate the Court's calendar;  (h) continue, adjourn, or cancel the auction and/or the Sale Hearing in open court or by filing a notice with the Court;  and (i) modify the Bidding Procedures and implement additional procedural rules that the Trustee determines, in his reasonable business judgment and after consulting with the Lender, will better promote the goals of the bidding process.  Nothing in the Bidding Procedures or the Bidding Procedures Order shall prejudice the substantive rights of

10

any party, including with respect to the Trustee's evaluation of any bid.

If the Trustee is unable to deliver title to the Property in accordance with these Bidding Procedures or the Sale Order for any reason whatsoever, the prospective purchaser will have no recourse against the Trustee, the Broker, or any other of his professionals;  provided, that, a Qualified Bidder shall be entitled to a return of its Deposit.

## NOTICE

The Trustee is providing notice of the Bidding Procedures, the date of an Auction concerning the Property, and the date for the Sale Hearing, together with a copy of the Stalking Horse APA, to, among others, all of the parties that have recorded liens against the Property and all parties which the Trustee has identified as having an interest in acquiring the Property.

## JURISDICTION

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the sale of the Property, the Bidding Procedures, the Sale Hearing, the Auction, the Stalking Horse APA, and/or any other matter that in any way relates to the foregoing, and by participating in the Auction, all bidders consent to such jurisdiction.

ALBERT TOGUT, not individually but solely in his capacity as Chapter 7 Trustee,
By His Attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

/s/
BRIAN F. MOORE
ANTHONY GREENE
CHRISTIAN RIBEIRO
One Penn Plaza, Suite 3335
New York, NY 10119
(212) 594-5000

11

## Exhibit 2

## Notice of Auction and Sale Hearing

| **BID DEADLINE:** | June 15, 2026 at 12 p.m. (prevailing Eastern Time) |
|---|---|
| **AUCTION DATE:** | June 23, 2026 at 12 p.m. (prevailing Eastern Time) |
| **OBJECTION DEADLINE:** | June 24, 2026 at 4 p.m. (prevailing Eastern Time) |
| **SALE HEARING** | June 25, 2026 at 10 a.m. (prevailing Eastern Time) |

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Brian F. Moore
Anthony L. Greene
Christian Ribeiro

*Attorneys for Albert Togut,*
*Not Individually But Solely in His Capacity*
*as Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
                                              :
In re:                                        :        Chapter 7
                                              :
MANHATTAN COUNTRY SCHOOL *et al.*,[1]         :        Case No. 25-11009 (DSJ)
                                              :
                           Debtors.           :        (Jointly Administered)
                                              :
---------------------------------------------------------------------x

## NOTICE OF SALE BY AUCTION AND HEARING TO CONSIDER APPROVAL OF TRUSTEE'S SALE OF 85th STREET PROPERTY

**NOTICE IS HEREBY GIVEN**, that:

1.      On [_____], 2026, Albert Togut, not individually but solely in his capacity as Chapter 7 Trustee of the estate of Manhattan Country School ("MCS") and the Chapter 7 Trustee (in such respective capacities, as applicable, the "Trustee") of the estate of West 85th Street Owner LLC ("Owner LLC," and, together, with MCS, the "Debtors"), by his attorneys, Togut, Segal & Segal LLP, filed an application [Docket No. __] (the "Application")[2] with the United States Bankruptcy Court for the

---

[1]     The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) Manhattan Country School (6971) (Case No. 25-11009 (DSJ); and (ii) West 85th Street Owner LLC (6971) (Case No. 25-11922) (DSJ).

[2]     Capitalized terms which are not defined herein shall have the meanings ascribed to them in the

Southern District of New York (the "Bankruptcy Court") in the above captioned jointly-administered chapter 7 cases (the "Chapter 7 Cases") requesting, among other things, (a) approval of bidding procedures (the "Bidding Procedures") in connection with the Trustee's sale of Owner LLC's property located at 150 West 85th Street, New York, New York, 10024 (the "Property"), as described in the Application, in accordance with a form of sale contract (the "Sale Contract") substantially in the form of the sale contract with Geneva School of Manhattan (the "Stalking Horse Bidder") attached to the Application as Exhibit B (the "Stalking Horse APA"), to the successful bidder(s) for the Property (a "Purchaser" or "Successful Bidder") at an auction for same (the "Auction") if necessary, (b) approving bid protections (the "Bid Protections") for the Stalking Horse Bidder, and (c) the scheduling of a bid deadline, auction date, and sale hearing (the "Bidding Schedule"), and (d) approving the form and manner of notice thereof.

2.      On [_____], 2026, the Bankruptcy Court entered an order (the "Bidding Procedures Order") [Docket. No. ___] approving, among other things, the Bidding Procedures, and establishing a bidding and sale approval schedule.

3.      A copy of each of the Application, the Bidding Procedures, and the Bidding Procedures Order may be obtained by:   (a) accessing the Bankruptcy Court's website at www.nysb.uscourts.gov;   (b) contacting the Office of the Clerk of the Bankruptcy Court;   or (c) contacting Anthony Greene, Esq., at Togut, Segal & Segal LLP, attorneys for the Trustee, at (212) 594-5000.   Note that a PACER password is needed to access documents on the Bankruptcy Court's website.

---

Application.

4. All interested parties are invited to make offers for the Property in accordance with the terms of the Bidding Procedures and Bidding Procedures Order. The deadline to submit bids for the Property (the "Bid Deadline") is **June 15, 2026, at 12 p.m. (prevailing Eastern Time)**.

5. All requests for information concerning the sale of the Property should be directed by written request to the Trustee's retained real estate broker, BK Real Estate Advisors LLC, Attn: Bob Knakal (email: bk@bkrea.com)

6. Pursuant to the Bidding Procedures Order, the Trustee may conduct an auction (the "Auction") for the sale of the Property on **June 23, 2026, at 12 p.m. (prevailing Eastern Time)** at the New York law offices of Togut, Segal & Segal LLP, counsel for the Trustee, One Penn Plaza, Suite 3335, New York, NY 10119 (which may also be conducted virtually), provided that the Trustee, after consultation with the Lender, may change the location of the Auction by providing notice of such change to each Qualified Bidder.[3]

7. The Bidding Procedures Order further provides that a Sale Hearing will be held on **June 25, 2026, at 10:00 a.m. (prevailing Eastern Time)** before the Honorable David S. Jones, United States Bankruptcy Judge of the Bankruptcy Court, One Bowling Green, New York, New York 10004. The Sale Hearing may be adjourned from time to time.

8. At the Sale Hearing, the Trustee will request that the Bankruptcy Court enter an order, among other things, approving the highest or best bid for the

---

[3] The Trustee, in consultation with the Lender, may extend the deadlines set forth in the Bidding Procedures Order and/or adjourn, continue or cancel the Auction and/or the Sale Hearing for any reason, including in the event the Trustee determines that a more favorable transaction is available that can be consummated without significant delay, without further order of the Bankruptcy Court, by filing a notice with the Bankruptcy Court and serving such notice on all Potential Bidders.

4

Property (which will be determined as described in the Bidding Procedures), pursuant to which the Trustee will sell and transfer ownership of the Property.   In addition, the Trustee will request that the Bankruptcy Court provide that the transfer of the Property be free and clear of all liens, claims and interests, other than certain permitted exceptions as expressly set forth in the Sale Contract, with such liens, claims and interests to attach to the sale proceeds with the same validity, extent and priority that existed when the above-captioned case commenced.[4]

9.      At the Sale Hearing, the Bankruptcy Court may enter such orders as it deems appropriate under applicable law and as required by the circumstances and equities of these Chapter 7 Cases.   Objections, if any, to the sale of the Property pursuant to the terms of the agreement reached between the Trustee and the Successful Bidder(s) for the Property must be in writing and filed with the Bankruptcy Court and received by the Chambers of the Honorable David S. Jones, United States Bankruptcy Judge of the Bankruptcy Court, One Bowling Green, New York, New York 10004, must conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, must set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtor's estate, the basis for the objection and the specific grounds therefor, and must be served upon:  (a) counsel to the Trustee, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119, Attn: Anthony L. Greene (agreene@teamtogut.com);  (b) counsel for the Stalking Horse Bidder, Katten Muchin Rosenman LLP, 50 Rockefeller Plaza, New York, NY 10020, Attn: Eddy Park, Esq. (eddy.park@katten.com);  (c) co-counsel to the Debtors, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York,

---

[4]    All of the Trustee's rights, claims and defenses are expressly preserved and not waived.

New York 10019, Attn: Brian S. Lennon, Esq. (blennon@willkie.com);   (d) co-counsel to the Debtors, Lester Korinman Kamran & Masini, P.C., 600 Old Country Road Suite 330, Garden City, New York 11530, Attn: Roy J. Lester, Esq. (rlester@lesterfirm.com); (e) counsel for Lender, Certilman Balin Adler & Hyman, LLP, 90 Merrick Avenue, 9th Floor, East Meadow, NY 11554, Attn: Richard J. McCord Esq. (rmccord@certilmanbalin.com);  (f) counsel for U.S. Bank National Association, Shipman & Goodwin LLP, One Constitution Plaza, Hartford, CT 06103, Attn: Kathleen M. LaManna (klamanna@goodwin.com) and Anthony R. Scarcella (ascarcella@goodwin.com);  (g) the U.S. Trustee, One Bowling Green, Room 534, New York, NY 10004, Attn: Mark Bruh, Esq. (mark.bruh@usdoj.gov);   and (h) all parties that have filed a notice of appearance in the Chapter 7 Cases, so as to be actually received no later than **June 24, 2026, at 4 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

10.     Objections which are not timely filed on or before the Objection Deadline will be forever barred and may not be considered by the Bankruptcy Court.

[*Concludes on following page*]

11.     If no objection to the Sale is timely filed, the Trustee may file a certificate of no objection and the Sale may be consummated as proposed without further opportunity to object.

Dated: New York, New York
           _____, 2026

                                   ALBERT TOGUT, not individually but
                                   solely in his capacity as Chapter 7 Trustee,
                                   By His Attorneys,
                                   TOGUT, SEGAL & SEGAL LLP
                                   By:

                                   /s/
                                   _____
                                   BRIAN F. MOORE
                                   ANTHONY L. GREENE
                                   CHRISTIAN RIBEIRO
                                   One Penn Plaza, Suite
                                   3335 New York, NY 10119
                                   (212) 594-5000

7

## Exhibit B

**Stalking Horse APA**

# ASSET PURCHASE AGREEMENT

by and between

## ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS CHAPTER 7 TRUSTEE OF THE ESTATE OF MANHATTAN COUNTRY SCHOOL

as Seller

and

## THE GENEVA SCHOOL OF MANHATTAN, a New York not-for-profit corporation

as Purchaser

May 12, 2026



3979568.5

## Asset Purchase Agreement

**12th**

THIS ASSET PURCHASE AGREEMENT (the "APA") is made this [DATE] of May 2026 (the "Execution Date") by and between ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS CHAPTER 7 TRUSTEE (the "Seller") OF THE ESTATE OF MANHATTAN COUNTRY SCHOOL ("MCS"), A CHAPTER 7 DEBTOR IN CASE NO. 1:25-bk-11009 (DSJ) (JOINTLY ADMINISTERED WITH CASE NO. 1:25-bk-11922 (DSJ)) (as jointly administered, the "Bankruptcy Case") PENDING BEFORE THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (the "Bankruptcy Court"), and THE GENEVA SCHOOL OF MANHATTAN, a New York not-for-profit corporation (the "Purchaser") (Seller and Purchaser are also collectively referred to in this APA as the "Parties" and individually referred to in this APA as a "Party").

### RECITALS

WHEREAS, On May 16, 2025, MCS filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") before the Bankruptcy Court. On June 13, 2025, MCS filed an emergency motion to convert the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, which the Bankruptcy Court approved by order dated June 18, 2025.

WHEREAS, On September 3, 2025, the Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code for W 85th Street Owner LLC ("Owner LLC" and, together with MCS, the "Debtors").

WHEREAS, Seller is authorized to administer the Debtors' estates, including the sale of assets under Sections 363(b) and 363(f) of the Bankruptcy Code.

WHEREAS, Owner LLC owns certain real property located at 150 West 85th Street, New York, New York, 10024, which Property (as defined hereinafter) constitutes assets of the Owner LLC bankruptcy estate.

WHEREAS, Purchaser desires to purchase, and Seller desires to sell, all right, title and interest of the Debtors in and to the Property, on the terms and conditions set forth in this APA (such proposed transaction, the "Sale").

WHEREAS, The Sale is subject to higher or better offers, approval of bidding procedures, and entry of a final order of the Bankruptcy Court approving the sale (the "Sale Order").

NOW, THEREFORE, subject to Bankruptcy Court approval, as expressly described in Section 19 of this APA, the Parties agree to the following terms for the Sale:



3979568.5

## Section 1. SALE OF PROPERTY AND ACCEPTABLE TITLE

Seller agrees to sell and Purchaser agrees to purchase, at the price and upon the terms and conditions set forth in this APA, the following (collectively, the "**Property**"): (a) the parcels of land more particularly described in Exhibit A attached hereto ("Land"); (b) all buildings and improvements situated on the Land (collectively, the "**Building**"); (c) all right, title and interest of Seller and/or Debtors in and to the land lying in the bed of any street or highway in front of or adjoining the Land to the center line thereof and to any unpaid award for any taking by condemnation or any damage to the Land by reason of a change of grade of any street or highway and in and to all rights of way, reversions, remainders, strips or gores, if any, between the Land and adjoining properties, and any land lying in or under the bed of any street, alley, road or right of way, abutting or adjacent to the Land; (d) all right, title and interest of Seller and/or Debtors in and to all privileges, easements, servitudes, hereditaments and appurtenances to the Land and/or providing any benefit with respect to access, ingress, egress, water, electricity, gas, telephone, sewer or other utility services to the Land, whether or not of record; (e) all right, title and interest of Seller and/or Debtors in and to the fixtures, and (f) all right, title and interest of Seller and/or Debtors in and to, if any, furniture, equipment, educational materials, supplies and other personal property in the Building other than that such property more specifically described on Exhibit B (such property described on Exhibit B, the "**Excluded Personal Property**" and such property other than that listed on Exhibit B, the "**Personal Property**"). The Property is located in the County, City and State of New York and known as **150 West 85th Street, New York, New York 10024, and as Block 1215 Lot 53** on the tax map of New York County.

The Property does not include any cash, deposit accounts, insurance policies, pre-closing claims or causes of action of the estate, or any other assets of the Debtors not expressly described in this Section 1.

Seller shall convey and Purchaser shall accept fee simple title to the Property in accordance with the terms of this APA, subject only to: (a) the matters set forth in Exhibit D attached hereto (collectively, "**Permitted Exceptions**"); (b) the matters that Seller elects to cure pursuant to Section 12 of this APA, and (c) such other matters as any reputable title company chosen by Purchaser and authorized to do business in the State of New York shall be willing, without additional premium, to omit as exceptions to coverage or to except with insurance against collection out of or enforcement against the Property, in each case, in a manner reasonably acceptable to Purchaser. The sale shall be free and clear of all liens, claims, encumbrances and interests to the fullest extent permitted by Sections 363(f) and other applicable provisions of the Bankruptcy Code pursuant to the Sale Order (together with the obligation set forth in the first sentence of this paragraph, collectively, the "**Title Condition**").

## Section 2. PURCHASE PRICE, ACCEPTABLE FUNDS, DEPOSIT AND ESCROW

The purchase price (the "**Purchase Price**") to be paid by Purchaser to Seller for the Property is **Twenty Million and 00/100 Dollars ($20,000,000.00)**, which shall be payable as follows:



a) **Two Million and 00/100 Dollars ($2,000,000.00)** (the "**Deposit**") upon execution of this APA, by wire transfer of immediately available federal funds to the escrow account

3979568.5

maintained by the Seller's special real estate counsel Phillips Nizer LLP ("**Escrowee**") at Flagstar Bank in accordance with wire instructions attached hereto as <u>Exhibit C</u> or as otherwise instructed by Escrowee (the "**Escrow Account**"); and

b) the balance of **Eighteen Million and 00/100 Dollars ($18,000,000.00)**, subject to apportionments and adjustments as provided herein, on the delivery of the Deed at Closing.

All monies payable under this APA, unless otherwise specified in this APA, shall be paid at Closing by wire transfer of immediately available federal funds to the Escrow Account, to be released to Seller upon the Closing.

## Section 3. ESCROW PROVISIONS

The Deposit and any other sums paid on account of the Purchase Price prior to the Closing (collectively, the "**Deposit**") shall be paid in immediately available federal funds in accordance with Section 2(a) above to Escrowee into the Escrow Account within one (1) business day after the Execution Date. Escrowee shall hold the proceeds thereof in escrow in the Escrow Account, which shall be an interest-bearing special bank account until the Closing or sooner termination of this APA and shall pay over or apply such proceeds in accordance with the terms of this APA. Any interest that is earned thereon shall be paid to the same party entitled to receive the Deposit or as directed by such party, and the party receiving such interest shall be responsible for any income taxes thereon. The tax identification numbers of the parties shall be furnished to Escrowee upon request. At the Closing, such proceeds and the interest thereon, if any, shall be paid by Escrowee to Seller as a credit toward the Purchase Price.

Except as otherwise provided in this APA, if for any other reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within ten (10) days after the giving of such notice, Escrowee is hereby authorized to make such payment. If Escrowee does receive such written objection within such ten (10) day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the Parties to this APA or a final order of the Bankruptcy Court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest thereon, if any, with the Bankruptcy Court. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder. The foregoing notice procedures of this paragraph shall be referred to hereinafter as the "**Escrow Notice Procedures.**"

The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part (including, without limitation, any loss suffered due to any act, omission, loss or failure of the financial institution in which the Deposit is deposited) unless taken or suffered in bad faith, in willful disregard of this APA or involving gross negligence. Seller and

3979568.5

Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this APA, in violation of an order of the Bankruptcy Court or involving gross negligence on the part of Escrowee.

Escrowee has acknowledged agreement to these provisions by signing in the place indicated on the signature page of this APA.

Escrowee may act or refrain from acting in respect of any matter referred to in this Section 3 in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

## Section 4. REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Purchaser with respect to the Property, as follows:

   a) MCS is the sole owner of Owner LLC, and Owner LLC is the sole owner of the Property.

   b) Seller has sole authority to act in accordance with the APA and convey title to the Property on behalf of Owner LLC, subject to Bankruptcy Court approval.

   c) As of the Closing Date, the Property shall be delivered free of all leases, tenancies, occupants, licenses, and subleases.

   d) Seller is not a foreign person as defined in §1445 of the Internal Revenue Code.

   e) Seller maintains property insurance (including fire and extended coverage), and Seller has provided to Purchaser evidence thereof, including true, correct and complete copies of its certificates of insurance with respect to such insurance.

## Section 5. ACKNOWLEDGMENTS, REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser acknowledges that:

   a) Purchaser has inspected the Property, is fully familiar with the physical condition and state of repair thereof and shall accept the Property "as is", "where is" and in its present condition, without any representations or warranties of any kind whatsoever except as may be expressly set forth in this APA, subject to use, wear, tear and natural deterioration between now and the Closing Date, without any reduction in the Purchase Price for any change in such condition by reason thereof subsequent to the date of this APA.



3979568.5

b)  Before entering into this APA, Purchaser has made such examination of the Property (including, without limitation, any inspection for the presence of lead-based paint and/or lead-based paint hazards, the presence of any materials containing asbestos, and any other hazardous materials), the operation, income and expenses thereof and all other matters affecting or relating to this transaction as Purchaser deemed necessary, or has waived Purchaser's right to do so. In entering into this APA, Purchaser has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Seller or any agent, employee or other representative of Seller or by any broker or any other person representing or purporting to represent Seller, in each case, except those that are expressly set forth in this APA, whether or not any such representations, warranties or statements were made in writing or orally.

c)  Purchaser has sole authority to act in accordance with the APA and take title to the Property on behalf of the Purchaser, subject to Bankruptcy Court approval.

Purchaser represents and warrants to Seller that:

a)  The funds comprising the Purchase Price to be delivered to Seller in accordance with this APA are not derived from any illegal activity.

b)  Purchaser has, and will at Closing have, available unencumbered cash and cash equivalents (including publicly traded securities) in a sum at least equal to (and having a then current value of) the balance of the Purchase Price and any other payments required to be made by Purchaser at Closing.

c)  Purchaser's intended use of the Property does not violate the certificates of occupancy in effect as of the Execution Date or any other use restriction or limitation applicable to the Property as of the Execution Date.

## Section 6. RESPONSIBILITY FOR VIOLATIONS

Purchaser shall be required to accept title to the Property subject to: (a) all notes or notices of violations of law or governmental ordinances, orders or requirements which were noted or issued prior to the date of this APA by any governmental department, agency or bureau having jurisdiction as to conditions affecting the Property (collectively, "**Violations**") and (b) all fines or monetary penalties levied prior to the Closing pursuant to the Administrative Code of the City of New York ("**Fines**"). If required, Seller, upon written request by Purchaser, shall promptly furnish to Purchaser written authorizations to make any necessary searches for the purposes of determining whether notes or notices of violations have been noted or issued with respect to the Property or liens have attached thereto. Notwithstanding the foregoing, Seller shall be responsible for paying (or crediting to Purchaser at Closing) any and all Fines in respect of Violations that are of liquidated amounts which are issued or noted through the Closing Date.

3979568.5

## Section 7. CLOSING

The closing of title (the "**Closing**") shall take place at the offices of the Seller's special real estate counsel Phillips Nizer LLP on the date which is no later than fifteen (15) days following the date that the Sale Order becomes a final, non-appealable order, or such earlier date as the parties may mutually agree in writing. Seller, with Purchaser's written consent, may adjourn the Closing for reasonable periods to effectuate the transfer, subject to the Outside Date. For purposes of this APA, the "**Closing Date**" shall mean the actual day of closing.

Seller shall be responsible for the cost of the following: (i) the cost of discharging any encumbrances of record as required pursuant to the Title Condition; (ii) one-half of the escrow fee charged by First American Title Insurance Company (the "**Title Company**") to close through escrow; (iii) any fees or expenses of Escrowee charged or incurred in connection with the transactions contemplated by this APA; and (iv) all documentary transfer taxes, sales taxes and transfer taxes (if any) applicable to the transfer of the Property. Purchaser shall pay for the following: (i) the recording fees for the Deed; (ii) the Title Report and the premium for the Title Policy including extended coverage; (iii) the cost of obtaining and/or updating the Survey; and (iv) one-half of the escrow fee charged by the Title Company to close through escrow. Except as otherwise provided for herein, the parties will each be responsible for all of their other closing costs, including their respective attorneys' fees.

## Section 8. BID PROCEDURES ORDER; BID PROTECTIONS

This APA is subject in all respects to entry of (i) the Sale Order, in form and substance reasonably acceptable to the Buyer (such order, the "**Proposed Sale Order**") and (ii) an order by the Bankruptcy Court approving the sale procedures for the Property (such order, the "**Bid Procedures Order**"), which Bid Procedures Order Shall include the Bid Protections (as defined below). Seller shall file a motion seeking approval of a Bid Procedures Order that provides, among other things:

a) If the Bankruptcy Court approves a higher or better offer for the sale of the Property, and such higher or better bidder closes on and acquires the Property on such higher and better terms (such bid an "**Alternative Bid**"), Seller shall (i) pay to Purchaser from the sale proceeds a break-up fee equal to two and one-half percent (2.5%) of the Purchase Price ($500,000) (the "**Breakup Fee**"), and (ii) reimburse Purchaser's actual and documented due-diligence and out-of-pocket costs, not to exceed Forty Thousand Dollars ($40,000) (the "**Expense Reimbursement**" and, together with the Breakup Fee, the "**Bid Protections**").

b) Bid procedures that require a minimum overbid over the Purchase Price set forth herein equal to the Breakup Fee plus the maximum Expense Reimbursement (*i.e.*, any competing bids must set forth a minimum purchase price equal or greater to $20,640,000).



3979568.5

c) The Bid Protections shall be deemed an administrative claim in the Bankruptcy Case and, if payable pursuant to this Section 8, shall be paid at Closing from the first dollars of the sale proceeds generated by the closing of such Alternative Bid.

The Bid Procedures Order shall be, in all other respects, in form and substance acceptable to the Seller, in its reasonable discretion.

## Section 9. COVENANTS

Between the Execution Date and Closing:

a) Seller shall not enter into any new leases or occupancy agreements for the Property.

b) Seller shall not enter into any Service Contract unless the same is terminable without penalty by the then owner of the Property upon not more than 30 days' notice.

c) Seller shall maintain the Property in its current "as-is" condition and shall maintain the Property from the Execution Date until the Closing Date in substantially the same manner in which Seller has acted prior to the Execution Date. Seller will maintain its present property insurance (including fire and extended coverage) through Closing, and Seller shall give Purchaser prompt notice of any fire or other casualty occurring at the Property of which Seller obtains knowledge, or of any actual or threatened condemnation of all or any part of the Property of which Seller obtains knowledge.

d) Seller shall not remove fixtures or personal property without replacement of equal quality. Notwithstanding the foregoing, the Excluded Personal Property is excluded from this Sale and Seller shall remove them prior to Closing.

e) Seller shall provide Purchaser, for visual and non-invasive inspection purposes only, reasonable access to the Property, during business hours, upon reasonable written notice to Seller, including e-mail notice.

f) Purchaser covenants that Purchaser's use of the Property shall not violate the certificate of occupancy or any other use restriction or limitation applicable to the Property.

## Section 10. CONDITIONS PRECEDENT.

10.1 Conditions to Obligations of all Parties. The obligation of each Party to consummate the transactions contemplated by this APA at Closing is subject to the fulfillment on or prior to the Closing of the following conditions:

a) the Court shall have entered the Sale Order and such order shall be in full force and effect and shall not have been stayed or vacated, and any applicable appeal period thereafter having lawfully expired, with no appeal having been filed with respect thereto. Promptly upon obtaining the Sale Order, Seller shall deliver a copy of the Sale Order to Purchaser



3979568.5

and Escrowee. If: (i) the Court denies approval of this APA, or (ii) the Sale Order is overturned in an appeal, this APA shall be terminated and, provided that the Purchaser is not in material breach of any of its representations, warranties, covenants or agreements contained herein, the Deposit shall be delivered to Purchaser and neither party shall have any further rights or obligations hereunder except with respect to the provisions hereof which specifically survive termination;

b) no injunction by any court or other tribunal of competent jurisdiction shall have been entered and shall continue to be in effect and no law shall have been adopted that remains in effect or be effective, in each case, that prevents, enjoins, prohibits, or makes illegal the consummation of the transactions contemplated by this APA;

10.2    Seller's Conditions Precedent. Seller's obligation to perform as set forth in this APA is hereby expressly conditioned on satisfaction of each and every one of the following conditions precedent:

a) Each of Purchaser's representations and warranties set forth in Section 5 hereof shall be true and correct at the Closing as if affirmatively made at that time.

The foregoing conditions are solely for the benefit of Seller, any or all of which may be waived by Seller in its sole discretion.

10.3    Purchaser's Conditions Precedent. Purchaser's obligation to perform as set forth in this APA is hereby expressly conditioned on satisfaction of each and every one of the following conditions precedent:

a) Seller shall have performed its obligations under this APA and the Sale Order, including without limitation, depositing into the Escrow the Deed.

b) Each of the representations and warranties of Seller contained in Section 4 or elsewhere in this APA shall be true and correct at the Closing as if affirmatively made at that time.

c) As of the Closing, the Title Company shall have issued or shall have committed to issue, upon the sole condition of the payment of its regularly scheduled premium and the receipt of any affidavits contemplated by Section 12(d), an ALTA Owner's Title Policy (the "Title Policy") showing no exceptions or encumbrances other than (i) those reflected on the Title Report and not discharged by the Sale Order (ii) Permitted Encumbrances, and (iii) any liens of Seller that will be satisfied and discharged out of the Closing proceeds, insuring title to the Property (subject only to the Permitted Encumbrances) in the amount of the Purchase Price. In the event that the Title Company fails or refuses to issue the Title Policy at or following Closing, notwithstanding the satisfaction or waiver of all conditions to the issuance thereof, then either Buyer or Seller shall have the right to designate a nationally recognized title insurance company licensed to do business in the state in which the Property is located (the "Substitute Title Company") to issue the Title Policy in lieu of the Title Company, and the other party shall not unreasonably withhold, condition, or delay its consent to such designation. The parties shall cooperate in good faith and execute such

3979568.5

additional documents and instruments as may be reasonably required by the Substitute Title Company in connection with the issuance of the Title Policy. Any additional costs incurred solely as a result of the engagement of the Substitute Title Company shall be borne by Purchaser, except to the extent the original Title Company's failure or refusal to issue the Title Policy was a result of the act or omission of Seller, in which event Seller shall bear any such additional costs. The failure of the Title Company to issue the Title Policy shall not, in and of itself, constitute a default by either party under this APA, nor shall it serve as a basis for the termination of this APA, so long as a Substitute Title Company is able to issue the Title Policy within a reasonable period following Closing, not to exceed thirty (30) days.

The foregoing conditions are solely for the benefit of Purchaser, any or all of which may be waived by Purchaser in Purchaser's sole discretion.

## Section 11. TERMINATION

This APA may be terminated in accordance with this Section 11 at any time prior to the Closing:

a) Provided that the terminating Party is not in material breach of any of its representations, warranties, covenants or agreements contained herein and such material breach is the primary cause that the Closing has not occurred by the Outside Date (as defined herein), by written notice by either Seller or Purchaser if the Closing shall not have occurred on or before the date that is ninety (90) days after the Sale Order becomes a final, non-appealable order, unless the Parties agree to extend such ninety (90)-day period, which the Parties may agree to do from time to time, and the aggregate of such extensions shall be no longer than one hundred eighty (180) days in the aggregate (such date, the "**Outside Date**"); provided, however, that the Outside Date may be extended beyond any such date by Seller and Purchaser upon mutual agreement;

b) By written notice of either Seller or Purchaser if an order by a governmental authority of competent jurisdiction shall have been issued permanently restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby and such order shall have become final and nonappealable; provided that the right to terminate this APA pursuant to this Section 11(b) shall not be available to a Party if such order resulted from, or could have been avoided but for, the breach by such Party of any covenant or other agreement of such Party set forth in this APA;

c) If prior to entry of the Sale Order there shall occur (a) damage to the Property caused by fire or other casualty which would cost in the aggregate twelve (12%) percent of the Purchase Price or more to repair, as reasonably determined by an engineer selected by Seller which is reasonably satisfactory to Purchaser or (b) an taking by condemnation of any material portion of the Property then, and in either such event, Purchaser may elect to terminate this APA by written notice given to Seller within fifteen (15) Business Days after Seller has given Purchaser the notice of the foregoing, in which event Escrowee shall promptly return the Deposit to Purchaser without the requirement of the Escrow Notice Procedure, and this APA shall thereupon be null and void and neither Party hereto shall



3979568.5

thereupon have any further obligation to the other. If (x) Purchaser does not elect to terminate this APA in the event of such casualty or condemnation or (y) there shall occur (A) damage to the Property caused by fire or other casualty which would cost less than twelve (12%) percent of the Purchase Price to repair, as reasonably determined by an engineer selected by Seller which is reasonably satisfactory to Purchaser or (B) a taking by condemnation of any part of the Property which is not material, then, in each of the foregoing cases recited in this sentence, Closing shall take place as herein provided, without abatement of the Purchase Price, and Seller shall assign to Purchaser at the Closing, by written instrument in form reasonably satisfactory to Purchaser, all of Seller's interest in and to any insurance proceeds or condemnation awards which may be payable to Seller on account of any such fire, casualty or condemnation, shall deliver to Purchaser any such proceeds or awards actually theretofore paid, less any amounts (the "**Reimbursable Amounts**") (i) actually and reasonably expended or incurred by Seller in adjusting any insurance claim or negotiating and/or obtaining any condemnation award (including, without limitation, reasonable attorneys' fees and expenses) and/or (ii) theretofore actually and reasonably incurred or expended by or for the account of Seller for the cost of any compliance with laws, protective restoration or emergency repairs made by or on behalf of Seller (to the extent Seller has not theretofore been reimbursed by its insurance carriers for such expenditures), and Seller shall pay to Purchaser the amount of the deductible, if any, under Seller's property insurance policy(ies), less all Reimbursable Amounts not received by Seller from any insurance proceeds or condemnation awards paid to Seller prior to the Closing.

## Section 12. SELLER'S CLOSING OBLIGATIONS

At the Closing, Seller shall deliver the following to the Purchaser:

a) In the event that Purchaser is not a notice party to the bankruptcy proceedings, a copy of the Sale Order.

b) A statutory form of bargain and sale deed without covenant against grantor's acts, containing the covenant required by Section 13 of the Lien Law, and properly executed in proper form for recording so as to convey the title required by this APA.

c) To the extent they are then in Seller's possession and not posted at the Property, certificates, licenses, permits, authorizations and approvals issued for or with respect to the Property by governmental and quasi-governmental authorities having jurisdiction.

d) Such affidavits as Purchaser's title company shall reasonably require in order to omit from its title insurance policy all exceptions for judgments, bankruptcies or other returns against persons or entities whose names are the same as or similar to Seller's name.

e) (i) Checks to the order of the appropriate officers in payment of all applicable real property transfer taxes and copies of any required tax returns therefor executed by Seller, which checks shall be certified or official bank checks if required by the taxing authority, unless Seller elects to have Purchaser pay any of such taxes and credit Purchaser with



3979568.5

the amount thereof, and (ii) a certification of non-foreign status, in form required by the Internal Revenue Code Withholding Section, signed under penalty of perjury. Seller understands that such certification will be retained by Purchaser and will be made available to the Internal Revenue Service on request.

f) Possession of the Property (including any keys and passcodes), vacant with all Personal Property, fixtures, and equipment located on the Property as of the Closing remaining in place, (except for the Excluded Personal Property, which Seller shall have the right to remove prior to Closing), broom clean, and clear of all claims and rights of tenancy, and otherwise in the condition required in this APA.

## Section 13. PURCHASER'S CLOSING OBLIGATIONS

At the Closing, the Purchaser Shall:

a) Deliver to Seller checks or, at Seller's option, on two (2) days' notice, wire transfer of immediately available federal funds to Seller, in payment of the portion of the Purchase Price payable at the Closing, and adjusted for apportionments under Section 14 herein

b) Cause the deed to be recorded, duly complete all required real property tax returns and cause all such returns and checks in payment of such taxes to be delivered to the appropriate officers promptly after closing.

c) Deliver any other documents (i) required by this APA to be delivered by Purchaser, or (ii) reasonably requested by Seller.



3979568.5

**Section 14. APPORTIONMENTS**

The following apportionments shall be made between the Parties at the Closing as of the close of business on the day prior to the Closing Date:

a) real estate taxes, water charges and sewer rents, if any, on the basis of the fiscal period for which assessed, except that if there is a water meter on the Property, apportionment at the Closing shall be based on the last available reading, subject to adjustment after the Closing when the next reading is available. In the event a final water meter reading dated not more than thirty days prior to the Closing Date is not available as of the Closing Date, Seller shall deposit a reasonable sum with Escrowee until receipt of the subsequent meter reading (with the Seller being obligated to pay all such water charges pertaining to the period prior to closing and the purchaser being obligated to pay all such charges pertaining to the period thereafter) This Section 14(a) shall survive closing for a period of twelve (12) months; and

b) value of fuel stored on the Property, at the price then charged by Seller's supplier, including any taxes, as evidenced by an actual reading or invoice from Seller's supplier.

If the Closing shall occur before a new tax rate is fixed, the apportionment of taxes at the Closing shall be upon the basis of the old tax rate for the preceding period applied to latest assessed valuation. Promptly after the new tax rate is fixed, the apportionment of taxes shall be recomputed. Any discrepancy resulting from such recomputation and any errors or omissions in computing apportionments at Closing shall be promptly corrected, which obligations shall survive the Closing.

Real estate tax refunds and credits received after the Closing Date which are attributable to the fiscal tax year during which the Closing Date occurs shall be apportioned between Seller and Purchaser, after deducting any expenses of collection thereof, which obligation shall survive the Closing.

**Section 15. OBJECTIONS TO TITLE, FAILURE OF SELLER OR PURCHASER TO PERFORM**



a) Purchaser has ordered a commitment for an owner's policy of title insurance, Title No. 3020-1284989 (the "**Title Report**"), from the Title Company, a copy of which has been forwarded to Seller's attorney, and Purchaser has ordered a survey of the Property (the "**Survey**"). If before the Closing, the completed Survey or an update to the Title Report identifies survey matters affecting the Property or any liens, encumbrances or other title exceptions or survey matters affecting the Property that (i) were not disclosed by the Title Report, (ii) are Permitted Exceptions, or (iii) are Seller's liens that could be satisfied by a sum of money or otherwise by the Sale Order (each, a "**New Matter**"), and Purchaser has an objection to any such New Matter, then Purchaser shall deliver written notice of such New Matter to Seller within the earlier to occur of (A) five (5) Business Days after Purchaser becomes aware thereof or (B) the Closing Date, with the failure to deliver such

3979568.5

notice within such period deemed an acceptance by Purchaser of the New Matter. On or before the date that is the earlier of (X) five (5) days after the delivery of notice of such New Matter to Seller or (Y) the Closing Date, Seller shall give Purchaser written notice of its election, in its sole discretion, to either (a) cure or remedy such New Matter, or (b) not cure or remedy such New Matter, with the failure to deliver such notice within such period deemed an election not to remedy or cure such New Matter. Purchaser and Seller each acknowledges and agrees that TIME IS OF THE ESSENCE with respect to all time periods set forth in this Section 15(a).

b) If Seller shall be unable to convey title to the Property at the Closing in accordance with the provisions of this APA, Purchaser, nevertheless, may elect to accept such title as Seller may be able to convey, but without any other credit or liability on the part of Seller except as may be otherwise agreed to by Purchaser and Seller. If Purchaser shall not so elect, Purchaser may terminate this APA and the sole liability of Seller shall be to cause the Escrowee to refund the Deposit to Purchaser promptly upon such termination without any requirement for the Escrow Notice Procedure set forth in Section 3. Upon such refund and reimbursement, this APA shall be null and void and the parties hereto shall be relieved of all further obligations and liability other than any arising under Section 14. Seller shall not be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this APA.

c) Any unpaid taxes, assessments, water charges and sewer rents, together with the interest and penalties (to the extent they are not disputed by Seller) may be paid out of the proceeds of the monies payable at the Closing or placed in escrow with the title company to hold pending the Bankruptcy Court's ruling as to any disputed items. In such case the charges with respect to which the title insurance company has agreed so to insure shall not be considered objections to title and shall be the sole obligation of Seller.

d) If Purchaser shall default in the performance of its obligation under this APA to purchase the Property as and when required pursuant to the terms of this APA, the sole and exclusive remedy of Seller shall be to retain the Deposit as liquidated damages for all loss, damage and expense suffered by Seller, including without limitation the loss of its bargain. If Seller shall default in the performance of its obligations herein, Purchaser's sole remedy shall be to either (i) elect to cancel this APA, upon which Purchaser shall receive a refund of the Deposit, or (ii) to seek specific performance of Seller's obligations pursuant to the Sale Order; provided, however, that if specific performance is unavailable or impossible due as a result of Seller's willful breach of this APA, then Buyer shall be entitled, at Buyer's sole election, to pursue actual damages suffered by Buyer as a result of such willful breach, or liquidated damages calculated as the positive difference, if any, between (i) the gross purchase price or other consideration received or to be received by Seller (or any affiliate of Seller) in connection with any sale, transfer, conveyance, or other disposition of the Property (or any interest therein) to a third party in willful breach of this APA, and (ii) the Purchase Price set forth herein.



3979568.5

## Section 16. BROKER

If a broker is specified in Exhibit E, Seller and Purchaser mutually represent and warrant that such broker is the only broker with whom they have dealt in connection with this APA and that neither Seller nor Purchaser knows of any other broker who has claimed or may have the right to claim a commission in connection with this transaction, unless otherwise indicated in Exhibit E. The commission of such broker shall be paid pursuant to separate agreement by the party specified in Exhibit E and pursuant to the Sale Order. If no broker is specified in Exhibit E, the parties acknowledge that this APA was brought about by direct negotiation between Seller and Purchaser and that neither Seller nor Purchaser knows of any broker entitled to a commission in connection with the Sale. Purchaser shall indemnify and defend Seller against any costs, claims or expenses, including attorneys' fees, arising out of the Purchaser's breach of any representations, warranties or obligations under this paragraph, and this paragraph shall survive the Closing or, if the Closing does not occur, the termination of this APA.

## Section 17. MISCELLANEOUS

a) **Notices.** All notices under this APA shall be in writing and addressed as set forth in Exhibit E or addressed as Seller or Purchaser shall otherwise have given notice as herein provided; notices may be given by email as long as such notices are also given via personal delivery or prepaid overnight courier. The respective attorneys for the parties may give any extension of time or other notice on behalf of their clients.

b) **Assignability.** Purchaser shall not assign this APA or any of Purchaser's rights under the APA, nor shall any interest in Purchaser be assigned or transferred, without the prior written consent of Seller, to be granted or withheld in Seller's sole discretion, except as expressly provided herein, and further provided that Purchaser and any such assignee shall be jointly and severally liable for Purchaser's obligations hereunder and that all representations and warranties of Purchaser hereunder shall apply to Purchaser and to such assignee. Notwithstanding the foregoing, Purchaser may assign this APA to a subsidiary owned and controlled by Purchaser. No permitted assignment of Purchaser's rights under the APA shall be effective against Seller unless and until an executed counterpart of the instrument of assignment shall have been delivered to Seller and Seller shall have been furnished with the name and address of the assignee not less than ten (10) days prior to the Closing Date. The term "Purchaser" shall be deemed to include the assignee under any such effective assignment.

3979568.5

c) **Entire Agreement**. This APA embodies and constitutes the entire understanding between the Parties with respect to the Sale, and all prior agreements, understandings, representations and statements, oral or written, are merged into this APA. Neither this APA nor any provision hereof may be waived, modified, amended, discharged or terminated except by a written instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.  For purposes of the foregoing, email shall not be sufficient.

d) **Governing Law**. This APA shall be governed by, and construed in accordance with, the law of the State of New York. The venue for any dispute arising from this APA shall be the Bankruptcy Court and the Bankruptcy Court shall have exclusive jurisdiction to interpret and enforce the terms of this APA.

e) **Counterparts**. This APA may be executed in any number of counterparts, including electronically signed counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

f) **Binding Effect**. This APA shall be binding upon and shall inure to the benefit of the Parties and their respective heirs or successors and permitted assigns.  The APA shall not be binding or effective upon Seller in full until (i) the APA properly executed and delivered by Seller and Purchaser, and (ii) the Sale Order is obtained.

g) **Prohibited Persons**. Neither Purchaser, nor any of Purchaser's officers, directors, shareholders, partners, members or associates, nor any other direct or indirect holder of any equity interest in Purchaser, is an entity or person: (i) that is listed in the Annex to, or is otherwise subject to the provisions of United States Presidential Executive Order 13224 issued on September 24, 2001 ("**Executive Order**"); (ii) whose name appears on the U.S. Department of the Treasury, Office of Foreign Assets Control's ("**OFAC**") most current list of "Specifically Designated National and Blocked Persons" (which list may be published from time to time in various mediums including, but not limited to, the OFAC website, www.treas.gov/ofac/; (iii) who commits, threatens to commit or supports "terrorism", as that term is defined in the Executive Order; or (iv) who is otherwise affiliated with any entity or person listed above (any and all parties or persons described in clauses (i) through (iv) above are herein referred to as a "Prohibited Person"). Purchaser covenants and agrees to use commercially reasonable efforts to ensure that neither Purchaser, nor any of its respective officers, directors, shareholders, partners, members or associates, and no other direct or indirect holder of any equity interest in Purchaser will: (a) conduct any business, or engage in any transaction or dealing, with any Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods, or services, to or for the benefit of a Prohibited Person; or (b) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in the Executive Order or the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001. On request by Seller from time to time,



3979568.5

Purchaser further covenants and agrees promptly to deliver to Seller any such certification or other evidence as may be requested by Seller in Seller's sole and absolute discretion, confirming that no violation of this Section 17(g) shall have occurred. This Section 17(g) shall survive the Closing for a period of one (1) year.

h) Purchaser agrees that if, at any time following the Closing, it discovers that any of the Personal Property left at the Property contains any personally identifiable information of any former students, parents of such former students, former teachers or former staff of MCS ("PII"), Purchaser shall promptly notify Seller and coordinate with Seller for the proper transfer and/or disposal of such PII. Seller agrees it shall cooperate with such effort to coordinate such transfer or disposal. This Section 17(h) shall survive the Closing for a period of one (1) year.

i) For the purposes of this APA, the capitalized term "**Business Day(s)**" means any day other than a Saturday, Sunday, any Federal holiday, any holiday in New York State, or any day of the year on which banks are not required or authorized by law to close in New York City. If any period expires or action is to be taken on a day which is not a Business Day, the time frame for the same shall be extended until the next Business Day.

## Section 18. LIMITATIONS ON SURVIVAL OF REPRESENTATIONS, WARRANTIES, COVENANTS AND OTHER OBLIGATIONS

a) Except as otherwise provided in this APA, no representations, warranties, covenants or other obligations of Seller set forth in this APA shall survive the Closing, and no action based thereon shall be commenced after the Closing.

b) The delivery of the Sale Order and the delivery of the deed by Seller, and the acceptance thereof by Purchaser, shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations of Seller which are expressly stated in this APA to survive the Closing.

## Section 19. BANKRUPTCY COURT APPROVAL

a) Purchaser acknowledges that this APA and the Sale are subject to the approval of the Bankruptcy Court and the entry by the Bankruptcy Court of the Sale Order, and Seller's and Purchaser's obligation to consummate the Sale is subject to approval by the Bankruptcy Court. Notwithstanding any other provision herein, the Parties' obligation to close under this APA shall be conditioned upon the Sale Order being entered by the Bankruptcy Court and becoming a final, non-appealable order.

b) Purchaser acknowledges that Seller may not act in his personal capacity but only as the Bankruptcy Court-appointed Chapter 7 trustee in bankruptcy and as such is obligated to provide notice to all parties in interest, including the public, of this Sale. The rules of the Bankruptcy Court require an opportunity for interested parties to make higher or better offers and consequently, until the deadline set forth in the Bidding Procedures Order, Seller is permitted to cause his representatives to respond to any inquiries, proposals or offers by



3979568.5

any person (in addition to Purchaser and its agents and representatives) in connection with the sale of the Property. In addition, Seller is obligated to respond to any inquiries or offers to purchase the Property and perform any and all other acts related thereto which are required by order(s) of the Bankruptcy Court, under the Bankruptcy Code or other applicable law, including, without limitation, supplying information relating to the Property to prospective purchasers.

c) Provided that Purchaser is not in default hereunder, if for any reason whatsoever the Bankruptcy Court shall enter an order approving the Sale of the Property to another buyer (such buyer an "**Alternate Buyer**") pursuant to an Alternative Bid, then in such event, and subject to the direction and order of the Bankruptcy Court:

    i.    Seller shall direct Escrowee to return the Deposit promptly after Seller closes on the sale of the Property to the Alternate Buyer; and

    ii.    Purchaser shall be entitled to the Bid Protections. In the event that Purchaser seeks payment of the Expense Reimbursement, Purchaser shall deliver to Seller, not less than five (5) business days prior to a closing with an Alternate Buyer, all documents in support of such request for an Expense Reimbursement including, without limitation, any applicable time records (which may be redacted to protect attorney-client privilege) and receipts for costs incurred. The Expense Reimbursement shall be payable at closing of the sale of the Property to the Alternate Buyer without further order of the Bankruptcy Court.

d) Purchaser acknowledges that this bid is irrevocable through the earlier of the date of Closing and thirty (30) days after the entry of the Sale Order. Purchaser shall be entitled to immediately terminate this APA and receive a refund of the Deposit without the requirement of the Escrow Notice Procedures set forth in Section 3 if the Bankruptcy Court enters an order approving a sale of the Property to an Alternative Buyer.

e) Purchaser hereby irrevocably designates and appoints Katten Muchin Rosenman LLP, 50 Rockefeller Plaza, New York, NY 10020, Attention: Eddy Park, Esq., as agent for service of process regarding the Debtors' Bankruptcy Court case, this APA and any matter related thereto or hereto. The Agent, by signing below, irrevocably consents to and accepts its designation and appointment as agent for service of process upon Purchaser and any assignee or transferee of Purchaser herein.

f) Purchaser acknowledges and agrees that Seller is entering into this APA not personally but solely in his capacity as Chapter 7 Trustee of the Debtors, pursuant to Bankruptcy Court orders, and Purchaser agrees that neither Seller nor Seller's retained professionals shall have any personal liability or obligation whatsoever under this APA, except to the extent attributable to fraud, willful misconduct or gross negligence.



3979568.5

## Section 20.  NEW YORK ATTORNEY GENERAL APPROVAL

Purchaser acknowledges that this APA and the Sale are subject to review by the New York Attorney General (the "AG"). Upon entry of the Bid Procedures Order, Seller will promptly provide the AG with notice of the sale, including (i) an executed copy of the APA and all Exhibits thereto, and (ii) the proposed Sale Order.

*[Remainder of Page Intentionally Blank]*



3979568.5

IN WITNESS WHEREOF, the parties have executed this APA as of the date first above written.

SELLER:

ALBERT TOGUT, NOT
INDIVIDUALLY, BUT SOLELY IN HIS
CAPACITY AS CHAPTER 7 TRUSTEE
OF THE ESTATE OF MANHATTAN
COUNTRY SCHOOL

PURCHASER:

THE GENEVA SCHOOL OF
MANHATTAN, a New York not-for-
profit corporation, or its permitted
assignee

By: _____
Name:
Title:

**Receipt by Escrowee**

The undersigned Escrowee hereby acknowledges receipt of $2,000,000.00, subject to collection, to be held in escrow pursuant to §2.

ESCROWEE:

PHILLIPS NIZER LLP

By: _____

3979568.5

IN WITNESS WHEREOF, the parties have executed this APA as of the date first above written.

**SELLER:**

_____

**ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS CHAPTER 7 TRUSTEE OF THE ESTATE OF MANHATTAN COUNTRY SCHOOL**

**PURCHASER:**

**THE GENEVA SCHOOL OF MANHATTAN, a New York not-for-profit corporation, or its permitted assignee**

By: _____

Name: Charles Bren Hall

Title: Chairman, Board of Trustees

**Receipt by Escrowee**

The undersigned Escrowee hereby acknowledges receipt of $2,000,000.00, subject to collection, to be held in escrow pursuant to §2.

**ESCROWEE:**

By: _____

3979568.5

**AGREEMENT WITH RESPECT TO SECTION 19(E):**

**PURCHASER'S AGENT:**

_____
Eddy Park, Esq.

## EXHIBIT A

### DESCRIPTION OF PROPERTY

All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City, County and State of New York, being more particularly bounded and described as follows:

Beginning at a point on the Southerly side of 85th Street distant 225 feet Easterly from Amsterdam Avenue;

Running thence Southerly and parallel with Amsterdam Avenue, 102 feet 2 inches;

Thence Easterly parallel with 85th Street, 50 feet;

Thence Northerly parallel with Amsterdam Avenue, 43 feet 6 inches to the Southerly side of land formerly belonging to William W. Woolsey;

Thence Easterly and nearly parallel with 85th Street 25 feet more or less to the Southwesterly corner of Lot 226 on Map of property at Bloomingdale showing lands of William W. Woolsey, filed in the Office of the Register of the County of New York on May 26, 1863;

Thence Northerly parallel with Amsterdam Avenue, 58 feet 9-5/16 inches to the Southerly side of 85th Street; Thence Westerly on the Southerly side of 85th Street, 75 feet to the point or place of beginning.

3979568.5

## EXHIBIT B

### EXCLUDED PERSONAL PROPERTY

- One (1) piano currently located at the Property.
- Certain artwork, crafts, decorations, teaching displays, student projects, and similar items of a personal or sentimental nature created by or relating to teachers, students, or staff, as determined by Seller in Seller's sole discretion, provided that such items are of de minimis value.



3979568.5

# EXHIBIT C

## Escrow Account Wire Instructions



## INCOMING WIRE INSTRUCTIONS FOR: PHILLIPS NIZER LLP
## MASTER ESCROW

Flagstar Bank

260 Madison Avenue

New York, NY 10016

For the account of Phillips Nizer LLP

ABA # 026013576

Account # 150 391 6386

3979568.5

**EXHIBIT D**

**PERMITTED EXCEPTIONS**

1.      Zoning regulations and ordinances which are not violated by the existing structures or present use thereof and which do not render title uninsurable.

2.      Consents of record as of the date hereof by Seller or any former owner of the Property for the erection of any structure or structures on, under or above any street or streets on which the Property may abut.

3.      Possessory and statutory rights of tenant.

4.      Unpaid installments of assessments not due and payable on or before the Closing Date.

5.      Financing statements, chattel mortgages and liens on personalty filed more than 5 years prior to the Closing Date and not renewed, or filed against property or equipment no longer located on the Property or owned by Tenants, provided that Purchaser's title company shall agree to omit same from the owner's and lender's title insurance policies.

6.      (a)      Rights of utility companies to lay, maintain, install and repair pipes, lines, poles, conduits, cable boxes and related equipment on, over and under the Property, provided that none of such rights imposes any monetary obligation on the owner of the Property, and do not adversely affect the continued existence and use of the Property or any portion thereof as same exists and is being used as of the date hereof.

(b)      Minor encroachments and projections (i.e., less than 1 foot), if any, of stoops, doors, areas, steps, cellar steps, entrances, sidewalk elevators, trim, cornices, lintels, ledges, water tables, windows, window sills, awnings, trim, ornamental projections, sign brackets, lights, canopies, keystones, pilasters, ledges, fences, fire escapes and landings, hedges, coping and retaining walls, foundations and similar items projecting from the Property over any street or highway or over any adjoining property and encroachments of similar elements projecting from adjoining property over the Property and variances, if any, between fences, retaining walls and the like and lines of record title, provided same are less than 1 foot.

(c)      Revocability or lack of right to maintain vaults, coal chutes, excavations or sub-surface equipment beyond the line of the Property.

(d)      Any state of facts that an accurate survey would disclose, provided that such facts do not render title unmarketable.  For the purposes of this APA, none of the facts shown on the survey, if any, identified below shall be deemed to render title unmarketable, and Purchaser shall accept title subject thereto.

(e)      Laws and governmental regulations that affect the use and maintenance of the Property, provided same do not adversely affect the continued existence and use of the Property or any portion thereof as same exists and is being used as of the date hereof.



3979568.5

(f)     Covenants, conditions, restrictions, easements, leases, rights, reservations, consents and agreements of record, provided same do not adversely affect the continued existence and use of the Property or any portion thereof as same exists and is being used as of the date hereof.

(g)     Any notes or notices of violations of law or municipal ordinances or requirements affecting the Property, including without limitation, sidewalk violations and environmental control board violations.

(h)     Possible lack of right to maintain vault or vaulted area under, and coal chutes or fuel oil supply lines in, the sidewalk.



3979568.5

**EXHIBIT E**
**MISCELLANEOUS**

1. Title insurer (§1.02): Any reputable title insurer licensed to conduct business in the State of New York as designated by Purchaser and reasonably acceptable to Seller.

2. Seller's tax identification number (§2.03): to be provided.

3. Purchaser's tax identification number (§2.03): to be provided.

4. Scheduled date and time of Closing (§3.01): fifteen (15) days following the date that the Sale Order is obtained, at 10 a.m., **TIME BEING OF THE ESSENCE** with respect to Purchaser's obligations hereto.

5. Place of Closing (§3.01): Seller's attorney's office, 485 Lexington Avenue, 14th Floor, New York, New York 10017, or, at Seller's or Purchaser's option, as a remote closing in escrow with Purchaser's title company.

6. Broker (§14.01): Denham Wolf (to be paid by Seller pursuant to separate agreement).

7. Address for notices (§15.01):

If to Seller:

> **ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS CHAPTER 7 TRUSTEE OF THE ESTATE OF MANHATTAN COUNTRY SCHOOL**
> c/o Togut, Segal & Segal LLP
> Attn: Anthony L. Greene, Esq.
> One Penn Plaza, Suite 3335
> New York, New York 10119
> E-mail:        agreene@teamtogut.com

with a copy to:

> Togut, Segal & Segal LLP
> One Penn Plaza, Suite 3335
> New York, New York 10119
> Attn:   Anthony L. Greene, Esq.
> E-mail:        agreene@teamtogut.com
>
> Phillips Nizer LLP
> 485 Lexington Avenue, 14th Floor
> New York, New York 10017
> Attn: Marc Andrew Landis, Esq.
> E-mail:        mlandis@phillipsnizer.com

If to Purchaser:

> THE GENEVA SCHOOL OF MANHATTAN
> 138 W 90th Street
> New York, NY 10024

3979568.5

Attn: Rim Hinckley
Email: rim.hinckley@genevaschool.net

with a copy to:     Katten Muchin Rosenman LLP
50 Rockefeller Plaza
New York, NY 10020
Attn: Eddy Park, Esq.
Email: eddy.park@katten.com

**Exhibit C**

**Sale Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                            :
In re:                                      :        Chapter 7
                                            :
MANHATTAN COUNTRY SCHOOL *et al.*,[1]       :        Case No. 25-11009 (DSJ)
                                            :
                        Debtors.            :        (Jointly Administered)
                                            :
-------------------------------------------------------------------x

## ORDER APPROVING SALE OF PROPERTY

Upon the application (the "Application")[2] of Albert Togut, not

individually but solely in his capacity as the Chapter 7 trustee of the estate of

Manhattan Country School ("MCS") and the Chapter 7 Interim Trustee (in such

respective capacities, as applicable, the "Trustee") of the estate of West 85th Street

Owner LLC ("Owner LLC," and, together, with MCS, the "Debtors"), by his attorneys,

Togut, Segal & Segal LLP, for entry of an order pursuant to sections 105(a), 330, and 363

of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, and

9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving

(a) the sale (the "Sale") of the Debtor's property located at 150 West 85th Street, New

York, New York, 10024 (the "Property") to Geneva School of Manhattan, a New York not-

for-profit corporation or its permitted assignee or affiliate (the "Purchaser") pursuant to

the asset purchase agreement with the Purchaser attached to the Application as Exhibit

B (the "Sale Contract") free and clear of liens, claims, encumbrances, and other interests;

and (b) the payment of the Broker Commission (as defined in the Application);   and

this Court having reviewed the Application and the Sale Contract;   and upon this

---

[1]    The Debtors in these cases, along with the last four digits of their federal tax identification numbers
    are (i) Manhattan Country School (6971) (Case No. 25-11009 (DSJ);  and (ii) West 85th Street Owner
    LLC (6971) (Case No. 25-11922) (DSJ).

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the
    Application except where indicated otherwise.

2

Court's prior order, dated [_____], 2026 approving the Bidding Procedures in connection with the Sale [Docket No. ___] (the "Bidding Procedures Order"); [and this Court having considered the offer (the "Second Highest Bid") reflected in the asset purchase agreement with [_____] (the "Second Highest Bidder"), attached hereto as **Exhibit [ ]** (the "Back-Up APA");] and upon the declaration Bob Knakal, attached to the Application as Exhibit D, respectively; and good and sufficient notice of the Application, the Bidding Procedures Order, and the Sale having been given to all parties entitled thereto;

NOW, THEREFORE, upon the record of the Sale Hearing (as defined in the Bidding Procedures Order) and upon all of the prior pleadings and proceedings in these cases, and after due deliberation thereon and good cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      This Court has jurisdiction over the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this case and the Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      The statutory predicates for the relief sought in the Application are sections 105(a), 330, and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9006.

C.      Proper, timely, adequate, and sufficient notice of the Application and the relief requested therein, the Sale Hearing, the Sale, and the transaction described in the Sale Contract has been provided by the Trustee in accordance with section 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9006, and Local Rules 2002-1 and 6004-1, and in compliance with the Bidding Procedures Order.

3

Waiver of Local Rule 6004-1(h) is reasonable and appropriate.

D.      As demonstrated by (i) the testimony and/or other evidence proffered or adduced at the Sale Hearing and (ii) the representation of counsel made on the record at the Sale Hearing, the Trustee has extensively marketed the Property, the Sale Contract was tested through competitive bidding, and the offer made by the Purchaser is the highest and best bid made to the Trustee for the Property.

E.      The Trustee has marketed the Property and conducted the Sale process in compliance with the Bidding Procedures Order.

F.      Creditors, parties-in-interest, and other entities have been afforded a reasonable opportunity to bid for the purchase of the Property.   A reasonable opportunity to object or be heard regarding the Application and the relief requested therein has been afforded to all interested persons and entities.

G.      The Trustee has the authority to consummate the Sale pursuant to the Sale Contract and all other documents contemplated thereby, and no consents or approvals, other than those expressly provided for in the Sale Contract or as set forth in this Order, are required for the Trustee to consummate the Sale.

H.      The Trustee has provided notice of the Application, the Bidding Procedures Order, the Auction, the Sale, and the Sale Hearing to the New York Attorney General, which had an opportunity to be heard and has not objected to the Sale.  Therefore, the New York Attorney General is deemed to have consented to the Sale, and the Sale satisfies section 510 of the New York Not-for-Profit Corporation Law.

I.      Approval of the Sale Contract and consummation of the Sale are in the best interests of the Debtors' estate, its creditors, and other parties-in-interest.

4

J.      The Trustee has demonstrated (i) good, sufficient, and sound business purpose and justification, and (ii) compelling circumstances for the Sale pursuant to sections 363(b) and (f) of the Bankruptcy Code.

K.      The Sale Contract was negotiated, proposed and entered into by and between the Trustee and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions.  There is no evidence suggesting that the Trustee or the Purchaser have engaged in any conduct that would cause or permit the avoidance of the Sale Contract or the consummation of the Sale, or the imposition of costs or damages under section 363(n) of the Bankruptcy Code.

L.      The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby in that:   (a) the Purchaser recognized that the Trustee was free to deal with any other party interested in a transaction regarding the Sale;  (b) the Purchaser agreed to provisions in the applicable Sale Contract that would enable the Trustee to accept a higher or better offer in respect of the Sale;  (c) the Purchaser made the highest or best bid in respect of the Property;   (d) all payments to be made by or to the Purchaser, and other agreements or arrangements entered into by the Purchaser in connection with the transaction have been disclosed;   and (e) the negotiation and execution of the Sale Contract and any other agreements or instruments related thereto were in good faith and constitute arm's-length transactions between the Purchaser and the Trustee.   The Purchaser has acted in good faith and will continue to be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transaction contemplated by the Sale Contract.

M.      The terms and conditions of the Sale Contract are fair and reasonable.  The consideration provided by the Purchaser for the Property pursuant to

5

the Sale Contract (i) is fair and reasonable, (ii) is the highest or best offer for the Property, (iii) will provide a greater recovery for the Debtors' estates than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and applicable non-bankruptcy law.

N.      Neither the Trustee nor the Purchaser are or will be liable to any agent, broker, person or firm acting or purporting to act on behalf of either the Trustee or the Purchaser for any commission, broker's fee or finder's fee respecting the Sale, except as provided for in the Sale Contract and this Order.

O.      The Property constitutes property of Owner LLC's estate.   Owner LLC is the sole and lawful owner of the Property and holds good title thereto.  The transfer of the Property by the Trustee to the Purchaser will be a legal, valid, and effective transfer of the Property, and will vest the Purchaser with all right, title, and interest of Owner LLC in and to the Property free and clear of all liens, claims, interests, obligations, rights, charges and encumbrances, except for permitted exceptions, as specifically provided in the Sale Contract ("Permitted Exceptions").  Purchaser shall have no liability for any claims asserted against or liabilities of the Debtors or their estate.

P.      The Trustee may sell the Property free and clear of all, liens, interests, obligations, rights, encumbrances, pledges, mortgages, deeds of trust, security interests, claims (including, any "claim" as defined in section 101(5) of the Bankruptcy Code), charges, options, rights of first refusal, easements, servitudes, transfer restrictions under any agreement, judgments, hypothecations, demands, licenses, sublicenses, assignments, debts, obligations, guaranties, options, contractual commitments, restrictions, environmental liabilities, options to purchase, and options,

6

in each case of whatever kind, nature, or description in, against or with respect to the Property, having arisen, existed or accrued prior to and through the Closing, whether direct or indirect, absolute or contingent, choate or inchoate, fixed or contingent, matured or unmatured, liquidated or unliquidated, arising or imposed by agreement, understanding, law, equity, statute or otherwise and whether arising prior to, on or after the Petition Date (collectively, "Liens, Claims and/or Interests"), except for Permitted Exceptions as expressly provided in the Sale Contract, because one or more of the standards set forth in section 363(f)(1)–(5) have been satisfied with regard to each such Lien, Claim and/or Interest.   Those non-debtor parties with Liens, Claims and/or Interests in or with respect to the Property who did not object, or who withdrew their objections to the Sale or the Application, are deemed to have consented to the sale of the Property free and clear of those non-debtor parties' Liens, Claims and/or Interests in the Property pursuant to section 363(f)(2) of the Bankruptcy Code.   Those non-debtor parties with Liens, Claims and/or Interests in or with respect to the Property who objected to the Application, but who did not withdraw any such objection, can be compelled to accept a monetary satisfaction of their liens, claims or interests within the meaning of Section 363(f)(5) of the Bankruptcy Code.

Q.    [If the Trustee and the Successful Bidder are unable to consummate the Sale pursuant to the Sale Contract following entry of this Order, the Trustee may file a notice with the Court designating the Second Highest Bidder as the "Successful Bid" (the "Back-Up Bid Implementation Notice") on the docket of the Chapter 7 Cases and seek to consummate the Sale pursuant to the Back-Up APA.  Following the filing of the Back-Up Bid Implementation Notice (if any), the Back-Up APA and the Second Highest Bidder shall be treated as the "Sale Contract" and the "Purchaser", respectively, for all purposes under this Order.  If the Second Highest Bid is designated as the "Successful

7

Bid" pursuant to the Back-Up Bid Implementation Notice, the Back-Up APA shall constitute the highest and best offer for the Property.  Under such circumstances, and taking into consideration all relevant factors and circumstances, consummation of the Sale of the Property pursuant to the Back-Up APA will provide a greater recovery for creditors and stakeholders than would be provided by any other practically available alternative.  The Trustee's determination that the Second Highest Bid is the highest and best offer for the Property under such circumstances constitutes a valid and sound exercise of the Trustee's business judgment.]

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1.      The Application is GRANTED to the extent set forth herein.

2.      The findings of fact set forth above and conclusions of law set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this case pursuant to Bankruptcy Rule 9014. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.[3]

3.      All objections, if any, to the Application or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are hereby overruled on the merits with prejudice, and in each case, all parties which asserted such objections and reservations of rights are enjoined from taking any action against the Property as well as the Purchaser or any

---

[3]      Any findings of fact or conclusions of law made on the record at the Sale Hearing are incorporated herein.

8

other purchaser of the Property, their affiliates or any agent of the foregoing in any manner including, without limitation, to recover any claim which such person or entity has solely against the Debtors or their estates.

**Approval of the Sale Contract**

4.      The Sale, and all of the terms and conditions and transactions contemplated by the Sale Contract, are hereby authorized and approved pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code.

5.      Pursuant to section 363 of the Bankruptcy Code, the Trustee is authorized to consummate the Sale pursuant to and in accordance with the terms and conditions of the Sale Contract and shall at all times act in accordance with the terms thereof and this Order.

6.      The Trustee is authorized to expend such funds and he and his retained attorneys are authorized to execute and deliver, and empowered to perform under, consummate, and implement the Sale Contract, together with all additional instruments and documents that may be reasonably necessary, convenient or desirable to implement the Sale Contract and consummate the Sale pursuant thereto and effectuate the provisions of this Order and the transaction approved hereby, and to take all other actions as may be necessary for the purpose of assigning, transferring, granting, conveying and conferring the Property to the Purchaser, as may be necessary or appropriate to the performance of the obligations as contemplated by the Sale Contract and this Order.

**Transfer of the Property**

7.      Except for Permitted Exceptions only as expressly provided in the applicable Sale Contract, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code,

9

upon the closing of the Sale (the "Closing"), the Property (and good and marketable title to such) and all of the attendant respective rights, title and interest therein shall be transferred to the Purchaser free and clear of all Liens, Claims and/or Interests, including, without limitation, tax liens, with all such Liens, Claims and/or Interests to attach to the net cash proceeds of the Property in the order of their priority, with the same validity, force and effect which they now have as against the applicable Property, subject to any claims and defenses, setoffs or rights of recoupment that the Trustee or Owner LLC's estate may possess with respect thereto.

8.      Except for Permitted Exceptions, only as expressly provided in the Sale Contract, all persons and entities (and their respective successors and assigns) including, but not limited to, all governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding Liens, Claims and/or Interests (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or non-liquidated, senior or subordinated) against, in or with respect to the Trustee, the Debtors' respective estates, and/or the Property arising or accruing under or out of, in connection with, or in any way relating to, the Trustee, the Debtors' respective estates, the Property, or the transfer of the Property to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting such persons' or entities' Liens, Claims and/or Interests against the Property, the Purchaser or any of the Purchaser's affiliates, designees, heirs, successors or assigns.   Following the Closing of the Sale under the Sale Contract, no holder of a Lien, Claim and/or Interest shall interfere with the Purchaser's title to or use and enjoyment of the Property based on or related to such Lien, Claim and/or Interest or any actions that the Trustee has taken or may take in the Chapter 7 Cases.   Effective upon the Closing, the Purchaser shall have no liability for any Claims (as defined in section 101(5) of the Bankruptcy Code) held by

10

a third party against the Trustee or the Debtors' respective estates concerning the Property.

9.    The transfer of the Property to the Purchaser pursuant to the Sale Contract constitutes a legal, valid, and effective transfer of the Property, and shall vest the Purchaser with all right, title, and interest of Owner LLC in and to the applicable Property.

**Additional Provisions**

10.    Without limiting the other terms of this Order, prior to or upon the Closing, Owner LLC and each of its creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release their interests, if any, in the Property as such Liens, Claims and/or Interests may have been recorded or may otherwise exist.

11.    Except for Permitted Exceptions, only as expressly provided in the Sale Contract, this Order shall be (a) effective as a determination that, upon the Closing, all Liens, Claims and/or Interests existing with respect to the Property prior to the Closing have been unconditionally released, discharged and terminated as to the Purchaser and the Property, and that the conveyances described herein have been effected, and (b) binding upon all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Property.

12.    Each and every federal, state, and local governmental agency or

11

department or office is hereby directed to accept this Order and any and all documents and instruments necessary and appropriate to consummate the transaction contemplated by the Sale Contract.

13. Without limiting the other provisions of this Order, if any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing interests with respect to the Property shall not have delivered to Trustee prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Property or otherwise, then (a) the Trustee is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Property, and (b) the Purchaser and/or the Trustee are hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims and/or Interests in, against or with respect to the Property. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, and local governmental agency, department, or office.

14. The Property shall be conveyed by the Trustee to, and accepted by the Purchaser "AS IS", "WHERE IS", "WITHOUT FAULTS", "WITHOUT ANY EXPRESS OR IMPLIED WARRANTY OR REPRESENTATION OF ANY KIND", except as expressly provided in the Sale Contract and this Order. Without limiting the generality of the foregoing, neither the Trustee nor any other person or entity makes any warranty or representation regarding the condition, working order, existence, quantity or location of such assets, and the Purchaser shall have no recourse and may

12

not assert any claim against the Trustee, or his representatives, based on any such warranty or representation.

15.     Notwithstanding the applicability of Bankruptcy Rule 6004(h) or any other provision of the Bankruptcy Rules or Local Rules stating to the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived.

16.     Notwithstanding the applicability of Local Rule 6004-1(h) or any other provision of the Bankruptcy Rules or Local Rules stating to the contrary, the requirement for publication notice is hereby waived.

17.     This Court hereby retains exclusive jurisdiction to enforce and implement this Order, the terms and provisions of the Sale Contract, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects including, but not limited to, retaining jurisdiction to (a) compel compliance with this Order and the Sale Contract, (b) resolve any dispute, controversy or claim arising under or related to the Sale Contract or the breach thereof, and (c) interpret, implement, and enforce the provisions of this Order and resolve any disputes related thereto.

18.     Entry of this Order shall in no way impair the ability of the Court, United States Trustee, or Trustee to implement or enforce other orders of the Court entered in the Chapter 7 Cases, and all such orders shall continue in full force and effect.

19.     The transaction contemplated by the Sale Contract are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code.  The Purchaser is a purchaser in good faith of the Property and is entitled to all of

13

the protections afforded by section 363(m) of the Bankruptcy Code.  Accordingly, any reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Purchaser.

20.     The terms and provisions of the Sale Contract and this Order shall be binding in all respects upon, and shall inure to the benefit of the Trustee, the Debtors' estates, the Purchaser, and any of such parties' respective affiliates, designees, successors, and assigns, and shall be binding in all respects upon all of the Debtors' estates' creditors, all prospective and actual bidders for the Property, and all persons and entities receiving notice of the Application and/or the Sale Hearing notwithstanding any subsequent appointment of any examiner(s) or receiver(s) under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the Debtors, their respective estates, or their creditors, or any examiner(s) or receiver(s).

21.     The Broker Commission is fixed and awarded in the amount of $[800,000], payable to BKREA, half of which (i.e., $400,000) shall be paid to Denham Wolf Real Estate Services, Inc. (the "Outside Broker"), and the Trustee is authorized and directed to pay and satisfy the Broker Commission to BKREA (and directly to the Outside Broker, if appropriate) from the proceeds of the Sale without further order of this Court.

22.     The failure specifically to include any particular provision of the Sale Contract in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Sale Contract be authorized and approved in its entirety.

23.     The Sale Contract and any related agreements, documents, or other

14

instruments may be further modified, amended, or supplemented by the parties

thereto, in a writing signed by both parties, and in accordance with the terms thereof,

without further order of this Court, provided that any such modification, amendment

or supplement does not have a material adverse effect on the Debtors' estates.


DATED:  New York, New York
        June __, 2026


_____
HONORABLE DAVID S. JONES
UNITED STATES BANKRUPTCY JUDGE

## Exhibit D

## Knakal Declaration

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
                                       :
In re:                              :         Chapter 7
                                         :
MANHATTAN COUNTRY SCHOOL *et al.,*[1]    :         Case No. 25-11009 (DSJ)
                                         :
                Debtors.      :         (Jointly Administered)
                                         :
-------------------------------------------------------------------x

### DECLARATION OF ROBERT A. KNAKAL IN SUPPORT OF TRUSTEE'S APPLICATION FOR ENTRY OF: (I) AN ORDER APPROVING (A) BIDDING PROCEDURES FOR THE SALE OF REAL PROPERTY, (B) DESIGNATION OF STALKING HORSE BIDDER, (C) BID PROTECTIONS IN FAVOR OF THE STALKING HORSE BIDDER, (D) DATE AND TIME FOR AN AUCTION AND A HEARING FOR APPROVAL OF THE SALE, AND (E) THE FORM AND MANNER OF NOTICE THEREOF; AND (II) AN ORDER APPROVING (A) THE SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, AND (B) PAYMENT OF BROKER COMMISSION

Under 28 U.S.C. § 1746, I, Robert A. Knakal, declare as follows under penalty of perjury:

1.     I am the Chairman and Chief Executive Officer of BK Real Estate Advisors, LLC ("BKREA"), the Court-approved real estate broker retained by Albert Togut, not individually but solely in his capacity as the Chapter 7 Trustee (the "Trustee") of Manhattan Country School ("MCS") and West 85th Street Owner LLC ("Owner LLC" and, together with MCS, the "Debtors"), to market and assist in the sale of the real property commonly known as 150 West 85th Street, New York, New York 10024 (the "Property").

2.     I submit this declaration (the "Declaration") in support of the Trustee's *Application For Entry of: (I) An Order Approving (A) Bidding Procedures for the*

---

[1]    The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) Manhattan Country School (6971) (Case No. 25-11009 (DSJ); and (ii) West 85th Street Owner LLC (6971) (Case No. 25-11922) (DSJ).

*Sale of Real Property, (B) Designation of Stalking Horse Bidder, (C) Bid Protections in Favor of the Stalking Horse Bidder, (D) Date and Time for an Auction and a Hearing for Approval of the Sale, and (E) the Form and Manner of Notice Thereof;  and (II) an Order Approving (A) the Sale of Real Property Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (B) Payment ff Broker Commission* (the "Application").[2]

3.       Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge, the personal knowledge of others at BKREA working under my supervision, my review of relevant documents, and/or my opinion based upon my experience and knowledge of the New York City real estate market and the marketing of the Property to date.  If called upon to testify, I could and would testify competently to the facts set forth herein.

*BKREA's and My Qualifications*

4.       BKREA is a tech-enabled commercial real estate brokerage company headquartered in New York City that I founded.  I have been brokering investment property sales in New York City since 1984.  Over the course of my career, I have sold 2,352 properties in New York—generally considered the highest total ever for any individual broker in the city—with an aggregate sales volume exceeding $22.6 billion.

5.       BKREA and I have particular expertise in the sale of "user" buildings, typically vacant or soon-to-be-vacant properties that a purchaser will occupy for its own operations.  BKREA produces the only "User Property Report" on the user market in Manhattan, which studies 969 user property sales going back to 1984 and analyzes the market and the types of users that have been most active.  I have

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Application.

2

personally sold 142 user buildings during my career, with an aggregate market value of over $1.2 billion.  My prior firm, Massey Knakal, served as broker to the prior owner of the Property when that owner sold the Property to West 85th Street Owner LLC in January 2015 for $28,000,000.

*Marketing of the Property*

6.      On September 4, 2025, BKREA commenced its marketing efforts for the Property.  Since that time, BKREA has engaged in discussions with numerous parties that BKREA believed would have interest in purchasing the Property either for operation as a school or other institutional use, or alternatively for redevelopment or conversion potential.

7.      BKREA's marketing efforts included the preparation and distribution of marketing materials to targeted investors, developers, and user groups. In addition to direct outreach, BKREA conducted eight (8) internal e-blasts to its proprietary database, reaching approximately 30,293 active investors, principals, and companies in the industry.  BKREA also issued a press release on February 7, 2026, which was distributed through a network of media and industry distribution channels to further expand market awareness of the opportunity.

8.      The Property was also listed on the major commercial real estate platforms, including LoopNet, CoStar, and Crexi, generating approximately 10,524 combined views on LoopNet and CoStar and 38,083 impressions on Crexi.

9.      In connection with these marketing efforts, BKREA conducted extensive direct outreach to principals and owners within the brokerage's network. Since the listing was posted, BKREA has connected with principals and ownership groups approximately 353 times by telephone, including follow-up conversations and additional outreach to parties that had previously expressed interest in similar assets.

3

These efforts resulted in 37 inspection tours of the Property arranged and conducted by BKREA.

10.     As a result of these marketing efforts, BKREA has received, as of the date hereof, 21 bids or pricing indications for the Property, including 17 active bids, two indications of interest, and three bids that were later withdrawn.  BKREA continues to maintain active dialogue with numerous prospective purchasers and believes there remains meaningful and ongoing interest in the Property.  In my opinion, the breadth and depth of bidder interest reflect a competitive market for the Property.

*The Stalking Horse APA Is the Result of a Robust Marketing Process*

11.     Based on the marketing process described above, my familiarity with the Property and the New York City real estate market, the offers received for the Property to date, and recent sale listings and transactions involving comparable properties in the neighborhood where the Property is located, it is my opinion that the all-cash Purchase Price of $20,000,000 provided for in the Stalking Horse APA is fair and reasonable.

12.     Given the extensive marketing of the Property already undertaken, and the well-developed pool of interested parties identified through that process, it is also my opinion that the proposed Bid Deadline, Auction date, and Sale Hearing date afford prospective purchasers sufficient time to evaluate the Property, complete remaining diligence, and submit bids.

[*Concludes on following page*]

4

13.     I declare under penalty of perjury that the foregoing is true and correct.


Executed on May 19, 2026 in New York, New York.


/s/ *Robert A. Knakal*
**Robert A. Knakal**
Chairman and Chief Executive Officer
BK Real Estate Advisors, LLC

5