**EXHIBIT B**

**Back-Up APA**

# ASSET PURCHASE AGREEMENT

by and between

## ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS CHAPTER 7 TRUSTEE OF THE ESTATE OF MANHATTAN COUNTRY SCHOOL

as Seller

and

## THE GENEVA SCHOOL OF MANHATTAN, a New York not-for-profit corporation

as Purchaser

June  [    ], 2026

3979568.5

# Asset Purchase Agreement

**THIS ASSET PURCHASE AGREEMENT** (the "**APA**") is made this [DATE] of May 2026 (the "**Execution Date**") by and between **ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS CHAPTER 7 TRUSTEE** (the "**Seller**") **OF THE ESTATE OF MANHATTAN COUNTRY SCHOOL** ("**MCS**"), **A CHAPTER 7 DEBTOR IN CASE NO. 1:25-bk-11009 (DSJ) (JOINTLY ADMINISTERED WITH CASE NO. 1:25-bk-11922 (DSJ))** (as jointly administered, the "**Bankruptcy Case**") **PENDING BEFORE THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK** (the "**Bankruptcy Court**"), and **150 WEST 85TH LLC, a Delaware limited liability company** (the "**Purchaser**") (Seller and Purchaser are also collectively referred to in this APA as the "**Parties**" and individually referred to in this APA as a "**Party**").

## R E C I T A L S

**WHEREAS**, On May 16, 2025, MCS filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") before the Bankruptcy Court.  On June 13, 2025, MCS filed an emergency motion to convert the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, which the Bankruptcy Court approved by order dated June 18, 2025.

**WHEREAS**, On September 3, 2025, the Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code for W 85th Street Owner LLC ("**Owner LLC**" and, together with MCS, the "**Debtors**").

**WHEREAS**, Seller is authorized to administer the Debtors' estates, including the sale of assets under Sections 363(b) and 363(f) of the Bankruptcy Code.

**WHEREAS,** Owner LLC owns certain real property located at 150 West 85th Street, New York, New York, 10024, which Property (as defined hereinafter) constitutes assets of the Owner LLC bankruptcy estate.

**WHEREAS**, Purchaser desires to purchase, and Seller desires to sell, all right, title and interest of the Debtors in and to the Property, on the terms and conditions set forth in this APA (such proposed transaction, the "**Sale**").

**WHEREAS**, The Sale is subject to higher or better offers, approval of bidding procedures, and entry of a final order of the Bankruptcy Court approving the sale (the "**Sale Order**").

**NOW, THEREFORE**, subject to Bankruptcy Court approval, as expressly described in Section 19 of this APA, the Parties agree to the following terms for the Sale:

3979568.5

**Section 1. SALE OF PROPERTY AND ACCEPTABLE TITLE**

Seller agrees to sell and Purchaser agrees to purchase, at the price and upon the terms and conditions set forth in this APA, the following (collectively, the "**Property**"): (a) the parcels of land more particularly described in Exhibit A attached hereto ("Land"); (b) all buildings and improvements situated on the Land (collectively, the "**Building**"); (c) all right, title and interest of Seller and/or Debtors in and to the land lying in the bed of any street or highway in front of or adjoining the Land to the center line thereof and to any unpaid award for any taking by condemnation or any damage to the Land by reason of a change of grade of any street or highway and in and to all rights of way, reversions, remainders, strips or gores, if any, between the Land and adjoining properties, and any land lying in or under the bed of any street, alley, road or right of way, abutting or adjacent to the Land; (d) all right, title and interest of Seller and/or Debtors in and to all privileges, easements, servitudes, hereditaments and appurtenances to the Land and/or providing any benefit with respect to access, ingress, egress, water, electricity, gas, telephone, sewer or other utility services to the Land, whether or not of record; (e) all right, title and interest of Seller and/or Debtors in and to the fixtures, and (f) all right, title and interest of Seller and/or Debtors in and to, if any, furniture, equipment, educational materials, supplies and other personal property in the Building other than that such property more specifically described on Exhibit B (such property described on Exhibit B, the "**Excluded Personal Property**" and such property other than that listed on Exhibit B, the "**Personal Property**"). The Property is located in the County, City and State of New York and known as **150 West 85th Street, New York, New York 10024, and as Block 1215 Lot 53** on the tax map of New York County.

The Property does not include any cash, deposit accounts, insurance policies, pre-closing claims or causes of action of the estate, or any other assets of the Debtors not expressly described in this Section 1.

Seller shall convey and Purchaser shall accept fee simple title to the Property in accordance with the terms of this APA, subject only to: (a) the matters set forth in Exhibit D attached hereto (collectively, "**Permitted Exceptions**"); (b) the matters that Seller elects to cure pursuant to Section 12 of this APA, and (c) such other matters as any reputable title company chosen by Purchaser and authorized to do business in the State of New York shall be willing, without additional premium, to omit as exceptions to coverage or to except with insurance against collection out of or enforcement against the Property, in each case, in a manner reasonably acceptable to Purchaser. The sale shall be free and clear of all liens, claims, encumbrances and interests to the fullest extent permitted by Sections 363(f) and other applicable provisions of the Bankruptcy Code pursuant to the Sale Order (together with the obligation set forth in the first sentence of this paragraph, collectively, the "**Title Condition**").

**Section 2. PURCHASE PRICE, ACCEPTABLE FUNDS, DEPOSIT AND ESCROW**

The purchase price (the "**Purchase Price**") to be paid by Purchaser to Seller for the Property is **Thirty Two Million One Hundred Thousand and 00/100 Dollars ($32,100,000.00)**, which shall be payable as follows:

3979568.5

a) **Two Million One Hundred Thousand and 00/100 Dollars ($2,100,000.00)** (the "**Deposit**") upon execution of this APA, by wire transfer of immediately available federal funds to the escrow account maintained by the Seller's special real estate counsel Phillips Nizer LLP ("**Escrowee**") at Flagstar Bank in accordance with wire instructions attached hereto as <u>Exhibit C</u> or as otherwise instructed by Escrowee (the "**Escrow Account**"); and

b) the balance of **Thirty Million and 00/100  Dollars ($30,000,000.00)**, subject to apportionments and adjustments as provided herein, on the delivery of the Deed at Closing.

All monies payable under this APA, unless otherwise specified in this APA, shall be paid at Closing by wire transfer of immediately available federal funds to the Escrow Account, to be released to Seller upon the Closing.

**Section 3. ESCROW PROVISIONS**

The Deposit and any other sums paid on account of the Purchase Price prior to the Closing (collectively, the "**Deposit**") shall be paid in immediately available federal funds in accordance with Section 2(a) above to Escrowee into the Escrow Account within one (1) business day after the Execution Date.  Escrowee shall hold the proceeds thereof in escrow in the Escrow Account, which shall be an interest-bearing special bank account until the Closing or sooner termination of this APA and shall pay  over or apply such proceeds in accordance with the terms of this APA. Any interest that is earned thereon shall be paid to the same party entitled to receive the Deposit or as directed by such party, and the party receiving such interest shall be responsible for any income taxes thereon.  The tax identification numbers of the parties shall be furnished to Escrowee upon request.  At the Closing, such proceeds and the interest thereon, if any, shall be paid by Escrowee to Seller as a credit toward the Purchase Price.

Except as otherwise provided in this APA, if for any other reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand.  If Escrowee does not receive a written objection from the other party to the proposed payment within ten (10) days after the giving of such notice, Escrowee is hereby authorized to make such payment.  If Escrowee does receive such written objection within such ten (10) day period or if for any other  reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the Parties to this APA or a final order of the Bankruptcy Court.  However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest thereon, if any, with the Bankruptcy Court. Escrowee shall give written notice of such deposit to Seller and Purchaser.  Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder. The foregoing notice procedures of this paragraph shall be referred to hereinafter as the "**Escrow Notice Procedures**."

The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part (including, without limitation, any loss suffered due to any act, omission, loss or

3979568.5

failure of the financial institution in which the Deposit is deposited) unless taken or suffered in bad faith, in willful disregard of this APA or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this APA, in violation of an order of the Bankruptcy Court or involving gross negligence on the part of Escrowee.

Escrowee has acknowledged agreement to these provisions by signing in the place indicated on the signature page of this APA.

Escrowee may act or refrain from acting in respect of any matter referred to in this Section 3 in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

## Section 4. REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Purchaser with respect to the Property, as follows:

a) MCS is the sole owner of Owner LLC, and Owner LLC is the sole owner of the Property.

b) Seller has sole authority to act in accordance with the APA and convey title to the Property on behalf of Owner LLC, subject to Bankruptcy Court approval.

c) As of the Closing Date, the Property shall be delivered free of all leases, tenancies, occupants, licenses, and subleases.

d) Seller is not a foreign person as defined in §1445 of the Internal Revenue Code.

e) Seller maintains property insurance (including fire and extended coverage), and Seller has provided to Purchaser evidence thereof, including true, correct and complete copies of its certificates of insurance with respect to such insurance.

3979568.5

**Section 5. ACKNOWLEDGMENTS, REPRESENTATIONS AND WARRANTIES OF PURCHASER**

Purchaser acknowledges that:

a) Purchaser has inspected the Property, is fully familiar with the physical condition and state of repair thereof and shall accept the Property "as is", "where is" and in its present condition, without any representations or warranties of any kind whatsoever except as may be expressly set forth in this APA, subject to use, wear, tear and natural deterioration between now and the Closing Date, without any reduction in the Purchase Price for any change in such condition by reason thereof subsequent to the date of this APA.

b) Before entering into this APA, Purchaser has made such examination of the Property (including, without limitation, any inspection for the presence of lead-based paint and/or lead-based paint hazards, the presence of any materials containing asbestos, and any other hazardous materials), the operation, income and expenses thereof and all other matters affecting or relating to this transaction as Purchaser deemed necessary, or has waived Purchaser's right to do so.  In entering into this APA, Purchaser has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Seller or any agent, employee or other representative of Seller or by any broker or any other person representing or purporting to represent Seller, in each case, except those that are expressly set forth in this APA, whether or not any such representations, warranties or statements were made in writing or orally.

c) Purchaser has sole authority to act in accordance with the APA and take title to the Property on behalf of the Purchaser, subject to Bankruptcy Court approval.

d) Purchaser acknowledges that Purchaser's intended residential use of the Property will require Purchaser to obtain a new or amended certificate of occupancy. Purchaser represents and warrants that its obligation to close under this APA is not conditioned upon obtaining any such approvals.

Purchaser represents and warrants to Seller that:

a) The funds comprising the Purchase Price to be delivered to Seller in accordance with this APA are not derived from any illegal activity.

b) Purchaser has, and will at Closing have, available unencumbered cash and cash equivalents (including publicly traded securities) in a sum at least equal to (and having a then current value of) the balance of the Purchase Price and any other payments required to be made by Purchaser at Closing.

c) Purchaser's intended use of the Property is for residential purposes, which may require Purchaser to obtain a new or amended certificate of occupancy following Closing.

3979568.5

Purchaser acknowledges that the Property's existing certificate of occupancy reflects institutional/educational use and a new or amended certificate of occupancy is needed to authorize a residential use.

## Section 6.  RESPONSIBILITY FOR VIOLATIONS

Purchaser shall be required to accept title to the Property subject to: (a) all notes or notices of violations of law or governmental ordinances, orders or requirements which were noted or issued prior to the date of this APA by any governmental department, agency or bureau having jurisdiction as to conditions affecting the Property (collectively, "**Violations**") and (b) all fines or monetary penalties levied prior to the Closing pursuant to the Administrative Code of the City of New York ("**Fines**"). If required, Seller, upon written request by Purchaser, shall promptly furnish to Purchaser written authorizations to make any necessary searches for the purposes of determining whether notes or notices of violations have been noted or issued with respect to the Property or liens have attached thereto. Notwithstanding the foregoing, Seller shall be responsible for paying (or crediting to Purchaser at Closing) any and all Fines in respect of Violations that are of liquidated amounts which are issued or noted through the Closing Date.

## Section 7. CLOSING

The closing of title (the "**Closing**") shall take place at the offices of the Seller's special real estate counsel Phillips Nizer LLP on the date which is no later than fifteen (15) days following the date that the Sale Order becomes a final, non-appealable order, or such earlier date as the parties may mutually agree in writing. Seller, with Purchaser's written consent, may adjourn the Closing for reasonable periods to effectuate the transfer, subject to the Outside Date.  For purposes of this APA, the "Closing Date" shall mean the actual day of closing.

Seller shall be responsible for the cost of the following: (i) the cost of discharging any encumbrances of record as required pursuant to the Title Condition; (ii) one-half of the escrow fee charged by First American Title Insurance Company (the "**Title Company**") to close through escrow; (iii) any fees or expenses of Escrowee charged or incurred in connection with the transactions contemplated by this APA; and (iv) all documentary transfer taxes, sales taxes and transfer taxes (if any) applicable to the transfer of the Property. Purchaser shall pay for the following: (i) the recording fees for the Deed; (ii) the Title Report and the premium for the Title Policy including extended coverage; (iii) the cost of obtaining and/or updating the Survey; and (iv) one-half of the escrow fee charged by the Title Company to close through escrow. Except as otherwise provided for herein, the parties will each be responsible for all of their other closing costs, including their respective attorneys' fees.

## Section 8. BID PROCEDURES ORDER

This APA is subject in all respects to (i) entry of the Sale Order, in form and substance reasonably acceptable to the Buyer (such order, the "**Proposed Sale Order**") and (ii) the terms of that certain order entered by the Bankruptcy Court on May 28, 2026 as Docket No. [126] approving the sale procedures for the Property (the "**Bid Procedures Order**"), which Bid Procedures Order Shall include the Bid Protections (as defined below).

3979568.5

**Section 9. COVENANTS**

Between the Execution Date and Closing:

a) Seller shall not enter into any new leases or occupancy agreements for the Property.

b) Seller shall not enter into any Service Contract unless the same is terminable without penalty by the then owner of the Property upon not more than 30 days' notice.

c) Seller shall maintain the Property in its current "as-is" condition and shall maintain the Property from the Execution Date until the Closing Date in substantially the same manner in which Seller has acted prior to the Execution Date. Seller will maintain its present property insurance (including fire and extended coverage) through Closing, and Seller shall give Purchaser prompt notice of any fire or other casualty occurring at the Property of which Seller obtains knowledge, or of any actual or threatened condemnation of all or any part of the Property of which Seller obtains knowledge.

d) Seller shall not remove fixtures or personal property without replacement of equal quality. Notwithstanding the foregoing, the Excluded Personal Property is excluded from this Sale and Seller shall remove them prior to Closing. [Seller shall remove all Personal Property (including, without limitation, all furniture, desks, chairs, shelving, educational equipment, supplies, cafeteria equipment, and any other movable personal property), other than fixtures that are part of the building's mechanical, electrical, or plumbing systems, from the Property prior to Closing, at Seller's sole cost and expense, leaving the Property vacant, broom clean and free of all Personal Property.][1]

e) Seller shall provide Purchaser, for visual and non-invasive inspection purposes only, reasonable access to the Property, during business hours, upon reasonable written notice to Seller, including e-mail notice.

f) Purchaser acknowledges that Purchaser's intended residential use of the Property will require Purchaser to obtain a new or amended certificate of occupancy. Purchaser's obligation to close under this APA is not conditioned upon obtaining any such approvals.

**Section 10. CONDITIONS PRECEDENT.**

10.1    Conditions to Obligations of all Parties. The obligation of each Party to consummate the transactions contemplated by this APA at Closing is subject to the fulfillment on or prior to the Closing of the following conditions:

---

[1] Note to draft: Subject to waiver made by Bidder at Auction held on June 23, 2026 and as set forth in *Amended and Superseded Notice of Designation of Successful Bid and Second Highest Bid at Auction for Sale of the Property* [Docket No. 135] (the "Successful Bid Designation Notice").

3979568.5

a) the Court shall have entered the Sale Order and such order shall be in full force and effect and shall not have been stayed or vacated, and any applicable appeal period thereafter having lawfully expired, with no appeal having been filed with respect thereto. Promptly upon obtaining the Sale Order, Seller shall deliver a copy of the Sale Order to Purchaser and Escrowee. If: (i) the Court denies approval of this APA, or (ii) the Sale Order is overturned in an appeal, this APA shall be terminated and, provided that the Purchaser is not in material breach of any of its representations, warranties, covenants or agreements contained herein,  the Deposit shall be delivered to Purchaser and neither party shall have any further rights or obligations hereunder except with respect to the provisions hereof which specifically survive termination;

b) no injunction by any court or other tribunal of competent jurisdiction shall have been entered and shall continue to be in effect and no law shall have been adopted that remains in effect or be effective, in each case, that prevents, enjoins, prohibits, or makes illegal the consummation of the transactions contemplated by this APA;

10.2    Seller's Conditions Precedent.  Seller's obligation to perform as set forth in this APA is hereby expressly conditioned on satisfaction of each and every one of the following conditions precedent:

a) Each of Purchaser's representations and warranties set forth in Section 5 hereof shall be true and correct at the Closing as if affirmatively made at that time.

The foregoing conditions are solely for the benefit of Seller, any or all of which may be waived by Seller in its sole discretion.

10.3    Purchaser's Conditions Precedent.  Purchaser's obligation to perform as set forth in this APA is hereby expressly conditioned on satisfaction of each and every one of the following conditions precedent:

a) Seller shall have performed its obligations under this APA and the Sale Order, including without limitation, depositing into the Escrow the Deed.

b) Each of the representations and warranties of Seller contained in Section 4 or elsewhere in this APA shall be true and correct at the Closing as if affirmatively made at that time.

c) As of the Closing, the Title Company shall have issued or shall have committed to issue, upon the sole condition of the payment of its regularly scheduled premium and the receipt of any affidavits contemplated by Section 12(d), an ALTA Owner's Title Policy (the "**Title Policy**") showing no exceptions or encumbrances other than (i) those reflected on the Title Report and not discharged by the Sale Order (ii) Permitted Encumbrances, and (iii) any liens of Seller that will be satisfied and discharged out of the Closing proceeds, insuring title to the Property (subject only to the Permitted Encumbrances) in the amount of the Purchase Price. In the event that the Title Company fails or refuses to issue the Title Policy at or following Closing, notwithstanding the satisfaction or waiver of all conditions to the issuance thereof, then either Buyer or Seller shall have the right to designate a nationally

3979568.5

recognized title insurance company licensed to do business in the state in which the Property is located (the "Substitute Title Company") to issue the Title Policy in lieu of the Title Company, and the other party shall not unreasonably withhold, condition, or delay its consent to such designation. The parties shall cooperate in good faith and execute such additional documents and instruments as may be reasonably required by the Substitute Title Company in connection with the issuance of the Title Policy. Any additional costs incurred solely as a result of the engagement of the Substitute Title Company shall be borne by Purchaser, except to the extent the original Title Company's failure or refusal to issue the Title Policy was a result of the act or omission of Seller, in which event Seller shall bear any such additional costs. The failure of the Title Company to issue the Title Policy shall not, in and of itself, constitute a default by either party under this APA, nor shall it serve as a basis for the termination of this APA, so long as a Substitute Title Company is able to issue the Title Policy within a reasonable period following Closing, not to exceed thirty (30) days.

The foregoing conditions are solely for the benefit of Purchaser, any or all of which may be waived by Purchaser in Purchaser's sole discretion.

## Section 11. TERMINATION

This APA may be terminated in accordance with this Section 11 at any time prior to the Closing:

a) Provided that the terminating Party is not in material breach of any of its representations, warranties, covenants or agreements contained herein and such material breach is the primary cause that the Closing has not occurred by the Outside Date (as defined herein), by written notice by either Seller or Purchaser if the Closing shall not have occurred on or before the date that is ninety (90) days after the Sale Order becomes a final, non-appealable order, unless the Parties agree to extend such ninety (90)-day period, which the Parties may agree to do from time to time, and the aggregate of such extensions shall be no longer than one hundred eighty (180) days in the aggregate (such date, the "**Outside Date**"); provided, however, that the Outside Date may be extended beyond any such date by Seller and Purchaser upon mutual agreement;

b) By written notice of either Seller or Purchaser if an order by a governmental authority of competent jurisdiction shall have been issued permanently restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby and such order shall have become final and nonappealable; provided that the right to terminate this APA pursuant to this Section 11(b) shall not be available to a Party if such order resulted from, or could have been avoided but for, the breach by such Party of any covenant or other agreement of such Party set forth in this APA;

c) If prior to entry of the Sale Order there shall occur (a) damage to the Property caused by fire or other casualty which would cost in the aggregate twelve (12%) percent of the Purchase Price or more to repair, as reasonably determined by an engineer selected by Seller which is reasonably satisfactory to Purchaser or (b) an taking by condemnation of any material portion of the Property then, and in either such event, Purchaser may elect to

terminate this APA by written notice given to Seller within fifteen (15) Business Days after Seller has given Purchaser the notice of the foregoing, in which event Escrowee shall promptly return the Deposit to Purchaser without the requirement of the Escrow Notice Procedure, and this APA shall thereupon be null and void and neither Party hereto shall thereupon have any further obligation to the other. If (x) Purchaser does not elect to terminate this APA in the event of such casualty or condemnation or (y) there shall occur (A) damage to the Property caused by fire or other casualty which would cost less than twelve (12%) percent of the Purchase Price to repair, as reasonably determined by an engineer selected by Seller which is reasonably satisfactory to Purchaser or (B) a taking by condemnation of any part of the Property which is not material, then, in each of the foregoing cases recited in this sentence, Closing shall take place as herein provided, without abatement of the Purchase Price, and Seller shall assign to Purchaser at the Closing, by written instrument in form reasonably satisfactory to Purchaser, all of Seller's interest in and to any insurance proceeds or condemnation awards which may be payable to Seller on account of any such fire, casualty or condemnation, shall deliver to Purchaser any such proceeds or awards actually theretofore paid, less any amounts (the "**Reimbursable Amounts**") (i) actually and reasonably expended or incurred by Seller in adjusting any insurance claim or negotiating and/or obtaining any condemnation award (including, without limitation, reasonable attorneys' fees and expenses) and/or (ii) theretofore actually and reasonably incurred or expended by or for the account of Seller for the cost of any compliance with laws, protective restoration or emergency repairs made by or on behalf of Seller (to the extent Seller has not theretofore been reimbursed by its insurance carriers for such expenditures), and Seller shall pay to Purchaser the amount of the deductible, if any, under Seller's property insurance policy(ies), less all Reimbursable Amounts not received by Seller from any insurance proceeds or condemnation awards paid to Seller prior to the Closing.

## Section 12. SELLER'S CLOSING OBLIGATIONS

At the Closing, Seller shall deliver the following to the Purchaser:

a) In the event that Purchaser is not a notice party to the bankruptcy proceedings, a copy of the Sale Order.

b) A statutory form of bargain and sale deed without covenant against grantor's acts, containing the covenant required by Section 13 of the Lien Law, and properly executed in proper form for recording so as to convey the title required by this APA.

c) To the extent they are then in Seller's possession and not posted at the Property, certificates, licenses, permits, authorizations and approvals issued for or with respect to the Property by governmental and quasi-governmental authorities having jurisdiction.

d) Such affidavits as Purchaser's title company shall reasonably require in order to omit from its title insurance policy all exceptions for judgments, bankruptcies or other returns against persons or entities whose names are the same as or similar to Seller's name.

3979568.5

e) (i) Checks to the order of the appropriate officers in payment of all applicable real property transfer taxes and copies of any required tax returns therefor executed by Seller, which checks shall be certified or official bank checks if required by the taxing authority, unless Seller elects to have Purchaser pay any of such taxes and credit Purchaser with the amount thereof, and (ii) a certification of non-foreign status, in form required by the Internal Revenue Code Withholding Section, signed under penalty of perjury.  Seller understands that such certification will be retained by Purchaser and will be made available to the Internal Revenue Service on request.

f) [Possession of the Property (including any keys, access cards, and passcodes), vacant and free of all Personal Property (including all furniture, desks, chairs, shelving, educational equipment, supplies, institutional fixtures, cafeteria equipment, and any other movable personal property) having been removed by Seller prior to Closing at Seller's sole cost and expense in accordance with Section 9 hereof, with all building mechanical, electrical, plumbing, and structural fixtures remaining in place, broom clean, and clear of all claims and rights of tenancy, and otherwise in the condition required in this APA.][2]

## Section 13.  PURCHASER'S CLOSING OBLIGATIONS

At the Closing, the Purchaser Shall:

a) Deliver to Seller checks or, at Seller's option, on two (2) days' notice, wire transfer of immediately available federal funds to Seller, in payment of the portion of the Purchase Price payable at the Closing, and adjusted for apportionments under Section 14 herein

b) Cause the deed to be recorded, duly complete all required real property tax returns and cause all such returns and checks in payment of such taxes to be delivered to the appropriate officers promptly after closing.

c) Deliver any other documents (i) required by this APA to be delivered by Purchaser, or (ii) reasonably requested by Seller.

---

[2]     Note to draft:  Subject to waiver made by Bidder at the Auction held on June 23, 2026 and as set forth in the Successful Bid Designation Notice.

3979568.5

**Section 14. APPORTIONMENTS**

The following apportionments shall be made between the Parties at the Closing as of the close of business on the day prior to the Closing Date:

a) real estate taxes, water charges and sewer rents, if any, on the basis of the fiscal period for which assessed, except that if there is a water meter on the Property, apportionment at the Closing shall be based on the last available reading, subject to adjustment after the Closing when the next reading is available.  In the event a final water meter reading dated not more than thirty days prior to the Closing Date is not available as of the Closing Date, Seller shall deposit a reasonable sum with Escrowee until receipt of the subsequent meter reading (with the Seller being obligated to pay all such water charges pertaining to the period prior to closing and the purchaser being obligated to pay all such charges pertaining to the period thereafter)  This Section 14(a) shall survive closing for a period of twelve (12) months; and

b) value of fuel stored on the Property, at the price then charged by Seller's supplier, including any taxes, as evidenced by an actual reading or invoice from Seller's supplier.

If the Closing shall occur before a new tax rate is fixed, the apportionment of taxes at the Closing shall be upon the basis of the old tax rate for the preceding period applied to latest assessed valuation.  Promptly after the new tax rate is fixed, the apportionment of taxes shall be recomputed.  Any discrepancy resulting from such recomputation and any errors or omissions in computing apportionments at Closing shall be promptly corrected, which obligations shall survive the Closing.

Real estate tax refunds and credits received after the Closing Date which are attributable to the fiscal tax year during which the Closing Date occurs shall be apportioned between Seller and Purchaser, after deducting any expenses of collection thereof, which obligation shall survive the Closing.

**Section 15. OBJECTIONS TO TITLE, FAILURE OF SELLER OR PURCHASER TO PERFORM**

a) Purchaser has ordered a commitment for an owner's policy of title insurance, Title No. 3020-1284989 (the "**Title Report**"), from the Title Company, a copy of which has been forwarded to Seller's attorney, and Purchaser has ordered a survey of the Property (the "**Survey**"). If before the Closing, the completed Survey or an update to the Title Report identifies survey matters affecting the Property or any liens, encumbrances or other title exceptions or survey matters affecting the Property that (i) were not disclosed by the Title Report, (ii) are Permitted Exceptions, or (iii) are Seller's liens that could be satisfied by a sum of money or otherwise by the Sale Order (each, a "**New Matter**"), and Purchaser has an objection to any such New Matter, then Purchaser shall deliver written notice of such New Matter to Seller within the earlier to occur of (A) five (5) Business Days after Purchaser becomes aware thereof or (B) the Closing Date, with the failure to deliver such

3979568.5

notice within such period deemed an acceptance by Purchaser of the New Matter. On or before the date that is the earlier of (X) five (5) days after the delivery of notice of such New Matter to Seller or (Y) the Closing Date, Seller shall give Purchaser written notice of its election, in its sole discretion, to either (a) cure or remedy such New Matter, or (b) not cure or remedy such New Matter, with the failure to deliver such notice within such period deemed an election not to remedy or cure such New Matter. Purchaser and Seller each acknowledges and agrees that TIME IS OF THE ESSENCE with respect to all time periods set forth in this Section 15(a).

b)  If Seller shall be unable to convey title to the Property at the Closing in accordance with the provisions of this APA, Purchaser, nevertheless, may elect to accept such title as Seller may be able to convey, but without any other credit or liability on the part of Seller except as may be otherwise agreed to by Purchaser and Seller. If Purchaser shall not so elect, Purchaser may terminate this APA and the sole liability of Seller shall be to cause the Escrowee to refund the Deposit to Purchaser promptly upon such termination without any requirement for the Escrow Notice Procedure set forth in Section 3. Upon such refund and reimbursement, this APA shall be null and void and the parties hereto shall be relieved of all further obligations and liability other than any arising under Section 14. Seller shall not be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this APA.

c)  Any unpaid taxes, assessments, water charges and sewer rents, together with the interest and penalties (to the extent they are not disputed by Seller) may be paid out of the proceeds of the monies payable at the Closing or placed in escrow with the title company to hold pending the Bankruptcy Court's ruling as to any disputed items. In such case the charges with respect to which the title insurance company has agreed so to insure shall not be considered objections to title and shall be the sole obligation of Seller.

d)  If Purchaser shall default in the performance of its obligation under this APA to purchase the Property as and when required pursuant to the terms of this APA, the sole and exclusive remedy of Seller shall be to retain the Deposit as liquidated damages for all loss, damage and expense suffered by Seller, including without limitation the loss of its bargain. If Seller shall default in the performance of its obligations herein, Purchaser's sole remedy shall be to either (i) elect to cancel this APA, upon which Purchaser shall receive a refund of the Deposit, or (ii) to seek specific performance of Seller's obligations pursuant to the Sale Order; provided, however, that if specific performance is unavailable or impossible due as a result of Seller's willful breach of this APA, then Buyer shall be entitled, at Buyer's sole election, to pursue actual damages suffered by Buyer as a result of such willful breach, or liquidated damages calculated as the positive difference, if any, between (i) the gross purchase price or other consideration received or to be received by Seller (or any affiliate of Seller) in connection with any sale, transfer, conveyance, or other disposition of the Property (or any interest therein) to a third party in willful breach of this APA, and (ii) the Purchase Price set forth herein.

3979568.5

**Section 16. BROKER**

If a broker is specified in Exhibit E, Seller and Purchaser mutually represent and warrant that such broker is the only broker with whom they have dealt in connection with this APA and that neither Seller nor Purchaser knows of any other broker who has claimed or may have the right to claim a commission in connection with this transaction, unless otherwise indicated in Exhibit E.  The commission of such broker shall be paid pursuant to separate agreement by the party specified in Exhibit E and pursuant to the Sale Order.  If no broker is specified in Exhibit E, the parties acknowledge that this APA was brought about by direct negotiation between Seller and Purchaser and that neither Seller nor Purchaser knows of any broker entitled to a commission in connection with the Sale.  Purchaser shall indemnify and defend Seller against any costs, claims or expenses, including attorneys' fees, arising out of the Purchaser's breach of any representations, warranties or obligations under this paragraph, and this paragraph shall survive the Closing or, if the Closing does not occur, the termination of this APA.

**Section 17. MISCELLANEOUS**

a) **Notices.** All notices under this APA shall be in writing and addressed as set forth in Exhibit E or addressed as Seller or Purchaser shall otherwise have given notice as herein provided; notices may be given by email as long as such notices are also given via personal delivery or prepaid overnight courier. The respective attorneys for the parties may give any extension of time or other notice on behalf of their clients.

b) **Assignability**. Purchaser shall not assign this APA or any of Purchaser's rights under the APA, nor shall any interest in Purchaser be assigned or transferred, without the prior written consent of Seller, to be granted or withheld in Seller's sole discretion, except as expressly provided herein, and further provided that Purchaser and any such assignee shall be jointly and severally liable for Purchaser's obligations hereunder and that all representations and warranties of Purchaser hereunder shall apply to Purchaser and to such assignee. Notwithstanding the foregoing, Purchaser may assign this APA to a subsidiary owned and controlled by Purchaser. No permitted assignment of Purchaser's rights under the APA shall be effective against Seller unless and until an executed counterpart of the instrument of assignment shall have been delivered to Seller and Seller shall have been furnished with the name and address of the assignee not less than ten (10) days prior to the Closing Date. The term "Purchaser" shall be deemed to include the assignee under any such effective assignment.

3979568.5

c) **Entire Agreement**. This APA embodies and constitutes the entire understanding between the Parties with respect to the Sale, and all prior agreements, understandings, representations and statements, oral or written, are merged into this APA. Neither this APA nor any provision hereof may be waived, modified, amended, discharged or terminated except by a written instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.  For purposes of the foregoing, email shall not be sufficient.

d) **Governing Law**. This APA shall be governed by, and construed in accordance with, the law of the State of New York. The venue for any dispute arising from this APA shall be the Bankruptcy Court and the Bankruptcy Court shall have exclusive jurisdiction to interpret and enforce the terms of this APA.

e) **Counterparts**. This APA may be executed in any number of counterparts, including electronically signed counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

f) **Binding Effect**. This APA shall be binding upon and shall inure to the benefit of the Parties and their respective heirs or successors and permitted assigns.  The APA shall not be binding or effective upon Seller in full until (i) the APA properly executed and delivered by Seller and Purchaser, and (ii) the Sale Order is obtained.

g) **Prohibited Persons**. Neither Purchaser, nor any of Purchaser's officers, directors, shareholders, partners, members or associates, nor any other direct or indirect holder of any equity interest in Purchaser, is an entity or person: (i) that is listed in the Annex to, or is otherwise subject to the provisions of United States Presidential Executive Order 13224 issued on September 24, 2001 ("**Executive Order**"); (ii) whose name appears on the U.S. Department of the Treasury, Office of Foreign Assets Control's ("**OFAC**") most current list of "Specifically Designated National and Blocked Persons" (which list may be published from time to time in various mediums including, but not limited to, the OFAC website, www.treas.gov/ofac/; (iii) who commits, threatens to commit or supports "terrorism", as that term is defined in the Executive Order; or (iv) who is otherwise affiliated with any entity or person listed above (any and all parties or persons described in clauses (i) through (iv) above are herein referred to as a "Prohibited Person"). Purchaser covenants and agrees to use commercially reasonable efforts to ensure that neither Purchaser, nor any of its respective officers, directors, shareholders, partners, members or associates, and no other direct or indirect holder of any equity interest in Purchaser will: (a) conduct any business, or engage in any transaction or dealing, with any Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods, or services, to or for the benefit of a Prohibited Person; or (b) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in the Executive Order or the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001. On request by Seller from time to time,

3979568.5

Purchaser further covenants and agrees promptly to deliver to Seller any such certification or other evidence as may be requested by Seller in Seller's sole and absolute discretion, confirming that no violation of this Section 17(g) shall have occurred. This Section 17(g) shall survive the Closing for a period of one (1) year.

h) Purchaser agrees that if, at any time following the Closing, it discovers that any of the Personal Property left at the Property contains any personally identifiable information of any former students, parents of such former students, former teachers or former staff of MCS ("**PII**"), Purchaser shall promptly notify Seller and coordinate with Seller for the proper transfer and/or disposal of such PII. Seller agrees it shall cooperate with such effort to coordinate such transfer or disposal. This Section 17(h) shall survive the Closing for a period of one (1) year.

i) For the purposes of this APA, the capitalized term "**Business Day(s)**" means any day other than a Saturday, Sunday, any Federal holiday, any holiday in New York State, or any day of the year on which banks are not required or authorized by law to close in New York City. If any period expires or action is to be taken on a day which is not a Business Day, the time frame for the same shall be extended until the next Business Day.

## Section 18.  LIMITATIONS ON SURVIVAL OF REPRESENTATIONS, WARRANTIES, COVENANTS AND OTHER OBLIGATIONS

a) Except as otherwise provided in this APA, no representations, warranties, covenants or other obligations of Seller set forth in this APA shall survive the Closing, and no action based thereon shall be commenced after the Closing.

b) The delivery of the Sale Order and the delivery of the deed by Seller, and the acceptance thereof by Purchaser, shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations of Seller which are expressly stated in this APA to survive the Closing.

## Section 19. BANKRUPTCY COURT APPROVAL

a) Purchaser acknowledges that this APA and the Sale are subject to the approval of the Bankruptcy Court and the entry by the Bankruptcy Court of the Sale Order, and Seller's and Purchaser's obligation to consummate the Sale is subject to approval by the Bankruptcy Court. Notwithstanding any other provision herein, the Parties' obligation to close under this APA shall be conditioned upon the Sale Order being entered by the Bankruptcy Court and becoming a final, non-appealable order.

b) Purchaser acknowledges that Seller may not act in his personal capacity but only as the Bankruptcy Court-appointed Chapter 7 trustee in bankruptcy and as such is obligated to provide notice to all parties in interest, including the public, of this Sale. The rules of the Bankruptcy Court require an opportunity for interested parties to make higher or better offers and consequently, until the deadline set forth in the Bidding Procedures Order, Seller is permitted to cause his representatives to respond to any inquiries, proposals or offers by

3979568.5

any person (in addition to Purchaser and its agents and representatives) in connection with the sale of the Property. In addition, Seller is obligated to respond to any inquiries or offers to purchase the Property and perform any and all other acts related thereto which are required by order(s) of the Bankruptcy Court, under the Bankruptcy Code or other applicable law, including, without limitation, supplying information relating to the Property to prospective purchasers.

c) Provided that Purchaser is not in default hereunder, if for any reason whatsoever the Bankruptcy Court shall enter an order approving the Sale of the Property to another buyer (such buyer an "**Alternate Buyer**") pursuant to an Alternative Bid, then in such event, and subject to the direction and order of the Bankruptcy Court:

Seller shall direct Escrowee to return the Deposit promptly after Seller closes on the sale of the Property to the Alternate Buyer.

d) Purchaser acknowledges that this bid is irrevocable through the earlier of the date of Closing and thirty (30) days after the entry of the Sale Order. Purchaser shall be entitled to immediately terminate this APA and receive a refund of the Deposit without the requirement of the Escrow Notice Procedures set forth in Section 3 if the Bankruptcy Court enters an order approving a sale of the Property to an Alternative Buyer.

e) Purchaser hereby irrevocably designates and appoints Belkin Burden Goldman, LLP, One Grand Central Place, 60 East 42nd Street, 16th Floor, New York, NY 10165, Attention: Jay B. Solomon, as agent for service of process regarding the Debtors' Bankruptcy Court case, this APA and any matter related thereto or hereto. The Agent, by signing below, irrevocably consents to and accepts its designation and appointment as agent for service of process upon Purchaser and any assignee or transferee of Purchaser herein.

f) Purchaser acknowledges and agrees that Seller is entering into this APA not personally but solely in his capacity as Chapter 7 Trustee of the Debtors, pursuant to Bankruptcy Court orders, and Purchaser agrees that neither Seller nor Seller's retained professionals shall have any personal liability or obligation whatsoever under this APA, except to the extent attributable to fraud, willful misconduct or gross negligence.

## Section 20.  NEW YORK ATTORNEY GENERAL APPROVAL

Purchaser acknowledges that this APA and the Sale are subject to review by the New York Attorney General (the "**AG**"). Upon entry of the Bid Procedures Order, Seller will promptly provide the AG with notice of the sale, including (i) an executed copy of the APA and all Exhibits thereto, and (ii) the proposed Sale Order.

[*Remainder of Page Intentionally Blank*]

3979568.5

**IN WITNESS WHEREOF**, the parties have executed this APA as of the date first above written.

**SELLER:**

_____

**ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS CHAPTER 7 TRUSTEE OF THE ESTATE OF MANHATTAN COUNTRY SCHOOL**

**PURCHASER:**

**150 West 85th LLC, a Delaware limited liability company**

By:   _____
        Name:
        Title:

**Receipt by Escrowee**

The undersigned Escrowee hereby acknowledges receipt of $2,100,000.00, subject to collection, to be held in escrow pursuant to §2.

**ESCROWEE:**

By:   _____

3979568.5

## EXHIBIT A

## DESCRIPTION OF PROPERTY

All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City, County and State of New York, being more particularly bounded and described as follows:

Beginning at a point on the Southerly side of 85th Street distant 225 feet Easterly from Amsterdam Avenue;

Running thence Southerly and parallel with Amsterdam Avenue, 102 feet 2 inches;

Thence Easterly parallel with 85th Street, 50 feet;

Thence Northerly parallel with Amsterdam Avenue, 43 feet 6 inches to the Southerly side of land formerly belonging to William W. Woolsey;

Thence Easterly and nearly parallel with 85th Street 25 feet more or less to the Southwesterly corner of Lot 226 on Map of property at Bloomingdale showing lands of William W. Woolsey, filed in the Office of the Register of the County of New York on May 26, 1863;

Thence Northerly parallel with Amsterdam Avenue, 58 feet 9-5/16 inches to the Southerly side of 85th Street; Thence Westerly on the Southerly side of 85th Street, 75 feet to the point or place of beginning.

3979568.5

## EXHIBIT B

## EXCLUDED PERSONAL PROPERTY

- [One (1) piano currently located at the Property.
- All educational equipment, supplies, audiovisual equipment, musical instruments, scientific equipment, kitchen and cafeteria equipment and appliances, and all other equipment and materials used in or related to the operation of a school.
- All artwork, crafts, decorations, teaching displays, student projects, signage, and similar items created by or relating to teachers, students, or staff of MCS, as determined by Seller in Seller's sole discretion.
- All books, records, files, documents, and any other paper or digital records or media belonging to or relating to MCS or its former students, faculty, or staff.][3]

---

[3]   Note to draft:  Subject to revision in accordance with waiver of personal property terms and conditions made by Bidder at Auction held on June 23, 2026 and as set forth in the Successful Bid Designation Notice.
3979568.5

**EXHIBIT C**

Escrow Account Wire Instructions



**<u>INCOMING WIRE INSTRUCTIONS FOR: PHILLIPS NIZER LLP</u>**
**<u>MASTER ESCROW</u>**

Flagstar Bank

260 Madison Avenue

New York, NY 10016

For the account of Phillips Nizer LLP

ABA # 026013576

Account # 150 391 6386

3979568.5

**EXHIBIT D**

**PERMITTED EXCEPTIONS**

1.      Zoning regulations and ordinances which are not violated by the existing structures or present use thereof and which do not render title uninsurable.

2.      Consents of record as of the date hereof by Seller or any former owner of the Property for the erection of any structure or structures on, under or above any street or streets on which the Property may abut.

3.      Possessory and statutory rights of tenant.

4.      Unpaid installments of assessments not due and payable on or before the Closing Date.

5.      Financing statements, chattel mortgages and liens on personalty filed more than 5 years prior to the Closing Date and not renewed, or filed against property or equipment no longer located on the Property or owned by Tenants, provided that Purchaser's title company shall agree to omit same from the owner's and lender's title insurance policies.

6.      (a)      Rights of utility companies to lay, maintain, install and repair pipes, lines, poles, conduits, cable boxes and related equipment on, over and under the Property, provided that none of such rights imposes any monetary obligation on the owner of the Property, and do not adversely affect the continued existence and use of the Property or any portion thereof as same exists and is being used as of the date hereof.

(b)      Minor encroachments and projections (i.e., less than 1 foot), if any, of stoops, doors, areas, steps, cellar steps, entrances, sidewalk elevators, trim, cornices, lintels, ledges, water tables, windows, window sills, awnings, trim, ornamental projections, sign brackets, lights, canopies, keystones, pilasters, ledges, fences, fire escapes and landings, hedges, coping and retaining walls, foundations and similar items projecting from the Property over any street or highway or over any adjoining property and encroachments of similar elements projecting from adjoining property over the Property and variances, if any, between fences, retaining walls and the like and lines of record title, provided same are less than 1 foot.

(c)      Revocability or lack of right to maintain vaults, coal chutes, excavations or sub-surface equipment beyond the line of the Property.

(d)      Any state of facts that an accurate survey would disclose, provided that such facts do not render title unmarketable.  For the purposes of this APA, none of the facts shown on the survey, if any, identified below shall be deemed to render title unmarketable, and Purchaser shall accept title subject thereto.

(e)      Laws and governmental regulations that affect the use and maintenance of the Property, provided same do not adversely affect the continued existence and use of the Property or any portion thereof as same exists and is being used as of the date hereof.

3979568.5

(f)     Covenants, conditions, restrictions, easements, leases, rights, reservations, consents and agreements of record, provided same do not adversely affect the continued existence and use of the Property or any portion thereof as same exists and is being used as of the date hereof.

(g)     Any notes or notices of violations of law or municipal ordinances or requirements affecting the Property, including without limitation, sidewalk violations and environmental control board violations.

(h)     Possible lack of right to maintain vault or vaulted area under, and coal chutes or fuel oil supply lines in, the sidewalk.

3979568.5

# EXHIBIT E
## MISCELLANEOUS

1.  Title insurer (§1.02): Any reputable title insurer licensed to conduct business in the State of New York as designated by Purchaser and reasonably acceptable to Seller.

2.  Seller's tax identification number (§2.03): to be provided.

3.  Purchaser's tax identification number (§2.03): to be provided.

4.  Scheduled date and time of Closing (§3.01): fifteen (15) days following the date that the Sale Order is obtained, at 10 a.m., **TIME BEING OF THE ESSENCE** with respect to Purchaser's obligations hereto.

5.  Place of Closing (§3.01): Seller's attorney's office, 485 Lexington Avenue, 14th Floor, New York, New York 10017, or, at Seller's or Purchaser's option, as a remote closing in escrow with Purchaser's title company.

6.  Broker (§14.01): Newmark & Company Real Estate, Inc. and BK Real Estate Advisors LLC  (to be paid by Seller pursuant to separate agreement).

7.  Address for notices (§15.01):

    If to Seller:           **ALBERT TOGUT, NOT INDIVIDUALLY, BUT SOLELY IN HIS CAPACITY AS CHAPTER 7 TRUSTEE OF THE ESTATE OF MANHATTAN COUNTRY SCHOOL**
    c/o Togut, Segal & Segal LLP
    Attn: Anthony L. Greene, Esq.
    One Penn Plaza, Suite 3335
    New York, New York 10119
    E-mail:          agreene@teamtogut.com

    with a copy to:         Togut, Segal & Segal LLP
    One Penn Plaza, Suite 3335
    New York, New York 10119
    Attn:   Anthony L. Greene, Esq.
    E-mail:          agreene@teamtogut.com

    Phillips Nizer LLP
    485 Lexington Avenue, 14th Floor
    New York, New York 10017
    Attn: Marc Andrew Landis, Esq.
    E-mail:          mlandis@phillipsnizer.com

    If to Purchaser:        150 West 85th LLC
    9 West 57th Street

3979568.5

New York, NY 10019
Attn: Stuart J. Zimmer
Email: szimmer@zimmerfsg.com

with a copy to:

Belkin Burden Goldman, LLP
One Grand Central Place,
60 East 42nd Street, 16th Floor,
New York, NY 10165
Attn: Jay B. Solomon
Email: jsolomon@bbgllp.com

3979568.5