**Presentment Date: September 17, 2026 at 12:00 p.m. (Prevailing Eastern Time)**
**Objection Deadline: September 14, 2026 at 4:00 p.m. (Prevailing Eastern Time)**

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Brian F. Moore
Anthony L. Greene

*Attorneys for Albert Togut,*
*Not Individually But Solely in His Capacity*
*as Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 7 |
| | Case No. 25-11009 (DSJ) |
| MANHATTAN COUNTRY SCHOOL *et al.*, | (Jointly Administered) |
| Debtors. | |

**NOTICE OF PRESENTMENT OF SECOND STIPULATION AND AGREED ORDER IN AID OF SALE OF COLLATERAL**

**PLEASE TAKE NOTICE** that the undersigned, on behalf of Albert Togut, not individually but solely in his capacity as the Chapter 7 Trustee (the "Trustee") of the estate of Manhattan Country School, will present the attached Stipulation and Agreed Order in Aid of Sale of Collateral (the "Stipulation and Agreed Order") to the Honorable David S. Jones, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), in his Chambers at One Bowling Green, Courtroom 701, New York 10004-1408, at **12:00 p.m. (Prevailing Eastern Time) on September 17, 2026.**

**PLEASE TAKE FURTHER NOTICE THAT** responses or objections, if any, to the Stipulation and Agreed Order must be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov)

by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, with a hard copy delivered directly to the Chambers of the Honorable David S. Jones, and shall be served by e-mail upon: (i) Togut, Segal & Segal LLP, attorneys for the Trustee, One Penn Plaza, Suite 3335, New York, New York 10119, Attn: Brian F. Moore, Esq. (bmoore@teamtogut.com) and Anthony L. Greene, Esq. (agreene@teamtogut.com); (ii) Certilman Balin Adler & Hyman, LLP attorneys for U.S. Bank National Association, as Trustee, and Flushing Bank, 80 Eighth Avenue, 8th Floor, New York, NY 10011, Attn: Richard J. McCord, Esq. (rmccord@certilmanbalin.com); (iii) the United States Trustee for the Southern District of New York, Alexander Custom House, One Bowling Green, Suite 534, New York, New York 10004, Attn: Mark Bruh, Esq. (Mark.Bruh@usdoj.gov); and (iv) any parties required to be served under any applicable Bankruptcy Rule or Local Rule, so as to be actually received by all of them no later than 4:00 P.M. (prevailing Eastern Time), on September 14, 2026 (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE THAT** if no objections are received prior to the Objection Deadline, the Court may enter the Stipulation and Agreed Order without a hearing.

Dated: New York, New York
August 31, 2026

ALBERT TOGUT
Not Individually But Solely in His Capacity as Chapter 7 Trustee
By His Attorneys
TOGUT, SEGAL & SEGAL LLP
By:
*/s/ Anthony L. Greene*
BRIAN F. MOORE
ANTHONY L. GREENE
One Penn Plaza – Suite 3335
New York, New York 10119
(212) 594-5000

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Brian F. Moore
Anthony L. Greene
Christian Ribeiro

*Attorneys for Albert Togut, not Individually but Solely in his Capacity as Chapter 7 Trustee*

CERTILMAN BALIN ADLER & HYMAN, LLP
90 Merrick Avenue
East Meadow, New York 11554
Telephone: (516) 296-7000
Richard J. McCord, Esq.
Robert D. Nosek, Esq.

*Attorneys for U.S. Bank National Association, as Trustee, and Flushing Bank*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 7 |
| MANHATTAN COUNTRY SCHOOL *et al.*,[1] | Case No. 25-11009 (DSJ) |
| Debtors. | (Jointly Administered) |

**<u>SECOND STIPULATION AND AGREED ORDER</u>**
**<u>IN AID OF SALE OF COLLATERAL</u>**

This second stipulation and agreed order (this "<u>Second Stipulation</u>") is entered into by and among Albert Togut, not individually but solely in his capacity as the Chapter 7 trustee (the "<u>Trustee</u>") of the estates (the "<u>Estates</u>") of Manhattan Country School, a/k/a Manhattan Country School, Inc. ("<u>MCS</u>"), and West 85th Street Owner LLC ("<u>Owner LLC</u>" and, together with MCS, the "<u>Debtors</u>"), in the above-captioned jointly administered cases (the "<u>Chapter 7 Cases</u>"), Flushing Bank ("<u>Flushing</u>"), and U.S. Bank National Association, solely in its capacity as Trustee for the Series 2016 Bonds and not in its individual capacity, and as directed by Flushing as beneficial owner of 100% of the

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) Manhattan Country School (6971) (Case No. 25-11009 (DSJ); and (ii) West 85th Street Owner LLC (6971) (Case No. 25-11922) (DSJ).

Series 2016 Bonds (the "Bond Trustee," with Flushing, the "Secured Creditors," and collectively with the Trustee, the "Parties"):

**WHEREAS,** on May 16, 2025 (the "Petition Date"), MCS filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"); and

**WHEREAS,** on June 18, 2025, the Bankruptcy Court entered an order converting MCS's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code [Docket No. 49]; the Trustee was thereafter appointed, duly qualified, and is acting as the Chapter 7 trustee of MCS's Estate; and

**WHEREAS,** Owner LLC, a wholly owned subsidiary of MCS, is the record owner of the real property located at 150 West 85th Street a/k/a 150/156 West 85th Street, New York, New York 10024; Borough: Manhattan, Block: 1215, Lot: 53 (the "Schoolhouse"); on September 3, 2025, the Trustee caused Owner LLC to file a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (Case No. 25-11922 (DSJ)); the Trustee was thereafter appointed, duly qualified, and is acting as the Chapter 7 trustee of Owner LLC's Estate; and on September 12, 2025, the Bankruptcy Court entered an order directing the joint administration of the Chapter 7 Cases for procedural purposes [Docket No. 84]; and

**WHEREAS,** on July 15, 2025, the Bankruptcy Court "So Ordered" that certain *Stipulation and Agreed Order in Aid of Sale of Collateral* [Docket No. 69] (the "First Stipulation") by and among the Trustee and the Secured Creditors, pursuant to which, among other things: (i) the Secured Creditors consented to and agreed to support the Trustee's sale of the Collateral (as defined in the First Stipulation, which includes the Schoolhouse) free and clear of all liens, claims and encumbrances, with the Secured

Creditors' respective secured claims and liens attaching to the proceeds thereof (the "Sale Proceeds") with the same validity, priority and extent as existed on the Petition Date; (ii) the Secured Creditors acknowledged, pursuant to Bankruptcy Code section 506(c), that the reasonable and necessary costs, commissions, compensation and other expenses incurred by the Trustee and his retained professionals in connection with the sale of the Collateral, including customary closing expenses and taxes, are recoverable from the Sale Proceeds senior to all liens and interests; and (iii) the Parties agreed that no distributions of Sale Proceeds would be made to any creditors of the Debtors prior to the entry of a further order of the Bankruptcy Court; and

**WHEREAS,** on May 19, 2026, the Trustee filed an application [Docket No. 124] (the "Sale Application") seeking, among other things, entry of orders (i) approving bidding procedures for the sale of the Schoolhouse and the designation of The Geneva School of Manhattan, a New York not-for-profit corporation (the "Purchaser" or "Geneva"), as stalking horse bidder pursuant to an asset purchase agreement with the Trustee dated as of May 12, 2026 (as amended, the "Sale Contract"), providing for a baseline purchase price of $20,000,000, subject to higher or better offers; and (ii) approving the sale of the Schoolhouse free and clear of liens, claims, encumbrances and other interests and the payment of a broker commission; and

**WHEREAS,** on May 28, 2026, the Bankruptcy Court entered an order approving the bidding procedures and the stalking horse designation [Docket No. 126] (the "Bidding Procedures Order"); and

**WHEREAS,** on June 23, 2026, the Trustee conducted an auction of the Schoolhouse (the "Auction") in accordance with the Bidding Procedures Order, at which three qualified bidders participated; following competitive bidding, the Trustee, in consultation with his retained professionals, designated Geneva's bid of $33,200,000 as

the successful bid, and the $33,100,000 bid of 150 West 85th LLC as the back-up bid, as memorialized in the Trustee's declaration concerning the results of the Auction [Docket No. 137]; and

**WHEREAS,** on July 2, 2026, the Bankruptcy Court entered the *Order Approving Sale of Property Located at 150 West 85th Street* [Docket No. 138] (the "Sale Order"), which, among other things: (i) approved the sale of the Schoolhouse (the "Sale") to the Purchaser pursuant to the Sale Contract for a purchase price of $33,200,000 (the "Purchase Price"); and (ii) expressly preserved the Trustee's rights under Bankruptcy Code section 506(c) consistent with the First Stipulation (Sale Order ¶ 17); and

**WHEREAS,** on July 31, 2026 (the "Closing Date"), the Sale was consummated in accordance with the Sale Contract and the Sale Order (the "Closing"), the Purchaser paid the Purchase Price, and the Sale Proceeds are being held by the Trustee pending disbursement in accordance with the Sale Order, the First Stipulation, and this Second Stipulation; and

**WHEREAS,** pursuant to the terms of the Sale Order and the Sale Contract, the following costs and expenses of the Sale (collectively, the "Sale Expenses") were paid at the Closing or are payable from the Sale Proceeds: (i) the Broker Commission in the amount of $1,328,000; (ii) customary closing costs in the approximate amount of $225; (iii) the Estates' apportioned share of New York City real property taxes for the first half of the 2026/2027 tax year, net of the Purchaser's apportionment credit, in the approximate amount of $45,274.20; (iv) the costs of preserving the Schoolhouse until Closing, including utility, water and student-record storage charges, in the approximate amount of $27,006.93; and (v) a reserve in the amount of $215,800 on account of any New York State real estate transfer taxes that may be determined to be due in connection with the Sale (the "Transfer Tax Reserve"); and

**WHEREAS,** the Secured Creditors assert that, as of the Closing Date, the aggregate amount due and owing on account of their secured claims against the Debtors and the Collateral, comprising principal, interest accrued at the applicable contract and default rates through the Closing Date, and reimbursable fees, costs and expenses (including attorneys' fees) as provided for in the applicable bonds, notes, mortgages and other loan documents and paragraph 5 of the First Stipulation, is not less than $30,006,720.75 (collectively, the "Secured Claim"), consisting of: (i) not less than $24,786,595.68 due in respect of the Series 2016 Bonds and the Issuer Note; (ii) not less than $4,439,749.61 due in respect of the Restated Credit Note and the Credit Line Loan; (iii) approximately $634,395.48 in reimbursable fees, costs and expenses of Flushing; (iv) $40,000.00 in fees and expenses of the Bond Trustee; and (v) $105,979.98 in fees and expenses of Shipman & Goodwin LLP, counsel to the Bond Trustee; and

**WHEREAS,** the Sale Proceeds remaining after payment of, or reserve for, the Sale Expenses and the Carve-Out (defined below) are less than the amount of the Secured Claim; and

**WHEREAS,** in consideration of the time, effort and services of the Trustee and his retained professionals in connection with the marketing, auction and sale of the Schoolhouse, and consistent with the First Stipulation and paragraph 17 of the Sale Order, the Parties have agreed to a fixed carve-out from the Sale Proceeds pursuant to Bankruptcy Code section 506(c) for the Trustee's statutory commissions and the fees and expenses of his retained professionals, in the amounts and on the terms set forth in paragraph 4 below, including a holdback and true-up mechanism pursuant to which any portion of the amount reserved on account of the fees and expenses of the Trustee's counsel that is not ultimately allowed and payable from the Sale Proceeds will be paid to the Secured Creditors; and

**WHEREAS,** as of the Closing Date, the New York City real estate tax records did not reflect an exemption from real estate taxes for the Schoolhouse for the first half of the 2026/2027 tax year, covering the period from July 1, 2026 through December 31, 2026, and the Trustee and the Purchaser therefore apportioned and paid such taxes at the Closing in accordance with the Sale Contract and entered into that certain Post-Closing Real Estate Tax Agreement dated as of July 31, 2026, a copy of which is attached hereto as Exhibit A (the "Post-Closing Tax Agreement"), which sets forth the parties' respective rights and obligations in the event that the Schoolhouse is subsequently determined to be exempt from all or any portion of such taxes or any refund, credit, rebate, reimbursement or other benefit is granted or received with respect thereto; and

**WHEREAS,** the Parties have engaged in good-faith, arm's-length negotiations concerning the allocation and distribution of the Sale Proceeds and have agreed, subject to the approval of the Bankruptcy Court, to the terms set forth herein.

**NOW, THEREFORE,** as a result of good-faith, arm's length negotiations, and without the admission of any facts or conclusions, the Parties hereto stipulate and agree:

1. The Recitals set forth above are incorporated herein by reference.

2. Subject only to the terms set forth herein, this Second Stipulation shall become effective upon the date that it is "So Ordered" by the Bankruptcy Court (the "Effective Date"). During the period between the execution by the Parties and the Effective Date, the Parties agree that this Second Stipulation shall constitute a binding agreement and that they shall do nothing contrary to the terms set forth herein.

3. Sale Expenses. The Trustee is authorized, but not directed, to pay the Sale Expenses from the Sale Proceeds, in each case to the extent not paid at or through

the Closing, without further order of the Bankruptcy Court. The Secured Creditors acknowledge and agree that the Sale Expenses are reasonable and necessary costs and expenses of preserving and disposing of the Collateral within the meaning of Bankruptcy Code section 506(c) and the First Stipulation, are recoverable from the Sale Proceeds prior and senior to the Secured Creditors' liens, claims and interests therein, and shall not be subject to challenge by the Secured Creditors. The Trustee shall hold the Transfer Tax Reserve pending the earlier of (i) the payment of any New York State real estate transfer taxes determined to be due in connection with the Sale and (ii) the Trustee's determination, in consultation with his retained professionals, that no such taxes are due or payable. Promptly upon the earlier of the foregoing (and in any event no later than the entry of a final decree closing the Chapter 7 Cases), the Trustee shall pay any unused balance of the Transfer Tax Reserve to the Secured Creditors, without further order of the Bankruptcy Court, in accordance with the payment instructions delivered pursuant to paragraph 6 below.

4. Carve-Out. Pursuant to Bankruptcy Code section 506(c), paragraphs 6 and 7 of the First Stipulation, and paragraph 17 of the Sale Order, the Secured Creditors hereby consent to, and agree not to object to or otherwise challenge, a carve-out from the Sale Proceeds, prior and senior to the Secured Creditors' liens, claims and interests therein, in the aggregate amount of $1,994,882.95 (the "Carve-Out"), comprising: (a) $1,019,250 on account of the Trustee's statutory commissions pursuant to Bankruptcy Code section 326(a); (b) $860,000 on account of the fees and expenses of Togut, Segal & Segal LLP, attorneys for the Trustee (the "Togut Firm"); (c) $53,132.95 on account of the fees and expenses of Verdolino & Lowey, P.C., accountants and financial advisors to the Trustee; and (d) $62,500 on account of the fees and expenses of Phillips Nizer LLP, special real estate counsel to the Trustee. The Trustee shall reserve the full amount of the Carve-

Out from the Sale Proceeds. Amounts on account of the Carve-Out shall be payable only pursuant to written applications to the Bankruptcy Court pursuant to Bankruptcy Code sections 326, 330, 331 and/or 506(c), the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules, and approval thereof by the Bankruptcy Court; *provided*, that the Secured Creditors shall not object to, and shall be deemed to have consented to, the allowance and payment from the Sale Proceeds of such commissions, fees and expenses up to the respective amounts set forth in this paragraph 4, and the Secured Creditors' reservation of rights under paragraph 7 of the First Stipulation shall be deemed satisfied with respect thereto. The Parties acknowledge that, as of August 7, 2026, the recorded fees and expenses of the Togut Firm in connection with the Sale total $816,395.91, consisting of $802,426.00 in fees and $13,969.91 in expenses, and that the Togut Firm has incurred, and will continue to incur, additional fees and expenses in connection with the Sale, including in connection with the Closing, this Second Stipulation and the distributions contemplated hereby, that are not yet reflected in the Togut Firm's billing records. Accordingly, the $860,000 reserved pursuant to clause (b) of this paragraph 4 includes a holdback in the amount of $43,604.09 (the "Holdback"), representing the difference between $860,000 and the Togut Firm's recorded fees and expenses as of such date. The Trustee shall continue to reserve the Holdback, together with any other unpaid portion of the amount set forth in clause (b) of this paragraph 4, pending allowance of the Togut Firm's fees and expenses as set forth above. If, as of the True-Up Date (defined below), the aggregate amount of the fees and expenses of the Togut Firm allowed by the Bankruptcy Court and paid or payable from the Sale Proceeds pursuant to this paragraph 4 (the "Final Togut Amount") is less than $860,000, then the Trustee shall promptly, and in any event within ten (10) business days after the True-Up Date, pay to the Secured Creditors the amount by which $860,000 exceeds the Final Togut Amount (such payment,

the "Supplemental Distribution"), without further order of the Bankruptcy Court, in accordance with the payment instructions delivered pursuant to paragraph 6 below; *provided*, that in no event shall the sum of the Distribution (defined below) and the Supplemental Distribution exceed the aggregate amount of the Secured Claim. As used herein, the "True-Up Date" means the earlier of (i) the date of entry of an order of the Bankruptcy Court resolving the Togut Firm's first interim application for allowance of its fees and expenses incurred in connection with the Sale, and (ii) the date on which the Togut Firm delivers written notice to counsel to the Secured Creditors stating that the Togut Firm will not seek allowance of any further fees or expenses payable from the Sale Proceeds. Nothing herein shall limit the right of the Trustee or his retained professionals to seek allowance of commissions, fees and expenses in excess of the amounts set forth in this paragraph 4; *provided*, that any such excess amounts shall not be payable from the Sale Proceeds, and shall be payable, if and when allowed, solely from other assets of the Estates.

5. Secured Claim. Solely for purposes of this Second Stipulation: (a) the Secured Claim is deemed due and owing in an amount not less than $30,006,720.75 as of the Closing Date; (b) the Secured Claim is secured by valid, perfected and enforceable first-priority liens on and security interests in the Sale Proceeds in accordance with paragraph 16 of the Sale Order; and (c) the Parties acknowledge and agree that the amount of the Secured Claim exceeds the amount of the Remaining Proceeds (defined below) and that, subject to the terms hereof, the Secured Creditors are entitled to receive the Remaining Proceeds in accordance with the priorities established by the Sale Order and applicable law.

6. Distribution. The Trustee is authorized, but not directed, without further order of the Bankruptcy Court, to disburse to the Secured Creditors any and all

Sale Proceeds remaining after (a) the payment of, or reserve for, the Sale Expenses, and (b) the funding of the reserve for the Carve-Out (such remaining Sale Proceeds, the "Remaining Proceeds," which the Parties estimate to be approximately $29,588,811, subject to final apportionments, adjustments and reconciliation of the Sale Expenses), up to the aggregate amount of the Secured Claim (the "Distribution"). The Distribution and any Supplemental Distribution shall be made by wire transfer in accordance with joint written payment instructions delivered to the Trustee by counsel to the Secured Creditors. The allocation of the Distribution and any Supplemental Distribution as between the Bond Trustee and Flushing shall be as set forth in such instructions, and the Trustee shall have no responsibility or liability for such allocation. Notwithstanding anything herein to the contrary, in no event shall the aggregate of all amounts paid to the Secured Creditors pursuant to this Second Stipulation exceed the aggregate amount of the Secured Claim.

7. Concerning the Bond Trustee. The parties acknowledge that Bond Trustee is entering into this Second Stipulation pursuant to and in reliance on direction from Flushing. Flushing, by its signature below, as the beneficial owner of 100% of the Series 2016 Bonds issued pursuant to that certain Indenture of Trust, dated as of April 1, 2016 (the "Indenture"), by and between Build NYC Resource Corporation and the Bond Trustee, and that certain Loan Agreement dated as of April 1, 2016, by and between Build New York Resource Corporation and Owner LLC (the "Loan Agreement") and together with the Indenture, the "Bond Documents"), hereby directs the Bond Trustee to execute this Second Stipulation and to execute any releases reasonably requested by Flushing or the Trustee (at the expense of the Estates) in connection with the Series 2016 Bonds. Flushing further agrees to indemnify and hold harmless the Bond Trustee and its representatives from and against, without limitation, all losses, liabilities, claims and fees

and expenses, including legal fees and expenses, (collectively referred to herein as "Losses") that may be incurred and related to such direction.

8. Cancelation of Indenture. Upon payment in full of all amounts referenced in this Second Stipulation, the Bond Documents shall be deemed cancelled, discharged, and of no force or effect, except as necessary to (a) enforce the rights, claims, and interests of the Bond Trustee; (b) allow the receipt of and to make distributions in accordance with the terms of this Second Stipulation and the Bond Documents; and (c) preserve any rights of the Bond Trustee and any predecessor thereof to exercise charging liens, and to enforce its rights, claims, and interests, vis-à-vis any party other than the Debtors.

9. Satisfaction; Release of Liens; Reservation of Deficiency Claim. Upon the Secured Creditors' receipt of the Distribution: (a) the Distribution, together with all other amounts paid to the Secured Creditors pursuant to this Second Stipulation, shall be applied in reduction of the Secured Claim (in accordance with the Indenture referenced above, as applicable) in the following order: first, to reimbursable fees, costs and expenses; second, to principal; third, to interest accrued through the Petition Date; and last, to interest, if any, accrued after the Petition Date (including at any default rate), and any and all other claims (as defined in Bankruptcy Code section 101(5)), liens, security interests and other interests of the Secured Creditors against the Debtors, the Estates, the Trustee and their respective property, whether secured, unsecured, priority, administrative or otherwise, other than any right of the Secured Creditors to assert a general unsecured claim for the unpaid balance, if any, of the Secured Claim (a "Deficiency Claim"), shall be deemed fully satisfied, released, discharged and extinguished; (b) all liens, security interests and other interests of the Secured Creditors in the Collateral, the Sale Proceeds and any other property of the Estates shall be deemed

fully satisfied, released, discharged and extinguished; (c) any proofs of claim filed by or on behalf of the Secured Creditors in the Chapter 7 Cases shall be deemed reduced by all amounts paid to the Secured Creditors pursuant to this Second Stipulation; and (d) the Secured Creditors shall, at the reasonable request of the Trustee and at the expense of the Estates, promptly execute and deliver such documents and instruments, including, without limitation, UCC-3 termination statements and satisfactions or discharges of mortgages, as may be reasonably necessary or appropriate to evidence the satisfaction, release and discharge described in this paragraph 8. The Secured Creditors reserve the right to assert a Deficiency Claim, and the Trustee and the Estates reserve any and all rights, claims, defenses and objections with respect to any Deficiency Claim asserted, including, without limitation, under Bankruptcy Code sections 502(b)(2) and 506(b). Nothing in this Second Stipulation shall constitute an allowance of, or an admission by any Party with respect to, any Deficiency Claim, and any assertion of a Deficiency Claim shall be accompanied by a reasonably detailed statement of the composition of the amounts asserted, including the allocation of principal, interest, fees, costs and charges between the periods before and after the Petition Date. Notwithstanding anything to the contrary in this paragraph 9, the Secured Creditors' rights to receive any unused balance of the Transfer Tax Reserve pursuant to paragraph 3 above, the Supplemental Distribution, if any, pursuant to paragraph 4 above, and any amounts payable to the Secured Creditors pursuant to paragraph 9 below shall survive the Distribution and shall not be impaired, satisfied, released or discharged thereby.

10. Proofs of Claim. Upon the Secured Creditors' receipt of the Distribution, the following proofs of claim shall be deemed fully satisfied and can be designated as such on the Claims Register maintained by the Clerk of the Court: (a) proofs of claim nos. 68 and 69 filed by Flushing against MCS, (b) proof of claim no. 70

filed by the Bond Trustee against MCS, (c) proofs of claim nos. 1 and 2 filed by Flushing against Owner LLC, and (d) proof of claim no. 3 filed by the Bond Trustee against Owner LLC; *provided*, however, that Flushing shall be entitled to a file a Deficiency Claim on account of proof of claim no. 69 against MCS and/or proof of claim no. 2 against Owner LLC, to the extent applicable, subject to the terms of paragraph 9 above.

11. Post-Closing Tax Agreement. The Trustee's execution and delivery of the Post-Closing Tax Agreement, a copy of which is attached hereto as Exhibit A, is hereby approved, and the Trustee is authorized, but not directed, to perform his and the Estates' obligations under the Post-Closing Tax Agreement, and to take all actions reasonably necessary or appropriate to implement the same, including receiving, holding and remitting any amounts payable thereunder, in each case without further order of the Bankruptcy Court. If the Trustee receives any amount from the Purchaser pursuant to the Post-Closing Tax Agreement, the Trustee shall pay such amount to the Secured Creditors, without further order of the Bankruptcy Court, in accordance with the payment instructions delivered pursuant to paragraph 6 above. Nothing in this Second Stipulation shall alter, impair or otherwise affect the rights and obligations of the parties to the Post-Closing Tax Agreement thereunder.

12. First Stipulation. Except as expressly set forth herein, the First Stipulation shall remain in full force and effect in accordance with its terms. The requirement set forth in paragraph 5 of the First Stipulation that distributions of Sale Proceeds be made only pursuant to a further order of the Bankruptcy Court shall be satisfied, with respect to the Sale Expenses, the Carve-Out, the Distribution and any Supplemental Distribution, and any payments or remittances to the Secured Creditors pursuant to paragraphs 3, 4, and 6 above, by the entry of this Second Stipulation. Except

as expressly authorized herein, the Trustee shall not make any other distributions of Sale Proceeds absent further order of the Bankruptcy Court.

13. Upon entry of an Order approving this Second Stipulation, this Second Stipulation is immediately effective and F.R.B.P. 6004(h) shall be deemed waived.

14. This Second Stipulation may not be modified or terminated, nor any of its provisions waived, except by a written agreement of the Parties that is approved by the Bankruptcy Court.

15. This Second Stipulation shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, successors and assigns. Notwithstanding anything to the contrary herein, nothing contained in this Second Stipulation shall constitute either (a) a waiver of the Trustee's fiduciary duties to the Debtors and the Estates in these or any other cases, or (b) his right to take such steps that he, in his sole discretion, determines to be necessary or appropriate to preserve and protect such duties.

16. This Second Stipulation may be executed in multiple counterparts, each of which shall be deemed an original, including any facsimile or "PDF" counterparts, and which together shall constitute one and the same agreement.

17. The Parties acknowledge and agree that the Bankruptcy Court shall have exclusive jurisdiction to hear and determine any claims or disputes between the Parties regarding this Second Stipulation in accordance with applicable law.

Dated: New York, New York
August 31, 2026

ALBERT TOGUT
Not Individually But Solely in His Capacity as Chapter 7 Trustee of the Debtors' Estates
By His Attorneys
TOGUT, SEGAL & SEGAL LLP

By:

*/s/ Anthony L. Greene*
Anthony L. Greene
One Penn Plaza – Suite 3335
New York, New York 10119
(212) 594-5000

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, AND FLUSHING BANK
By their Attorneys
CERTILMAN BALIN ADLER & HYMAN, LLP

By:

*/s/ Richard J. McCord*
RICHARD J. McCORD
90 Merrick Avenue, 9th Floor
East Meadow, NY 11554
(516) 296-7000

SO ORDERED

this __ day of ______, 2026
in New York, New York

______________________________
HONORABLE DAVID S. JONES
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

**Post-Closing Real Estate Tax Agreement**

[See attached.]

# CLOSING STATEMENT

SALE OF THE PREMISES

by

ALBERT TOGUT, NOT INDIVIDUAL BUT SOLELY IN HIS CAPACITY AS THE CHAPTER 7 TRUSTEE OF THE ESTATES OF
MANHATTAN COUNTRY SCHOOL AND WEST 85TH STREET OWNER LLC

to

THE GENEVA SCHOOL OF MANHATTAN, A NEW YORK NOT-FOR-PROFIT CORPORATION OR ITS PERMITTED ASSIGNEE OR AFFILIATE

for premises:

150 West 85th Street
New York, NY 10024

---

## APPEARANCES

| | |
|---|---|
| Marc A. Landis, Esq.<br>Phillips Nizer LLP | Attorneys for Seller |
| The Geneva School of Manhattan | Purchaser |
| Eddy Park, Esq.<br>Katten Muchin Rosenman LLP | Attorney for Purchaser |
| BK Real Estate Advisors | Broker |
| Denham Wolf Real Estate Services, Inc. | Broker |
| First American Title Insurance Company | Title Company |

The remote closing took place on July 30, 2026.

**THIS SUMMARY IS FURNISHED SOLELY FOR THE CONVENIENCE OF THE CLIENT AND IS NOT TO BE DEEMED A COMPLETE OR COMPREHENSIVE STATEMENT OF ALL OR ANY OF THE PROVISIONS OF THE SUBJECT DOCUMENTS. REFERENCE SHOULD BE MADE TO THE DOCUMENTS THEMSELVES FOR THE COMPLETE TEXT OF ANY PROVISION THEREOF.**

**POST-CLOSING REAL ESTATE TAX AGREEMENT**

This Post-Closing Real Estate Tax Agreement (this "**Agreement**") is made as of July 31, 2026 by and between **ALBERT TOGUT, not individually, but solely in his capacity as Chapter 7 Trustee of the Estates of Manhattan Country School and West 85th Street Owner LLC** ("**Seller**"), and **THE GENEVA SCHOOL OF MANHATTAN, a New York not-for-profit corporation** ("**Purchaser**").

## RECITALS

A. Pursuant to that certain Contract of Sale dated as of May 12, 2026, and as approved by the Order Approving the Sale of the Property entered by the United States Bankruptcy Court for the Southern District of New York entered on July 2, 2026 (the "Contract"), Seller conveyed to Purchaser on July 31, 2026 (the "Closing Date") the real property commonly known as 150 West 85th Street, New York, New York 10024 (the "Premises").

B. As of the Closing Date, the New York City real estate tax records did not reflect an exemption from real estate taxes for the Premises for the first half of the 2026/2027 tax year, covering the period from July 1, 2026 through December 31, 2026 (the "First-Half Taxes"), and, as such, Seller and Purchaser paid such First-Half Taxes on a pro rata basis in accordance with the terms of the Contract. Seller's pro-rata portion of the First-Half Taxes shall herein be referred to as "Seller's Portion" and Purchaser's pro-rata portion of the First-Half Taxes shall herein be referred to as "Purchaser's Portion".

C. The parties desire to set forth their respective rights and obligations in the event that the Premises is subsequently determined to be exempt from all or any portion of the First-Half Taxes or any refund, credit, rebate, reimbursement or other benefit is granted or received with respect to such First-Half Taxes.

## AGREEMENT

NOW THEREFORE, For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser agree as follows:

1. **Payment Upon Tax Benefit.**

If (a) the New York City Department of Finance ("DOF") grants, reinstates or applies any exemption, refund, credit, rebate, reimbursement or other monetary benefit (a "Tax Benefit") in respect of the First-Half Taxes, or Purchaser receives or becomes entitled to receive any Tax Benefit in respect of the First Half Taxes, and (b) Purchaser actually receives such Tax Benefit in the form of immediately available funds from DOF (the "DOF Refund"), then, provided that the Tax Benefit fully exempts, refunds, credits, rebates, reimburses or otherwise provides Purchaser with a Tax Benefit greater than the amount equal to the Purchaser's Portion, then, Purchaser shall, within five (5) business days after receiving such DOF Refund, pay by wire transfer of immediately available funds, as reasonably directed by Seller in writing, the amount that is the lesser of (x) the amount of the DOF Refund that exceeds the Purchaser's Portion, and (y) the sum of $45,274.20.

Notwithstanding the foregoing, if the Tax Benefit is in the form of a credit to be applied to future real estate taxes, then the timing of Purchaser's obligation to pay any funds to Seller shall arise only at the time the application of all such credits in respect of real estate taxes coming due in the future has exceeded the Purchaser's Portion in full.

If Seller shall receive any DOF Refund in respect of the First-Half Taxes attributable to the period from and after the Closing Date or otherwise attributable to the Purchaser's Portion (a "Post-Closing Period DOF Refund"), then Seller shall, within five (5) business days after receiving such Post-Closing Period DOF Refund, pay by wire transfer of immediately available funds, as reasonably directed by Purchaser in writing, the amount of such Post-Closing Period DOF Refund.

Purchaser shall promptly provide Seller with copies of (i) any application, document, or communication submitted by Purchaser concerning the exemption status of the Premises, the First-Half Taxes or any Tax Benefit; and (ii) all notices, determinations, correspondence, checks, account statements and other documents received by Purchaser concerning (a) the exemption status of the Premises for the 2026/2027 tax year, (b) the assessment or payment of the First-Half Taxes or (c) any Tax Benefit; provided, however, that it shall not be a default or impose any liability on Purchaser for any failure to timely provide any such documentation. All notices and other communications under this Agreement shall be given in the manner and to the addresses specified for notices under the Contract.

2. **Survival**

The obligations of Purchaser under this Agreement shall remain in effect until all claims for a Tax Benefit relating to the First-Half Taxes have been finally resolved, Purchaser has paid all amounts due to Seller under this Agreement, and Seller has paid all amounts due to Purchaser under this Agreement.

3. **Successors and Assigns.**

This Agreement shall be binding upon and inure to the benefit of Seller and Purchaser and their respective successors and permitted assigns. Purchaser shall remain liable for its obligations under this Agreement notwithstanding any subsequent transfer of the Premises.

4. **Governing Provisions.**

This Agreement shall be construed in accordance with the laws of the State of New York and shall not be amended, modified or terminated unless in writing executed by the Seller and Purchaser. The venue for any dispute arising from this Agreement shall be the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and the Bankruptcy Court shall have exclusive jurisdiction to interpret and enforce this Agreement. In the event of any conflict or inconsistency among this Agreement, the Contract and any applicable order of the Bankruptcy Court, such order of the Bankruptcy Court shall control, followed by the Contract and then this Agreement.

Purchaser acknowledges and agrees that Albert Togut (the "**Trustee**") is entering into this Agreement solely in his capacity as Chapter 7 Trustee of the Estates of Manhattan Country School and West 85th Street Owner LLC and pursuant to Bankruptcy Court. Neither the Trustee nor any of his retained professionals shall have any personal liability or obligation whatsoever under or in connection with this Agreement.

5. **Counterparts; Electronic Signatures.**

This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one agreement. Signatures transmitted electronically, including through DocuSign or a similar electronic signature platform, or by PDF shall be deemed original signatures for all purposes.

[Signature Page Follows]

**WHEREAS,** the parties hereto have executed this Agreement as of the day and year first above written.

**SELLER:**

Signed by:

By: Albert Togut
CC95761FD431406...
ALBERT TOGUT, not individually, but solely in his capacity as Chapter 7 Trustee of the Estates of Manhattan Country School and West 85th Street Owner LLC

**PURCHASER:**

THE GENEVA SCHOOL OF MANHATTAN

By: ______________________________
Name:
Title:

**WHEREAS,** the parties hereto have executed this Agreement as of the day and year first above written.

**SELLER:**

By: ______________________________
ALBERT TOGUT, not individually, but solely in his capacity as Chapter 7 Trustee of the Estates of Manhattan Country School and West 85th Street Owner LLC

**PURCHASER:**

THE GENEVA SCHOOL OF MANHATTAN

DocuSigned by:
By: C. Bren Hall
07F2BCF3AF414D6...
Name: C. Bren Hall
Title: Authorized Signatory