UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of

MANHATTAN COUNTRY SCHOOL, INC., et al.,

Debtors.

Case No. 25-11009 (DSJ)
(Jointly Administered)

**CONSOLIDATED OBJECTION OF CORPORATE POWER, INC. TO TRUSTEE'S FIRST INTERIM REPORT AND FEE APPLICATIONS OF THE TRUSTEE, TOGUT, SEGAL & SEGAL LLP, VEROLINO & LOWEY PC AND PHILLIPS NIZER LLP**

**INTRODUCTION**

Corporate Power, Inc. ("Corporate Power"), by and through its counsel, hereby files this Consolidated Objection to the First Interim Fee Applications filed by Albert Togut, Chapter 7 Trustee (the "Trustee"), Togut, Segal & Segal LLP (the "Togut Firm"), Verdolino & Lowey PC ("V&L"), and Phillips Nizer LLP ("Phillips Nizer") (collectively, the "Fee Applications").

Corporate Power respectfully submits this objection as a consolidated pleading because the central legal defect across all four fee applications is their interconnected nature. The Trustee's request to receive the maximum statutory commission is predicated on administrative work performed and billed by his retained law firm and accountants; the Togut Firm's legal fees are egregiously duplicative of the work performed by Special Real Estate Counsel, Phillips Nizer; and the combined requests function to impermissibly strip $1.99 million from the sale proceeds to the direct detriment of Corporate Power's perfected mechanic's lien. Severing these objections would obscure the coordinated double-dipping and top-heavy billing that plagues the estate's administration."

For the sale of a single piece of real estate, the Trustee and his professionals seek payment from the carve-out of nearly $2 million. When combined with the $1.328 million in broker commissions already paid, the total transaction costs exceed $3.3 million—nearly 10% of the sale proceeds.

## STATEMENT OF FACTS

1. On July 31, 2026, the debtor property located at 150 West 85th Street (the "School Property") was sold for $33,200,000.
2. The closing statement reveals that $1,328,000 in broker commissions were paid at closing.
3. The Trustee and his professionals now seek payment from the carve-out of $1,994,882.95, which includes $1,019,250 for the Trustee's commission, $859,982.57 for the Togut Firm, $62,458.25 for Phillips Nizer, and $53,132.95 for V&L.
4. Corporate Power holds a perfected mechanic's lien on the School Property securing a claim of $93,902.05 plus interest. While the Trustee obtained a Section 506(c) stipulation from the mortgage lenders consenting to the carve-out, Corporate Power never consented to the subordination of its perfected lien.

## LEGAL ARGUMENTS

### I. DOUBLE BILLING BY THE TRUSTEE'S LAW FIRM FOR TRUSTEE'S ADMINISTRATIVE DUTIES DEFEATS THE §330 PRESUMED REASONABLENESS OF THE STATUTORY COMMISSION FORMULA SET FORTH IN §326(a)

While Section 326(a) sets a maximum cap on a trustee's compensation, the fees must still be reasonable under Section 330. Here, Trustee Togut seeks the absolute maximum statutory commission of $1,019,250. However, the Trustee retained his own law firm, the Togut Firm, which billed an astonishing 912 hours (totaling $859,982.57) which it claims was dedicated entirely to the "School Sale" category, for which Philips Nizer is also claiming $62,458.25.

#### Impermissible Fees For Duplication of Services on Trustee's Administrative Duties

A trustee cannot be compensated twice for the same administrative duties. See Matter of Ferkauf, Inc., 42 B.R. 852 (Bankr. S.D.N.Y. 1984) in which Judge Buschman said, "One of the most pressing concerns in awarding professional fees in bankruptcy is to avoid compensating for duplication of services," and where fees were also reduced because estate-retained attorneys were used to perform statutory administrative duties under the guise of legal services. The fee application reveals severe double-dipping between the Trustee and the Togut Firm. A Chapter 7 trustee is statutorily required to perform basic administrative duties to liquidate the estate. The Trustee cannot claim the maximum statutory commission while simultaneously delegating these routine administrative and property management tasks to his own estate-retained law firm, who then bill the estate at premium hourly rates. Compensating the Trustee for overseeing the estate while the estate independently pays Togut Firm to execute the Trustee's fundamental administrative duties constitutes an impermissible "duplication of services."

**Lack of Contemporaneous Time Records**

See *In re C. Keffas & Son Florist, Inc.*, 240 B.R. 466 (Bankr. E.D.N.Y. 1999), in which the court emphasized that under **11 U.S.C. § 328(b)**, when a trustee serves as his own attorney, the court may allow attorney's fees *only* to the extent that the attorney performed professional legal services "not required of the trustee" under **11 U.S.C. § 704**. By seeking the maximum allowable statutory commission under 11 U.S.C. § 326 while simultaneously allowing his firm to bill for administrative duties, the trustee is explicitly violating the boundary established by § 328(b). The use of a trustee's own law firm to evade the strict percentage-based fee caps imposed by **11 U.S.C. § 326(a)** is condemned because under **11 U.S.C. § 328(b)**, the court must fiercely protect the estate from attorneys billing for tasks that are inherently the statutory duty of the trustee under **11 U.S.C. § 704.**

*Keffas* strictly dictates that when a trustee functions in such a dual capacity, the burden of proof is uniquely heavy on the applicant to clearly differentiate legal tasks from administrative duties, and that any ambiguity or failure to meticulously separate the two must be resolved against the trustee and in favor of the estate. Here, the Trustee has failed to document or failed to provide documentation of his time spent performing the Trustee's administrative duties, and billing of estate-retained professionals indicate performance of the Trustee's administrative duties.

The Trustee's fee application seeks the maximum statutory commission without providing the requisite detailed, contemporaneous time records. While 11 U.S.C. § 326 establishes a mathematical cap on a trustee's compensation, the actual fees awarded must be proven reasonable under 11 U.S.C. § 330, and the presumption of reasonableness is undone by Keffas and the dual capacity of Togut as the Trustee and Togut as the head of Togut Firm and their respective fee application. Without specific time entries detailing the exact tasks performed, the hours expended, and the dates of service, it is impossible for the Court or the creditors to determine whether the Trustee's requested commission is justified or whether the time spent was commensurate with the complexity of the case.

A detailed review of the Togut Firm's application reveals that approximately 536 hours (over $519,000 in fees) seemed to be duplicative billing for real estate legal services performed by Phillips Nizer.

The review further reveals that approximately 125 hours (over $114,000 in fees) were billed for purely administrative tasks. For example, B. Kreutter billed at $1,225/hour to "Review Con Ed invoices and summary of status of amounts owed to Con Ed," and the firm billed extensively for coordinating "records retention" and reviewing "caretaker emails."

Additionally, the Trustee's accountants, Verdolino & Lowey PC, billed 34.6 hours ($11,544.50) for physical records retrieval, including travel to New York, "boxing up school records," and loading boxes into a van. These are fundamental, non-legal non-accounting duties of a property liquidator, the Trustee.

## II. THE TOGUT FIRM'S FEES ARE EXCESSIVE AND DUPLICATIVE OF SPECIAL REAL ESTATE COUNSEL AND PERFORMANCE USED TO JUSTIFY THE TRUSTEE'S STATUTORY COMMISSION

The Trustee specifically retained Phillips Nizer as "Special Real Estate Counsel" to handle the real estate transaction. Despite this, the Togut Firm billed roughly 536 hours (over $519,000) specifically duplicating the sale of the School Property (e.g., comparing bid letters, reviewing APAs), which were also used as part of the justification for the Trustee's maximum allowed statutory commission. Under 11 U.S.C. § 330(a)(4)(A)(i), the Code strictly prohibits courts from awarding compensation for "unnecessary duplication of services." There is no justification for general bankruptcy counsel to bill over half a million dollars for overlapping "Core" sale activities when Special Real Estate Counsel handled the transaction.

## III. MISCLASSIFICATION OF THE ENTIRE COMMISSION AND ALL PROFESSIONAL FEES AS A SALE EXPENSE

The Trustee improperly seeks to classify his entire commission as a necessary expense of the property sale subject to a surcharge against the secured creditors' collateral. The majority of a Chapter 7 trustee's duties benefit the general unsecured estate, not the secured collateral itself.

- Only the specific, non-duplicative hours dedicated directly to the disposition of the real property qualify as a necessary sale expense.
- Time spent on general case administration, preference analysis, claims review, and the hiring of professionals must be classified as general Chapter 7 administrative expenses.
- These general administrative fees must be paid at the conclusion of the case from unencumbered funds, rather than being stripped from the real estate sale proceeds ahead of perfected secured creditors.

Under the landmark Second Circuit standard in In re Flagstaff Foodservice Corp., 739 F.2d 73 (2d Cir. 1984), a trustee must prove that 506(c) costs were reasonable, necessary, and provided a direct and quantifiable benefit to the specific secured creditor. Furthermore, a substantial portion of the Togut Firm's billings (~197 hours / $175,000) represent general Chapter 7 administration (e.g., preference analysis, claims review, fee apps) that provide zero benefit to the secured creditors and must be paid as general

administrative claims at the end of the case, or the Trustee's commission determined by §326(a) should be reduced by the Togut Firm's billing for the Trustee's general administrative duties, the duplicative legal billing by the Togut Firm, and by any other time and effort expended that do not specifically relate to the Sale.

**The Mortgage Lenders' "Consent" Was a Business Compromise, Not an Independent Review of the Fees Now being Paid Out of the Carve-Out**

The "consent" of U.S. Bank and Flushing Bank to the carve-out has no bearing on whether the fees distributed from the carve-out are reasonable. The mortgage lenders' consent to an aggregate $1.99 million carve-out was merely a negotiated cost of doing business to quickly release their $29.5 million distribution. It was a blind compromise, not an independent audit. There is no affirmation, declaration, or evidence in the record that either U.S. Bank or Flushing Bank performed a detailed, line-by-line review of the 912 hours billed by the Togut Firm or the 136 hours billed by Verdolino & Lowey to verify that these fees were strictly related to the sale or reasonable.

Because the senior lenders failed to scrutinize the invoices, they inadvertently consented to subsidizing the Trustee's statutory administrative duties, the Togut Firm's preference analyses, and the accountants' physical boxing of records—none of which benefit the collateral as they should under the standards of *In re Flagstaff Foodservice Corp.*

For this objection, Corporate Power has reviewed the time entries in detail in order to protect the estate from this impermissible dilution of collateral. The Trustee cannot use a blind business stipulation with two lenders to justify non-sale administrative fees through § 506(c) to the direct detriment of Corporate Power's perfected, non-consenting mechanic's lien.

**IV. REDUCING FEESS FROM THE CARVE-OUT MAXIMIZES THE ESTATE FOR THE BENEFIT OF ALL UNSECURED CREDITORS**

The relief Corporate Power requests is not merely for its own benefit, but is essential to preserving the integrity of the bankruptcy estate for the general unsecured creditor pool. The Trustee and his professionals seek to drain nearly $2 million from the top of the estate through maximum statutory commissions and duplicative legal and accounting billings. By properly reducing the Trustee's commission to reflect actual administrative duties, striking the Togut Firm's $520,205.50 in duplicative real estate billings, and reclassifying general administrative tasks, over $1 million of the requested carve-out would be returned to the estate. Returning these funds to the estate's waterfall distribution ensures that valid unsecured creditors receive a meaningful recovery, rather than allowing the estate's remaining liquidity to be entirely consumed by top-heavy professional fees.

**CONCLUSION**

WHEREFORE, Corporate Power respectfully requests that the Court:
(A) Reduce the Trustee's statutory commission to $150,000 to reflect the actual administrative services properly apportioned

(A1) ALTERNATIVELY, order the Trustee to submit his detailed contemporaneous time and billing records to justify any part of the request for the statutory commission, and schedule a new hearing for payment of Trustee's commission;
(B) Reduce the fees of the Togut Firm to the $30,000 actually related to obtaining the 363 sale order; deny the $520,205.50 in fees that duplicated Special Real Estate Counsel; deny the $113,646 in fees for Trustee administrative tasks; and delay the remaining $174,096.50 to be treated as general Chapter 7 administrative claims payable at the final report;
(C) Reduce the Verdolino & Lowey fee application by denying $17,579.00 for administrative tasks tasks that duplicated the Trustee's duties, allowing $24,070.50 for direct sale work, and delaying $8,107 as general Chapter 7 administrative accounting expenses;
(D) Order that Corporate Power's mechanic's lien be paid immediately from the 506(c) carve-out.

Dated: October 23, 2026

Plattsburgh, New York

Respectfully submitted,

**MILAN SAHA, ESQ.**

*Counsel for Corporate Power, Inc.*

80 Barton Road

Plattsburgh, NY 12901

Telephone: (518) 478-4208

Email: milan@milangroup.us

**EXHIBIT 1: Creditor's Analysis of the Togut, Segal & Segal LLP Fee Application**

The firm billed a total of **912.0 hours** amounting to **$847,947.00** in fees (excluding expenses).

This breakdown categorizes their billing records to highlight what was necessary for the sale, what constitutes administrative double-dipping, what is standard legal work that must wait for the final case distribution, and what was entirely inappropriate.

**1. Actual, Necessary Work Related to the Sale of the Property**

As general bankruptcy counsel, the Togut Firm's legitimate role in the real estate transaction should have been limited to obtaining bankruptcy court approval for the sale (the Section 363 process). This includes drafting the motion to sell free and clear of liens, establishing the bidding procedures, and presenting the sale to the judge.

- **Estimated Legitimate Billing:** ~30 hours (Approx. $30,000)
- **Specific Examples of Appropriate Work:**
    - Drafting the "Motion to Sell Property Free and Clear of Liens Under Section 363(f)."
    - "Revise proposed bidding procedures order and exhibit for submission to court."
    - "Revise bidding procedures motion and bidding procedures exhibit to reflect changes."
- **Summary:** This is the only portion of the Togut Firm's bill that legitimately qualifies for a Section 506(c) surcharge against the sale proceeds, as obtaining the 363 sale order is a necessary prerequisite to liquidating the secured creditors' collateral.

**2. Administrative Tasks That Should Have Been Performed by the Trustee**

The Bankruptcy Code strictly prohibits a trustee from hiring their own law firm to perform statutory administrative duties (11 U.S.C. § 328(b)). Because Trustee Togut is already seeking the statutory maximum commission of $1,019,250 to administer the estate, billing attorney rates for these tasks constitutes double-dipping.

- **Estimated Duplicative Admin Billing:** ~125 hours (Approx. $114,000)
- **Categories Billed by the Law Firm:**
    - **Utility Issues** (49.8 hours, $39,358.50)

  - **Insurance Issues** (39.0 hours, $38,982.50)
  - **Case Administration** (35.4 hours, $34,309.00)
- **Specific Examples of Inappropriate Administrative Billed Work:**
  - "Review Con Ed invoices and summary of status of amounts owed to Con Ed." (Billed at $1,225/hour by B. Kreutter).
  - "Review COI summary re: reinstated property coverage per S. Berger."
  - "Review caretaker email and summary of scope of work."
  - Coordination of "records retention/abandonment of assets project."
- **Summary:** Paying an attorney over $1,000 an hour to review utility bills, track down certificates of insurance, and coordinate building caretakers is a gross misuse of estate funds. These are the fundamental, non-legal duties of a property liquidator/trustee.

**3. Legal Work That Should Be Allowed as a Chapter 7 Administrative Fee (Paid at Final Report)**

Many of the firm's time entries represent legitimate, necessary legal work for a Chapter 7 bankruptcy. However, this work benefits the general unsecured estate, not the secured creditors. Therefore, these fees cannot be carved out of the real estate sale proceeds under Section 506(c). They must be allowed as general administrative claims and paid at the end of the case from whatever unencumbered funds remain.

- **Estimated Legitimate Chapter 7 Billing:** ~197 hours (Approx. $175,000)
- **Categories Billed by the Law Firm:**
  - **Secured Creditor Issues / Claims Review** (59.1 hours, $60,102.00)
  - **Retention of Professionals** (52.5 hours, $47,371.50)
  - **TSS Fee Application / Fee Statements** (31.0 hours, $22,673.50)
  - **Other Litigation / Preferences** (3.4 hours, $1,719.50)
- **Specific Examples of General Estate Legal Work:**
  - "Update claims schedule and email total GUC [General Unsecured Claim] value."
  - "Review lien summary drafted by AR."

    - "Draft Documents Complete drafting of 506c, email to NB re: summary of issues."
    - Preparation of employment applications for brokers and accountants.

- **Summary:** Reviewing proofs of claim, investigating preference actions, and drafting the law firm's own fee application do not benefit the sale of the real estate. Under the *Flagstaff* standard, the Togut Firm cannot force secured creditors like Corporate Power to foot the bill for general Chapter 7 legal administration.

**4. Inappropriately Billed Work (Egregious Duplication)**

The most glaring issue in the application is the massive amount of time billed directly to the real estate transaction, despite the fact that the estate hired (and is paying) Phillips Nizer as Special Real Estate Counsel and two different real estate brokers.

- **Estimated Inappropriate/Duplicative Billing:** ~536 hours (Approx. $519,000)
- **Categories Billed by the Law Firm:**
    - **School Sale – Core** (431.4 hours, $430,858.00)
    - **School Sale – Sale of Property** (104.9 hours, $88,177.50)
- **Specific Examples of Inappropriate Duplicative Work:**
    - "Comparison of Alpha and Zimmer bid letters and exhibits" (Billed at $1,065/hr by A. Greene).
    - "Correspondence with BKREA [broker] regarding summary of marketing efforts."
    - "Email to R.McCord team regarding projected costs of sale per LOI."
    - "Review summary of property-related liabilities relevant to APA."
- **Summary:** Phillips Nizer billed $61,285 to negotiate the Purchase and Sale Agreement (PSA), clear title, handle escrow, and close the sale. The brokers were paid $1.328 million to market the property and solicit bids. There is absolutely no legal justification for the Togut Firm to simultaneously bill over half a million dollars for overlapping "Core" sale activities, evaluating LOIs, reviewing APA liabilities, and analyzing bids.

**Based on the First Interim Fee Application of Phillips Nizer LLP, it seems they performed the critical legal work related to the sale of the property.**

The firm is requesting **$61,285.00** in fees for **90.2 hours** of professional services, plus $1,173.25 in expenses.

The application explicitly states that this interim request is intended to cover fees incurred "solely in connection with the sale of the Property," and that the firm reserves its right to seek payment for "other aspects" of the Chapter 7 cases in a final fee application.

A detailed review of the time entries (Exhibit 3) reveals the following breakdown of how the time was actually spent:

**a) The Sale of the Property**

As the designated Special Real Estate Counsel, the vast majority of Phillips Nizer's 90.2 billed hours were directly related to executing the sale of the real estate. Their work in this category can be broken down into the following key phases:

- **Contract Drafting & Negotiations:** Significant time was spent reviewing, marking up, and responding to revisions for the Purchase and Sale Agreements (PSAs) with the Stalking Horse Bidder (The Geneva School) and competing bidders (Alpha and Zimmer).
- **Auction Logistics:** The firm billed for evaluating bid applications, managing escrow deposits and withdrawals for non-winning bidders, and preparing for and attending the actual auction on June 23, 2026.
- **Tax Exemption Research:** Attorneys spent several hours researching and drafting memorandums regarding the history and application of Section 1405(b)(8) bankruptcy exemptions, New York State real property transfer tax exemptions, and real estate tax adjustments.
- **Title Clearance & Closing:** This encompassed clearing title objections, setting up interest-bearing escrow subaccounts, drafting the final closing statement, organizing wire instructions, drafting the bill of sale for personal property, and finalizing a post-closing agreement regarding real estate taxes.

**b) Other Matters**

Despite the firm's statement that this application is strictly for the sale of the property, a small fraction of the detailed time entries relate to internal administrative and retention matters rather than direct sale logistics. Specific examples include:

- **Retention and Employment of Professionals:** Time billed for reviewing declarations required for the firm to be officially retained by the bankruptcy court.
  - *Example:* On July 2, 2025, an attorney billed 0.2 hours ($165.00) to "Review and revise Landis declaration".
- **Fee Application Preparation:** Time billed for reviewing internal time entries to prepare this very fee application.
  - *Example:* On August 4, 2026, a paralegal billed 1.5 hours ($787.50) for tasks that included reviewing the "fee application number and entries (1.0)".

**EXHIBIT 2: Creditor's Analysis of the Verdolino & Lowey PC Fee Application**

Based on a detailed analysis of the first interim fee application submitted by Verdolino & Lowey PC (V&L), the firm is requesting **$49,756.50** for a total of **136.9 hours** of work. V&L's application explicitly states that they are currently seeking compensation *solely* for services rendered in connection with the sale of the Manhattan real estate property.

However, a breakdown of the specific time entries reveals that a substantial portion of the firm's billed time was spent on routine administrative tasks, non-sale accounting, and extensive physical records retrieval.

Here is the detailed summary and breakdown of the firm's billings based on the categorized time entries:

**a) Sale of the Property**

**Total: 53.5 hours | $20,941.00 (42.1% of total fees)** This category represents time explicitly billed to the mechanics, financial logistics, and closing of the property sale.

- **Drafting and updating waterfall scenarios of sale proceeds**
- **Participating in calls with counsel and brokers regarding the sale**
- **Reviewing files for bidder document requests and closing logistics**

**b) Tax Matters Related to the Sale of the Property**

**Total: 8.1 hours | $3,129.50 (6.3% of total fees)** This category includes specialized tax research and analysis related to real estate transfer taxes and exemptions.

- **Researching NYS/NYC transfer tax, RETT, RPTT liability, and UBTI:**
- **Researching property tax exemption rules and abatements:**
- **Discussions with counsel/team regarding potential taxes due:**

**c) Administrative Tasks Which Should Be Handled by the Trustee**

**Total: 53.9 hours | $17,542.00 (35.3% of total fees)** *Note: This category includes general administrative tasks and the physical retrieval of records (which were originally bucketed as "anything else" in the raw data but properly belong here).* The Trustee's statutory commission is intended to cover the general administration of the estate. V&L billed heavily for physical logistics, maintenance coordination, and record boxing, which are typically trustee duties rather than specialized accounting work.

- **Physical Records Retrieval (Travel, boxing records, loading vans, walking through school)**

- **Building maintenance, insurance, and utilities (gas shut off, boiler cleaning, floor plans** 2.2 hours ($828.50)
- **General records retrieval logistics and vendor lists**

**d) Actual Accounting Work for the Estate**

**Total: 21.4 hours | $8,144.00 (16,4% of total fees)** *Note: This category merges standard accounting tasks with the extensive waterfall/budgeting tasks found throughout the billing records.* The bulk of V&L's time was spent on traditional financial modeling, estate budgeting, and reviewing creditor invoices. While tangentially related to the sale (as the sale funds the estate), much of this is general estate accounting.

- **Drafting, updating, and discussing the estate/sale Budget**
- **General Waterfall Analysis (general updates, discussing scenarios, tracking distributions)**
- **Reviewing and analyzing specific creditor claims and invoices (e.g., J. Evans, MTC, ConEd)**

**Summary:** While V&L states this application is "solely in connection with the sale of the Property," over 35% of the billed time ($17,542.00) was spent on the physical logistics of traveling to the school and boxing up records. Paying accountants over $300-$400/hour to load boxes into a van and coordinate boiler cleanings is an unreasonable use of estate funds, heavily duplicates the Trustee's administrative duties, and should not be subsidized by the secured creditors' collateral.

## EXHIBIT 3: Creditor’s Analysis of the Trustee’s Fee Application

### Failure to Acknowledge Corporate Power's Perfected Mechanic's Lien

The Trustee’s First Interim Report and fee application wholly fail to account for the established rights of Corporate Power, Inc. as a secured creditor. Corporate Power holds a valid, perfected mechanic's lien against the debtor's real property located at 150 West 85th Street, New York, NY (Block 01215/Lot 0053).

- The total unpaid amount claimed under this mechanic's lien is $93,902.05.
- This lien secures unpaid labor and third-party contract services furnished for the maintenance of the school's electronic server and digital network, which are attached to and wired throughout the real property.
- The work and materials were provided between January 1, 2021, and May 16, 2025.
- The Notice of Mechanic's Lien was officially filed with the New York County Clerk on January 14, 2026.
- The Trustee, Albert Togut, was directly served with the Notice of Lien via certified mail on or around January 7, 2026.

Because the lien has legally attached to the property, it automatically attaches to the proceeds of the sale. The Trustee cannot distribute professional fees from the carve-out of sale proceeds subordinate or ignore Corporate Power’s $93,902.05 secured claim without Corporate Power’s consent.

### Lack of Contemporaneous Time Records

The Trustee’s fee application seeks the maximum statutory commission without providing the requisite detailed, contemporaneous time records. While 11 U.S.C. § 326 establishes a mathematical cap on a trustee’s compensation, the actual fees awarded must be proven reasonable under 11 U.S.C. § 330. Without specific time entries detailing the exact tasks performed, the hours expended, and the dates of service, it is impossible for the Court or the creditors to determine whether the Trustee's requested commission is justified or whether the time spent was commensurate with the complexity of the case.

### Impermissible Double-Dipping on Administrative Duties

The fee application reveals severe double-dipping between the Trustee and his retained professionals. A Chapter 7 trustee is statutorily required to perform basic administrative duties to liquidate the estate. The Trustee cannot claim the maximum statutory commission while simultaneously delegating these routine administrative and property

management tasks to his retained law firm and accountants, who then bill the estate at premium hourly rates. Compensating the Trustee for overseeing the estate while the estate independently pays professionals to execute the Trustee's fundamental administrative duties constitutes an impermissible duplication of fees.

**Misclassification of the Commission as a Sale Expense**

The Trustee improperly seeks to classify his entire commission as a necessary expense of the property sale subject to a surcharge against the secured creditors' collateral. The majority of a Chapter 7 trustee's duties benefit the general unsecured estate, not the secured collateral itself.

- Only the specific, non-duplicative hours dedicated directly to the disposition of the real property qualify as a necessary sale expense.
- Time spent on general case administration, preference analysis, claims review, and the hiring of professionals must be classified as general Chapter 7 administrative expenses.
- These general administrative fees must be paid at the conclusion of the case from unencumbered funds, rather than being stripped from the real estate sale proceeds ahead of perfected secured creditors.

**Estimated Reasonable Commission**

Taking into account the failure to provide detailed time records, the delegation of statutory administrative duties to retained professionals, and the improper attempt to subordinate Corporate Power's valid $93,902.05 mechanic's lien, the Trustee's request for the maximum statutory commission is unreasonable.

An estimated reasonable commission for the Trustee is $150,000. This amount generously compensates the Trustee for the actual, non-delegated executive oversight required to execute the sale of the property, strips out the duplicative administrative billings, and appropriately defers any compensation for general Chapter 7 administration to the final case distribution.